M. Erik Clark #188693
Nancy B. Clark #207024
**BOROWITZ & CLARK, LLP**
100 N. Barranca Street, Suite 250
West Covina, CA 91791
Tel: (626) 332-8600
Fax: (626) 332-8644

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>BOAZ TRIBELSKY,<br><br>Debtor | Case No.: 2:15-bk-23688-NB<br><br>Chapter 13<br><br>**DEBTOR'S MOTION TO SUSPEND CHAPTER 13 PLAN PAYMENTS AND DEBTOR'S DIRECT PAYMENTS TO U.S. BANK, N.A. PENDING DETERMINATION OF THE VALIDITY OF THE SECURITY INTEREST AND STANDING TO ACCEPT PAYMENTS OF U.S. BANK, N.A. AND REQUEST THAT CHAPTER 13 TRUSTEE, KATHY A. DOCKERY, HOLD ALL PAYMENTS IN TRUST PENDING CONCLUSION OF THIS MATTER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BOAZ TRIBELSKY; AND DECLARATION OF MARIE MCDONNELL IN SUPPORT THEREOF**<br><br>Date: January 5, 2017<br>Time: 8:30 am<br>Place: 255 E. Temple Street, Courtroom 1545<br>Los Angeles, CA 90012 |

Debtor, Boaz Tribelsky, by and through his attorney, M. Erik Clark, files this Motion to Suspend Chapter 13 Plan Payments and Debtor's Direct Payments to U.S. Bank, N.A. Pending

Determination of the Validity of the Security Interest and Standing to Accept Payments by U.S. Bank, N.A. and Request that Chapter 13 Trustee, Kathy A. Dockery, Hold All Payments in Trust Pending Conclusion of this Matter. This Motion is based on the documents attached hereto and the Declaration of Boaz Tribelsky, and the Declaration of Marie McDonnell.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS**

Debtor, Boaz Tribelsky ("Debtor"), filed the instant Chapter 13 bankruptcy on September 1, 2015. Debtor's Chapter 13 estate is comprised of his residence located at 724 North Genesee Avenue, Los Angeles, California 90046 ("Residence"), and to a lesser degree, 50 percent interest in "In Your Place Furniture, Inc.," a California "S" corporation that sells home furnishings.

On January 7, 2016, U.S. Bank, N.A., as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 ("Creditor") filed a Proof of Claim for account number with the last 4 digits of 2885 in the instant Chapter 13 bankruptcy (see attached as Exhibit 1, a true and correct copy of claim number 4 on the Court's Claim Register filed by U.S. Bank, N.A., as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 loan number ending in the last 4 digits 2885 and filed on January 7, 2016). Creditor's Proof of Claim ("POC"), signed under penalty of perjury, lists the total amount of the claim as $611,536.93 secured against the Residence, with arrears and other charges owing at the time the case was filed in the amount of $134,320.09. Creditor's claim was filed by the entity that claims to hold holds the first mortgage against the Residence and who claims to be entitled to collect the alleged debts. Creditor attached to its Proof of Claim the following documents:(1) the Note; (2) Grant Deed; (3) Deed of Trust; and (4) Corporate Assignment of Deed of Trust.

Debtor retained the services of Marie McDonnell, Chief Executive Officer of McDonnell Analytics, Inc., a litigation support and research firm providing mortgage-backed securities research and foreclosure forensics. Ms. McDonnell has analyzed Debtor's mortgage loan and believes that

Creditor instituted foreclosure without legal authority from the "Note Holder" as that term is defined in paragraph 1 of the Note, and that a fraudulent (and therefore void) assignment of deed of trust has been filed in the county land records, and this court as an attachment to the POC, purporting to grant the Trustee of the Real Estate Mortgage Investment Conduit ("REMIC") Trust the authority to foreclose upon Debtor's Residence (see attached as Exhibit 2, the Affidavit and Testimony of Marie McDonnell, CFE in regard the In re: Boaz Tribelsky matter, and its attached exhibits).

**ARGUMENT**

The Federal Rule of Bankruptcy Procedure 3001(c)(1) states in part, "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim." FRBP 3001(c)(1). FRBP 3001(c)(2)(C) states in part, "[i]f a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim." Here, Debtor has reason to believe that the assignment attached to the Proof of Claim is fraudulent based on the findings by forensic foreclosure expert, Marie McDonnell. Debtor intends to file either a Motion for Order Disallowing the Claim of Creditor or an Adversary Proceeding against Creditor regarding the assignment of the Note.

11 United States Code Section 502(b)(1) states that a claim should be allowed "except to the extent that - such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1). Debtor believes Creditor's Claim is only enforceable against the Debtor as a general unsecured claim. In Ms. McDonnell's expert opinion, the mortgage contract between Debtor and Creditor has been so severely impaired that the counterparty to the mortgage loan contract is no longer identifiable and rescission may be the only appropriate remedy of this transaction. Rescission of the loan would also protect Tribelsky from Creditor's use of its fraudulent Corporate Assignment of Deed of Trust, Substitution of Trustee, and Notice of Default and Election to Sell as the basis for instituting foreclosure proceedings.

## CONCLUSION

Based on the alleged fraud of Creditor, Debtor requests suspension of all payments including Debtor's direct monthly mortgage payments and disbursements by the Chapter 13 Trustee, Kathy A. Dockery ("Trustee"), to Creditor and that instead all payments regarding Creditor's claim be sent to and be held by the Trustee in trust until the Court has had an opportunity to determine whether or not Creditor is the appropriate party to collect such payments and whether or not the claim is secured or unsecured.

**WHEREFORE**, Debtor prays for the following:

1. That all payments by Debtor and the Chapter 13 Trustee to alleged creditor, U.S. Bank, N.A. be suspended;
2. That all payments to U.S. Bank, N.A. be held in trust by the Chapter 13 Trustee until and it may be determined if creditor holds a valid claim;
3. For such other relief as this Court deems appropriate.

Dated: December 13, 2016

By: BOROWITZ & CLARK, LLP

M. Erik Clark
Attorney for Debtor

**DECLARATION OF BOAZ TRIBELSKY**

I, Boaz Tribelsky, hereby declare as follows:

1. As to the following facts, I know them to be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto;
2. That I am the debtor in this chapter 13 bankruptcy case that was filed on September 1, 2015 (case number: 2:15-bk-23688-NB);
3. That my estate is comprised of my residence located at 724 North Genesee Avenue, Los Angeles, California 90046 ("Residence"), and to a lesser degree, 50 percent interest in "In Your Place Furniture, Inc.," a California "S" corporation that sells home furnishings;
4. That on or about January 7, 2016, U.S. Bank, N.A., as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 ("Creditor") filed a Proof of Claim for account number ending in 2885 in the instant Chapter 13 bankruptcy (see attached as Exhibit 1, a true and correct copy of claim number 4 on the Court's Claim Register filed by U.S. Bank, N.A., loan number ending 2885 and filed on January 7, 2016). Creditor's Proof of Claim ("POC"), signed under penalty of perjury, lists the total amount of the claim as $611,536.93 secured against the Residence, with arrears and other charges owing at the time the case was filed in the amount of $134,320.09. Creditor's claim was filed by the entity that claims to hold holds the first mortgage against the Residence and who claims to be entitled to collect the alleged debts.
5. That I retained the services of Marie McDonnell, Chief Executive Officer of McDonnell Analytics, Inc., a litigation support and research firm providing mortgage-backed securities research and foreclosure forensics. Ms. McDonnell has analyzed my mortgage loan and believes that Wells Fargo Bank, N.A. instituted foreclosure without legal authority from the "Note Holder" as that term is defined in paragraph 1 of the Note, and that a fraudulent (and therefore void) assignment of deed of trust has been filed county land records, and this court, purporting to grant the Trustee of the Real Estate Mortgage Investment Conduit ("REMIC") Trust the authority to foreclose upon Debtor's Residence

(see attached as Exhibit 2, the Affidavit and Testimony of Marie McDonnell, CFE in regard the In re: Boaz Tribelsky matter, and its attached exhibits);

6. That I request suspension of all payments including my direct monthly mortgage payments and disbursements by the Chapter 13 Trustee, Kathy A. Dockery ("Trustee"), to Creditor and that instead all payments regarding Creditor's claim be sent to and be held by the Trustee in trust until the Court has had an opportunity to determine whether or not Creditor is the appropriate party to collect such payments and whether or not the claim is secured or unsecured.
7. That I filed the instant Chapter 13 bankruptcy in good faith.

I, Boaz Tribelsky, declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 13, 2016, at Los Angeles, California.

Boaz Tribelsky
Debtor

# EXHIBIT "1"

**Fill in this information to identify the case:**

Debtor 1 BOAZ TRIBELSKY

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number 15-bk-23688-NB

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.
Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Official Form 410

# Proof of Claim

12/15

## Part 1: Identify the Claim

**1. Who is the current creditor?**

U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Wells Fargo Bank, N.A.<br>Attention: Bankruptcy Department<br>MAC# D3347-014 | Wells Fargo Bank, N.A.<br>Attention: Payment Processing<br>MAC# X2302-04C |
| Name | Name |
| 3476 Stateview Blvd | 1 Home Campus |
| Number Street | Number Street |
| Fort Mill SC 29715 | Des Moines IA 50328 |
| City State ZIP Code | City State ZIP Code |
| Contact phone 800-274-7025 | Contact phone 800-274-7025 |
| Contact email POCNOTIFICATIONS@WELLSFARGO.COM | Contact email POCNOTIFICATIONS@WELLSFARGO.COM |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
WFCMGE1523688CAC09562885





EX 1 pg 1 of 32

| | | |
|---|---|---|
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) ________ Filed on ________ MM/DD/YYYY | |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? ________ | |

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2885

7. **How much is the claim?** $ 611,536.93

**Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.
Money Loaned

9. **Is all or part of the claim secured?**
☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**
☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: 724 N GENESEE AVE LOS ANGELES CA 90046-7312

**Basis for perfection:** Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ________
**Amount of the claim that is secured:** $ 611,536.93
**Amount of the claim that is unsecured:** $ ________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 134,320.09

**Annual Interest Rate**(when case was filed) 6.875 %
☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ________

11. **Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: ________

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ ________ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ ________ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor.s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ ________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ ________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ ________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ ________ |

* Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 1/7/16
MM / DD / YYYY

[signature]
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Julian T. Cotton
First name Middle name Last name

Title: Authorized Agent for Wells Fargo Bank, N.A.

Company: Buckley Madole, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: P.O. Box 9013
Number Street

Addison TX 75011
City State ZIP Code

Contact phone: (972) 643-6600

Email: POCInquiries@BuckleyMadole.com

EX 1 pg 4 of 3.2

# Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 15-bk-23688-NB |
| Debtor 1: | BOAZ TRIBELSKY |
| Debtor 2: | |
| Last 4 digits to identify: | 2885 |
| Creditor: | See 410 part 1.1 |
| Servicer: | Wells Fargo Bank, N.A. |
| Fixed accrual/daily simple interest/other: | Fixed Accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | 505,255.37 |
| Interest due: | 101,409.32 |
| Fees, costs due: | 3,314.30 |
| Escrow deficiency for funds advanced: | 1,557.94 |
| Other: | 0.00 |
| Less total funds on hand: – | 0.00 |
| Total debt: | 611,536.93 |

*Not to be used for payoff purposes

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | 129,447.85 |
| Prepetition fees due: | 3,314.30 |
| Escrow deficiency for funds advanced: | 1,557.94 |
| Projected escrow shortage: | 0.00 |
| Other: | 0.00 |
| Less funds on hand: – | 0.00 |
| Total prepetition arrearage: | 134,320.09 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | 3,698.51 |
| Monthly escrow: | 0.00 |
| Private mortgage insurance: | 0.00 |
| Optional Products: | 0.00 |
| Total monthly payment: | 3,698.51 |

*Additional changes to the monthly payment amount may be required because interest rate adjustments or escrow requirement changes.

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/16/2011 | | | | Beginning Balances | 11/01/2011 | 3,698.51 | | | | | | 514,551.38 | 0.00 | 0.00 | 184.93 | 0.00 |
| 11/16/2011 | | | 184.93 | Late Charge | 11/01/2011 | 3,698.51 | | | | 184.93 | | 514,551.38 | 0.00 | 0.00 | 369.86 | 0.00 |
| 11/28/2011 | | 3,698.51 | | Payment | 11/01/2011 | 0.00 | 750.56 | 2,947.95 | 0.00 | | 0.00 | 513,800.82 | 0.00 | 0.00 | 369.86 | 0.00 |
| 12/01/2011 | 3,698.53 | | | Monthly payment | 12/01/2011 | 3,698.53 | | | | | | 513,800.82 | 0.00 | 0.00 | 369.86 | 0.00 |
| 12/16/2011 | | | 184.93 | Late Charge | 12/01/2011 | 3,698.53 | | | | 184.93 | | 513,800.82 | 0.00 | 0.00 | 554.79 | 0.00 |
| 12/31/2011 | | 3,698.51 | | Payment | 12/01/2011 | 3,698.53 | 0.00 | 0.00 | 0.00 | | 3,698.51 | 513,800.82 | 0.00 | 0.00 | 554.79 | 3,698.51 |
| 01/01/2012 | 3,698.51 | | | Monthly payment | 12/01/2011 | 7,397.04 | | | | | | 513,800.82 | 0.00 | 0.00 | 554.79 | 3,698.51 |
| 01/23/2012 | | | 15.00 | Property inspection fees | 12/01/2011 | 7,397.04 | | | | 15.00 | | 513,800.82 | 0.00 | 0.00 | 569.79 | 3,698.51 |
| 02/01/2012 | 3,698.52 | | | Monthly payment | 12/01/2011 | 11,095.56 | | | | | | 513,800.82 | 0.00 | 0.00 | 569.79 | 3,698.51 |
| 02/01/2012 | | 3,698.53 | | Payment | 12/01/2011 | 7,397.03 | 754.86 | 2,943.65 | 0.02 | | 0.00 | 513,045.96 | 0.00 | 0.02 | 569.79 | 3,698.51 |
| 02/01/2012 | | 0.00 | | Payment | 01/01/2012 | 3,698.52 | 759.18 | 2,939.33 | 0.00 | | -3,698.51 | 512,286.78 | 0.00 | 0.02 | 569.79 | 0.00 |
| 03/01/2012 | 3,698.51 | | | Monthly payment | 02/01/2012 | 7,397.03 | | | | | | 512,286.78 | 0.00 | 0.02 | 569.79 | 0.00 |
| 03/24/2012 | | | 15.00 | Property inspection fees | 02/01/2012 | 7,397.03 | | | | 15.00 | | 512,286.78 | 0.00 | 0.02 | 584.79 | 0.00 |

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

EX 1 pg 5 of 32

Case number: 15-bk-23688-NB

Debtor 1: BOAZ TRIBELSKY

### Part 5 : Loan Payment History from First Date of Default

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 03/30/2012 | | 3,698.52 | | Payment | 02/01/2012 | 3,698.51 | 763.53 | 2,934.98 | 0.01 | | 0.00 | 511,523.25 | 0.00 | 0.03 | 584.79 | 0.00 |
| 04/01/2012 | 3,698.51 | | | Monthly payment | 03/01/2012 | 7,397.02 | | | | | | 511,523.25 | 0.00 | 0.03 | 584.79 | 0.00 |
| 04/16/2012 | | | 184.93 | Late Charge | 03/01/2012 | 7,397.02 | | | | 184.93 | | 511,523.25 | 0.00 | 0.03 | 769.72 | 0.00 |
| 04/25/2012 | | | 15.00 | Property inspection fees | 03/01/2012 | 7,397.02 | | | | 15.00 | | 511,523.25 | 0.00 | 0.03 | 784.72 | 0.00 |
| 04/30/2012 | | 2,400.00 | | Payment | 03/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 2,400.00 | 511,523.25 | 0.00 | 0.03 | 784.72 | 2,400.00 |
| 05/01/2012 | 3,698.51 | | | Monthly payment | 03/01/2012 | 11,095.53 | | | | | | 511,523.25 | 0.00 | 0.03 | 784.72 | 2,400.00 |
| 05/16/2012 | | | 184.93 | Late Charge | 03/01/2012 | 11,095.53 | | | | 184.93 | | 511,523.25 | 0.00 | 0.03 | 969.65 | 2,400.00 |
| 05/17/2012 | | 1,490.96 | | Payment | 03/01/2012 | 11,095.53 | 0.00 | 0.00 | 0.00 | | 1,490.96 | 511,523.25 | 0.00 | 0.03 | 969.65 | 3,890.96 |
| 05/17/2012 | | 0.00 | | Payment | 03/01/2012 | 7,397.02 | 767.91 | 2,930.60 | 0.00 | | -3,698.51 | 510,755.34 | 0.00 | 0.03 | 969.65 | 192.45 |
| 05/25/2012 | | | 15.00 | Property inspection fees | 04/01/2012 | 7,397.02 | | | | 15.00 | | 510,755.34 | 0.00 | 0.03 | 984.65 | 192.45 |
| 06/01/2012 | 3,698.51 | | | Monthly payment | 04/01/2012 | 11,095.53 | | | | | | 510,755.34 | 0.00 | 0.03 | 984.65 | 192.45 |
| 06/18/2012 | | | 184.93 | Late Charge | 04/01/2012 | 11,095.53 | | | | 184.93 | | 510,755.34 | 0.00 | 0.03 | 1,169.58 | 192.45 |
| 06/23/2012 | | | 15.00 | Property inspection fees | 04/01/2012 | 11,095.53 | | | | 15.00 | | 510,755.34 | 0.00 | 0.03 | 1,184.58 | 192.45 |
| 06/28/2012 | | 3,698.51 | | Payment | 04/01/2012 | 7,397.02 | 772.31 | 2,926.20 | 0.00 | | 0.00 | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.45 |
| 06/28/2012 | | 0.01 | | Payment | 05/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 0.01 | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.46 |
| 07/01/2012 | 3,698.51 | | | Monthly payment | 05/01/2012 | 11,095.53 | | | | | | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.46 |
| 07/16/2012 | | | 184.93 | Late Charge | 05/01/2012 | 11,095.53 | | | | 184.93 | | 509,983.03 | 0.00 | 0.03 | 1,369.51 | 192.46 |
| 07/23/2012 | | | 15.00 | Property inspection fees | 05/01/2012 | 11,095.53 | | | | 15.00 | | 509,983.03 | 0.00 | 0.03 | 1,384.51 | 192.46 |
| 07/28/2012 | | 3,698.51 | | Payment | 05/01/2012 | 7,397.02 | 776.73 | 2,921.78 | 0.00 | | 0.00 | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 192.46 |
| 07/28/2012 | | 51.49 | | Payment | 06/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 51.49 | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 243.95 |
| 08/01/2012 | 3,698.51 | | | Monthly payment | 06/01/2012 | 11,095.53 | | | | | | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 243.95 |
| 08/16/2012 | | | 184.93 | Late Charge | 06/01/2012 | 11,095.53 | | | | 184.93 | | 509,206.30 | 0.00 | 0.03 | 1,569.44 | 243.95 |

12

## Mortgage Proof of Claim Attachment: Additional Page (12/15)

Case number: 15-bk-23688-NB
Debtor 1: BOAZ TRIBELSKY

EX 1 pg 6 of 32

### Part 5 : Loan Payment History from First Date of Default

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 08/31/2012 | | 3,698.51 | | Payment | 06/01/2012 | 7,397.02 | 781.18 | 2,917.33 | 0.00 | | 0.00 | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 243.95 |
| 08/31/2012 | | 51.49 | | Payment | 07/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 51.49 | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 295.44 |
| 09/01/2012 | 3,698.51 | | | Monthly payment | 07/01/2012 | 11,095.53 | | | | | | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 295.44 |
| 09/17/2012 | | | 184.93 | Late Charge | 07/01/2012 | 11,095.53 | | | | 184.93 | | 508,425.12 | 0.00 | 0.03 | 1,754.37 | 295.44 |
| 09/29/2012 | | 3,698.51 | | Payment | 07/01/2012 | 7,397.02 | 785.66 | 2,912.85 | 0.00 | | 0.00 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 295.44 |
| 09/29/2012 | | 201.49 | | Payment | 08/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 201.49 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 496.93 |
| 10/01/2012 | 3,698.51 | | | Monthly payment | 08/01/2012 | 11,095.53 | | | | | | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 496.93 |
| 10/31/2012 | | 2,200.00 | | Payment | 08/01/2012 | 11,095.53 | 0.00 | 0.00 | 0.00 | | 2,200.00 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 11/01/2012 | 3,698.51 | | | Monthly payment | 08/01/2012 | 14,794.04 | | | | | | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 11/15/2012 | | 3,698.51 | | Payment | 08/01/2012 | 11,095.53 | 790.16 | 2,908.35 | 0.00 | | 0.00 | 506,849.30 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 12/01/2012 | 3,698.51 | | | Monthly payment | 09/01/2012 | 14,794.04 | | | | | | 506,849.30 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 12/17/2012 | | | 184.93 | Late Charge | 09/01/2012 | 14,794.04 | | | | 184.93 | | 506,849.30 | 0.00 | 0.03 | 1,939.30 | 2,696.93 |
| 12/22/2012 | | 1,100.00 | | Payment | 09/01/2012 | 14,794.04 | 0.00 | 0.00 | 0.00 | | 1,100.00 | 506,849.30 | 0.00 | 0.03 | 1,939.30 | 3,796.93 |
| 12/22/2012 | | 0.00 | | Payment | 09/01/2012 | 11,095.53 | 794.69 | 2,903.82 | 0.00 | | -3,698.51 | 506,054.61 | 0.00 | 0.03 | 1,939.30 | 98.42 |
| 01/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 14,794.04 | | | | | | 506,054.61 | 0.00 | 0.03 | 1,939.30 | 98.42 |
| 01/16/2013 | | | 184.93 | Late Charge | 10/01/2012 | 14,794.04 | | | | 184.93 | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 02/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 18,492.55 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 03/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 22,191.06 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 04/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 25,889.57 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 29,588.08 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/31/2013 | | 3,698.51 | | Payment | 10/01/2012 | 25,889.57 | 799.24 | 2,899.27 | 0.00 | | 0.00 | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/31/2013 | | 184.93 | | Payment | 11/01/2012 | 25,889.57 | 0.00 | 0.00 | 0.00 | | 184.93 | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 283.35 |
| 06/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 29,588.08 | | | | | | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 283.35 |
| 06/03/2013 | | 0.00 | | Payment | 11/01/2012 | 29,588.08 | 0.00 | 0.00 | 0.00 | -184.93 | -184.93 | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.42 |

# Mortgage Proof of Claim Attachment: Additional Page (12/15)

Case number: 15-bk-23688-NB

Debtor 1: BOAZ TRIBELSKY

## Part 5 : Loan Payment History from First Date of Default

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 07/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 33,286.59 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 08/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 36,985.10 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 09/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 40,683.61 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 09/24/2013 | | | 0.00 | Reversal | 11/01/2012 | 40,683.61 | 0.00 | 0.00 | 0.00 | | -98.42 | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 0.0 |
| 09/25/2013 | | | 300.00 | Attorney's fees | 11/01/2012 | 40,683.61 | | | | 300.00 | | 505,255.37 | 0.00 | 0.03 | 2,239.30 | 0.0 |
| 10/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 44,382.12 | | | | | | 505,255.37 | 0.00 | 0.03 | 2,239.30 | 0.0 |
| 10/09/2013 | | | 300.00 | Attorney's fees | 11/01/2012 | 44,382.12 | | | | 300.00 | | 505,255.37 | 0.00 | 0.03 | 2,539.30 | 0.0 |
| 10/09/2013 | | | 805.00 | Undefined Fee Category | 11/01/2012 | 44,382.12 | | | | 805.00 | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 11/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 48,080.63 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 12/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 51,779.14 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 12/27/2013 | | | 958.00 | Hazard Insurance Disbursement | 11/01/2012 | 51,779.14 | 0.00 | 0.00 | -958.00 | | 0.00 | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 01/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 55,477.65 | | | | | | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 02/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 59,176.16 | | | | | | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 02/27/2014 | | 958.00 | | Hazard refund deposit | 11/01/2012 | 59,176.16 | 0.00 | 0.00 | 958.00 | | 0.00 | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 03/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 62,874.67 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 03/31/2014 | | 98.42 | | Payment | 11/01/2012 | 62,874.67 | 0.00 | 0.00 | 0.00 | | 98.42 | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 04/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 66,573.18 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 05/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 70,271.69 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 06/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 73,970.20 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 07/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 77,668.71 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 08/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 81,367.22 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 09/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 85,065.73 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 10/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 88,764.24 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |

EX 1 pg 7 of 32

14

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 15-bk-23688-NB

Debtor 1: BOAZ TRIBELSKY

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 92,462.75 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 12/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 96,161.26 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 01/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 99,859.77 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 01/06/2015 | | | 1,557.97 | County tax disbursement | 11/01/2012 | 99,859.77 | 0.00 | 0.00 | -1,557.97 | | 0.00 | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 02/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 103,558.28 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 03/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 107,256.79 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 04/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 110,955.30 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 05/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 114,653.81 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 06/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 118,352.32 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 06/25/2015 | | | 0.00 | Reversal | 11/01/2012 | 118,352.32 | 0.00 | 0.00 | 0.00 | | -98.42 | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.0 |
| 07/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 122,050.83 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.0 |
| 08/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 125,749.34 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.0 |
| 09/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 129,447.85 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.0 |
| 09/01/2015 | | | | Bankruptcy Filed | 11/01/2012 | 129,447.85 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.0 |
| 10/15/2015 | | | -30.00 | Property inspection fees | 11/01/2012 | 129,447.85 | | | | -30.00 | | 505,255.37 | 0.00 | -1,557.94 | 3,314.30 | 0.0 |

EX 1 pg 8 of 32

15

## Addendum Page

Basis for asserting that the applicable party has the right to foreclose: Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The Promissory note is either made payable to creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

### Additional Disclaimers (where applicable)

**410**

Part 2: Question 9-Describe contains the property address and may contain a description for "Other".

**410A**

Part 1:

Full creditor name cannot be displayed due to space limitation, see 410 part 1.1 for full name.

Part 2:

Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.

Interest Due is the interest due as of the Bankruptcy File Date.

Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow deficiency for funds advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Other includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable, due as of the Bankruptcy File Date. This line was added to ensure transparency.

Less Total Funds on hand is the total of Part 5, Column O (if positive balance) and Q as of the Bankruptcy File Date.

Total Debt not to be used for payoff purposes.

Part 3:

Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).

Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow Deficiency for Funds Advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Projected Escrow Shortage is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).

Other includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).

Less Funds on Hand is from Part 5, column Q as of the Bankruptcy File Date.

Part 4:

Optional Products includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

(*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.

Part 5:

If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.

Column G In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.

Column J includes taxes, insurance and MIP/PMI as applicable.

Column N will only be populated if the loan is Daily Simple Interest or if Deferred Interest exists on the account.

Column O includes taxes, insurance and MIP/PMI as applicable.

## CERTIFICATE OF SERVICE OF PROOF OF CLAIM

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on the 7 day of January 2016 via electronic notice unless otherwise stated:

**Debtor** ***Via U.S. Mail***
Boaz Tribelsky
724 North Genesee
Los Angeles, CA 90046-7312

**Debtors' Attorney**
Michael E. Clark
Borowitz & Clark LLP
100 N BARRANCA ST STE 250
WEST COVINA, CA 91791-1613

**Chapter 13 Trustee**
Kathy A. Dockery
700 S. Flower Street, Suite 1950
Los Angeles, California 90017

**US Trustee**
Office of the US Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

[signature]
Julian J. Cotton

# NOTE

| AUGUST 03, 2006 | BURBANK | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

724 NORTH GENESEE AVENUE, LOS ANGELES, CA 90046

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****563,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on OCTOBER 01, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 17339, BALTIMORE, MD 212971339 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **3,698.51 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

[redacted]



[redacted]

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[signature] (Seal)
BOAZ TRIBELSKY -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF U.S. Bank National Association, as Trustee
WELLS FARGO BANK, N.A.
BY [signature]
JOAN M. MILLS, VICE PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF

US BANK, NATIONAL ASSOCIATION, AS TRUSTEE,
BY WELLS FARGO BANK, N.A.
ATTORNEY-IN-FACT
[signature]
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0022

*[Sign Original Only]*

RECORDING REQUESTED BY

and when recorded mail this deed and unless otherwise shown below mail tax statements to:

Boaz Tribelsky

724 North Genesee Avenue
Los Angeles [redacted]

MAIL TAX STATEMENTS TO ABOVE ADDRESS

ESCROW # 1-56269

Space above this line for recorder's use

## GRANT DEED

[redacted]HE UNDERSIGNED GRANTOR(S) DECLARE(S) [redacted]
DOCUMENTARY TRANSFER TAX IScounty $93[redacted] 3832.50
Computed on full value of property conveyed.

[redacted]OR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Federal National Mortgage Association, A United States Corporation

hereby GRANT(S) to
Boaz Tribelsky, a single man

the following described real property in the city of LOS ANGELES, county of LOS ANGELES, State of CALIFORNIA:
Lot 156, of Tract No. 4849, as per map recorded in Book 51, Pages 64 & 65 of Maps, in the office of the County Recorder of said County.

DATED 09/05/96

Federal National Mortgage Association

By: ERLINDA C. WEAVER
ASSISTANT VICE PRESIDENT

CAPACITY CLAIMED BY SIGNER : Corporate Officer(s) A.V.P. (title)
Federal National Mortgage Association (company)

STATE OF CALIFORNIA, COUNTY OF Los Angeles
On 09/17/96, before me, the undersigned, a Notary Public in and for said State, personally appeared Erlinda C. Weaver
Assistant Vice President

____ personally known to me, OR ____ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

96 1588536

WITNESS my hand and official seal.

Signature Nancy Gray
Notary Public in and for said State

NANCY GRAY
COMM. # 1049986
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires JAN 19 1999

**This page is part of your document - DO NOT DISCARD**

**06 1778125**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**08/10/06 AT 08:00am**

**TITLE(S) :** ______________________________

LEAD SHEET

**FEE**

FEE $ 50 W 16
DAF $ 2
C-20

**D.T.T.**

NOTIFICATION SENT-$4

**CODE**
**20**

**CODE**
**19**

**CODE**
**9____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

EX 1 pg 15 of 32

Stewart Title

Recording Requested By:
WELLS FARGO BANK, N.A.

2

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

06 1778125

Prepared By:
WELLS FARGO BANK, N.A.

1595 SPRUCE ST., RIVERSIDE,
CA 925060000

[Space Above This Line For Recording Data]

[redacted]

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 03, 2006 , together with all Riders to this document.
(B) "Borrower" is BOAZ TRIBELSKY, A SINGLE PERSON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES

[redacted]

08/10/06

[redacted]

3

LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, DESCRIBED AS FOLLOWS:

LOT 156 OF TRACT NO. 4849, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51 PAGE(S) 64 AND 65 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

End of Legal Description

08/10/08

06 1778125

EX 1 pg 17 of 32

4

Lender's address is P.O. BOX 17339, BALTIMORE, MD 212971339

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA 92614
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 03, 2006
The Note states that Borrower owes Lender FIVE HUNDRED SIXTY THREE THOUSAND AND 00/100 Dollars
(U.S. $****563,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 01, 2036 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

08/10/06



[redacted]

EX 1 pg 18 of 32

5

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Parcel ID Number: [redacted] which currently has the address of
724 NORTH GENESEE AVENUE [Street]
LOS ANGELES [City], California 90046 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

08/10/06



[redacted]

EX 1 pg 19 of 32

6

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

08/10/06



[redacted]

7

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

08/10/06



[redacted]

EX 1 pg 21 of 32

6

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

08/10/06



[redacted]

4

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

08/10/06



[redacted]

EX 1 pg 23 of 32



30

10

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

08/10/06



[redacted]

EX 1 pg 24 of 32



31

11

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

08/10/06



[redacted]

17

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



08/10/06

[redacted]

13

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

08/10/06

14

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

08/10/06

15

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

08/01/06



[redacted]

EX 1 pg 29 of 32

16

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ 

_______________________ (Seal)
BOAZ TRIBELSKY -Borrower

_______________________ 

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

08/10/06



[redacted]

EX 1 pg 30 of 32



37

17

State of California
County of LOS ANGELES } ss.

On AUGUST 03, 06 before me, JOHN H. NIKOYAN, Notary public personally appeared

BOAZ TRIBELSKY

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person~~(s)~~ whose name~~(s) is/are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~ or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

WITNESS my hand and official seal.

_______________(Seal)
JOHN H NIKOYAN
NOTARY PUBLIC

JOHN H. NIKOYAN
Commission # 1460031
Notary Public - California
Los Angeles County
My Comm. Expires Jan 31, 2008

08/10/06

-6(CA) (0006) Page 16 of 16 Initials: BT Form 3005 1/01

[redacted]

EX 1 pg 31 of 32

2

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

04/27/2012
*20120626111*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

[redacted]

Los Angeles, California
"TRIBELSKY"

For Value Received, WELLS FARGO BANK, NATIONAL ASSOCIATION hereby grants, assigns and transfers to US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PRIME MORTGAGE TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-2 at 4801 FREDERICA STREET, OWENSBORO, KY 42301 all beneficial interest under that certain Deed of Trust dated 08/03/2006 , in the amount of $563,000.00, executed by BOAZ TRIBELSKY, A SINGLE PERSON to WELLS FARGO BANK, NATIONAL ASSOCIATION and Recorded: 08/10/2006 as Instrument No.: 06 1778125 in the County of Los Angeles, State of California.

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

WELLS FARGO BANK, NATIONAL ASSOCIATION
On 3/19/12

[illegible]
Vice President Loan Documentation

STATE OF Iowa
COUNTY OF Polk

On 3-19-12, before me, Dean McDanel, a Notary Public in and for Polk in the State of Iowa, personally appeared Scott Altringer, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Dean McDanel
Notary Expires: 1/24/15

DEAN McDANEL
Commission Number 771349
My Commission Expires
January 24, 2015

(This area for notarial seal)

[redacted]

EX 1 pg 32 of 32

# EXHIBIT "2"

**U.S. Bankruptcy Court**
**Central District of California (Los Angeles)**

---

**In re: Boaz Tribelsky**

**Debtor.** **Bankruptcy Petition #: 2:15-bk-23688-NB**

---

**AFFIDAVIT AND TESTIMONY OF MARIE MCDONNELL, CFE**

---

Being duly sworn, Marie McDonnell hereby deposes and says on oath as follows:

1. I am a natural born citizen and resident of the Commonwealth of Massachusetts, USA. I am over the age of majority and believe in the obligations of an oath. I am competent to give evidence in these proceedings, and if called upon I would do so knowledgably and responsibly. My credentials are set forth in a curriculum vitae attached hereto as Exhibit A. (See Exhibit A. – Curriculum Vitae of Marie McDonnell)

2. I am the President and Chief Executive Officer of McDonnell Analytics, Inc. also d/b/a McDonnell Property Analytics (the "Firm"), a litigation support and research firm having a principal place of business at 15 Cape Lane, Brewster, Massachusetts 02631. The Firm, among other services, provides mortgage-backed securities research and foreclosure forensics to attorneys nationwide. McDonnell Property Analytics also advises and performs services for county registers of deeds, attorneys general, courts and other governmental agencies.

3. I am the same Marie McDonnell who served as Plaintiffs' expert in the matter of *Mary Ellen Wolf v. Wells Fargo Bank, N.A. et al.*, Case Number 2011-36476, brought in the

151st Judicial District Court of Harris County, Texas ("*Wolf*").[1] On November 10, 2015, after a four-day trial, the jury returned a verdict in favor of Plaintiffs totaling $5.38 million consisting of: a) $190,000.00 in actual and emotional distress damages; b) $190,000.00 in attorneys' fees; c) $2,500,000.00 in exemplary damages against Wells Fargo Bank, N.A. as Trustee of the Carrington Mortgage Loan Trust, Series 2006-NC3; and d) $2,500,000.00 in exemplary damages against Carrington Mortgage Services, LLC, the mortgage loan Servicer.

---

[1] ***Wolf v. Wells Fargo Bank, N.A.*** **$5.4 Million Verdict: Securitization Flow Chart to Prove that Wells Fargo Bank, N.A. Committed Fraud When It Used Robo-Signed Document.** Published on 11/23/2015 by Barry Fagan.

A Texas state jury awarded nearly $5.4 million to a couple accusing Wells Fargo NA and others of "robosigning" documents that led to the wrongful foreclosure of their home, holding that the banking giant knew that documents supporting the foreclosure were fraudulent.

After four days of trial and just four hours of deliberation, the jury found that there was "clear and convincing evidence" that Wells Fargo and Carrington Mortgage Services LLC knew that the supporting documents were a fraudulent claim on the property owner.

The jury was shown the sequence of "true sales" that were necessary to properly securitize the Wolfs' mortgage loan using the attached "Securitization Flow Chart"

Once the jury understood the requirements of the Mortgage Loan Purchase Agreement and the Pooling and Servicing Agreement, they were able to see why the Transfer of Lien executed by Tom Croft was fraudulent on the face of the document.

The jury also found that even though Wells Fargo Bank was in physical possession of the original note, it did not own the mortgage loan because it was never securitized into the Carrington Mortgage Loan Trust, Series 2006-NC3 over which Wells Fargo serves as Trustee.

The $5.4 million dollar jury verdict, and especially their finding that the Transfer of Lien was fraudulent, supports findings in all of the registry of deeds audits that have been conducted for:

- John L. O'Brien, Register of Deeds, Essex Southern District, MA
- Nancy J. Becker, Recorder of Deeds, Montgomery County, PA
- Seattle City Council, Seattle, WA
- In re: Mortgage Electronic Registration Systems, Inc. Litigation, Maricopa, Pima, and Pinal Counties, AZ

This case provides a road map for cutting through the complexities of modern finance to arrive at a just result. (*See* http://www.jdsupra.com/legalnews/54-million-verdict-securitization-flo-79391/)

*See* also: Law360, Los Angeles (November 12, 2015, 8:47 PM ET) – (Found at: http://www.law360.com/articles/726312/wells-fargo-carrington-must-pay-5m-in-foreclosure-row)



EX 2 PG 2 of 227

42

4. My involvement in the *Wolf* case is relevant here because it closely parallels the experience of Boaz Tribelsky ("Tribelsky") in several material respects, for example:

a. Both the Wolfs' mortgage loan and Tribelsky's mortgage loan were allegedly securitized into a Real Estate Mortgage Investment Conduit ("REMIC") in which Wells Fargo Bank, N.A. ("Wells Fargo") plays a central role.

b. Both the Wolfs and Tribelsky were denied a loan modification for which they qualified.

c. Both the Wolfs and Tribelsky alleged that the party who instituted their foreclosure acted without legal authority from the "Note Holder" as that term is defined in paragraph 1 of their Note.

d. Both the Wolfs and Tribelsky complained that a fraudulent (and therefore void) assignment of deed of trust had been filed in the county land records purporting to grant the Trustee of the REMIC Trust the authority to foreclose upon their respective properties.

5. My pivotal role in the *Wolf* case was to explain to the judge and jury the precise steps that were necessary to securitize the Wolfs' Mortgage Loan into the Carrington Mortgage Loan Trust, Series 2006-NC3 over which Wells Fargo Bank, N.A. serves as Trustee. Once I had laid this foundation, I pointed out the fatal breaks in the securitization process and demonstrated why the recorded transfer of lien (assignment of deed of trust) contained false statements, misrepresentations, and omissions of material fact that rendered the assignment void.

6. Similarly, in this case, there is clear and convincing evidence that the assignment of deed of trust which purports to grant, assign and transfer Tribelsky's Deed of Trust to U.S. Bank, National Association, as Trustee for Prime Mortgage Trust 2006-2 ("U.S. Bank") is ineffective, null and void. Moreover, the documentary evidence strongly suggests that U.S. Bank does not "own" Tribelsky's "Whole Loan;" nor is U.S. Bank the "Note Holder" as that term is defined in paragraph 1 of his Note.

## I. EXPERT ENGAGEMENT

7. Boaz Tribelsky, through his bankruptcy attorney, M. Erik Clark, engaged me to examine the mortgage loan documents that memorialize a certain residential mortgage transaction consummated on August 3, 2006 by and between Boaz Tribelsky and Wells Fargo Bank, N.A., and to conduct the following investigation:

A. Research and explain the steps that were necessary to transfer, assign, and securitize Tribelsky's Note and Deed of Trust ("Mortgage Loan") into the Prime Mortgage Trust 2006-2 over which U.S. Bank National Association was appointed as Trustee.

B. Analyze the Corporate Assignment of Deed of Trust executed on March 19, 2012 by Joel Altringer in his alleged capacity as Vice President Loan Documentation for Wells Fargo Bank, N.A. ("Assignment") and determine —as a matter of fact— whether the Assignment is valid and in compliance with all "Applicable Laws" as required by the Note and Deed of Trust.

C. Examine the Substitution of Trustee, Notice of Default and Election to Sell Under Deed of Trust, and Notice of Trustee's Sale that depend upon the validity of the Assignment, and report on any misstatements of material fact contained therein.

D. Perform an Amortization Analysis and determine whether the Proof of Claim filed by U.S. Bank National Association, as Trustee for Prime Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-2 ("U.S. Bank") on January 7, 2016 is true and accurate.

E. Based on all available evidence, express an opinion as to whether U.S. Bank was, in fact, the lawful owner and holder of Tribelsky's Note when on September 27, 2013, it substituted NBS Default Services, LLC as the Trustee under the Deed of Trust for the purpose of instituting a nonjudicial foreclosure proceeding.

F. Based on all available evidence, express an opinion as to whether U.S. Bank was, in fact, the lawful Beneficiary of Tribelsky's Note when on January 7, 2016, U.S. Bank filed its Proof of Claim (Claim 4) with the United States Bankruptcy Court, Central District of California, Bankruptcy Petition #2:15-bk-23688-NB.

8. I acknowledge that this contested matter involves mixed questions of fact and law that are inextricably intertwined. The instruments that memorialize the mortgage transaction, i.e., the debt instrument that describes the terms of the alleged "loan" and the security instrument that binds the obligation to a plot of real property, are legal contracts that are heavily regulated by federal, state, and local laws, and governmental authorities.

9. My role here is to be of assistance to the Court by ferreting out material facts that require the specialized knowledge of a subject matter expert. I am fully aware that it is the exclusive jurisdiction of the Court to apply the law to those facts in rendering its decision. I ask the Court's indulgence if certain logical deductions and syllogistic conclusions I report herein sound like conclusions of law, which they are not intended to be.

## II. REQUEST FOR JUDICIAL NOTICE

10. Federal Rule of Evidence 201 states: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 goes on to state that upon the request of a party, a court may take judicial notice of a fact if the party provides the court with the necessary showing that the fact is not subject to reasonable dispute.

11. The origination, securitization, and enforcement of the consumer mortgage transaction at issue is governed by a variety of state and federal laws of which this Court may take judicial notice. In addition, the Court may take judicial notice of documents published on government websites, such as on the Securities and Exchange Commission's EDGAR website;

the Los Angeles County Clerk's Office; Public Access to Court Electronic Records ("PACER"); and to the California Court System.

12. To avoid burdening the Court with "lengthy documents," I will note my sources and excerpt only the most relevant sections as necessary to establish the factual foundation for my analysis and opinions.

## III. INTRODUCTION

13. This case presents several important public interest issues that California state and federal courts have been struggling with since the Mortgage Meltdown of 2007, the Financial Crisis of 2008, and the ensuing Foreclosure Crisis that continues to bottleneck the judiciary, especially in the State of California, the most populous state in the union, which has been hard-hit.

14. Consumers, and the attorneys who represent them, were ill prepared at the dawn of the millennium to handle the paradigm shift in the mortgage banking industry that exploded after the repeal of the Glass-Steagall Act in 1999. As a result of the systemic deregulation in the banking industry, which by then had been ongoing since 1980, traditional mortgage lending was supplanted by a process known as securitization,[2] a type of "financial engineering" designed to monetize debt instruments, lever them, and sell them as securities in the global capital markets.

---

[2] **Securitization** is the financial practice of pooling various types of contractual debt such as residential mortgages, commercial mortgages, auto loans or credit card debt obligations and selling said consolidated debt as bonds, pass-through securities, or collateralized mortgage obligation (CMOs), to various investors. The principal and interest on the debt, underlying the security, is paid back to the various investors regularly. Securities backed by mortgage receivables are called mortgage-backed securities (MBS), while those backed by other types of receivables are asset-backed securities (ABS).

Critics have suggested that the complexity inherent in securitization can limit investors' ability to monitor risk, and that competitive securitization markets with multiple securitizers may be particularly

15. It has taken years for consumers, attorneys, and judges to hack their way through the learning curve enough to acquire even a basic understanding of these "innovative financial products" that have put millions of families' homes at risk and cost the U.S. economy 28 trillion dollars or more. Finding the truth is made even more difficult when, as here, the alleged Creditor intentionally suppresses material facts necessary to a fair adjudication of the Debtor's claims.

16. To assist the Court, I will explain the anomalies in the alleged securitization of Tribelsky's Note and Deed of Trust that show by a standard of clear and convincing evidence, that Wells Fargo Bank, N.A. never sold the "Whole Loan" to EMC Mortgage Corporation, who sponsored the Prime Mortgage Trust 2006-2. Therefore, only a "derivative interest" in Tribelsky's Note was securitized. Consequently, U.S. Bank, National Association, as Trustee for the Prime Mortgage Trust 2006-2, has at best an unsecured claim (Claim 4) to the debt evidenced by Tribelsky's mortgage Note.

## IV. DOCUMENTARY EVIDENCE AND RELEVANT FACTS

### *The Transaction*

17. The subject of this analysis is a consumer mortgage transaction that took place on August 3, 2006 ("Consummation Date"), by and between Boaz Tribelsky ("Borrower" or "Tribelsky") and Wells Fargo Bank, N.A. ("Lender" or "Wells Fargo").

18. On the Consummation Date, Tribelsky executed a Fixed Rate Note ("Note") in favor of Wells Fargo to obtain funds in the amount of $563,000.00 ("Principal"). To ensure

---

prone to sharp declines in underwriting standards. Private, competitive mortgage securitization is believed to have played an important role in the U.S. subprime mortgage crisis.[1] (*See* http://en.wikipedia.org/wiki/Securitization)

repayment of the debt. Tribelsky granted a Deed of Trust on residential property located at 724 North Genesee Avenue, Los Angeles, County of Los Angeles, California 90046 ("Property"). This document was filed of record with the Recorder's Office of Los Angeles County ("Recorder's Office") on August 10, 2006 as Instrument #06 1778125. (*See* Exhibit B. – Deed of Trust, 08/03/2006)

19. The Deed of Trust begins with its own definition of terms lettered (A) through (Q). Definition (C) defines the Lender as follows:

> **"Lender"** is Wells Fargo Bank, N.A. Lender is a National Association organized and existing under the laws of The United States.

20. Definition (D) of the Deed of Trust identifies Fidelity National Title Insurance Company as Trustee under the Deed of Trust.

21. The Note[3] provides that interest will be charged on unpaid principal until the full amount of Principal ($563,000.00) has been paid at a yearly rate of 6.875%. Monthly payments of $3,698.51 were established in an amount sufficient to amortize the Principal to a zero balance over the thirty (30) year term to maturity by September 1, 2036. (*See* Exhibit C. – Note, 08/03/2006)

22. The copy of the Note I was provided contains two undated endorsements on page three. The first endorsement was executed by Joan M. Mills, acting in her alleged capacity as Vice President of Wells Fargo Bank, N.A., and purports to assign the Note to U.S. Bank National

---

[3] The only copy of the Note that I had access to was obtained from Tribelsky's Chapter 13 Bankruptcy filed in the U.S. Bankruptcy Court, Central District of California (Los Angeles), Bankruptcy Petition #2:15-bk-23688-NB. More specifically, the Note was submitted as an exhibit to U.S. Bank's Proof of Claim (Claim 4 Part 2) filed on 01/07/2016.

Association, as Trustee. The other endorsement was executed by Samuel C. Shelley, acting in his alleged capacity as Senior Vice President of Wells Fargo Bank, N.A. as Attorney-in-Fact for U.S. Bank National Association, as Trustee, and purports to convert the Note to bearer paper.[4]

### *Non-Judicial Foreclosure Proceedings*

23. On or about November 1, 2011, Tribelsky fell behind in making his monthly mortgage payments; by February 1, 2012, he was running three (3) months in arrears.[5]

24. On March 19, 2012, Joel Altringer, acting in his alleged capacity as Vice President Loan Documentation for Wells Fargo Bank, National Association[6] ("Assignor"), executed a Corporate Assignment of Deed of Trust ("Assignment") which allegedly transferred the Tribelsky Deed of Trust (***but not the Note***) from Wells Fargo Bank, National Association to US Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through

---

[4] If U.S. Bank is the current Beneficiary, it would not endorse the Note "in blank" unless it intended to convey Tribelsky's Mortgage Loan out of the Prime Mortgage Trust 2006-2. It is possible that Tribelsky's Mortgage Loan was subject to a repurchase demand and was re-acquired by either the *Seller/Sponsor* (EMC Mortgage Corporation) or the *Depositor* (Structured Asset Mortgage Investments II Inc.) both of whom are direct or indirect subsidiaries of JPMorgan Chase & Co.

As will be discussed later in this Affidavit, Prime Mortgage Trust 2006-2 was among 330 Residential Mortgage Backed Securities Trusts whose Trustees sent repurchase demands to JPMorgan Chase & Co. and subsequently sued for breaches of representations and warranties and servicing defaults contained in various Governing Agreements. On November 15, 2013, JPMorgan Chase & Co. agreed to settle the RMBS Litigation for $4.5 billion.

[5] I obtained this information from **Part 5: Loan Payment History from First Date of Default** contained in U.S. Bank's Proof of Claim (Claim 4) filed in the U.S. Bankruptcy Court Central District of California (Los Angeles), Bankruptcy Petition #: 2:15-bk-23688-NB: Boaz Tribelsky d/b/a In Your Place Furniture, Inc. and d/b/a Teva Furniture.

[6] Wells Fargo Bank, National Association had allegedly sold Mr. Tribelsky's Note and Deed of Trust to EMC Mortgage Corporation soon after originating the Mortgage Loan, but retained the right to service the account pursuant to a certain Master Seller's Warranties and Servicing Agreement, dated as of November 1, 2005, between EMC Mortgage Corporation and Wells Fargo ("Servicing Agreement"). The Servicing Agreement was allegedly attached to the Pooling and Servicing Agreement for the Prime Mortgage Trust 2006-2 as Exhibit I-3.

Certificates, Series 2006-2 ("Assignee"). This document was submitted for filing in the Recorder's Office on April 27, 2012, as Instrument #20120626111. (See Exhibit D. – Corporate Assignment of Deed of Trust, 03/19/2012)

25. On September 27, 2013, Jameka Young, acting in her alleged capacity as Vice President Loan Documentation of Wells Fargo Bank, N.A. as servicing agent for U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2, the alleged Beneficiary, executed a Substitution of Trustee which purports to substitute NBS Default Services, LLC as Trustee under the Deed of Trust. This document was filed with the Recorder's Office on October 9, 2013, as Instrument #20131454753. (See Exhibit E. – Substitution of Trustee, 09/27/2013)

26. On October 7, 2013, Aaron Shepherd, an employee of NBS Default Services, LLC, as Trustee for the Beneficiary executed a Trustee's Notice of Default and Election to Sell Under Deed of Trust ("NOD"). The NOD was submitted for filing in the Recorder's Office immediately after the Substitution of Trustee, on October 9, 2013, as Instrument #20131454754. (See Exhibit F. – Notice of Default, 10/07/2013)

27. On or about August 14, 2015, Vanessa Gomez, acting in her alleged capacity as a Foreclosure Associate NBS Default Services, LLC, executed a Notice of Trustee's Sale stating that on September 3, 2015, the subject property would be sold to the "highest bidder." This document was recorded on August 14, 2015, as Instrument #20150999384. (See Exhibit G. – Notice of Trustee's Sale, 08/14/2015)

28. On September 1, 2015, to prevent the sale of his Property, Tribelsky filed a Voluntary Petition pursuant to Chapter 13 of the United States Bankruptcy Code in the U.S. Bankruptcy Court, Central District of California, Bankruptcy Petition #: 2:15-bk-23688-NB.

### *The Documents Examined*

29. In forming my opinions, I researched and reviewed the following relevant documents and information:

(a) Documents provided by Debtor's Bankruptcy Counsel including the Note; Deed of Trust; Assignment of Deed of Trust; Substitution of Trustee; various related and unrelated documents filed of record with the Los Angeles County Recorder's Office, etc.

(b) Correspondence from Wells Fargo Home Mortgage to Tribelsky regarding his request for a loan modification.

(c) Documents submitted to the United States Bankruptcy Court, Central District of California, Bankruptcy Petition #2:15-bk-23688-NB relating to Claim #4.

(d) Documents recorded with the Los Angeles County Recorder's Office incident to the subject refinancing of Tribelsky's primary residence located at 724 North Genesee Avenue, Los Angeles, California 90046.

(e) Obtained research from Bloomberg Finance L.P. on March 23, 2016 and then again on July 25, 2016 which includes general information about the Prime Mortgage Trust 2006-2, as well as specific information on Tribelsky's Mortgage Loan including: documents, data, screen shots, loan level details contained in monthly servicer tapes, and a pay history for Tribelsky's mortgage account provided by the servicer to U.S. Bank, National Association, as Trustee.

(f) Researched U.S. Bank's Trust Gateway Portal at: https://usbtrustgateway.usbank.com/portal/login.do.

(g) Researched the Securities and Exchange Commission's public access website at: http://www.sec.gov/edgar and http://www.secinfo.com/.

(h) Examined Structured Asset Mortgage Investments II Inc. – Form ABS-15G reports with the SEC which may be found at: http://www.secinfo.com/$/SEC/Documents.asp?CIK=1243106&Party=BFO&Type=ABS-15G&Label=Asset%2DBacked+Securities+Reports.

(i) Consulted the following white papers, articles, and primary source materials:

- *Asset-Backed Securitization, Special Purpose Vehicles and Other Securitization Issues*, by Kenneth N. Klee and Brendt C. Butler.[7]
- *The Elusive True Sale in Securitization*, by Artem Shtatnov.[8]
- *Update On The Amendments To FAS 140—Accounting For Transfers Of Financial Assets And Repurchase Financing Transactions*, by G. Wogan Bernard.[9]
- *Summary Of Statement No. 140 – Accounting For Transfers And Servicing Of Financial Assets And Extinguishments Of Liabilities-A Replacement Of FASB Statement No. 125* (Issued 9/00).[10]
- 17 CFR 240.3a12-4 Exemptions from sections 15(a) and 15(c)(3) for certain mortgage securities. (Code of Federal Regulations (2016 Edition))

(j) Researched the following California Statutes:

- California Commercial Code § 3602 — Discharge and Payment.
- California Civil Code § 2923.5 to 29241 — Nonjudicial Foreclosure.
- California Penal Code § 532f — Mortgage Fraud.
- California Penal Code § 115 — False or Forged Instruments.
- California Penal Code § 115.5 — Filing False or Forged Instruments.

(k) Researched the following New York Statutes:

- New York UCC § 3-201 — Transfer: Right to Indorsement.
- New York UCC § 3-202 — Negotiation.

(l) Researched the following California Opinions:

- *Yvanova v. New Century Mortg. Corp.* (Cal., 2016)
- *Glaski v. Bank of America, Cal: Court of Appeal, 5th Appellate Dist. 2013 [July 31, 2013]*

---

[7] See Kenneth N. Klee and Brendt C. Butler, *Asset-Backed Securitization, Special Purpose Vehicles and Other Securitization Issues*, 35 U.C.C. Law Journal 23 (2002) at: http://www.ktbslaw.com/news-publications-17.html.

[8] See Shtatnov, Artem, *The Elusive True Sale in Securitization* (January 4, 2012). Available at SSRN:http://ssrn.com/abstract=2115054 or http://dx.doi.org/10.2139/ssrn.2115054.

[9] See G. Wogan Bernard, *Update On The Amendments To FAS 140—Accounting For Transfers Of Financial Assets And Repurchase Financing Transactions* at: http://www.americanbar.org/content/dam/aba/publications/rpte_ereport/2009/june/rp_g_wogan_bernard.authcheckdam.pdf (Published 6/16/2009)

[10] See Financial Accounting Standards Board, *Summary of Statement No. 140*, (Issued 9/00) at: http://www.fasb.org/summary/stsum140.shtml.

- *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*: United States District Court, Central District of California; Case No. CV 15-7522-JFW (RAOx); August 31, 2016.

(m) Reviewed Yvanova's second Petition for Review filed with the California Supreme Court on September 7, 2016 in the matter of *Yvanova v. New Century Mortg. Corp.* After an Opinion by the Court of Appeal following remand from the Supreme Court Second Appellate District, Division One Case no. B247188 ("Yvanova II").

(n) Researched the following Civil Actions involving repurchase demands:

- *United States of America, et al. v. JPMorgan Chase & Co.* / Justice Department, Federal and State Partners Secure Record $13 Billion Global Settlement with JPMorgan for Misleading Investors About Securities Containing Toxic Mortgages; Settled November 19, 2013.
- *In re: RMBS Litigation* / JPMorgan Chase & Co. RMBS Settlement Offer; Settled November 15, 2013.

(o) Researched the following opinions involving monthly advances required by Pooling and Servicing Agreements:

- *Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113 (C.D. Cal., 2012).
- *Casault v. One W. Bank FSB* (9th Cir., 2016).
- *Rivera v. Deutsche Bank Nat'l Tr. Co.* (In re Rivera) (B.A.P. 9th Cir., 2016)
- *Schmeglar v. PHM Fin., Inc.* (In re Schmeglar), 531 B.R. 735 (Bankr. N.D. Ill., 2015)

~ *Continued Below* ~

## V. ANALYSIS

### *Bloomberg Research Results*

30. Using my access to Bloomberg Professional's database of Residential Mortgage Backed Securities ("Bloomberg"),[11] I found that Tribelsky's Mortgage Loan[12] – ***or an economic interest therein*** – is presently being tracked as an asset of the Prime Mortgage Trust 2006-2 ("*Issuing Entity*" or "REMIC" or "Trust" or "Deal").[13]

31. I verified this finding by examining the collateral loan performance tape provided by the Servicer to Bloomberg each month and comparing that information to the loan level details contained in Tribelsky's Loan Documents. A side-by-side comparison revealed that nine (9) out of ten (10) Data Points were a perfect match. The only Data Point that did not correspond is the Loan Number. This is not unusual; loan numbers are often reserialized for securitization purposes, especially when the pooled mortgage loans were originated by different lenders as in this case. (*See* Exhibit H. – Bloomberg Research Results, 07/25/2016)

---

[11] The Bloomberg Professional® service (the Terminal) is the most powerful and flexible platform for financial professionals who need real-time data, news and analytics to make smarter, faster, more informed business decisions. (*See* https://www.bloomberg.com/professional/products-solutions/)

[12] "Mortgage Loan" or "Mortgage File" is a defined term in Article I: Definitions section of the Pooling and Servicing Agreement.

[13] CAVEAT: The phrase "*I found that the Borrower's Mortgage Loan is presently being tracked as an asset...*" is a term of art that I purposely use to describe what we are seeing when viewing the information available through Bloomberg. Essentially, Bloomberg provides current and historical data to investors regarding the collateral loan performance, delinquency rates, trigger events, etc. that enable investors to monitor their holdings. This data derives from the accounting supplied by the *Servicer, Master Servicer*, and *Securities Administrator* each month as required by the Pooling and Servicing Agreement that governs the Trust. Whether or not a particular Note and Mortgage were legally conveyed into a securitized Trust in accordance with "Applicable Laws" is a separate and distinct factual analysis which ultimately requires a legal opinion we do not, and cannot render here.

32. Once I had established through my Bloomberg research that the subject Mortgage Loan is being tracked as an alleged asset of the Trust, I investigated whether it was also included in the original Mortgage Loan Schedule[14] that identified the mortgage loans slated for inclusion in this particular Deal. EMC Mortgage Corporation, the Sponsor, filed a Free Writing Prospectus with the Securities and Exchange Commission on December 4, 2006 that specifically correlates Tribelsky's original Loan Number (#67222885) with EMC Mortgage Corporation's Loan Number (#17407479), and with the Trust's Loan ID (#16657250).[15]

33. Accordingly, I found that the unique characteristics described in the Tribelsky Mortgage Loan documents were also present in the Bloomberg data, which enabled me to conclude that the subject Mortgage Loan – ***or an economic interest therein*** – was allegedly securitized into the Prime Mortgage Trust 2006-2.

### *Residential Mortgage Backed Securities Research*

34. The securitization paradigm involves one or more "true sales" that are designed to move individual mortgage loans slated for securitization away from the originating *Lender* to a *Seller/Sponsor* who aggregates them into a pool. The *Seller/Sponsor*[16] then transfers the pool of

[14] **MORTGAGE LOAN SCHEDULE**: The MLS contains the names and addresses of borrowers; property addresses securing the loans; and loan level details regarding the terms of the loans being transferred. In most cases the MLS will be attached to the Pooling and Servicing Agreement, Trust Agreement or the Free Writing Prospectus.

[15] *See* Free Writing Prospectus filed with the SEC on December 4, 2006: *SEC Info*SM at: http://www.secinfo.com/dqTm6.v3vn.htm#1stPage; or EDGAR at: https://www.sec.gov/Archives/edgar/data/1378295/000088237706004088/0000882377-06-004088-index.htm.

[16] The term "sponsor" is defined in Regulation AB to mean "the person who organizes and initiates an asset-backed securities transaction by selling or transferring assets, either directly or indirectly, including through an affiliate, to the issuing entity." 17 C.F.R. § 229.1101(l). 17 C.F.R. § 229.1104(e)(1).

mortgage loans to a Special Purpose Entity ("SPE") that has no other assets or liabilities designated as the *Depositor*. The purpose of this second transfer is to segregate the mortgage loans from the *Seller/Sponsor's* assets and liabilities thus creating a bankruptcy remote structure.[17]

35. The *Depositor* in turn conveys the pooled mortgage loans, cash flows and other credit enhancements to a Qualified Special Purpose Entity ("QSPE") commonly referred to as the *Issuing Entity*. The purpose of the *Issuing Entity*[18] is to hold the assets in trust for the benefit of investors ("Certificateholders") who purchase securities backed by the mortgage loans, i.e., Residential Mortgage Backed Securities ("RMBS").[19]

### *The Prime Mortgage Trust 2006-2*

36. The Prime Mortgage Trust 2006-2 is a public offering, and the Prospectus, Prospectus Supplement, Pooling and Servicing Agreement, and Underwriting Agreement (referred to in the industry as the "Deal Documents") are available on the Securities and Exchange Commission's public access website. To perform a search, simply go to EDGAR's

---

[17] This intermediate entity is not essential to securitization, but since 2002, Statement of Financial Accountings Standards 140 has required this additional step for off-balance-sheet treatment because of the remote possibility that if the originator went bankrupt or into receivership, the securitization would be treated as a secured loan, rather than a sale, and the originator would exercise its equitable right of redemption and reclaim the securitized assets. Deloitte & Touche, *Learning the Norwalk Two-Step*, HEADS UP, Apr. 25, 2001, at 1. (http://www.securitization.net/pdf/dt_headsup.pdf)

[18] The term "asset-backed issuer" is defined in Regulation AB to mean "an issuer whose reporting obligation results from either the registration of an offering of asset-backed securities under the Securities Act, or the registration of a class of asset-backed securities under Section 12 of the Exchange Act." 17 C.F.R.

[19] Most of the securities are issued as debt securities – bonds – but there will also be a security representing the rights to the residual value of the trust or the equity which may be retained by the *Depositor*.

Company Search page and type in the Central Index Key ("CIK") 1378295, which you can do here at: http://www.sec.gov/edgar/searchedgar/companysearch.html.[20]

37. The Prospectus Supplement filed with the SEC on December 4, 2006[21] is the securities offering circular, and it contains a concise Summary that lists the entities who participated in the securitization. Wells Fargo Bank, N.A. (Tribelsky's *Lender*) is identified therein as an *Originator*, as a *Servicer*, and as the *Custodian* of the Mortgage Files pursuant to a custodial agreement. For convenience, I have attached an excerpt that contains this Summary as well as a Transaction Structure flow chart. (*See* Exhibit I. – Prospectus Supplement Excerpt)

38. To further assist the Court in visualizing the transaction as it relates to Tribelsky's Mortgage Loan, I prepared a Securitization Flow Chart based on information derived from the Borrower's loan documents and the 424B5 Prospectus, which maps out the "deal flow" and identifies the participants who were involved, as well as the roles they played. (*See* Exhibit J. – Securitization Flow Chart)

39. The Prospectus Supplement provides the following details on the entities who participated in the securitization, which is dominated by Bear Stearns entities: (*See* Exhibit I. – Prospectus Supplement Excerpt)

(1) Bear, Stearns & Co. Inc. served as the Underwriter;

---

[20] My preferred method of researching these same filings is to use *SEC Info*[SM] which provides hyperlinks and enhanced viewing options. This particular Deal is found on the *SEC Info*[SM] website at: http://www.secinfo.com/S/SEC/Registrant.asp?CIK=1378295.

[21] The Prospectus Supplement may be viewed in its entirety at: EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237706004089/0000882377-06-004089-index.htm or *SEC Info*[SM]: http://www.secinfo.com/dqTm6.v3Vm.htm#1stPage.

(2) EMC Mortgage Corporation, the Seller/Sponsor, is an affiliate of the Depositor and Bear, Stearns & Co. Inc.;

(3) The Depositor, Structured Asset Mortgage Investments II Inc., was formed in the State of Delaware in January 2004, and is a wholly-owned subsidiary of The Bear Stearns Companies Inc.

a. The Depositor was organized for the sole purpose of serving as a private secondary mortgage market conduit.

b. The Depositor does not have, nor is it expected in the future to have, any significant assets.

40. Table 1 below summarizes the two (2) "true sales" and the final transfer that were necessary to convey the Tribelsky Mortgage Loan to U.S. Bank, National Association, as Trustee for the Prime Mortgage Trust 2006-2. Importantly, the transfer and assignment of Tribelsky's Mortgage Loan had to be completed on the Closing Date of November 30, 2006, or within 90 days thereof so that the Trust qualified for favored tax status as a REMIC (I.R.C. §§ 860D(a)(4)).[22]

**Table 1 – True Sale Transfers and Assignments Involved in Securitization**

| FROM | True Sales | TO |
|---|---|---|
| Wells Fargo Bank, N.A.<br>(*Lender*) 08/03/2006 | ➔#1 | EMC Mortgage Corporation<br>(*Seller/Sponsor*) |
| EMC Mortgage Corporation<br>(*Seller/Sponsor*) | ➔#2 | Structured Asset Mortgage Investments II Inc.<br>(*Depositor*) |
| Structured Asset Mortgage Investments II Inc.<br>(*Depositor*) | ➔#3 | U.S. Bank, National Association, as Trustee for Prime Mortgage Trust 2006-2<br>(*Issuing Entity*) 11/30/2006 |

41. On paper, the transfers described in Table 1 above appear to be straightforward "true sale" type conveyances; however, this "Bear Stearns" securitization is anything but straightforward.

---

[22] **Internal Revenue Code §860G**. The 90 day requirement is imposed by the I.R.C. to ensure that the trust remains a static entity. However, since the trust agreement requires that the trustee and servicer not do anything to jeopardize the tax-exempt status, trust agreements generally state that any transfer after the closing date of the trust is invalid.

On February 22, 2007, Structured Asset Mortgage Investments II Inc., the *Depositor*, filed a registration statement in the form of an 8-K report attached to which were two (2) separate agreements including: Exhibit 1.1, Terms Agreement;[23] and Exhibit 4.1, Pooling and Servicing Agreement. [24]

42. The Pooling and Servicing Agreement had twenty-nine (29) exhibits attached to it, eight (8) of which relate to Tribelsky's Mortgage Loan. I have listed these exhibits in Table 2 below for the Court's reference.

**Table 2 – Agreements Publicly Available**

| Exhibit ID | Document | Available |
|---|---|---|
| Exhibit B | Mortgage Loan Schedule | Yes |
| Exhibit D | Request for Release of Documents | Yes |
| Exhibit G | Form of Custodial Agreement | Yes |
| Exhibit H | Form of Mortgage Loan Purchase Agreement | Yes |
| Exhibit I-2 | EMC Servicing Agreement | Yes |
| Exhibit I-3 | Wells Fargo Servicing Agreement | Yes |
| Exhibit J-2 | EMC Assignment Agreement | Yes |
| Exhibit J-3 | Wells Fargo Assignment Agreement | Yes |

~ *Continued Below* ~

[23] The Terms Agreement is available at EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587741ex1_1.htm; and at *SEC Info*[SM]: http://www.secinfo.com/dqTm6.ue2.d.htm.

[24] The Pooling and Servicing Agreement and several of the 29 exhibits are available at EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587324ex4_1.htm; and at *SEC Info*[SM]: http://www.secinfo.com/dqTm6.ue2.c.htm.

*Wells Fargo Servicing Agreement*

43. As the Securitization Flow Chart illustrates, before Tribelsky's Mortgage Loan could be securitized, the *Lender*, Wells Fargo Bank, N.A. ("Wells Fargo"), had to sell Tribelsky's Mortgage Loan to EMC Mortgage Corporation ("EMC"). (See Exhibit J. – Securitization Flow Chart)

44. Exhibit I-3 to the Pooling and Servicing Agreement is an undated, unsigned form of a WELLS FARGO SERVICING AGREEMENT, Amended and Restated Master Seller's Warranties and Servicing Agreement, Dated as of November 1, 2005 (hereinafter the "Servicing Agreement" or "SSA") by and between EMC Mortgage Corporation, as *Purchaser*, and Wells Fargo Bank, N.A., as *the Company*.[25]

45. Section 2.01 of the SSA refers to an Assignment and Conveyance Agreement pursuant to which certain Mortgage Loans identified in a Mortgage Loan Schedule were to be acquired by EMC from Wells Fargo. A short form of this Assignment and Conveyance Agreement was attached to the SSA as Exhibit A. Section 2.01 of the Servicing Agreement states as follows:

> **Section 2.01 Conveyance of Mortgage Loans; Possession of Custodial Mortgage Files; Maintenance of Retained Mortgage Files and Servicing Files.**
>
> Pursuant to an Assignment and Conveyance Agreement, on the related Closing Date, the Company, simultaneously with the payment of the Purchase Price by the Purchaser, shall thereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement and the related Assignment and Conveyance Agreement, all the right, title and interest of

[25] WELLS FARGO SERVICING AGREEMENT by and between EMC Mortgage Corporation, Purchaser and Wells Fargo Bank, N.A., Company; Amended and Restated Master Seller's Warranties and Servicing Agreement, Dated as of November 1, 2005. *See* EDGAR at: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587324ex4_1.htm; or *SEC Info*SM at: http://www.secinfo.com/dqTm6.ue2.c.htm#1stPage.

the Company in and to the Mortgage Loans listed on the respective Mortgage Loan Schedule annexed to such Assignment and Conveyance Agreement, together with the Retained Mortgage Files[26] and Custodial Mortgage Files[27] and all rights and obligations arising under the documents contained therein. Pursuant to Section 2.03, the Company shall deliver the Custodial Mortgage File for each Mortgage Loan comprising the related Loan Package to the Custodian.

The contents of each Retained Mortgage File not delivered to the Custodian are and shall be held in trust by the Company for the benefit of the Purchaser as the owner thereof. The Company shall maintain a Servicing File[28] consisting of a copy of the contents of each Custodial Mortgage File and the originals of the documents in each Retained Mortgage File not delivered to the Custodian. The possession of each Retained Mortgage File and Servicing File by the Company is at the will of the Purchaser for the sole purpose of servicing the related Mortgage Loan, and such retention and possession by the Company is in a custodial capacity only. Upon the sale of the Mortgage Loans the ownership of each Mortgage Note, the related Mortgage and the related Custodial Mortgage File and Servicing File shall vest immediately in the Purchaser, and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Company shall vest immediately in the Purchaser and shall be retained and maintained by the Company, in trust, at the will of the Purchaser and only in such custodial capacity.

46. In a nutshell, the deal between Wells Fargo and EMC involved a financial transaction whereby on the Closing Date, EMC would tender the Purchase Price to Wells Fargo and Wells Fargo would "sell, transfer, assign, set over and convey" the Mortgage Loans to EMC ***but not deliver the Retained Mortgage Files.***

---

[26] Retained Mortgage File: The items referred to as items (3), (6), (7), (8) and (9) in Exhibit C annexed hereto with respect to a particular Mortgage Loan that are not required to be delivered to the Custodian pursuant to this Agreement, and any additional documents required to be added to the Retained Mortgage File pursuant to this Agreement.

[27] Custodial Mortgage File: The items referred to as items (1), (2), (4), (5) and (10) in Exhibit C annexed hereto to be delivered by the Company to the Custodian on the related Closing Date with respect to a particular Mortgage Loan, and any additional documents required to be added to the Custodial Mortgage File and delivered to the custodian pursuant to this Agreement.

[28] Servicing File: With respect to each Mortgage Loan, the file retained by the Company consisting of originals of all documents in the Retained Mortgage File which are not delivered to the Custodian and copies of the Mortgage Loan Documents listed in the Custodial Agreement the originals of which are delivered to the Custodian pursuant to Section 2.03.

47. The Retained Mortgage File and the Custodial Mortgage File collectively must contain 10 items for each Mortgage Loan conveyed as follows: (*See* Exhibit K. – Contents of Retained Mortgage File)

**EXHIBIT C**

CONTENTS OF EACH RETAINED MORTGAGE FILE, SERVICING FILE AND CUSTODIAL MORTGAGE FILE

[1] The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of ___without recourse" and signed in the name of the Company by an authorized officer...

[2] The original of any guarantee executed in connection with the Mortgage Note (if any).

[3] The original Mortgage, with evidence of recording thereon or a certified true and correct copy of the Mortgage sent for recordation...

[4] The originals or certified true copies of any document sent for recordation of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon.

[5] The original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording (except for the insertion of the name of the assignee and recording information). The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in the Custodial Agreement. If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser. If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank...

[6] Originals or certified true copies of documents sent for recordation of all intervening assignments of the Mortgage with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Company shall deliver or cause to be delivered to the Custodian, a photocopy of such intervening assignment...

[7] The electronic form of PMI Policy as identified by certificate number.

[8] The original mortgagee policy of title insurance or other evidence of title such as a copy of the title commitment or copy of the preliminary title commitment.

[9] Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

[10] Original power of attorney, if applicable.

48. Thus, according to the Servicing Agreement, Wells Fargo Bank, N.A. was required to endorse Tribelsky's Note "in blank" and prepare an Assignment of Deed of Trust in recordable form omitting the name of the Assignee and place it in the Custodial Mortgage File.

49. Assuming for argument's sake there is admissible evidence that proves Wells Fargo Bank, N.A. sold, assigned, and transferred Tribelsky's Mortgage Loan to EMC Mortgage Corporation, the next step in the securitization process required EMC to convey the Mortgage Loan to an affiliate, Structured Asset Mortgage Investments II Inc. ("SAMI") who served as the *Depositor*.

### *Mortgage Loan Purchase Agreement*

50. A Form of Mortgage Loan Purchase Agreement ("MLPA") dated November 30, 2006,[29] by and between EMC Mortgage Corporation (the "*Seller*") and Structured Asset Mortgage Investments II Inc. (the "*Purchaser*") memorializes the purchase, sale, transfer and conveyance of the Mortgage Loans identified in the Mortgage Loan Schedule, and indicates that once fully executed, the MLPA would effectuate the second step in the securitization process.[30]

[29] A Form of Mortgage Loan Purchase Agreement was attached as Exhibit "H" to the Pooling and Servicing Agreement and may be viewed here at: EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587324ex4_1.htm; or *SEC Info*SM: http://www.secinfo.com/dqTm6.ue2.c.htm#1stPage.

[30] I note here for the record that the Form of Mortgage Loan Purchase Agreement filed with the SEC was not executed by the parties thereto.

51. This particular MLPA contains a condition precedent to the transaction that is critically important to gaining an understanding of the nature and character of the securitization at issue. Section 2 of the MLPA states as follows:

**SECTION 2. Purchase and Sale of the Mortgage Loans and Related Rights.**

(a) Upon satisfaction of the conditions set forth in Section 10 hereof, the Seller agrees to sell, and the Purchaser agrees to purchase Mortgage Loans having an aggregate outstanding principal balance as of the Cut-off Date equal to the Cut-off Date Balance.

(b) The closing for the purchase and sale of the Mortgage Loans and the closing for the issuance of the Certificates will take place on the Closing Date at the office of the Purchaser's counsel in New York, New York or such other place as the parties shall agree.

(c) Upon the satisfaction of the conditions set forth in Section 10 hereof, on the Closing Date, the Purchaser shall pay to the Seller the Acquisition Price for the Mortgage Loans in immediately available funds by wire transfer to such account or accounts as shall be designated by the Seller.

(d) In addition to the foregoing, on the Closing Date the Seller assigns to the Purchaser all of its right, title and interest in the Servicing Agreements (other than its right to enforce the representations and warranties set forth therein).

52. Section 10(a)(iii) of the MLPA states in relevant part:

a. The obligations of the Purchaser [SAMI] under this Agreement will be subject to the satisfaction, on or prior to the Closing Date, of the following conditions:

iii. ***The Certificates to be sold to Bear Stearns pursuant to the Underwriting Agreement and the Purchase Agreement shall have been issued and sold to Bear Stearns.*** (emphasis supplied)



2024227

53. What this means is that before SAMI purchased the Mortgage Loans from EMC, Bear Stearns —the *Underwriter*— had to purchase the Certificates (securities) from SAMI as required by the Underwriting Agreement and the Terms Agreement contained therein.[31]

54. This essential fact is described in the Prospectus Supplement dated November 30, 2006, which states in relevant part:[32] (See Exhibit I. – Prospectus Supplement Excerpt)

> ***All of the mortgage loans will be acquired by the Depositor on the date of issuance of the Offered Certificates from the Sponsor***, an affiliate of the Depositor and the Underwriter, pursuant to the Mortgage Loan Purchase Agreement. The Sponsor acquired the mortgage loans directly in privately negotiated transactions. See "Mortgage Loan Origination—General" in this prospectus supplement. (emphasis supplied)
>
> The mortgage pool will consist of approximately 575 first lien fixed-rate mortgages secured by one- to four-family residences and individual condominium units, having an aggregate unpaid principal balance as of the Cut-off Date of approximately $281,849,596 after application of scheduled payments due on or before the Cut-off Date whether or not received and, subject to a permitted variance of plus or minus 10%. The mortgage loans have original terms to maturity of not greater than 30 years.

55. Thus, on the Closing Date of November 30, 2006, Bear Stearns funded the downstream acquisition of the Mortgage Loans by purchasing all the Pass-Through Certificates from Structured Asset Mortgage Investments II Inc. for a total of $281,849,596. Put more

---

[31] See Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Underwriting Agreement at EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587741ex1_1.htm; or *SEC Info*SM at: http://www.secinfo.com/dqTm6.ue2.d.htm.

[32] See "The Mortgage Pool—General" at: http://www.secinfo.com/dqTm6.v3Vm.htm#1stPage.

succinctly, Bear Stearns was the "true lender" [33] behind the scenes who ultimately funded Tribelsky's Mortgage Loan.

### *Pooling and Servicing Agreement*

56. A Pooling and Servicing Agreement ("PSA") dated as of November 1, 2006,[34] between Structured Asset Mortgage Investments II Inc., *Depositor*, U.S. Bank, National Association, as *Trustee*, and EMC Mortgage Corporation as *Seller* and *Master Servicer* purports to effectuate the purchase, sale, transfer and conveyance of the Mortgage Loans identified in the Mortgage Loan Schedule from the *Depositor* to the *Trustee* thereby completing the third and final step in the securitization process.

57. The Deal Documents that were certified by Structured Asset Mortgage Investments II Inc.'s management and filed by law with the Securities and Exchange Commission ("SEC") establish the purchase and sale agreements between the transacting parties; the creation of the Trust; as well as how and when the Trust acquired its assets. These documents must be truthful, may not contain false statements, and may not omit to state a material fact required to make the statements not misleading. To do otherwise would be to commit securities fraud.[35]

---

[33] See *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*; United States District Court, Central District of California; Case No. CV 15-7522-JFW (RAOx); August 31, 2016.

[34] The Pooling and Servicing Agreement is found at: EDGAR: https://www.sec.gov/Archives/edgar/data/1378295/000088237707000461/d587324ex4_1.htm or *SEC Info*[SM]: http://www.secinfo.com/dqTm6.ue2.c.htm#1stPage.

[35] See Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

See also *Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*, 135 S. Ct. 1318 (2015), and *Freidus v. ING GROEP*, Supreme Court 2015.

58. Importantly, the transfers and assignments necessary to legally convey Tribelsky's Mortgage Loan into the Prime Mortgage Trust 2006-2 as illustrated in Table 1 above had to be completed on November 30, 2006, or within a restricted time frame —in this case, within 90 days from the Closing Date— to qualify the Trust for favored tax treatment as a REMIC (See I.R.C. §§860A-860G; I.R.C. §§ 860D(a)(4)).[36]

### *PSA Section 2.01 - Conveyance of Mortgage Loans*

59. The Pooling and Servicing Agreement ("PSA") dated November 1, 2006, between Structured Asset Mortgage Investments II Inc., as *Depositor*, U.S. Bank, National Association, as *Trustee*, and EMC Mortgage Corporation, as *Seller* and *Master Servicer*, governs the Prime Mortgage Trust 2006-2 and describes how the mortgage loans are to be conveyed into the Trust in Section 2.01 which states in relevant part as follows:

**ARTICLE II**

**Conveyance of Mortgage Loans;**
**Original Issuance of Certificates**

**Section 2.01 Conveyance of Mortgage Loans to Trustee.**

(a) The Depositor, concurrently with the execution and delivery of this Agreement, sells, transfers and assigns to the Trust without recourse all its right, title and interest in and to (i) the Mortgage Loans identified in the Mortgage Loan Schedule, including all interest and principal due with respect to the Mortgage Loans after the Cut-off Date, but excluding any payments of principal and interest due on or prior to the Cut-off Date; (ii) such assets as shall from time to time be credited or are required by the terms of this

---

[36] **Internal Revenue Code §860G**. The 90 day requirement is imposed by the I.R.C. to ensure that the trust remains a static entity. However, since the trust agreement requires that the trustee and servicer not do anything to jeopardize the tax-exempt status, trust agreements generally state that any transfer after the closing date of the trust is invalid. (*See Deconstructing the Black Magic of Securitized Trusts: How the Mortgage-Backed Securitization Process is Hurting the Banking Industry's Ability to Foreclose and Proving the Best Offense for a Foreclosure Defense*, by Roy D. Oppenheim, Oppenheim Law and Jacquelyn K. Trask, Oppenheim Law, published in the Stetson Law Journal. 08/06/2012 at: http://www.stetson.edu/law/lawreview/media/1-Oppenheim-Trask.Final.pdf)

Agreement to be credited to the Master Servicer Collection Account and the Distribution Account, (iii) such assets relating to the Mortgage Loans as from time to time may be held by the Servicers in the Protected Accounts, the Master Servicer in the Master Servicer Collection Account and the Trustee in the Distribution Account, (iv) any REO Property, (v) the Required Insurance Policies and any amounts paid or payable by the insurer under any Insurance Policy (to the extent the mortgagee has a claim thereto), (vi) the Mortgage Loan Purchase Agreement to the extent provided in Subsection 2.03(a), (vii) the rights with respect to the Servicing Agreements as assigned to the Trustee on behalf of the Certificateholders by the Assignment Agreement and (viii) all proceeds of the foregoing.

***Although it is the intent of the parties to this Agreement that the conveyance of the Depositor's right, title and interest in and to the Mortgage Loans and other assets in the Trust Fund pursuant to this Agreement shall constitute a purchase and sale and not a loan, in the event that such conveyance is deemed to be a loan, it is the intent of the parties to this Agreement that the Depositor shall be deemed to have granted to the Trustee a first priority perfected security interest in all of the Depositor's right, title and interest in, to and under the Mortgage Loans and other assets in the Trust Fund, and that this Agreement shall constitute a security agreement under applicable law.*** (emphasis supplied)

Moreover, if for any other reason this Agreement is held or deemed to create a security interest in the Mortgage Loans and the other assets constituting the Trust Fund, then it is intended as follows:

a. this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the Uniform Commercial Code;[37]

b. the conveyance provided for in this Section shall be deemed to be a grant by the Depositor to the Trustee of a security interest in all of the Depositor's right, title and interest in and to the Mortgage Loans and all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Distribution Account, whether in the form of cash, instruments, securities or other property;

[37] The Pooling and Servicing Agreement is governed under New York law and states in relevant part in Section 11.06 Governing Law:

THIS AGREEMENT AND THE CERTIFICATES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS CONFLICT OF LAWS RULES (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW, WHICH THE PARTIES HERETO EXPRESSLY RELY UPON IN THE CHOICE OF SUCH LAW AS THE GOVERNING LAW HEREUNDER) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

c. the possession by the Trustee or its agent of the Mortgage Loans and such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be *"possession by the secured party"* for purposes of perfecting the security interest pursuant to Section 9-305 of the Uniform Commercial Code;

d. the Trustee shall be deemed to be the *"securities intermediary,"* as such term is defined in Section 8-102(a)(14)(ii) of the New York Uniform Commercial Code, that in the ordinary course of its business maintains *"securities accounts"* for others, as such term is used in Section 8-501 of the New York Uniform Commercial Code;

e. the *"securities intermediary's jurisdiction"* as defined in the New York Uniform Commercial Code shall be the State of New York;

f. the Trustee is not a *"clearing corporation"*, as such term is defined in Section 8-102(a)(5) of the New York Uniform Commercial Code and

g. notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed to be notifications to or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Trustee for the purpose of perfecting such security interest under applicable law.

60. The PSA's caveat, that the alleged conveyance of the Mortgage Loans (or the receivables generated thereby) to the Trust might be viewed as a "secured loan" rather than a "true sale," is warranted in view of the evidence.

61. As noted above, Section 10(a)(iii) of the MLPA between the *Depositor* and the *Seller/Sponsor* established a condition precedent that Bear Stearns purchase the "empty" Certificates from the *Depositor* ahead of time so that approximately $281,849,596 would be lying in wait on the Closing Date of November 30, 2006 to fund the acquisition of the Trust Fund assets.

62. Once Structured Asset Mortgage Investments II Inc. was in receipt of the funds, the money flowed downstream and in a simultaneous transaction, the Trust Fund assets were

allegedly conveyed from: 1) Wells Fargo Bank, N.A. to EMC Mortgage Corporation; 2) EMC Mortgage Corporation to Structured Asset Mortgage Investments II Inc.; and 3) Structured Asset Mortgage Investments II Inc. to U.S. Bank, National Association, as Trustee of the Prime Mortgage Trust 2006-2. Thereafter, Bear Stearns was free to sell the Certificates to institutional investors for an undisclosed amount.

63. Given this deal structure, the alleged securitization of the Trust Fund assets is more akin to a "disguised loan" than to a "true sale." Moreover, the condition precedent in Section 10(a)(iii) of the Mortgage Loan Purchase Agreement makes it clear that Bear Stearns & Co. was the "true lender" behind the scenes.[38]

64. Table 3 below illustrates the structural difference between a "true sale"[39] in which EMC purchases Mortgage Loans for value from Wells Fargo using its own funds, versus a "disguised loan" where EMC funds the acquisition with a loan from the Underwriter—the latter scenario being the exact opposite of the former transaction type.

~ *Continued Below* ~

---

[38] *See Consumer Financial Protection Bureau v. CashCall, Inc., et al.*; United States District Court, Central District of California; Case No. CV 15-7522-JFW (RAOx); August 31, 2016.

[39] A "true sale" involves the transfer by the Originator of all of its right, title and interest in the assets to be securitized by the SPV [Special Purpose Vehicle]. In the securitization context, a "true sale" has been defined as, "a transfer of financial assets in which the parties state that they intend a sale, and in which all of the benefits and risks commonly associated with ownership are transferred for fair value in an arm's length transaction." [citation] (*See Asset-Backed Securitization, Special Purpose Vehicles and Other Securitization Issues*, by Kenneth N. Klee and Brendt C. Butler, page 20, paragraph 2)



BA 2 PG 30 of 227

**Table 3 – Flow of Funds Sequence & Timeline**

| **TRUE SALE**<br>***Buyer-Seller Relationship*** | **DISGUISED LOAN**<br>***Borrower-Lender Relationship*** |
|---|---|
| **Lender / Originator**<br>Wells Fargo Bank, N.A.<br>(08/03/2006)<br>↓<br>**Seller / Sponsor**<br>EMC Mortgage Corporation<br>(11/30/2006)<br>↓<br>**Depositor**<br>Structured Asset Mortgage Investments II Inc.<br>(11/30/2006)<br>↓<br>**Issuing Entity**<br>U.S. Bank National Association, as Trustee of Prime Mortgage Trust 2006-2<br>(11/30/2006) | **Underwriter**<br>Bear Stearns & Co.<br>**$281,849,596**<br>(11/30/2006)<br>↓<br>**Depositor**<br>Structured Asset Mortgage Investments II Inc.<br>(11/30/2006)<br>↓<br>**Seller / Sponsor**<br>EMC Mortgage Corporation<br>(11/30/2006)<br>↓<br>**Lender / Originator**<br>Wells Fargo Bank, N.A.<br>(08/03/2006) |

## *"Disguised Loan" vs. "True Sale"*

65. In the context of securitization, the distinction between a "true sale" and a "secured loan" is vital since the characterization of the transaction determines the owner of the assets.[40]

66. To report a transfer of assets as a sale, a financial institution must satisfy the requirements of generally accepted accounting principles ("GAAP") regarding sales of assets. The Statement of Financial Accounting Standards No. 140 ("FASB 140"), specifies circumstances under which transactions that "purport to be sales" of receivables with recourse to

[40] See Shtatnov, Artem, *The Elusive True Sale in Securitization* (January 4, 2012), page 1. Available at SSRN: http://ssrn.com/abstract=2115054 or http://dx.doi.org/10.2139/ssrn.2115054.

the seller should be accounted for as a financing. FASB 140 has a three-part test to determine whether a transfer of assets in a securitization transaction will be accounted for as a sale. The three-part test is, as follows:[41]

> (i) the transferred assets have been isolated from the transferor; that is put presumptively beyond the reach of the transferor and its creditors, even in the bankruptcy of the transferor;
>
> (ii) the transferee or, if the transferee is a trust, corporation or other legal [entity] that holds title to the transferred assets, each holder of its beneficial or debt interests, has the right to pledge or exchange the assets or beneficial or debt interests it received, and no condition constrains the transferee or holder from taking advantage of its right to pledge or exchange and provides more than trivial benefit to the transferor; and
>
> (iii) the transferor does not maintain effective control over the transferred assets through an agreement that entitles the transferor to repurchase the assets before their maturity or to repurchase or redeem assets that are not readily obtainable.

67. Where the Originator acts as servicer and maintains post-transfer control over the assets and their proceeds, concerns are raised as to whether a "true sale" has been effected.[42] In the instant case, Tribelsky refinanced his primary residence with Wells Fargo Bank, N.A. on August 3, 2006; Wells Fargo Bank, N.A. has continuously serviced his account from inception; and Wells Fargo Bank, N.A. is also the Document Custodian for the Prime Mortgage Trust 2006-2.[43]

---

[41] See Kenneth N. Klee and Brendt C. Butler, *Asset-Backed Securitization, Special Purpose Vehicles and Other Securitization Issues*, 35 U.C.C. Law Journal 23 (2002), page 6 at: http://www.ktbslaw.com/news-publications-17.html.

[42] *Id.* Klee, page 4.

[43] See Pooling and Servicing Agreement Section 1.01 Definitions. Custodian: Wells Fargo Bank, National Association, or any successor custodian appointed pursuant to the provisions hereof and of the Custodial Agreement.



2 32 227

68. These facts suggest that Wells Fargo never surrendered physical possession of or control over Tribelsky's Note, Deed of Trust, Retained Mortgage File, Custodial Mortgage File, and bundle of rights granted by the Borrower to the Lender (i.e., the "Whole Loan"), [44] which supports the contention that the alleged securitization of Tribelsky's Mortgage Loan is a "disguised loan" and not a "true sale."

69. Further, this transaction structure calls into question whether Wells Fargo sold the "Whole Loan," or a ***derivative interest*** [45] in the Whole Loan to EMC Mortgage Corporation. This question must be addressed by the Court so that it may determine whether the Proof of Claim (Claim 4) submitted by Wells Fargo Bank, N.A. on behalf of U.S. Bank, National

---

[44] The term "Whole Loan" is defined 17 CFR 240.3a12-4 Exemptions from sections 15(a) and 15(c)(3) for certain mortgage securities as follows:

> § 240.3a12-4(a) When used in this Rule the following terms shall have the meanings indicated:
>
> (1) The term whole loan mortgage means an evidence of indebtedness secured by mortgage, deed of trust, or other lien upon real estate or upon leasehold interests therein where ***the entire mortgage, deed or other lien is transferred with the entire evidence of indebtedness***. (emphasis supplied)

[45] Here, my use of the term "derivative interest" is meant to distinguish the bundle of rights contained in the Whole Loan granted by the *Borrower* to the *Lender* from the secondary, partial, and derivative rights passed on in the sale from the *Lender* to the *Seller/Sponsor*, from the *Seller/Sponsor* to the *Depositor*, and from the *Depositor* to the *Trust*.

For example, the evidence shows that Wells Fargo Bank, N.A. did not negotiate Mr. Tribelsky's Note nor did it assign his Deed of Trust to EMC Mortgage Corporation, the *Seller/Sponsor* in the securitization chain.

Nor is there any evidence that EMC Mortgage Corporation negotiated Mr. Tribelsky's Note or assigned his Deed of Trust to Structured Asset Mortgage Investments II Inc., the *Depositor*. As discussed above (*See* PSA Section 2.01 – Conveyance of Mortgage Loans), the *Depositor* is an indispensable party to the securitization and it is the only entity allowed to transfer the Mortgage Loans to the Trustee for the Trust. Thus, it appears that Structured Asset Mortgage Investments II Inc. acquired only personal property, i.e., a qualified, limited right to the payment intangible —not tangible real property rights— from EMC Mortgage Corporation.

Accordingly, Structured Asset Mortgage Investments II Inc. could only pass on to U.S. Bank, National Association, as Trustee, the quality of title it received from EMC Mortgage Corporation which amounts to a ***derivative right, not an absolute right*** to Mr. Tribelsky's Whole Loan.

Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 represents a "secured" or "unsecured" claim.

70. Alternatively, if the Bankruptcy Court determines that the subsequent transfer of assets from the *Seller/Sponsor* to the *Depositor*, and from the *Depositor* to the *Trust* constitute secured loan transactions resulting in a security interest that was never perfected, the Chapter 13 Trustee can avoid the security interest pursuant to Bankruptcy Code Section 544.

71. To recap, the evidence I have reviewed to date supports a conclusion that the alleged securitization of Tribelsky's Mortgage Loan was, in fact, a "disguised loan" and not a "true sale." The transaction structure described in the Servicing Agreement, the Mortgage Loan Purchase Agreement and the Pooling and Servicing Agreement do not pass the FASB 140 three-part test to determine whether a transfer of assets in a securitization transaction should be accounted for as a sale for the following reasons:

(i) the transferred assets were never isolated from the initial transferor, Wells Fargo Bank, N.A., who is both the Document Custodian and the Servicer for Tribelsky's Mortgage Loan;

(ii) the transferee, i.e., U.S. Bank, National Association, as Trustee of the Prime Mortgage Trust 2006-2, does not have the right to pledge or exchange the assets or beneficial or debt interests it received because it is constrained by the PSA and the Internal Revenue Code from doing so; (<u>See</u> I.R.C. §§860A-860G; I.R.C. §§ 860D(a)(4)); <u>See</u> also Sections 2.02 of the Pooling and Servicing Agreement)

(iii) the transferors, Wells Fargo Bank, N.A. and EMC Mortgage Corporation, maintained effective control over the transferred assets through the Servicing Agreement, the Mortgage Loan Purchase Agreement, and Pooling and Servicing Agreement that, under certain circumstances, require the transferor

to repurchase the assets before the maturity or to repurchase or redeem assets that are not readily obtainable.[46]

### *PSA Section 11.06 - Governing Law*

72. Pursuant to Section 12.03 of the Seller's Warranties and Servicing Agreement, Section 21 of the Mortgage Loan Purchase Agreement, and Section 11.06 of the Pooling and Servicing Agreement, these transactions are to be governed under the laws of the State of New York without application of the conflicts of laws provisions thereof.[47]

73. To assist this Court in better understanding the application of New York law to Pooling and Servicing Agreements, I submit the following excerpt from the Expert Report of Prof. Alan Schwartz,[48] dated May 27, 2014, which was submitted to the Supreme Court of the

[46] See Seller's Warranties and Servicing Agreement Section 3.03 or 6.02; Mortgage Loan Purchase Agreement Sections 4 and 5, repurchase obligations; and the Pooling and Servicing Agreement Section 2.02.

[47] For example, the Pooling and Servicing Agreement is governed under New York law and states in relevant part in Section 11.06 Governing Law:

> THIS AGREEMENT AND THE CERTIFICATES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS CONFLICT OF LAWS RULES (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW, WHICH THE PARTIES HERETO EXPRESSLY RELY UPON IN THE CHOICE OF SUCH LAW AS THE GOVERNING LAW HEREUNDER) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

[48] Alan Schwartz is a Sterling Professor at Yale University. His appointments are in the Yale Law School and the Yale School of Management. Professor Schwartz's academic specialties include corporate finance and corporate governance, mergers and acquisitions, bankruptcy, contracts and commercial transactions. He has published numerous articles and books in these fields. He has been identified, by the Institute of Scientific Information, as being in the top one half of one percent of social scientists worldwide in total citations, and by HeinOnline as one of the fifty most cited law professors of all time. Professor Schwartz has been President of the American Law and Economics Association and Editor of *The Journal of Law, Economics and Organization*. He is currently a member of the American Academy of Arts and Sciences. Professor Schwartz also is a Director of Cliffs Natural Resources Co. and Furniture Brands International, both of which are traded on the New York Stock Exchange. Professor Schwartz consults as an expert in corporate governance, mergers and acquisitions, bankruptcy, contracts and commercial law. (See https://www.law.yale.edu/alan-schwartz)



2 3 227

State of New York, County of New York, Index No. 652382/2014,[49] a case involving repurchase demands against JPMorgan Chase & Co. brought by Trustees of 330 Residential Mortgage Backed Securities ("RMBS Litigation") Trusts —including U.S. Bank, National Association, as Trustee of the Prime Mortgage Trust 2006-2:[50]

**2. New York Standards for Contract Interpretation[1]**

[1] The PSAs are governed by New York law.

The general New York contract interpretation rules are simple to state. The New York courts enforce contracts as written, giving effect to all of their terms. For example,

> Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. [citations] Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the court to decide. [citations]

*Greenfield, et al v. Philles Records, Inc. et al*, 91N.Y. 2d 562, 569, 720 N.E.2D 166 (2002). To the same effect, see, e.g., *M & R Rockaway, LLC v. SK Rockaway Real Estate Company, LLC*, 74 A.D. 3S 759 (2d Dept. 2010). In addition,

> An interpretation that gives effect to all of the terms of an agreement is preferable to one that ignores the terms or accords them an unreasonable interpretation.

*Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D. 3S 191, 196, 626 N.Y.S. 2d 174 (1st Dept. 1995). In the words of the Court of Appeals, "A court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect.", *Carhill Corp. v. S.D. Plants, Inc.*, 9 N.Y. 2d 595, 599, 217 N.Y.S. 2d 174 (1961). See also, e.g., *Acme Supply Co., LTD v. City of New York*, 39 A.D. 3d 331 (1st Dept. 2007).

---

[49] *See* http://www.rmbstrusteesettlement.com/doc.php and http://www.rmbstrusteesettlement.com/Expert_Report_of_Prof_Alan_Schwartz.pdf.

[50] JPMorgan Chase & Co. settled the RMBS Litigation for $4.5 billion on November 19, 2013.



2 36 227

74. The point here is not that Tribelsky is attempting to ask this Court to enforce the PSA that governs the Prime Mortgage Trust 2006-2; but rather, that the Court take judicial notice of the PSA and Professor Schwartz's opinion in the RMBS Litigation referenced above for the purpose of determining whether Tribelsky's Mortgage Loan ever made it into the Trust to begin with.

75. Section 2.01(b) of the PSA is unambiguous and clearly sets forth how the Note is to be endorsed and the Mortgage/Deed of Trust is to be assigned to the Trust in a manner that establishes a complete chain of title. Section 2.01(b) states in relevant part as follows:

**ARTICLE II**

**Conveyance of Mortgage Loans;**
**Original Issuance of Certificates**

**Section 2.01 Conveyance of Mortgage Loans to Trustee.**

(b) In connection with the above transfer and assignment, the Depositor hereby delivers, or hereby causes to be delivered, to the Custodian, as agent for the Trustee, with respect to each Mortgage Loan:

(i) the original Mortgage Note, endorsed without recourse (a) to the order of the Trustee or (b) in the case of a Mortgage Loan registered on the MERS system, endorsed in blank, ***in either case showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee***, or lost note affidavit together with a copy of the related Mortgage Note; (emphasis supplied)

(ii) the original Mortgage and, if the related Mortgage Loan is a MOM Loan,[51] noting the presence of the MIN and language indicating that such Mortgage Loan is a MOM Loan, which shall have been recorded (or, for Mortgage Loans other than the EMC Flow Loans, if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (w) in the proviso below applies, shall be in recordable form);

(iii) unless the Mortgage Loan is either a MOM Loan or has been assigned in the name of MERS, ***a certified copy of the assignment*** (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged

[51] Tribelsky's Deed of Trust is not a MOM Loan, nor was it registered in the MERS® System.

Property is located) ***to "U.S. Bank National Association, as Trustee", with evidence of recording with respect to each Mortgage Loan in the name of the Trustee thereon*** (or if clause (w) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland or an Opinion of Counsel has been provided as set forth in this Section 2.01(b). shall be in recordable form);[52] (emphasis supplied)

(iv) ***all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon***; (emphasis supplied)

(v) the original or a copy of the policy or certificate of primary mortgage guaranty insurance, to the extent available, if any;

(vi) the original policy of title insurance or mortgagee's certificate of title insurance or commitment or binder for title insurance or, in the event such original title policy has not been received from the title insurer, such original title policy will be delivered within one year of the Closing Date or, in the event such original title policy is unavailable. a photocopy of such title policy or, in lieu thereof, a current lien search on the related Mortgaged Property; and

(vii) originals of all modification agreements, if applicable and available

76. Section 2.01(b) of the PSA clearly establishes how each Note is to be endorsed and each Security Instrument is to be assigned from the originator (in this case Wells Fargo Bank, N.A.) to each intermediary in the chain of title, and ultimately to U.S. Bank National Association, as Trustee for the Prime Mortgage Trust 2006-2.

77. The prima facie evidence in this case shows that Tribelsky's Note was not endorsed as prescribed in the PSA. Rather. Joan M. Mills, Vice President of Wells Fargo Bank,

[52] **Section 2.01(b)(w) provides as follows:**

(w) in lieu of the original Security Instrument (other than the Mortgages related to the EMC Flow Loans), assignments to the Trustee or intervening assignments thereof which have been delivered, are being delivered or will. upon receipt of recording information relating to the Security Instrument required to be included thereon, be delivered to recording offices for recording and have not been returned to the Depositor in time to permit their delivery as specified above, the Depositor may deliver, or cause to be delivered, a true copy thereof with a certification by the Depositor. on the face of such copy. substantially as follows: *"Certified to be a true and correct copy of the original, which has been transmitted for recording"*;

N.A., specifically endorsed Tribelsky's Note directly to "U.S. Bank National Association, as Trustee" thereby eliminating two intervening parties (i.e., the Seller/Sponsor and the Depositor) that were necessary to ensure the Trust's bankruptcy remoteness and favored tax status as a REMIC (I.R.C. §§ 860A-G).[53] (See Exhibit C. – Note, p. 3, 08/03/2006)

78. Bear in mind here that the Seller's Warranties and Servicing Agreement, the Mortgage Loan Purchase Agreement, and the Pooling and Servicing Agreement filed with the Securities and Exchange Commission establish the purchase and sale agreements between the transacting parties; the creation of the Trust; as well as how and when the Trust acquired its assets. These documents must be truthful, may not contain false statements, and may not omit to state a material fact required to make the statements not misleading. To do otherwise would be to commit securities fraud.[54]

79. Given these facts, the absence of a complete chain of endorsements on Tribelsky's Note suggests that:

A. either the conveyance of Tribelsky's Note to the Prime Mortgage Trust 2006-2 was never perfected in strict accord with the representations and warranties made to the SEC and the investors who purchased securities as per the Prospectus, Prospectus Supplement, Seller's Warranties and Servicing Agreement, Mortgage Loan Purchase Agreement and Pooling and Servicing Agreement; or

---

[53] Wells Fargo Bank, N.A. may claim that it endorsed Tribelsky's Note "in blank" and someone else is responsible for filling in the blank with "U.S. Bank, National Association, as Trustee." In such event, Wells Fargo should proffer its custodial log which would indicate if, when, and by whom the Note was released and delivered to the intervening parties in the securitization chain.

[54] See Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

See also Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund, 135 S. Ct. 1318 (2015), and *Freidus v. ING GROEP*, Supreme Court 2015.

B. the essential character of the transaction was a "disguised loan" —as anticipated in Section 2.01(a) of the Pooling and Servicing Agreement— and not a series of "true sales."

80. The conveyance of the mortgage loans into the Trust is governed by the New York Uniform Commercial Code ("NY-UCC"), and not the California Commercial Code ("CA-UCC"). Assuming Tribelsky's Note is deemed to be a negotiable instrument (which is debatable), the NY-UCC provides:

> **NY-UCC, Section 3--201. Transfer: Right to Indorsement.**
>
> (1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, ***except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.*** (emphasis supplied)
>
> (2) A transfer of a security interest in an instrument vests the foregoing rights in the transferee to the extent of the interest transferred.
>
> (3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. ***Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.*** (emphasis supplied)

81. The drafters of the SSA, MLPA and PSA understood that under the New York UCC, "Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner." This explains why these agreements require a complete chain of endorsements on the Notes, and assignments of the Mortgage, i.e., to provide evidence that these alleged "true sales" actually took place.

> **NY-UCC, Section 3--202. Negotiation.**
>
> (1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is



EX 2 PG 40 of 227

negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

(2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

(3) ***An indorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue.*** If it purports to be of less it operates only as a partial assignment. (emphasis supplied)

82. The New York UCC requires delivery of the instrument for negotiation to occur. In the instant case, it appears that Wells Fargo Bank, N.A. never delivered Tribelsky's Note to EMC, SAMI, or to U.S. Bank National Association, as Trustee because, presumably, it knew in advance that it would be designated as the Document Custodian for Tribelsky's Mortgage File. Again, the failure to complete the transfers and assignments memorialized in the SSA, MLPA and the PSA indicates that the securitization involved a "disguised loan," and not a series of "true sales" of the Whole Loan.

## *Recorded Chain of Title*

83. On or about November 1, 2011, Tribelsky fell behind in making his monthly mortgage payments; by February 1, 2012, he was running three (3) months in arrears.[55]

84. On March 19, 2012, Joel Altringer, acting in his alleged capacity as Vice President Loan Documentation for Wells Fargo Bank, National Association[56] ("Assignor"),

---

[55] I gleaned this information from **Part 5: Loan Payment History from First Date of Default** contained in U.S. Bank's Proof of Claim (Claim 4) filed in the U.S. Bankruptcy Court Central District of California (Los Angeles), Bankruptcy Petition #: 2:15-bk-23688-NB: Boaz Tribelsky d/b/a In Your Place Furniture, Inc. and d/b/a Teva Furniture.

[56] Wells Fargo Bank, National Association had allegedly sold Mr. Tribelsky's Note and Deed of Trust to EMC Mortgage Corporation soon after originating the Mortgage Loan, and retained the right to service the account pursuant to a certain Master Seller's Warranties and Servicing Agreement, dated as of November 1, 2005, between EMC Mortgage Corporation and Wells Fargo ("Seller's Warranties and

executed a Corporate Assignment of Deed of Trust ("Assignment") which allegedly transferred the Tribelsky Deed of Trust (***but not the Note***) from Wells Fargo Bank, National Association to US Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 ("Assignee"). This document was submitted for filing in the Los Angeles County Recorder's Office on April 27, 2012, as Instrument #20120626111 ("Assignment"). (*See* Exhibit D. – Corporate Assignment of Deed of Trust, 03/19/2012)

85. This Assignment is not what it appears to be: it does not, in fact, convey "all beneficial interest" in Tribelsky's Deed of Trust from Wells Fargo to U.S. Bank. Rather, this Assignment is a hollow fabrication designed to close the gap in the chain of title so that it appeared, as a matter of public record, that U.S. Bank had the authority to prosecute a nonjudicial foreclosure sale of Tribelsky's Property.

86. As documented in the foregoing analysis, Wells Fargo Bank, N.A. allegedly sold Tribelsky's Note and Deed of Trust ("Mortgage Loan") to EMC Mortgage Corporation —not to U.S. Bank, National Association— on some date between August 3, 2006 (the Consummation Date) and November 30, 2006 (the Closing Date of the Trust). Therefore, Wells Fargo could not sell Tribelsky's Mortgage Loan for a second time to a different entity more than five (5) years later as this Assignment purports to do.

Servicing Agreement"). A form of the Seller's Warranties and Servicing Agreement was allegedly attached to the Pooling and Servicing Agreement for the Prime Mortgage Trust 2006-2 as Exhibit I-3: http://www.secinfo.com/dqTm6.ue2.c.htm#1stPage.

87. Because the Assignment contains false statements, misrepresentations and omissions of material fact made with the intent to deceive, it is ineffective, null and void.[57]

88. On September 27, 2013, Jameka Young, acting in her alleged capacity as Vice President Loan Documentation of Wells Fargo Bank, N.A. as servicing agent for U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2, the alleged Beneficiary, executed a Substitution of Trustee which purports to substitute NBS Default Services, LLC as Trustee under the Deed of Trust. This document was filed with the Recorder's Office on October 9, 2013, as Instrument #20131454753. (*See* Exhibit E. – Substitution of Trustee, 09/27/2013)

89. Because the Substitution of Trustee depends upon the validity of the Assignment, it too is ineffective, null and void.[58]

---

[57] California Penal Code Section 115 prohibits the procurement or offering of a false or forged document to be filed, registered or recorded in any public office (e.g., county land records, courts, etc.) and provides as follows:

a. Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

b. Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

[58] California Penal Code Section 115.5 provides further:

a. Every person who files any false or forged document or instrument with the county recorder which affects title to, places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, real property consisting of a single-family residence containing not more than four dwelling units, with knowledge that the document is false or forged, is punishable, in addition to any other punishment, by a fine not exceeding seventy-five thousand dollars ($75,000).

b. Every person who makes a false sworn statement to a notary public, with knowledge that the statement is false, to induce the notary public to perform an improper notarial act on an instrument or document affecting title to, or placing an encumbrance on,

90. On October 7, 2013, Aaron Shepherd, an employee of NBS Default Services, LLC, as Trustee for the Beneficiary executed a Trustee's Notice of Default and Election to Sell Under Deed of Trust ("NOD"). The NOD was submitted for filing in the Recorder's Office immediately after the Substitution of Trustee, on October 9, 2013, as Instrument #20131454754. (*See* Exhibit F. – Notice of Default, 10/07/2013)

91. The Notice of Default states in bold print on page 2 that the default dates back to the **"Installment of Principal and Interest which became due on 11/01/2012."** The last paragraph on page 1 states that as of 10/07/2013, the amount necessary to cure the alleged default was $46,621.45.

92. On or about August 14, 2015, Vanessa Gomez, acting in her alleged capacity as a Foreclosure Associate NBS Default Services, LLC, executed a Notice of Trustee's Sale stating that on September 3, 2015, the subject property would be sold to the "highest bidder." This document was recorded on August 14, 2015, as Instrument #20150999384. (*See* Exhibit G. – Notice of Trustee's Sale, 08/14/2015)

93. The Notice of Trustee's Sale begins with the statement: "NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on 08/10/2006 as Document No.: 06 1778125..." The question of whether NBS Default Services, LLC ("NBS") was "duly appointed" or not depends upon the validity of the Substitution of Trustee which, in turn, depends upon the validity of the Assignment. If the Court finds that NBS was not duly appointed, then it had no authority to

---

real property consisting of a single-family residence containing not more than four dwelling units is guilty of a felony.

exercise the statutory power of sale and proceed with the Trustee's Sale which NBS scheduled for 09/03/2015 at 10:00 AM.

94. To prevent the sale of his Property, Boaz Tribelsky filed a Voluntary Petition pursuant to Chapter 13 of the United States Bankruptcy Code on September 1, 2015.[59] In preparing his Schedules and Chapter 13 Plan, Tribelsky relied upon the following documents that were both mailed to him and filed of record with the Los Angeles County Recorder's Office:

- Substitution of Trustee, 09/27/2013
- Notice of Default, 10/07/2013
- Notice of Trustee's Sale, 08/14/2015

95. For example, Tribelsky reported on Schedule D – Creditors Holding Secured Claims that the alleged debt in the principal amount of $505,255.37 was secured by his residence located at 724 North Genesee Avenue, Los Angeles, CA 90046, and that the debt was owed to Wells Fargo Bank, N.A. Secondly, when constructing his Chapter 13 Plan, Tribelsky proposed to pay Wells Fargo Bank, N.A. $138,056.66 in arrearages over 60 months at the rate of $2,300.94 per month.

96. Had he known better, Tribelsky would have scheduled this debt as "unsecured;" and he would have challenged the validity, priority and extent of the creditor's claim in its entirety. Further, he would have requested that the Chapter 13 Trustee escrow his pre- and post-petition payments until he could file an Adversary Proceeding to flesh out the truth.

[59] *See* U.S. Bankruptcy Court Central District of California (Los Angeles), Bankruptcy Petition #: 2:15-bk-23688-NB: Boaz Tribelsky d/b/a In Your Place Furniture, Inc. and d/b/a Teva Furniture.

*Proof of Claim*

97. On January 7, 2016, Wells Fargo Bank, N.A. filed a Proof of Claim on behalf of U.S. Bank, National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 (Claim 4). The Proof of Claim breaks down the alleged arrearages as of the bankruptcy filing date, September 1, 2015, as follows: (*See* Exhibit L. – Proof of Claim 4, 01/07/2016)

**Table 4 – Claim 4 as of 09/01/2015**

| Description | Total Debt | Total Arrearage |
|---|---|---|
| Unpaid Principal Balance | $505,255.37 | |
| Interest from 11/1/12 to 09/01/2015 | $101,409.32 | |
| Principal & Interest Due | | $129,447.85 |
| Fees, Costs Due | $3,314.30 | $3,314.30 |
| Escrow Funds Advanced | $1,557.94 | $1,557.94 |
| **TOTAL:** | **$611,536.93** | **$134,320.09** |

98. As noted above, Tribelsky estimated the arrearages associated with Claim 4 would total $138,056.66, and proposed to repay 100% of the outstanding debt by making 60 monthly payments in the amount of $2,300.94 per month.

*Periodic Advances*

99. The Prime Mortgage Trust 2006-2 was structured with certain "credit enhancements" designed to insulate investors who purchased securities backed by the pool of Trust Fund assets against the risk of default and loss in two primary ways: 1st) through

"subordination:" and 2nd) through "advances." The Prospectus Supplement briefly explains subordination and advances as follows:[60]

**Credit Enhancement**

The credit enhancement provided for the benefit of the holders of the offered certificates consists of subordination. By issuing senior certificates and subordinate certificates, the issuing entity has increased the likelihood that senior certificateholders will receive regular payments of interest and principal.

The senior certificates in each certificate group will have payment priority over the subordinate certificates. Among the classes of subordinate certificates, each class of subordinate certificates with a lower numerical class designation will have payment priority over each class of subordinate certificates with a higher numerical class designation.

Subordination provides the holders of certificates having a higher payment priority with protection against losses realized when the remaining unpaid principal balance on a related mortgage loan exceeds the amount of proceeds recovered upon the liquidation of that mortgage loan.

**Advances**

Each servicer will make cash advances with respect to delinquent payments of scheduled interest and principal on the mortgage loans for which it acts as servicer, in general, to the extent that such servicer reasonably believes that such cash advances can be repaid from future payments and recoveries on the related mortgage loans. If the related servicer fails to make any required advances, the master servicer may be obligated to do so, as described in this prospectus supplement. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses.

100. Tribelsky's Mortgage Loan was assigned to Group 1 which consists of the senior classes of certificates bearing the highest credit rating and the lowest risk of loss. Accordingly,

---

[60] See Prospectus Supplement filed with the SEC on 12/04/2006; search for Credit Enhancement and Advances at: http://www.secinfo.com/dqTm6.v3Vm.htm#1stPage.

See also Pooling and Servicing Agreement Section 6.0 Monthly Advances at: http://www.secinfo.com/dqTm6.uc2.c.htm#1stPage.

advances will be applied to Tribelsky's Mortgage Loan until the credit enhancements have been exhausted, or the Servicer determines the advances cannot be recaptured upon liquidation of the Property. (See Exhibit H. – Bloomberg Research Results, 07/25/2016)

101. Through my access to Bloomberg, I downloaded the payment history associated with Tribelsky's Mortgage Loan as that is being reported from month-to-month by the Servicer (Wells Fargo Bank, N.A.) to the Trustee (U.S. Bank, National Association). I found that notwithstanding Tribelsky failed to make his mortgage payments from November 1, 2012 to September 1, 2015, ***the Trust received Periodic Advances each month during this three (3) year timespan which means that Tribelsky's account was actually "current" with respect to the Trust when he filed for bankruptcy.*** (See Exhibit M. – Bloomberg Pay History, 07/25/2016)

102. The Bloomberg Pay History downloads from Bloomberg's web based portal into an Excel spreadsheet and reports the most recent activity from top to bottom. I formatted the data so that it would be more readable, and hid several columns so that the essential information would print out in a manageable size (11" x 17"). I did not alter any of the data itself.

103. The column labeled "Is Advancing" tells us when the Servicer has advanced monthly payments. The columns to the far right of the spreadsheet track the cumulative principal and interest advances as well as the "Outstanding Servicer Advances" for each reporting period. The "Cumulative Interest Recapture" and "Cumulative Principal Recapture" columns represent payments Wells Fargo accepted from Tribelsky between 03/2012 and 06/2013 when he stopped making monthly payments; and post-petition payments on and after 10/2015. You will see that the "Outstanding Servicer Advances" have been reduced by Tribelsky's pre- and post-petition

payments. The "Balance" column represents the declining Principal Balance based on all payments credited to the account regardless of who made those payments.

104. In addition to being the Trustee for the Prime Mortgage Trust 2006-2, U.S. Bank National Association is also the Securities Administrator for the Trust. In this capacity, U.S. Bank analyzes the data provided to it each month by the Servicer and compiles that information into monthly Investor Reports.

105. I have access to U.S. Bank's Trust Gateway Portal[61] and on October 1, 2016, I downloaded every single Investor Report that contains information on the status of Tribelsky's Mortgage Loan. U.S. Bank first reported Tribelsky's Mortgage Loan as being delinquent on January 25, 2012, and continues to do so to this day. I excerpted and compiled the relevant page from each of the last 57 Investor Reports to provide incontrovertible evidence that Tribelsky's Mortgage Loan remained current with respect to the Trust due to the monthly advances applied by the Servicer. (*See* Exhibit N. – Investor Reports)

106. Tribelsky filed his Voluntary Petition on September 1, 2015; the status of his Mortgage Loan as of that date is found in the Investor Report for August 25, 2015. For the Court's convenience, I attach the relevant page from the August 25, 2015 Investor Report hereto as Exhibit O. I also summarize the delinquency details contained therein in Table 4 below, and compare U.S. Bank's information with the loan level details found in the Bloomberg Pay History. (*See* Exhibit O. – Investor Report, 08/25/2015)

---

[61] *See* U.S. Bank's Trust Gateway Portal requires a subscription to access the publicly available information and is found at: https://usbtrustgateway.usbank.com/portal/login.do.

**Table 5 – U.S. Bank's Investor Report of August 25, 2015**

| Header | U.S. Bank | Bloomberg |
|---|---|---|
| Loan Number: | 16657250 | 16657250 |
| State: | CA | |
| Original Loan-To-Value Ratio: | 62.5600% | |
| Original Principal Balance: | $563,000.00 | $563,000.00 |
| Beginning Principal Balance: | $476,147.48 | $475,176.90* |
| Next Payment Due: | 11/01/2012 | |
| Past Due: | 120 + days | |
| Status: | Foreclosure | |
| Advances: | $122,270.38 | $122,050.82 |
| Rate: | 6.87500% | 6.87500% |

*A careful comparison between these two sources reveals that there is a one (1) month lag in U.S. Bank's reporting of the declining Principal Balance. U.S. Bank's figure represents the Beginning Principal Balance *before* the payment due on 08/01/2015 is applied; whereas, Bloomberg reports the Principal Balance *after* the payment due on 08/01/2015 is applied.

107. U.S. Bank's own Investor Report establishes that the Beginning Principal Balance of Tribelsky's Mortgage Loan as of August 25, 2015, was **$476,147.48**, and not **$505,255.37** as reported in U.S. Bank's Proof of Claim. This reduction in Principal represents 33 payments of $3,698.51, for a total of $122,050.82, which precisely equals the Advances reported by Bloomberg for that period.

108. When Wells Fargo prepared the Proof of Claim it added the payments due for August and September which brought the arrearages up to $129,447.85.[62] (*See* Table 4 above) (*See* also Exhibit L. – Proof of Claim 4, 01/07/2016)

[62] Calculated as follows: $3,698.51 x 2 = $7,397.02 + $122,050.82 = $129,447.85.

### *Proof of Claim Revisited*

109. The revelation that U.S. Bank has already been paid through the Periodic Advances noted above calls into question whether collecting an additional $129,447.85 from Tribelsky constitutes a form of "double dipping" and "unjust enrichment." This is so because U.S. Bank is not in privity of contract with Tribelsky. As established by the Deal Documents:

(i) Tribelsky's Note. Deed of Trust, and ancillary documents constituting the Whole Loan were never negotiated in favor of —nor transferred to— U.S. Bank through the securitization process; and

(ii) Tribelsky is not a party to the Pooling and Servicing Agreement, which requires the Servicer to make Periodic Advances when a borrower defaults.

110. The evidence shows that U.S. Bank acquired a "derivative interest" in the Note which has value only so long as Tribelsky ***voluntarily*** makes his monthly mortgage payments. As such, U.S. Bank's position is more like that of an investor in a Collateralized Debt Obligation ("CDO") who is twice removed from the "primary thing" which, in this case, is Tribelsky's Note. A CDO investor cannot grab the underlying collateral; its only recourse for breaches of representations and warranties made in the offering documents is to demand that the seller repurchase or refund the investment.

111. Wells Fargo Bank, N.A., EMC Mortgage Corporation, Structured Asset Mortgage Investments II Inc., U.S. Bank, National Association, and Bear Stearns & Co. (the securitization transaction parties) understood the risks involved in developing a modern day, streamlined securitization model that ignored existing laws and did away with traditional, time consuming and costly rituals, e.g., endorsing and physically transferring mortgage notes; preparing assignments of mortgage; and recording interim mortgage assignments in the nation's time-honored land evidence recording systems to perfect their security interest.

112. The alleged purchase and sale, transfer and assignment of the Mortgage Loans between the *Originator→Seller→Depositor→Underwriter→Trustee* occurred simultaneously on the Closing Date in an electronically based "virtual reality" where "physical delivery" of the Mortgage Loans was considered inefficient, unduly burdensome, and obsolete.

113. This holographic securitization model works seamlessly as long as the mortgage loans are performing; however, when a borrower defaults on his payment obligation, this virtual reality materializes into third dimensional physical reality where, by law, paperwork must be produced to establish the chain of title, ownership, and authority.

114. To cover up the infirmities in its securitization model and to expedite the foreclosure process, Wells Fargo Bank, N.A. and its agents resorted to rubber stamping endorsements on Tribelsky's Note; manufacturing a bogus mortgage assignment; and creating fraudulent title documents executed by robo-signers to give the appearance in the public record that U.S. Bank had the requisite authority to complete a nonjudicial foreclosure and divest Tribelsky of his Property.

115. The California Commercial Code Chapter 6, Discharge and Payment, Section 3602[63] states as follows:

> (a) Subject to subdivision (b), an instrument is paid to the extent payment is made (1) by or on behalf of a party obliged to pay the instrument, and (2) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3306 by another person.

---

[63] I cite the California Commercial Code here because enforcement of the Note and Deed of Trust —by the instruments' own terms— is governed under the laws of the State of California.

116. U.S. Bank and Wells Fargo will, no doubt, argue that the Periodic Advances are not being made "on behalf of" Tribelsky for the same reasons the Court explained in *Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113 (C.D. Cal., 2012), that is:

(1) The Trust Agreements and PSAs were not created for the benefit of the Plaintiffs;

(2) The Trust Agreements and PSAs did not constitute a forfeiture of the right to foreclose on Plaintiffs' property; and

(3) Default is clearly defined as Plaintiffs' failure to make loan payments.

117. Tribelsky's case is distinguishable from *Casault* and its progeny because his Note and Deed of Trust are not the property of U.S. Bank, National Association, as Trustee of the Prime Mortgage Trust 2006-2. Nor do the Certificateholders who purchased securities from Bear Stearns own Tribelsky's Mortgage Loan.

118. Notwithstanding the ruling in *Casault*, the evidence in this case shows by a standard of clear and convincing evidence that these Periodic Advances relate exclusively to Tribelsky's Loan Number 16657250. In turn, Loan Number 16657250 is tethered to Tribelsky's Property address, credit profile, Social Security Number, and Birth Certificate —in other words, to his personal identity. If the Periodic Advances are not being made "on behalf of" Tribelsky, then the use of his personal identification numbers to trace the flow of funds may have criminal implications for U.S. Bank and Wells Fargo.

119. U.S. Bank's Investor Reports also provide evidence that Tribelsky's Mortgage Loan was current as far as the Prime Mortgage Trust 2006-2 was concerned at all times relevant when U.S. Bank and its agents instituted nonjudicial foreclosure proceedings. Since neither U.S. Bank nor the Certificateholders were injured by Tribelsky's non-payment, the Court should find



EX 2 53/227

that U.S. Bank did not then, and does not now, have the requisite standing to initiate foreclosure pursuant to California Civil Code § 2923.5 to 29241 — Nonjudicial Foreclosure.

### *Fraud Upon the Court*

120. On January 7, 2016, Wells Fargo Bank, N.A. filed a Proof of Claim on behalf of U.S. Bank, National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2 (Claim 4). In support of its Proof of Claim, Wells Fargo attached a 22-page exhibit consisting of: a 3-page fixed rate Note; a 1-page Grant Deed; a 17-page Deed of Trust including the recording cover page and a legal description; and a 1-page Corporate Assignment of Deed of Trust.

121. The Note provides that interest will be charged on unpaid principal until the full amount of Principal ($563,000.00) has been paid at a yearly rate of 6.875%. Monthly payments of $3,698.51 were established in an amount sufficient to fully amortize the Principal to a zero balance over the thirty (30) year term to maturity by September 1, 2036. (*See* Exhibit C. – Note, 08/03/2006)

122. Page 3 of the Note contains two undated endorsements. The first endorsement was allegedly executed by Joan M. Mills, as Vice President of Wells Fargo Bank, N.A., and purports to assign the Note to U.S. Bank National Association, as Trustee.

123. The second endorsement was allegedly executed by Samuel C. Shelley, as Senior Vice President of Wells Fargo Bank, N.A. as Attorney-in-Fact for U.S. Bank National Association, as Trustee, and purports to convert the Note to bearer paper.

124. The obvious contradiction here is that U.S. Bank's Proof of Claim asserts on the one hand that it is the "creditor" entitled to receive payments under the Note; while the evidence it proffered in support of that assertion is countervailing in that the endorsement "in blank" on page 3 of the Note constitutes *prima facie* evidence that U.S. Bank divested its interest in the Note prior to Tribelsky's bankruptcy filing.

125. This evidence alone —which is incontrovertible— raises a genuine issue of material fact as to who, if anyone, is the current Note Holder entitled to receive payments thereunder as defined in paragraph 1 of Tribelsky's Note.[64]

126. This endorsement "in blank" may be related to one or both of the following civil actions lodged against JPMorgan Chase & Co. who inherited both EMC Mortgage Corporation and Structured Asset Mortgage Investments II Inc. when it acquired Bear Stearns &. Co. in March 2008.

(i) *United States of America, et al. v. JPMorgan Chase & Co.* / Justice Department, Federal and State Partners Secure Record $13 Billion Global Settlement with JPMorgan for Misleading Investors About Securities Containing Toxic Mortgages; Settled November 19, 2013.

(ii) *In re: RMBS Litigation* / JPMorgan Chase & Co. RMBS Settlement Offer; Settled November 15, 2013.

127. If Tribelsky's Mortgage Loan was repurchased by JPMorgan Chase Bank, N.A., then U.S. Bank, through its Proof of Claim, is seeking a double-recovery from Tribelsky which it

---

[64] Tribelsky's Note is a Multistate Fixed Rate Note – Single Family – Fannie Mae/Freddie Mac Uniform Instrument. Paragraph 1, Borrower's Promise to Pay, states as follows:

> I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

should not be allowed to do. Other bankruptcy courts have found that the debt should be offset by the recovery of funds received through repurchase litigation. [See *Paloian v. LaSalle Bank Nat'l Ass'n* (In re Doctors Hosp. of Hyde Park, Inc.), 494 B.R. 344 (Bankr. N.D. Ill., 2013)]. Discovery is necessary to understand how the repurchase litigation referenced above affects Tribelsky's Mortgage Loan.

128. Based on the foregoing complex history of this transaction, the Court may find that the Note is no longer collectible/enforceable which would render the Deed of Trust a nullity and obviate Claim 4.

### *Injury in Fact & Damages*

129. Attorney M. Erik Clark asked that I provide guidance on the harm to Boaz Tribelsky caused by the alleged securitization of his Mortgage Loan, and the potential damages arising therefrom.

130. State and federal laws require certainty in real estate transactions. The greatest harm to Tribelsky is that he no longer knows who the "Lender" is as that term is defined in his Note and Deed of Trust due to the complexities of, and infirmities in, the alleged securitization of his Mortgage Loan. As a result, Tribelsky finds himself in the same position as Mary Ellen and David Wolf[65] where, after evaluating the evidence proffered during a 4-day trial, the jury found that the Wolfs owed $655,191.73 to "someone," but not to Wells Fargo Bank, N.A., as Trustee of the Carrington Mortgage Loan Trust, Series 2006-NC3.

---

[65] *Mary Ellen Wolf v. Wells Fargo Bank, N.A. et al.*, Case Number 2011-36476, brought in the 151st Judicial District Court of Harris County, Texas ("*Wolf*"). This Examiner, Marie McDonnell, served as Plaintiff's expert witness.



EX 2 MS 60227

76

131. The California Supreme Court recently dealt with this issue head-on, and drove home the same point that applies here: [See *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919, 199 Cal.Rptr.3d 66, 81, 365 P.3d 845 (2016)]

> The borrower owes money not to the world at large but to a particular person or institute, and **only the person or institution entitled to payment may enforce the debt by foreclosing on the security.**
>
> It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. at p. 650.) "Such a view fundamentally misunderstands the mortgage contract. The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, *the mortgagee* may sell the property pursuant to the requisite legal procedure."
>
> The logic of defendant's no-prejudice argument implies that anyone, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to someone, though not to the foreclosing entity. This would be an "odd result" indeed. As a district court observed in rejecting the no-prejudice argument, "[b]anks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust." (*Miller v. Homecomings Financial, LLC* (SD. Texas 2012) 881 F.Supp.2d 825, 832.) (bold face added, italics in original).

132. Like the Wolfs, who had refinanced their home mortgage based on their financial capacity prior to the 2008 Financial Crisis, Tribelsky has been denied the opportunity to obtain meaningful relief through a modification of the terms of his Note. Because Wells Fargo Bank, N.A. is no longer Tribelsky's Lender, but remains his Servicer, its motives and incentives are now diametrically opposed to Tribelsky's. This tension may be measured by Wells Fargo's reluctance to modify Tribelsky's Note to a suitable and sustainable level reflective of the historically low interest rates prevailing for some years now. Due to Wells Fargo's intransigence,

Tribelsky is now trapped in an unconscionable adhesion contract that will, eventually, cost him his home. For the time being, Tribelsky is protected by the automatic stay afforded by the Bankruptcy Code; however, Tribelsky's burden of maintaining his regular mortgage payment and his Chapter 13 Plan is tenuous at best.

133. During the *Wolf* trial, I observed that the jury was angered by the Servicer's denial of a loan modification after the Wolfs had been approved for one. But, the key to the case was the jury's finding —by a standard of clear and convincing evidence— that the Transfer of Lien (Assignment of Deed of Trust) by which Wells Fargo Bank, N.A., as Trustee claimed to have acquired its interest was both fraudulent and void. The jury was unanimous in its decision and awarded the Wolfs $190,000 in actual and emotional distress damages, and $190,000 in attorney's fees. After it had rendered its verdict, the jury was given the opportunity to assess exemplary damages and awarded the Wolfs $5,000,000 to be paid 50%-50% by the Servicer (Carrington Mortgage Services, LLC) and the Trustee (Wells Fargo Bank, N.A.).

134. On October 25, 2016, I testified at a Prove-Up hearing in the Los Angeles County Superior Court at Burbank in a lawsuit filed by homeowners David Collins and Yvette Herrera ("Plaintiffs") who sued their mortgage lender Paul Financial, LLC and others[66] on the following counts:

(1) Fraud;
(2) Quiet Title;
(3) Cancellation of Instruments;
(4) Violation of the Truth in Lending Act;
(5) Defamation of Title;
(6) Defamation of Credit;
(7) Wrongful Foreclosure;

[66] See *Collins v. Paul Financial, LLC et al.*, Los Angeles County Superior Court, Burbank, Case No.: EC062680.

(8) Accounting; and
(9) Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

135. Plaintiffs each testified as to the offer and acceptance of the proposed refinance of their primary residence based on a fixed interest rate and monthly payment that were both favorable and affordable. Unbeknownst to them at the time, Plaintiffs had executed a complex, negative amortization adjustable rate note at closing that spelled out a dramatically different proposition. Their interest-only payments remained fixed for the first 52 months after which the monthly payment exploded by a factor of 38 times the initial amount. At that point, Plaintiffs stopped making payments.

136. As Plaintiffs' expert, I testified that the understatement in the Annual Percentage Rate ("APR") was 7.529%;[67] and the understatement in the Finance Charge on this $635,000.00 mortgage loan was ($1,481,740.57).[68] I noted that the understatements in the APR and the Finance Charge were so astronomical that there had obviously been a "bait and switch" at closing. I also testified that the only way to protect the homeowners from further attempts to collect the debt by Defendants who had been dismissed in an earlier proceeding was to declare the Note to be void *ab initio* thereby nullifying the Deed of Trust.

137. In a follow-up hearing on damages held on November 10, 2016, the judge declared the Note to be void and the Deed of Trust cancelled. He also issued an order in favor of

[67] To put things into perspective, the tolerance for an understatement in an Annual Percentage Rate ("APR") pursuant to Reg. Z § 226.22(a)(3) in a closed-end irregular (variable rate) transaction is 0.250%. Accordingly, an understatement in the amount of 7.529% is 30 times the allowable tolerance.

[68] An understatement in the Finance Charge of 0.50% of the principal amount of the loan or $3,175.00 triggers an affirmative right to rescind the transaction for up to three (3) years after the consummation of the transaction pursuant to Reg. Z § 226.23(g)(1)(i). In this instance, the understatement in the Finance Charge exceeds the allowable tolerance by 461 times.



EX 2-59 227

Plaintiffs and against the mortgage broker, Barry Matthews Silver, and the lender, Paul Financial, LLC, in the amount of $4,645,221.71 for fraud, TILA violations, disgorgement of profits, and credit loss; $200,000 for emotional distress; and $57,000.00 for attorney's fees and costs. Further, he awarded Plaintiffs punitive damages only against defendant Paul Financial, LLC, the sum of $6,000,000.00. Altogether, damages totaled $10,902,221.71.

138. In my opinion, the issues raised in Boaz Tribelsky's case represent a blend of *Wolf* and *Collins*, but there is another factor here that requires the Court's keen attention, i.e., the issue of whether U.S. Bank has filed a fraudulent proof of claim.[69]

139. After an intensive examination of the evidence available to me as of this writing, I find that U.S. Bank's Proof of Claim is fraudulent for the following reasons:

(i) The Note U.S. Bank attached to its Proof of Claim contains an endorsement "in blank" which constitutes *prima facie* evidence that U.S. Bank had surrendered whatever interest it had in Tribelsky's Note prior to the Petition date of September 1, 2015.

(ii) There is a high probability that U.S. Bank has already been paid for Tribelsky's Mortgage Loan through the repurchase litigation brought by the U.S. Department of Justice against JPMorgan Chase Bank, N.A. which resulted in a $13 billion global settlement —the largest settlement with a single entity in American history— which included the Prime Mortgage Trust 2006-2.[70]

(iii) It is also likely that U.S. Bank has already been paid for Tribelsky's Mortgage Loan through the repurchase litigation brought by Trustees of 330 Residential Mortgage Backed Securities ("RMBS Litigation") Trusts —including U.S. Bank, National Association, as Trustee of the Prime Mortgage Trust 2006-2 which resulted in a recovery of $4.5 billion on November 19, 2013.

---

[69] Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

[70] See Department of Justice Press Release dated November 19, 2013: ***Justice Department, Federal and State Partners Secure Record $13 Billion Global Settlement with JPMorgan for Misleading Investors About Securities Containing Toxic Mortgages.***



EX 2 60227

(iv) If Tribelsky's Mortgage Loan was repurchased by JPMorgan Chase Bank, N.A. incident to the repurchase litigation described above, then U.S. Bank's Proof of Claim is patently fraudulent.

(v) The endorsement "in blank" contradicts the extrinsic evidence contained in U.S. Bank's Investor Reports which indicate that Tribelsky's Mortgage Loan —***or an economic interest therein***— remains an asset of the Trust to this day.

(vi) U.S. Bank's own Investor Report establishes that the Beginning Principal Balance of Tribelsky's Mortgage Loan as of August 25, 2015, was **$476,147.48**, and not **$505,255.37** as reported in U.S. Bank's Proof of Claim.

(vii) The Proof of Claim mischaracterizes the alleged arrearage of $129,447.85 as "Principal and Interest Due" when, in fact, that amount represents Periodic Advances made pursuant to the PSA which Tribelsky is not obligated to pay.

(viii) Also, the Proof of Claim seeks to impose $3,314.30 in fees and costs that are unwarranted because U.S. Bank never had the authority to enforce Tribelsky's Note or foreclose upon his Deed of Trust to begin with.

140. If the Bankruptcy Court agrees that U.S. Bank's Proof of Claim is fraudulent, it should impose the appropriate penalties.

*Rescission Accounting*

141. In my opinion, the mortgage contract between Boaz Tribelsky ("Borrower") and Wells Fargo Bank, N.A. ("Lender") has been so severely impaired in its essential nature, character, and purpose that the Lender, as that term is defined in the Note and Deed of Trust, has quite literally "vanished" into an etheric vortex from whence there is no return.

142. As an initial matter, the Court should consider cancelling Tribelsky's Note and Deed of Trust, and rescinding the transaction. I do not have a complete accounting of Tribelsky's mortgage payments and Chapter 13 Plan payments right now; however, I estimate the status of the account as of December 31, 2016, is approximately as follows, excluding escrow items: (*See* Exhibit P. – Rescission Accounting, 12/31/2016)

**Table 6 – Rescission Accounting**

| DESCRIPTION | As Of | AMOUNT | NET TENDER |
|---|---|---|---|
| **Principal Amount of Loan** | | | $563,000.00 |
| **Pre-Petition Payments** | | | |
| Regular Monthly Payments | 09/01/2015 | $269,991.17 | $293,008.83 |
| Principal Curtailments | 09/01/2015 | $15,024.36 | $277,984.47 |
| **Post-Petition Payments** | | | |
| Regular Monthly Payments | 12/31/2016 | $59,176.15 | $218,808.32 |
| Chapter 13 Trustee Payments | 12/31/2006 | $35,838.60 | $182,969.72 |
| **Credit Closing Costs** | | | |
| Unknown at this time | 08/03/2006 | ~#~ | ~#~ |
| **NET TENDER:** | | | **$182,969.72** |

143. In the event the Court orders rescission, Tribelsky's net tender obligation of approximately $182,969.72 can be repaid over the remaining Plan Period. Tribelsky would have no further obligation to make regular monthly payments under the Note, but would continue to make payments to the Chapter 13 Trustee adjusted to what would be required to amortize the net tender over the remaining Plan Period. For example, if 44 months remain in the Plan Period, monthly payments of $4,158.40 would amortize the Principal at 100%. This would substantially reduce Tribelsky's debt service, and it would extinguish the obligation entirely upon discharge.

144. The net tender obligation may also be reduced by whatever damages the Court awards in its discretion.

## VI. <u>SUMMARY OF OPINIONS</u>

145. My research and analysis of the subject transaction and the alleged securitization of Tribelsky's Mortgage Loan into the Prime Mortgage Trust 2006-2 led me to conclude the following:



EX 2 62 227

A. I found the Deal Documents that establish the means by which Tribelsky's Mortgage Loan —***or an economic interest therein***— was to be securitized contained several unique features that distinguish the Prime Mortgage Trust 2006-2 from other securitizations I have examined in the past.

B. In a nutshell, I found the alleged sale between Wells Fargo and EMC involved a financial transaction whereby on the Closing Date, EMC would tender the Purchase Price to Wells Fargo and Wells Fargo would "sell, transfer, assign, set over and convey" the Mortgage Loans to EMC ***but not deliver the Retained Mortgage Files.*** [See Analysis, p. 21, ¶ 46]

C. Section 10(a)(iii) of the MLPA contains a ***"condition precedent"*** that required Bear Stearns (the *Underwriter*) to pre-purchase the Certificates from the *Depositor* on or prior to the Trust's Closing Date of November 30, 2006. [See Analysis, p. 24, ¶ 52]

D. Thus, on or before the Closing Date of November 30, 2006, Bear Stearns funded the downstream acquisition of the Mortgage Loans by purchasing all the Pass-Through Certificates from Structured Asset Mortgage Investments II Inc. for a total of $281,849,596. Put more succinctly, Bear Stearns was the "true lender"[71] behind the scenes who ultimately funded Tribelsky's Mortgage Loan. [See Analysis, pp. 25-26, ¶ 55]

E. Both the Mortgage Loan Purchase Agreement ("MLPA") and the Pooling and Servicing Agreement ("PSA") contain "recharacterization" clauses that anticipate a court may interpret these transactions as "loans" rather than "true sales." [See Analysis, pp. 30-33, ¶¶ 63-69]

F. Neither EMC Mortgage Corporation (*Seller/Sponsor*), nor Structured Asset Mortgage Investments II Inc. (*Depositor*) purchased Tribelsky's Mortgage Loan with their own funds. Rather, the *Underwriter*, Bear Stearns & Co. Inc., pre-purchased the Certificates from the *Depositor* on or before the Closing Date of November 30, 2006, and funded the acquisition of the Trust Estate assets.

G. Despite the expressed intentions of the participants in the securitization to designate the conveyances amongst themselves as "sales," the true character of the transactions more closely resembles a "loan" from Bear Stearns & Co. Inc.

H. U.S. Bank National Association, as Trustee did not pay for Tribelsky's Mortgage Loan and has no economic interest in it *per se*, nor do the Certificateholders own Tribelsky's Mortgage Loan.

I. Wells Fargo Bank, N.A., Tribelsky's *Lender*, never delivered the Note to EMC Mortgage Corporation, Structured Asset Mortgage Investments II Inc., or to U.S. Bank

[71] See *Consumer Financial Protection Bureau v. CashCall, Inc., et al.*; United States District Court, Central District of California; Case No. CV 15-7522-JFW (RAOx); August 31, 2016.



EX 2 - 63 - 227

National Association which is a necessary component under the New York Uniform Commercial Code to perfect a negotiation. [*See* Analysis. pp. 20-21, ¶¶ 45-46]

J. NY-UCC, Section 3--202. Negotiation, requires transfer of physical possession of an instrument payable to bearer; and does not contemplate a "virtual" transfer through, for example, electronic transmission of the Mortgage Loan Schedule or the Servicing File. [*See* Analysis, pp. 40-41, ¶¶ 81-82]

K. NY-UCC, Section 3—202(3) further constrains what is necessary to perfect a negotiation under New York law by requiring that the "entire instrument" must be transferred. Based on many other securitizations involving loans originated by Wells Fargo Bank, N.A., I have reason to believe that Wells Fargo retained an interest in Tribelsky's Mortgage Loan which, if proven true, further undermines the alleged transfer of Tribelsky's Note. [*See* Analysis. p. 41, ¶ 81]

L. In short, the attempt to transfer Tribelsky's Whole Loan to U.S. Bank failed. All the Trust Estate received was an undivided, derivative interest in the fungible cash flows generated by the pool of mortgage loans listed in the Mortgage Loan Schedule. This amounts to a payment intangible which is personal property, not a secured interest in real property.

M. Tribelsky's Note, Deed of Trust, and ancillary documents were never delivered to U.S. Bank. For this and other reasons explained in detail above, U.S. Bank does not have a legal interest in the instruments that would allow it to enforce the Note, foreclose upon the Deed of Trust, or collect payments from Tribelsky.

N. The evidence shows that U.S. Bank acquired a "derivative interest" in the Note which has value only so long as Tribelsky ***voluntarily*** makes his monthly mortgage payments. As such, U.S. Bank's position is more like that of an investor in a Collateralized Debt Obligation ("CDO") who is twice removed from the "primary thing" which, in this case, is Tribelsky's Note. A CDO investor cannot grab the underlying collateral; its only recourse for breaches of representations and warranties made in the offering documents is to demand that the seller repurchase or refund the investment. [*See* Analysis, p. 51, ¶ 110]

O. The beneficiaries of the Prime Mortgage Trust 2006-2 have not been harmed by Tribelsky's alleged default because they have been receiving Periodic Advances; and because they have other recourse against U.S. Bank, National Association and the participants in the deal. [*See* Analysis, pp. 46-50, ¶¶ 99-108]

P. Based on the foregoing complex history of this transaction, the Court may find that the Note is no longer collectible/enforceable which would render the Deed of Trust a nullity and obviate Claim 4. [*See* Analysis, p. 56, ¶ 128]

Q. After an intensive examination of the evidence available to me as of this writing, I find U.S. Bank's Proof of Claim to be fraudulent for the reasons set forth in paragraph 139. [*See* Analysis, p. 60-61, ¶ 139-140]

R. In my opinion, the mortgage contract between Boaz Tribelsky ("Borrower") and Wells Fargo Bank, N.A. ("Lender") has been so severely impaired in its essential nature, character, and purpose that the Lender —the counterparty to the transaction— is no longer identifiable. Therefore, rescission is an appropriate, equitable, and feasible remedy as explained in paragraphs 141 to 144. [*See* Analysis, pp. 61-62, ¶¶ 141-144]

S. Rescission of the transaction would also protect Tribelsky from Wells Fargo's use of its fraudulent Corporate Assignment of Deed of Trust, Substitution of Trustee, and Notice of Default and Election to Sell as the basis for instituting foreclosure proceedings. [*See* Analysis, pp. 41-45, ¶¶ 83-96]

### *Certification*

The factual and expert opinions stated above are based on my research, review of and reliance upon the documents and information supplied to date. I reserve the right to amend and supplement my opinion based on documents and data gathered through the discovery process and supplied to me in the future.

Therefore, based on my education, specialized knowledge and professional expertise as a Mortgage Fraud and Forensic Analyst and a Certified Fraud Examiner and the documents before me now, I find within a reasonable degree of certainty, that the opinions expressed herein are true and accurate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Subscribed and signed voluntarily, under penalty of perjury, pursuant to the provisions of 18 U.S.C. § 1621, this ***3rd day of December, 2016*** in Brewster, Massachusetts.

Respectfully submitted,

Marie McDonnell

Marie McDonnell, President & CEO
*Mortgage Fraud and Forensic Analyst*
*Certified Fraud Examiner*

Date: December 3, 2016

McDonnell Property Analytics
15 Cape Lane | Brewster, MA 02631
(v) 774-323-0892 | (f) 774-323-0894
Marie@mcdonnellanalytics.com

## VII. EXHIBITS

| | |
|---|---|
| Exhibit A. - | Curriculum Vitae of Marie McDonnell |
| Exhibit B. - | Deed of Trust, 08/03/2006 |
| Exhibit C. - | Note, 08/03/2006 |
| Exhibit D. - | Corporate Assignment of Deed of Trust, 03/19/2012 |
| Exhibit E. - | Substitution of Trustee, 09/27/2013 |
| Exhibit F. - | Notice of Default, 10/07/2013 |
| Exhibit G. - | Notice of Trustee's Sale, 08/14/2015 |
| Exhibit H. - | Bloomberg Research Results, 07/25/2016 |
| Exhibit I. - | Prospectus Supplement Excerpt |
| Exhibit J. - | Securitization Flow Chart |
| Exhibit K. - | Contents of Retained Mortgage File |
| Exhibit L. - | Proof of Claim 4, 01/07/2016 |
| Exhibit M. - | Bloomberg Pay History, 07/25/2016 |
| Exhibit N. - | Investor Reports (57) |
| Exhibit O. - | Investor Report, 08/25/2015 |
| Exhibit P. - | Rescission Accounting, 12/31/2016 |

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF BARNSTABLE, SS

At Brewster, Massachusetts, on this 3rd day of December, 2016, before me, the undersigned Notary Public, personally appeared Marie McDonnell who is personally known to me to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.

Subscribed to and sworn before me.

STEPHANIE B. SOUZA
Notary Public
Commonwealth of Massachusetts
My Comm. Expires November 27, 2020

Stephanie B. Souza
Notary Public
My commission expires: 11/27/2020

# EXHIBIT "A"

*Marie Therese McDonnell*

**Mortgage Fraud and Forensic Analyst | Certified Fraud Examiner**
15 Cape Lane ✦ Brewster, MA 02631 ✦ 774-323-0892
May 2016

**OBJECTIVE:** To Raise the Standard of Truth in Lending Through Auditing, Education, and Advocacy

## RECENT ACCOMPLISHMENTS

**RMBS Training, Expert Designations, Commissions, Engagements**

### Wolf v. Wells Fargo Bank, N.A., et al.

**In the District Court of Harris County, Texas (Houston), 151st Judicial District – Cause No. 2011-36476**

- January 18, 2013: Court approved Marie McDonnell as Plaintiffs' testifying expert.
- May 1, 2013: Court approved Plaintiffs' Motion for Class Certification.
- August 24, 2014: Order Granting Class Certification Reversed and Remanded on Appeal in the Fourteenth Court of Appeals, NO. 14-13-00435-CV.
- November 4-6, 2015: Trial on the Merits; Marie McDonnell testified as Plaintiffs' expert.
- November 10, 2015: Jury Verdict: $5.38 million for Plaintiffs David and Mary Ellen Wolf.

### City of Seattle Review of Mortgage Documents

- December 17, 2014: Commissioned by the City of Seattle to conduct a review of mortgage assignments to determine whether residential real estate property assignments within the Seattle city limits involving Mortgage Electronic Registration Systems, Inc. (MERS) are valid and in accordance with Washington State Law in light of the 2012 State Supreme Court decision in *Bain v. Metropolitan Mortgage Group, Inc.*
- September 8, 2015: Updated and delivered final report titled *City of Seattle Review of Mortgage Documents.*

### Montgomery County, Pennsylvania v. MERSCORP, Inc. et al.

**U. S. District Court, Eastern District of Pennsylvania – Case 2:11-cv-06968-JCJ**

- June 25, 2013: Engaged as an expert by the law firm of Kohn, Swift & Graf, P.C. in their representation of Nancy Becker, Recorder of Deeds for Montgomery County in her lawsuit on behalf of all Pennsylvania counties against MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.
- November 5, 2013: Submitted a declaration and expert report in support of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment.
- February 12, 2014: The Honorable J. Curtis Joyner granted Plaintiff's Motion for Class Certification.
- April 22, 2014: Judge Joyner denied Defendants' Motion for Summary Judgment.
- July 1, 2014: Memorandum Order that Defendants' Motion for Summary Judgment is Denied in its Entirety and Plaintiff's Cross-Motion for Partial Summary Judgment is Granted in Part.
- March 13, 2015: Order that Plaintiff's Motion to Unseal Report of Marie Mcdonnell (Doc. No. 151) is Denied.

Ex 2 pg 9 of 27

**U. S. Court of Appeals for the Third Circuit – Case No. 14-4315**

- October 30. 2014: Appeal docketed with the Third Circuit.
- August 3, 2015: Judgment Reversed. Costs taxed against Appellee.
- August 3, 2015: Precedential Opinion Coram: Chagares, Krause and Barry, Circuit Judges. Total Pages: 16. Judge: Barry Authoring. The Motion requesting certification of State Law to Supreme Court of Pennsylvania, pursuant to 3d Cir. LAR Misc. 110 is denied.

## Office of the Inspector General – Federal Housing Finance Agency

- February 20 through February 22, 2013: Conducted a three-day training in Washington, D.C. under contract with the U.S. Treasury Department at the request of the Office of the Inspector General for the Federal Housing Finance Agency. The purpose of the training was to educate the attendees in various aspects of the Residential Mortgage Backed Securities marketplace; the function of Mortgage Electronic Registration Systems, Inc. in streamlining the sale and securitization of residential mortgage loans; the resultant corruption in our land evidence recording systems; and the use of tools and technologies for conducting market surveillance. Among the attendees were: Special Agents of the Office of the Inspector General, Department of Justice, Secret Service, Homeland Security, FBI, Assistant U.S. Attorneys, and Postal Inspectors.

## Office of the Attorney General – State of New York

- March 22, 2012: Conducted training in the New York City Office of Attorney General Eric Schneiderman to educate Assistant Attorneys General (civil and criminal divisions), Assistant U.S. Attorneys, Special Agents and Investigators on the securitization of residential mortgage loans; the systemic breaches of the representations and warranties made to investors; and the fraudulent cover-up that ensued in the wake of the mortgage meltdown and foreclosure crisis.

## Forensic Examination of the Essex Southern District Registry of Deeds – Massachusetts

- June 28, 2011: Completed a forensic examination of mortgage related documents to test the transparency, reliability and integrity of the Registry at the request of Register John L. Obrien.
- The audit revealed widespread, systemic, patterns of practice employed by the nation's banks and their agents, including DocX, LLC, that corrupted the transparency of and the chain of title to real property in the Registry. (*See* http://salemdeeds.com/pdf/Audit.pdf)
- This was the first registry audit of its kind in the United States and prompted other officials to audit their public land records, many of whom filed lawsuits against the banks and their private electronic recording utility, Mortgage Electronic Registration Systems, Inc.

## United States of America v. Lorraine Brown

**U. S. District Court, Middle District of Florida – Case No. 3:12-cr-198-J-25**

- January 11, 2013: Submitted an Affidavit In Support of John L. O'Brien's Affidavit and Request For Restitution in the sentencing of Lorraine Brown, the founder the chief executive of DocX LLC who plead guilty to conspiracy to commit mail and wire fraud. . (*See* http://www.mcdonnellanalytics.com/register-john-obrien-calls-on-court-for-restitution)
- Brown was responsible for more than a million fraudulent documents entering the system; directing company employees to forge and falsify documents relied on by property recorders, title insurers and others." (*See* http://www.justice.gov/opa/pr/2012/November/12-crm-1400.html)
- At Register O'Brien's request, examined a sampling of the 10,567 DocX, LLC discharges and assignments that were recorded in the Essex Southern District Registry from 1998 through 2011.
- Found that the majority of these documents evidence gaps in the chain of title or constitute wild deeds because, among other defects, they fail to connect the original mortgagee with the entity who is discharging or assigning the mortgage

## PUBLIC INTEREST PROJECTS

Undertaken on a Pro Bono Basis

### Amicus Curiae

**Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 969 N.E.2d 1118 (Mass., 2012)**

- *Supplemental Amicus Brief*, Massachusetts Supreme Judicial Court, January 30, 2012
- *Amicus Brief*, Massachusetts Supreme Judicial Court, September 30, 2011

**U.S. Bank National Association v. Ibanez and Wells Fargo Bank, N.A. v. LaRace, 458 Mass. 637 (2011)**

- *Amicus Brief*, Massachusetts Supreme Judicial Court, October 1, 2010
- *Evidence and the Burden of Proof in Documenting the Chain of Title in Securitized Mortgage Transactions*, Massachusetts Land Court, June 29, 2009
- *Amicus Affidavit and Analysis of Marie McDonnell*, Massachusetts Land Court, April 17, 2009

## RULE 26 DISCLOSURES

Testimony in Recent Cases within the Last Four (4) Years

**JPMorgan Chase Bank, National Association vs. Enid Futterman, et al.**

- Supreme Court of the State of New York, County of Columbia, Index No. 6384/2009.
- Submitted an expert report on January 3, 2015.
- Submitted an expert affidavit on April 3, 2015.
- Testified at trial on April 29, 2016.

**Wells Fargo Bank, as Trustee for the Certificateholders MASTR Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW v. Kimberly M. Snowden, et al.**

- In The Circuit Court Of The 1st Judicial Circuit In And For Santa Rosa County, Florida, Case No. 57-2010-CA-001137.
- Submitted an expert affidavit on February 10, 2016 in support of a Temporary Restraining Order.
- Testified at an evidentiary hearing on April 1, 2016.

**In re: Mortgage Electronic Registration Systems, Inc. Litigation**

- United States District Court for the District of Arizona, Case No.: 2:09—md-02119 JAT.
- Submitted expert reports on June 30, 2015 and July 10, 2015.
- Deposition taken on August 14, 2015.

**Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWMBS Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-7 vs. Charles W. Christmas, et al.**

- In The Eighth Judicial District Court For The State Of Nevada In And For The County Of Clark, Nevada, Case No. A-13-678365-C.
- Submitted an expert report on July 3, 2014.
- Testified at an evidentiary hearing on January 6, 2015.

**Deutsche Bank National Trust Company, As Trustee For WaMu Mortgage Pass-Through Certificates,Series 2005-AR5, *Petitioner* v. Lorraine Mary Moller, *Respondent*, (Rule 120 Action)**

- District Court Boulder County, Boulder, Colorado. Case No. 2013CV31232, Division 14.
- Qualified by the Honorable Ingrid Bakke as an expert in the identification of fraudulent signatures at a hearing held on May 21, 2014.

**Hanan Shiheiber v. JPMorgan Chase Bank, N.A., et al.**

- Superior Court of the State of California, County of San Mateo, Case No. Civ. 493254.
- Deposition taken on July 24, 2013.

**Mary Ellen Wolf and David Wolf v. Wells Fargo Bank, N.A. as Trustee for Carrington Mortgage Loan Trust, et al.**

- In the District Court of Harris County, Texas, 151st Judicial District, Cause No. 2011-36476.
- Qualified to testify as an expert by the Honorable Mike Engelhart on January 18, 2013.
- Testified at trial on November 5, 2015.

**In RE: Square 67 Limited Partnership**

- United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 12-31870-hdh11. Deposition, May 11, 2012. Testified at hearing, May 14, 2012.
- Qualified by the Honorable Harlin DeWayne Hale as a "Mortgage Securitization and Fraud Expert" at a hearing held on May 14, 2012.

**Residential Funding Company, LLC v. Thomas J. LaCasse**

- Judicial District at Stamford, DOCKET NO: FSTCV095011591S.
- Deposition taken on April 3, 2012.

## PROFESSIONAL EXPERIENCE

**Innovation of Forensic Mortgage Auditing, Title Examination & Securitization Analytics**

### McDonnell Analytics, Inc. d/b/a McDonnell Property Analytics
*Founder / President / CEO, 2010 – Present*

- Train state and federal law enforcement and regulatory agencies regarding detection of invalid assignments, robo-signing, fraud and misrepresentation in mortgage and foreclosure instruments.
- Educate and consult with registers of deeds throughout the country regarding the degradation in chain of title to real property located in their jurisdiction.
- Design, execute and deliver the Company's title and securitization forensic reports to attorneys, consumers, registries of deeds, and other governmental agencies.
- Train the Company's staff attorneys, researchers, and general counsel.
- Expert in chain of title, securitization and truth in lending disputes between lenders and homeowners and disputes between governmental bodies and national banks.

### Truth In Lending Audit & Recovery Services, LLC
*Founder / Managing Member, 2006-2010*

- Continuously develop mortgage analytic software tools and protocols.
- Provide litigation support and expert witness services to law firms throughout the country.

2 72 227

- Develop specialized knowledge and implement protocols to trace the ownership of residential and commercial mortgage loans that had been sold to secondary market investors and private label securitization deals.
- Provided content for two chapters of *Mortgage Wars: How You Can Fight Fraud and Reverse Foreclosure* by Iris Martin, copyright July 15, 2009.

## The Mortgage Counselor

*Owner, 1991-2006*

- Audited thousands of residential mortgage loans on behalf of consumers and attorneys who represent homeowners in resolving disputes over mortgage origination and servicing practices.
- Provided litigation support and expert witness services to law firms throughout the country.
- Developed and implemented a Truth in Lending Analysis to identify material disclosure violations that enabled homeowners to rescind and cancel certain mortgage transactions pursuant to state and federal disclosure laws.
- Developed compliance examinations to detect indicia of predatory lending, unconscionable loan terms, and violations of state and federal consumer protection laws.
- Developed analytical software tools and protocols to forensically reengineer the loan servicing history of commercial and residential mortgage loan transactions featuring:
  - Truth In Lending Analysis. Determine whether Truth In Lending Disclosure Statement complies with Regulation Z, and that calculations accurately reflect mortgage contract and loan commitment.
  - Amortization Analysis. Set up control based on loan agreement; reverse engineer lender's interest calculation method; cross-reference lender's history with borrower's records; and track distribution of payments to principal, interest, escrow, late charges, suspense, corporate and all custodial accounts.
  - Escrow Analysis. Set up escrow account dating to closing; track disbursements and credits to and from escrow; verify transactions with primary source data provided by borrower, taxing authority and other payees; and analyze lender's Annual Escrow Analysis checking for accuracy and conformance with Real Estate Settlement Procedures Act.
- Uncovered a mortgage fraud scheme, orchestrated by The Dime Savings Bank of New York, that led to Attorney General investigations in Massachusetts, New Hampshire and Connecticut and, ultimately, to multi-million dollar settlement awards and relief programs for consumers.

## Marie McDonnell Real Estate Counselor

*Owner, 1987-1991*

- Represented residential and commercial clients on a single agency basis who wished to buy, sell and exchange real estate.
- Provided real estate counseling, consulting, and financial analysis to clients.

## PROFESSIONAL LICENSES & DESIGNATIONS

**Real Estate Transactions and Fraud Examinations**

**Certified Fraud Examiner, February 2010-present**

**Certified Exchange Consultant Designation from The Academy of Real Estate, High Honors, 1989**

**Graduate, Realtor's Institute Designation (G.R.I.), September 1988**

**Registered Real Estate Broker, February 1988-present**

**Registered Real Estate Salesperson, December 1986-1988**

## SPEAKING ENGAGEMENTS, TRAINING & GUEST APPEARANCES

**Private and Public Events**

**Recorders Association of Missouri, Annual Convention**
- Presenter, April 24, 2012

**Massachusetts Continuing Legal Education, Multi-State National Mortgage Settlement**
- Co-Chair, April 13, 2012

**Constitutional Officers Association of New Jersey, Annual Convention**
- Speaker, September 14, 2011

**International Association of Clerks, Recorders, Election Officials & Treasurers, 40th Annual Convention**
- Speaker, June 2011

**O. Max Gardner III Bankruptcy and Foreclosure Fraud Defense Boot Camp**
- Presenter, February 2011

**O. Max Gardner III Bankruptcy Boot Camp, Co-Teacher, Session On Securitization**
- December 2010

**O. Max Gardner III Speaking on Securitization**
- September 2010

**Boston Bar Association, Recent Foreclosure Developments in Massachusetts, Presenter**
- April 13, 2010

**O. Max Gardner III Bankruptcy Boot Camp**
- Co-Teacher, Session On Securitization, December 2009 and February 2007

**O. Max Gardner III Bankruptcy Boot Camp**
- Attendee, September 2006

## QUALIFICATIONS

**Formal Education, Professional Development, Self-Study**

## Merrimack College

*North Andover, Massachusetts*

- Bachelor of Arts in American Studies with a Minor in Biology

## Association of Certified Fraud Examiners

**Certified Fraud Examiner, February 2010**

**Member**

**CFE Courses**

- Common Ethical Lapses by CFEs, March 2014
- Securities Fraud: Fundamental Principles and Resources, March 2014
- Legal Elements of a Fraud Examination, March 2014
- Why We Take the Road to the Ethical Dark Side, April 2013
- Ethical Issues for Fraud Examiners, June 2012
- CFE Exam Review Course, February 2010
- Building Your Fraud Examination Practice, June 2005
- Communicating the Results of Your Fraud Examination, June 2005

## Legal

**National Consumer Law Center & National Association of Consumer Advocates**

- Handling Mortgage Servicing Cases under the New CFPB Regulations

**New England Law | Boston Center for Business Law | Massachusetts Bar Association**

- Is the Uniform Commercial Code Still Relevant? February 2014
- Promissory Notes, Mortgages, Payment Systems, Foreclosure, and Other Muddled and Edgy Issues, February 2014

**Massachusetts Bar Association & Boston Bar Association**

- Presenter: Recent Foreclosure Developments in Massachusetts, April 13, 2010
- Massachusetts Mortgage Foreclosures, June 1997
- Foreclosure Defense Training, September 1992

**Practising Law Institute**

- Consumer Financial Services Litigation, April 2001

**O. Max Gardner III**

- Operation Strike Back – Bankruptcy and Foreclosure Fraud Defense Boot Camp, Presenter, February 2011
- Bankruptcy Boot Camp- Co-Taught Session On Securitization, December 2010 Bankruptcy Boot Camp, September 2006
- Speaking on Securitization, September 2010
- Bankruptcy Boot Camp- Co-Taught Session On Securitization, December 2009
- Speaking On Securitization Boot Camp- Co-Taught Session On Securitization, February 2007

**myLawCLE**

- MERS and Securitization in Contested Foreclosure Litigation, August 2013

## Structured Finance

**Certified Forensic Loan Auditors**

- Mortgage Securitization Auditor Training Course, May 2014

Ex 2 pg 75 of 227

**Bloomberg Seminars**

**Self-Study: Books**

- The Handbook of Mortgage-Backed Securities, Fabozzi (2001)
- Foundations of Financial Markets and Institutions, Fabozzi, Modigliani & Ferri (1998)
- Bond Markets, Analysis and Strategies, Fabozzi (2000)
- Fixed Income Mathematics, Fabozzi (1997)

**Self-Study: Publications**

- Legal Criteria for U.S. Structured Finance Transactions, Standard & Poors (2006)
- Common Terms in Structured Finance, Thatcher Proffitt, (2007)
- Structured Finance Glossary of Securitization Terms, Standard & Poors (2003)
- Securitization Glossary, Nomura (2004)
- Indexing Parties from Securitization Trusts and Mortgage-Backed Certificates into Land Record Indexes in the State of Georgia, Kobierowski (2008)
- Reg AB: Static Pool Survey and Structural Diagrams of Flow of Funds, Deloitte (2006)
- Litigation Issues in Securitizations, Boisture
- The Economics of Asset Securitization, Elul (2005)
- What to do When the Chain Breaks: The Missing Assignment Dilemma, Wolf (1997)

**Self-Study: Research & White Papers**

- Understanding The Securitization Of Subprime Mortgage Credit, Ashcraft & Schuermann (2007) (FRB Study)
- Predatory Structured Finance, Peterson (2006)
- Regions Morgan Keegan: The Abuse of Structured Finance, Craig McCann, PhD, CFA (2008)
- Securitization and Its Discontents: The Dynamics of Financial Product Development, Kettering (2007)
- Turning a Blind Eye: Wall Street Finance of Predatory Lending, Engle & McCoy (2006)
- The Delinquency of Subprime Mortgages, Danis & Pennington-Cross (2003) SEC Research

## Regulations & Compliance

**Massachusetts Bankers Association**

- Bank Compliance Academy, November 1998

**CUNA Mutual Group**

- Truth In Lending School, July 1999

**BankersOnline**

- How To Comply With The Rescission Rules, June 2006
- Truth In Lending – How To Audit Open-End Credit, December 2005

**Handbooks & Reference Tools**

- Truth In Lending Comptroller's Handbook, Office of the Comptroller of the Currency, 2008
- National Consumer Law Center Manuals
- Handbook of Escrow Procedures, Chandler, Mortgage Bankers Association of America
- Handbook of Loan Administration, Mortgage Bankers Association of America
- Quality Control for Mortgage Servicers, Kider, Mortgage Bankers Association of America

**Self-Study**

- Truth In Lending Act, Regulation Z, Official Staff Commentary
- Real Estate Settlement Procedures Act, Regulation X
- Alternative Mortgage Transaction Parity Act
- Home Ownership Equity Protection Act
- Federal Trade Commission Act – Unfair and Deceptive Acts and Practices
- Truth-in-Lending Manual - Ralph C. Clontz, Jr.
- Truth in Lending - National Consumer Law Center
- Repossessions & Foreclosures - National Consumer Law Center

2-76-227

- Unfair and Deceptive Acts and Practices - National Consumer Law Center
- Mortgage and Consumer Loan Disclosure Handbook - Kenneth F. Hall
- Residential Mortgage Lending: State Regulation Manual - Negroni & Pfaff

## Real Estate & Finance

**American Real Estate Academy**

- Residential Loan Market and Credit Today, August 2014
- Foreclosures, August 2014
- Environmental Issues, August 2014
- M.G.L. Ch. 93A, Consumer Protection & Business Regulation, August 2014
- Land Contracts, Lease Options, and Deeds of Trust, August 2014
- General Real Estate Laws, Regulations, and Practices, August 2014
- Seller Agency, April 2007
- Buyer Agency, April 2007
- Residential Rental Agency, April 2007
- Foreclosures Estate Sales And Auctions, April, 2007
- Residential Mortgage Loan Market & Credit Today, April 2007
- 1031 Exchange, April 2007Salespersons Qualifying Course, October 1986
- Licensing Renewal Course, August 2002
- Real Estate Brokers Course, January 1988

**Commonwealth of Massachusetts**

- Registered Real Estate Broker, February 1988
- Registered Real Estate Salesperson, December 1986

**Massachusetts Association of Realtors**

*Earned Graduate, Realtor's Institute Designation (G.R.I.)*

- Financing Concepts, November 1988
- HP-12C Calculator, October 1988
- Graduate Realtor's Institute III, September 1988
- Graduate Realtor's Institute II, April 1987
- Graduate Realtor's Institute I, February 1987

**Commercial-Investment Real Estate Council**

- CI 100: Marketing Techniques for Leasing and Selling Commercial Property, September 1988

**National Counsel of Exchangors**

*Earned Designation of Certified Exchange Consultant from The Academy of Real Estate, High Honors*

- Trade Secrets of Exchanging - Warren G. Harding, July 1989
- Gold card Qualifying Course - Wally Walker, January 1989

**Miscellaneous Real Estate Courses**

- Tom Peters' Excellence 1991, April 1991
- The Art of Real Estate Counseling - Charles Chatham, August 1988
- Nothing Down - Robert Allen, November 1986
- Sales Training - Tom Hopkins, April 1987
- Boot Camp - Tom Hopkins, January 1987

**Real Estate Finance**

- Private Lending - Dyches Boddiford, May 2001
- Roth IRA Wealthbuilding - Dyches Boddiford & Peter Fortunato, March 2001
- Mortgage Buying Workshop - Mike Meeker, March 1990 and May 1990
- International Financing - Robert Findling, October 1988
- Complete Course on Discounted Mortgages - Carl Abe, April 1988

Ex 2 pg 77 of 227

**Real Estate Acquisition**

- Corporation & LLC Combo Class – Jack Miller, May 2002
- Option Fundamentals - Jack Miller, June 2001

## Mortgage Auditing

**Consumer Loan Advocates**

- ARM AID-Mortgage Auditing Workshop, September 1991

**Self-Study**

- Understanding The Time Value of Money, Jack V. Michaels
- Mathematics of Finance, Cissell, Cissell & Flaspohler
- Handbook of Financial Mathematics, Justin H. Moore
- The Cost of Credit, National Consumer Law Center
- Forensic Accounting and Fraud Investigation for Non-Experts, Silverstone & Sheetz
- Financial Mathematics Handbook, Muksian
- Advanced Algebra, The University of Chicago School Mathematics Project
- Capitalization Theory and Techniques, Akerson

~~~~~~~~~~~~~~~~
~~~~~~~~~~~~~~~~

# EXHIBIT "B"



2 19 229

This page is part of your document - DO NOT DISCARD

06 1778125

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
08/10/06 AT 08:00am

TITLE(S) :

LEAD SHEET

FEE

| |
|---|
| FEE $ 52 W 16 |
| DAF $ 2 |
| C-20 |

D.T.T.

NOTIFICATION SENT-$4.00

CODE
20

CODE
19

CODE
9____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

ex 2 pg 80 of 227

Stew t Title

Recording Requested By:
WELLS FARGO BANK, N.A.

2

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

06 1778125

Prepared By:
WELLS FARGO BANK, N.A.

1595 SPRUCE ST., RIVERSIDE,
CA 925060000

[Space Above This Line For Recording Data]

21029656 9 -
5527-008-007

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 03, 2006 , together with all Riders to this document.

(B) "Borrower" is BOAZ TRIBELSKY, A SINGLE PERSON

Borrower is the trustor under this Security Instrument.

(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION organized and existing under the laws of THE UNITED STATES

0067222885

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

VMP-6(CA) (0005)

Page 1 of 16 Initials: BT

VMP MORTGAGE FORMS - (800)521-7291

08/10/06



BK 2 PG 81 of 227

210296569

3

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, DESCRIBED AS FOLLOWS:

LOT 156 OF TRACT NO. 4849, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51 PAGE(S) 64 AND 65 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

End of Legal Description

08/01/06

06 1778125

4

Lender's address is P.O. BOX 17339, BALTIMORE, MD 212971339

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA 92614
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 03, 2006
The Note states that Borrower owes Lender FIVE HUNDRED SIXTY THREE THOUSAND AND 00/100 Dollars
(U.S. $****563,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 01, 2036 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

08/01/06



06 1778125

EX 2 PG 83 of 227

5

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Parcel ID Number: 5527-008-007 which currently has the address of
724 NORTH GENESEE AVENUE [Street]
LOS ANGELES [City], California 90046 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.



08/10/06

06 1778125

124

EX 2 PG 84 of 227

6

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

08/10/05



06 1778125



2 85 227

7

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

08/10/06



06 1778125



EX 2 PG 86 of 227

6

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

08/10/06



06 1778125



2 87 227

9

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



08/10/06

06 1778125



2 88 227

10

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

08/10/06



06 1778125

11

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



08/10/06

06 1778125



2 90 227

12

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



08/10/06

06 1778125

2 pg 91 of 227

13

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



08/10/06

06 1778125

132

2 92 227

14

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

08/10/06



06 1778125



2093 227

15

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

08/01/05



06 1778125

2 94 227

16

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ (Seal) BOAZ TRIBELSKY -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

08/18/06



06 1778125



BK 2 PG 95 of 227

17

State of California
County of LOS ANGELES } ss.

On AUGUST 03, 06 before me, JOHN H. NIKOYAN, Notary Public personally appeared

BOAZ TRIBELSKY

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she~~/~~they~~ executed the same in his/~~her~~/~~their~~ authorized capacity(ies), and that by his/~~her~~/~~their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Seal)

JOHN H NIKOYAN
NOTARY PUBLIC

JOHN H. NIKOYAN
Commission # 1460031
Notary Public - California
Los Angeles County
My Comm. Expires Jan 31, 2008

This is a true and certified copy of the record if it bears the seal imprinted in purple ink of the Registrar-Recorder/County Clerk.

08/10/06

VMP-8(CA) (0006) Page 15 of 15 Initials: BT Form 3005 1/01

06 1778125

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

OCT 24 2013

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA

# EXHIBIT "C"

# NOTE

| | | |
|---|---|---|
| AUGUST 03, 2006 | BURBANK | CALIFORNIA |
| [Date] | [City] | [State] |

724 NORTH GENESEE AVENUE, LOS ANGELES, CA 90046

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****563,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on OCTOBER 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 17339, BALTIMORE, MD 212971339 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **3,698.51

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

[redacted]



[redacted]

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[signature] (Seal) -Borrower
BOAZ TRIBELSKY

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

U.S. Bank National Association, as Trustee

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
BY [signature]
JOAN M. MILLS, VICE PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF

US BANK, NATIONAL ASSOCIATION, AS TRUSTEE.
BY WELLS FARGO BANK, N.A.
ATTORNEY-IN-FACT
[signature]
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0022

*[Sign Original Only]*



EX 2 Pg 101 of 227

# EXHIBIT "D"

**This page is part of your document - DO NOT DISCARD**

# 20120626111

**Pages: 0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**04/27/12 AT 09:50AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

LEADSHEET

201204270010046

00005688301

003938656

SEQ:
01

DAR - Mail (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

3/0) 551-1007



EX 2 PG 103 of 227

(4)

2

04/27/2012
*20120626111*

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Los Angeles, California
"TRIBELSKY"

For Value Received, WELLS FARGO BANK, NATIONAL ASSOCIATION hereby grants, assigns and transfers to US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PRIME MORTGAGE TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-2 at 4801 FREDERICA STREET, OWENSBORO, KY 42301 all beneficial interest under that certain Deed of Trust dated 08/03/2006 , in the amount of $563,000.00, executed by BOAZ TRIBELSKY, A SINGLE PERSON to WELLS FARGO BANK, NATIONAL ASSOCIATION and Recorded: 08/10/2006 as Instrument No.: 06 1778125 in the County of Los Angeles, State of California.

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

WELLS FARGO BANK, NATIONAL ASSOCIATION
On 3/19/12

Joel Altringer
Vice President Loan Documentation

STATE OF Iowa
COUNTY OF Polk

On 3-19-12, before me, Dean McDanel, a Notary Public in and for Polk in the State of Iowa, personally appeared Joel Altringer, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

DEAN McDANEL
Commission Number 771349
My Commission Expires
January 24, 2015

Dean McDanel
Notary Expires: 1/24/15

(This area for notarial seal)

*AF1*AF1WFEB*03/16/2012 01:50:48 PM* WFEM01WFEBA0000000000000032101* CALOS A* CASTATE_TRUST_ASSIGN_ASEN **AF1WFEB*



EX 2 PG 104 of 227

This is a true and certified copy of the record if it bears the seal, imprinted in purple ink, of the Registrar-Recorder/County Clerk

OCT 24 2013

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA



EX 2 PG 105.0227

# EXHIBIT "E"

This page is part of your document - DO NOT DISCARD

1

**20131454753**

Pages: 0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

10/09/13 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

LEADSHEET

201310090120007

00008413279

005824890

SEQ:
04

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

r20



EX 2 p. 10 of 227

10/09/2013

*20131454753*

RECORDING REQUESTED BY:
NBS Default Services, LLC

AND WHEN RECORDED MAIL TO:
NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN No.: 5527-008-007

## SUBSTITUTION OF TRUSTEE

WHEREAS, **BOAZ TRIBELSKY, A SINGLE PERSON** was the original Trustor, **FIDELITY NATIONAL TITLE INS CO** was the original Trustee, and **WELLS FARGO BANK, N.A.** was the original Beneficiary, under that certain Deed of Trust dated **08/03/2006** and recorded on **08/10/2006**, as Instrument No.: **06 1778125**, of official records of Los Angeles County, California; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under the said Deed of Trust in place and stead of said present Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **NBS Default Services, LLC**, whose address is: **301 E. Ocean Blvd. Suite 1720, Long Beach, CA 90802**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2
By: Wells Fargo Bank, N.A. as servicing agent

Jameka Young

Name: Jameka Young
Title: Vice President Loan Documentation
Company: Wells Fargo Bank, N.A.
Date: 09/27/2013

North Carolina
Wake County

I, Anne Venable Holcomb, a Notary Public of Wake County and State of North Carolina, do hereby certify that Jameka Young personally came before me this day and acknowledged that she is the Vice President Loan Documentation, of Wells Fargo Bank, N.A. as servicing agent for U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2, and that she, as Vice President Loan Documentation, being authorized to do so, executed the foregoing on behalf of the corporation.

Witness my hand and official seal, this 27th day of September, 2013.

Anne Venable Holcomb (Signature)

Anne Venable Holcomb, Notary Public

ANNE VENABLE HOLCOMB NOTARY PUBLIC WAKE COUNTY, N.C.

My commission expires: 07/10/2015

003-CA-V2

9985-7807
1526852

148

48

2 108 227

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

OCT 24 2013

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA

# EXHIBIT "F"

This page is part of your document - DO NOT DISCARD

**20131454754**

Pages: 0006

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

10/09/13 AT 08:00AM

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |

LEADSHEET

201310090120007

00008413280

005824890

SEQ:
06

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

r20



EX 2 PG 111 of 227

(3)

10/09/2013

*20131454754*

RECORDING REQUESTED BY:
**ServiceLink**
**250 Commerce, 2nd Floor**
**Irvine, CA 92602**

WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
**301 E. Ocean Blvd. Suite 1720**
**Long Beach, CA 90802**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 5527-008-007 TS No.: 9985-7807 **TSG ORDER No.:1526852**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

**違約通知**

**注：本文件包含一个信息摘要**

채무 불이행 통지서

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**AVISO DE INCUMPLIMIENTO**

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

**PABATID NG HINDI PAGKAKABAYAD**

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

**THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ**

**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $46,621.45 as of 10/07/2013, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and Deed of Trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a

(3)

condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. 3

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Wells Fargo Bank, N. A.**
**c/o NBS Default Services, LLC**
**301 E. Ocean Blvd. Suite 1720**
**Long Beach, CA 90802**
**Attn: Foreclosure Dept.**
**Phone: 800-766-7751**
**Fax: 562-983-5379**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That NBS Default Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 08/03/2006, executed by BOAZ TRIBELSKY, A SINGLE PERSON, as Trustor(s), to secure certain obligations in favor of WELLS FARGO BANK, N.A., as beneficiary, recorded on 08/10/2006 as Document No.: 06 1778125, of Official Records in the Office of the Recorder of Los Angeles County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of **$563,000.00** that that beneficial interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:
**Installment of Principal and Interest which became due on 11/01/2012, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

EX 2 PG 13 of 227

(3)

4

- **NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

**The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.5. and/or 2923.55, wherever applicable. The Declaration is attached.**

**Dated: October 7, 2013**

**NBS Default Services, LLC, as Trustee for the Beneficiary**

**By:**____________________
**Aaron Shepherd**

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

③

6

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.55(c))*

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower(s): BOAZ TRIBELSKY

Property Address: 724 NORTH GENESEE AVENUE
LOS ANGELES CA 90046

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

**Wells Fargo Bank, N.A.**

By: [signature]
Name: Brittany Smith
Title: VP of Loan Documentation
Date: 09/17/2013

053_CA_V3



EX 2 Pg 15 of 227

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

OCT 24 2013

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA

# EXHIBIT "G"

**This page is part of your document - DO NOT DISCARD**

COUNTY OF LOS ANGELES CALIFORNIA

# 20150999384

Pages: 0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County, California

08/14/15 AT 08:00AM

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |

LEADSHEET

201508140160015

00011000442

007021331

SEQ:
01

ERDS - 8:00AM

THIS FORM IS NOT TO BE DUPLICATED

VTSG1526852-BE

RECORDING REQUESTED BY
**ServiceLink**
**3220 El Camino Real**
**Irvine, CA 92602**

AND WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
**301 E. Ocean Blvd. Suite 1720**
**Long Beach, CA 90802**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 9985-7807 TSG Order No.: 1526852 A.P.N.: 5527-008-007

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

**出售通知**

**注：本文件包含一个信息摘要**

매가 공고

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

## AVISO DE VENTA

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

## PABATID NG PAGBEBENTA

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/03/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded 08/10/2006 as Document No.: 06 1778125, of Official Records in the office of the Recorder of Los Angeles County, California, executed by: BOAZ TRIBELSKY, A SINGLE PERSON, as Trustor, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable in full at time of sale by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and state, and as more fully described in the above referenced Deed of Trust.



EX 2 Pg 119 of 227

**Sale Date & Time: 09/03/2015 at 10:00 AM**
**Sale Location: Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona CA**

The street address and other common designation, if any, of the real property described above is purported to be: 724 NORTH GENESEE AVENUE, LOS ANGELES, CA 90046

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$611,051.43** (Estimated) as of 08/27/2015. Accrued interest and additional advances, if any, will increase this figure prior to sale. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call, 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site, www.nationwideposting.com, for information regarding the sale of this property, using the file number assigned to this case, T.S.# 9985-7807. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802
800-766-7751
For Trustee Sale Information Log On To: www.nationwideposting.com or Call: 916-939-0772.

______________________________
**NBS Default Services, LLC, Vanessa Gomez, Foreclosure Associate**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only

# EXHIBIT "H"

mcdonnell

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *Loan Details*

Our inquiry using Bloomberg Professional's Residential Mortgage Backed Securities database indicates that the above referenced Mortgage Loan – ***or an economic interest therein*** – is being tracked as an asset of the ***Prime Mortgage Trust 2006-2*** (**"PRIME 2006-2"**). (*See* Loan Number 0016657250 below which collateralizes Groups 1.)



mcdonnell
PROPERTY ANALYTICS

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *Structured Finance Notes*

Bloomberg' Structure Finance Notes in the screen shot below provide a snapshot of several key entities who participated in structuring the Prime Mortgage Trust 2006-2 securitization.

PRIME 2006-2 B1 Paid Off CUSIP 74161YAV7 Yield --/--
As of -- Prepay -- WAL -- Collateral 89.9% WH30 6.3% --
95) Documents Structured Finance Notes

PRIME 2006-2 PRIME MORTGAGE TRUST

Underwriter
Lead Manager Bear Stearns & Co Inc

Original Servicers
Master EMC Mortgage Corp

Trustee
US Bank National Association
Paying Agent

| Originator/Seller | Deal% |
|---|---|
| Wells Fargo Bank, N.A. | 72.03 |
| AmSouth Bank | 12.4 |

Asset Manager

Swap Counterparty

Insurer Deal%

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2016 Bloomberg Finance L.P.
SN 263960 FDT GMT-7:00 H443-1704-0 25-Jul-2016 14:14:05

McDonnell Property Analytics
© 2016 Bloomberg



2-00123227

mcdonnell
PROPERTY ANALYTICS

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *Collateral Performance*

**Bloomberg's Collateral Performance screen shot below indicates that as of July 25, 2016, there were only 105 of the original 575 loans remaining in the Deal and that the 60 day delinquency rate stood at 0.00%.**

PRIME 2006-2 B1 Paid Off CUSIP 74161YAV7 Yield --/--
As of -- Prepay -- WAL -- Collateral 89.9% WH30 6.3% --
PRIME 2006-2 B1 Mtge 5) Export 6) Video Tutorial 7) Settings Collateral Performance
CUSIP 74161YAV7 6.560(226)120 US RMBS
Months of history 6 All Collateral
10) Classic 13) Delnq 13) Mods 14) Characteristics 15) Speeds 16) Custom 17) Transition 18) All

| | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | Issuance |
|---|---|---|---|---|---|---|---|
| 101) Balance (M) | 37,810 | 39,305 | 40,644 | 41,837 | 41,973 | 43,057 | 281,850 |
| 102) Pool Factor | 0.134 | 0.139 | 0.144 | 0.148 | 0.149 | 0.153 | 1.000 |
| 103) # of Loans | 105 | 108 | 112 | 114 | 115 | 119 | 575 |
| 104) WAC | 6.560 | 6.563 | 6.565 | 6.573 | 6.571 | 6.554 | 6.667 |
| 105) Net WAC | 6.283 | 6.287 | 6.289 | 6.297 | 6.295 | 6.279 | 6.396 |
| 106) WAM | 226 | 228 | 229 | 230 | 231 | 231 | 317 |
| 107) WALA | 120 | 119 | 118 | 117 | 116 | 115 | 4 |
| 108) WALTV (Amort) % | 68.15 | 68.95 | 68.57 | 68.24 | 68.18 | 68.47 | 71.60 |
| 109) HPI LTV (Amort) % | | 78.05 | 77.75 | 77.56 | 78.96 | 79.22 | 72.12 |
| 110) LTV > 80% | 14.66 | 17.27 | 16.70 | 16.23 | 16.18 | 16.37 | 20.64 |
| 111) Delinq 30 days % | 3.01 | 4.24 | 4.94 | 3.06 | 4.35 | 3.23 | 0.00 |
| 112) Delinq 60 days % | 0.00 | 0.00 | 0.00 | 0.00 | 1.12 | 1.98 | 0.00 |
| 113) Delinq 90 days % | 0.43 | 1.88 | 1.82 | 1.13 | 1.68 | 3.20 | 0.00 |
| 114) Bankruptcy % | 6.59 | 6.35 | 4.80 | 4.67 | 4.66 | 4.55 | 0.00 |
| 115) Foreclosure % | 7.91 | 7.61 | 9.89 | 12.40 | 12.51 | 10.64 | 0.00 |
| 116) REO % | 1.30 | 1.25 | 1.21 | 0.70 | 0.00 | 0.00 | 0.00 |
| 117) Delinq. 60+ % | 16.23 | 17.09 | 17.71 | 18.90 | 19.97 | 20.37 | 0.00 |
| 118) Delinq. 90+ % | 16.23 | 17.09 | 17.71 | 18.90 | 18.84 | 18.39 | 0.00 |
| 119) Cumul Loss % | 6.661 | 6.532 | 6.491 | 6.491 | 6.491 | 6.491 | |
| 120) Second Lien % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 121) First Lien % | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 99.63 |
| 122) # of Mod Loans Cur Period | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2016 Bloomberg Finance L.P.
SN 263960 PDT GMT-7:00 H443-1704-0 25-Jul-2016 14:14:54


© 2016 Bloomberg

mcdonnell
PROPERTY ANALYTICS

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *View All Classes #1*

Bloomberg's View All Classes screen shot below cross-references each Group designation with a CUSIP Number. The CUSIP Numbers for Group1 listed below in the first 7 rows.

VAC

99) Options — View All Classes
PRIME 2006-2 PRIME MORTGAGE TRUST — 21 Classes
Template Agency

| | SSA | CF | Class | Orig(000) | Cpn | OWAL | Factor | Cusip | Tranche Description | Group |
|---|---|---|---|---|---|---|---|---|---|---|
| 1) | | Y | 1A11 | 29,183 | 0.938 | 7.04 | 0.1916 | 74161YAL9 | FLT, PAC(11), AS | G1-1 |
| 2) | | Y | 1A12 | 29,183 | 6.062 | | 0.1916 | 74161YAM7 | IO, INV, NTL | G1-1 |
| 3) | | Y | 1A13 | 43,775 | 5.750 | 7.04 | 0.1916 | 74161YAN5 | PAC(11), AS | G1-1 |
| 4) | | Y | 1A14 | 84,045 | 6.250 | 2.98 | 0.0707 | 74161YAP0 | SEQ, AS | G1-1 |
| 5) | | Y | 1A15 | 5,000 | 6.250 | 19.90 | 0.8861 | 74161YAQ8 | SEQ, AS | G1-1 |
| 6) | | Y | 1A21 | 48,365 | 0.818 | 5.41 | 0.2365 | 74161YAR6 | FLT, AS | G1-2 |
| 7) | | Y | 1A22 | 48,365 | 6.682 | | 0.2365 | 74161YAS4 | IO, INV, NTL | G1-2 |
| 8) | | Y | 2A11 | 12,817 | 5.500 | 4.38 | 0.0007 | 74161YAT2 | SEQ, AS | G2-1 |
| 9) | | Y | 2A21 | 44,779 | 6.000 | 4.77 | 0.0353 | 74161YAU9 | SEQ, AS | G2-2 |
| 10) | | | B1 | 4,509 | 6.000 | 10.25 | 0.0000 | 74161YAV7 | SUB, NAS | All Collateral |
| 11) | | | B2 | 2,537 | 6.000 | 10.25 | 0.0000 | 74161YAW5 | SUB, NAS | All Collateral |
| 12) | | | B3 | 1,127 | 6.000 | 10.25 | 0.0000 | 74161YAX3 | SUB, NAS | All Collateral |
| 13) | | | BX | 8,175 | 0.000 | | 0.0000 | 74161YAB1 | IO, CSTR, NTL | All Collateral |
| 14) | | Y | X | 43,923 | 0.732 | | 0.0956 | 74161YAA3 | IO, CSTR, NTL | PREMX |
| 15) | | Y | PO | 2,610 | 0.000 | 5.05 | 0.1659 | 74161YAC9 | PO, RSTP | DISCPO |
| 16) | | | R1 | 0 | 5.500 | | 0.0000 | 74161YAH8 | R, AS | G2-1 |
| 17) | | | R2 | 0 | 5.500 | | 0.0000 | 74161YAJ4 | R, AS | G2-1 |
| 18) | | | R3 | 0 | 5.500 | | 0.0000 | 74161YAK1 | R, AS | G2-1 |
| 19) | | | B4 | 1,410 | 6.136 | | 0.0000 | 74161YAE5 | SUB, CSTR, NAS | All Collateral |
| 20) | | | B5 | 986 | 6.283 | | 0.0000 | 74161YAF2 | SUB, CSTR, NAS | All Collateral |
| 21) | | | B6 | 705 | 6.369 | | 0.0000 | 74161YAG0 | SUB, CSTR, NAS | All Collateral |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2016 Bloomberg Finance L.P.
SN 263960 FDT GMT-7:00 H443-1704-0 25-Jul-2016 14:14:42


© 2016 Bloomberg

mcdonnell

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *Ratings History*

Standard & Poor's and Moody's originally rated this Deal as AAA; but subsequently downgraded their ratings to junk bond status, and then withdrew their reporting.

PRIME 2006-2 B1 Mtge — 1) Setup Alert — Ratings History

CUSIP 74161YAV7 — Coupon 6%
CMO SUB,NAS — Maturity Date 11/25/2036
Issue Date 11/30/2006

Display only current ratings

Agencies
Standard & Poors — Moody's — Other
Fitch — DBRS
KBRA — Morningstar

| Agency | Rating Type | Rating | Effective Date |
|---|---|---|---|
| Moody's | Long Term | WR (sf) | 3/03/2014 |
| Standard & Poor's | Long Term | NR | 8/13/2013 |
| Standard & Poor's | Long Term | D (sf) | 8/24/2011 |
| Moody's | Long Term | C (sf) | 4/30/2010 |
| Standard & Poor's | Long Term | CC (sf) | 2/22/2010 |
| Standard & Poor's | Long Term | CCC | 7/01/2009 |
| Moody's | Long Term | Ca | 6/05/2009 |
| Moody's | Long Term | Baa2 *- | 3/19/2009 |
| Standard & Poor's | Long Term | BB *- | 2/26/2009 |
| Moody's | Long Term | Baa2 | 12/10/2008 |
| Moody's | Long Term | Aa2 *- | 10/06/2008 |
| Standard & Poor's | Long Term | BB | 5/01/2008 |
| Moody's | Long Term | Aa2 | 12/18/2006 |

Legend Up / Down / No Change / Initial

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2016 Bloomberg Finance L.P.
SN 263960 FDT GMT-7:00 H443-1704-0 25-Jul-2016 14:14:20

**McDonnell Property Analytics**
© 2016 Bloomberg



EX 2 PG 26 OF 227

mcdonnell

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

## *Data Points*

Data Points denote instances where information is contained both in the "Bloomberg Loan Level Details" and the "Loan Documents" we reviewed.

Here, 20 our of 21 Data Points are a perfect match, including the Loan Number. Thus, there is sufficient evidence to suggest that the subject Mortgage Loan – ***or an economic interest therein*** – is being tracked as an asset of the Banc of America Mortgage 2004-D Trust.

| BLOOMBERG FIELDS | BLOOMBERG LOAN LEVEL DETAILS | LOAN DOCUMENTS | DATA POINTS |
|---|---|---|---|
| Loan[1] | 16657250 | 0067222885 | 1. No Match |
| Pay History[2] | BBBBBBBBBBBFFFFF F999999999999FFFFF F99999999999966663 663CCCCCCCCCCCC CCCCCCCCCCCCCC CCCCCCCCCCCCCC CCCCCCCCCCCCCC CCCCCCCC | | |
| Current Balance | $464,126.40 | | |
| Original Balance | $563,000.00 | | 2. Match |
| Groups | 1 | | |
| Zip Code | 90046 | | 3. Match |

[1] The Loan ID is often reserialized for securitization purposes especially when the pooled mortgage loans were originated by different lenders as in this case.

[2] *Bloomberg Notations*: "R" stands for Real Estate Owned; "F" stands for Foreclosure; "B" indicates a Bankruptcy; "9" represents a 90-day delinquency; "6" means 60-days late; "3" means 30-days late; and "C" stands for Current.

**McDonnell Property Analytics**
© 2016 Bloomberg

mcdonnell

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

| BLOOMBERG FIELDS | BLOOMBERG LOAN LEVEL DETAILS | LOAN DOCUMENTS | DATA POINTS |
|---|---|---|---|
| Modification Type | | | |
| Modification Date of Last Modification | | | |
| Gross Coupon | 6.875 | | 4. Match |
| Is Advancing | Yes | | |
| Payment Due | $3,698.51 | | |
| Original Payment | $3.698.51 | | 5. Match |
| Capitalization | $0.00 | | |
| Cumulative Interest Servicer Recaptured | ($69,291.36) | | |
| Cumulative Principal Servicer Advanced | $48,919.55 | | |
| Cumulative Principal Servicer Recaptured | ($19,472.87) | | |
| Cumulative Servicer Advanced Interest | $154,498.49 | | |
| Outstanding Interest Advances | $85,207.13 | | |
| Outstanding Principal Advances | $29,446.68 | | |
| Outstanding Servicer Advances | $114,653.81 | | |
| Servicer Name | JPMorgan Chase Bank NA | | |
| Documentation | L | | |
| Original LTV | 75 | | |
| Amortized LTV | 61 | | |
| Credit Score | 715 | | |
| Age | 118 | | |
| Months to Maturity | 242 | | |

**McDonnell Property Analytics**
© 2016 Bloomberg



2 128 227

mcdonnell
PROPERTY ANALYTICS

www.mcdonnellanalytics.com

# Bloomberg Research Results

*July 27, 2016*

Borrower: Boaz Tribelsky
Lender: Wells Fargo Bank, N.A.
Date of Transaction: August 3, 2006

| BLOOMBERG FIELDS | BLOOMBERG LOAN LEVEL DETAILS | LOAN DOCUMENTS | DATA POINTS |
|---|---|---|---|
| Loan Type | Fixed | | |
| Geographics | CA | | 6. Match |
| Property Type | SF | | 7. Match |
| Occupancy | Owner Occupied | | 8. Match |
| Loan Purpose | RE | | 9. Match |
| MSA | Los Angeles-Long Beach-Santa Ana, CA | | |
| Total Fee | 0.263 | | 10. Match |
| Balloon | No | | |

~ END ~


© 2016 Bloomberg

# EXHIBIT "I"

Prospectus Supplement dated November 30, 2006 (to prospectus dated October 23, 2006)

**$278,748,221**
**(Approximate)**

# Prime Mortgage Trust 2006-2
**Issuing Entity**

## EMC Mortgage Corporation
**Sponsor and Master Servicer**

## Structured Asset Mortgage Investments II Inc.
**Depositor**

**Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2**

**You should consider carefully the risk factors beginning on page S-18 in this prospectus supplement.**

**The Trust**

The trust will consist primarily of a pool of fixed rate mortgage loans secured primarily by first liens on one- to four-family residential properties, divided into two loan groups. The trust will be represented by twenty-one classes of certificates, eighteen of which are offered under this prospectus supplement.

**Credit Enhancement**

- the offered certificates will have credit enhancement in the form of subordination.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

**The Attorney General of the state of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.**

The price to investors will vary from time to time and will be determined at the time of sale. The proceeds to the depositor from the offering are expected to be approximately 100.50% of the aggregate principal amount of the offered certificates, plus accrued interest thereon, less expenses which are estimated to be $450,000. *See "Method of Distribution" in this prospectus supplement.*

**Bear, Stearns & Co. Inc.**
**Underwriter**

**Important notice about information presented in this prospectus supplement and the base prospectus**

**You should rely only on the information contained in this document. We have not authorized anyone to provide you with different information.**

We provide information to you about the offered certificates in two separate documents that progressively provide more detail:

- the base prospectus, which provides general information, some of which may not apply to this series of certificates; and

- this prospectus supplement, which describes the specific terms of this series of certificates.

**If the description of your certificates in this prospectus supplement differs from the related description in the base prospectus, you should rely on the information in this prospectus supplement.**

The Depositor's principal offices are located at 383 Madison Avenue, New York, New York 10179 and its phone number is (212) 272-2000.

---

**European Economic Area**

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (referred to in this prospectus supplement as a Relevant Member State), each Underwriter has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (referred to in this prospectus supplement as a Relevant Implementation Date) it has not made and will not make an offer of notes to the public in that Relevant Member State prior to the publication of a prospectus in relation to the notes which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of notes to the public in that Relevant Member State at any time:

(a) to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

(b) to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000 and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c) in any other circumstances which do not require the publication by the Issuer of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of notes to the public" in relation to any notes in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the notes to be offered so as to enable an investor to decide to purchase or subscribe the notes, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in

that Member State and the expression referred to in this prospectus supplement as Prospectus Directive means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

**United Kingdom**

Each underwriter has represented and agreed that:

(a) it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA) received by it in connection with the issue or sale of the notes in circumstances in which Section 21(1) of the FSMA does not apply to the Issuer; and

(b) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the notes in, from or otherwise involving the United Kingdom.

---

**TABLE OF CONTENTS**

**PROSPECTUS SUPPLEMENT**

SUMMARY OF PROSPECTUS SUPPLEMENT
TRANSACTION STRUCTURE
RISK FACTORS
THE MORTGAGE POOL
STATIC POOL INFORMATION
THE ISSUING ENTITY
THE DEPOSITOR
THE SPONSOR
THE MASTER SERVICER AND THE SERVICERS
MORTGAGE LOAN ORIGINATION
ADDITIONAL INFORMATION
DESCRIPTION OF THE CERTIFICATES
YIELD ON THE CERTIFICATES
POOLING AND SERVICING AGREEMENT
FEDERAL INCOME TAX CONSEQUENCES
STATE AND OTHER TAXES
METHOD OF DISTRIBUTION
SECONDARY MARKET
LEGAL MATTERS
LEGAL PROCEEDINGS
AFFILIATIONS, RELATIONSHIPS AND RELATED TRANSACTIONS
RATINGS
LEGAL INVESTMENT
AVAILABLE INFORMATION
ERISA CONSIDERATIONS
GLOSSARY
ANNEX I GLOBAL CLEARANCE, SETTLEMENT AND TAX DOCUMENTATION PROCEDURES

SCHEDULE A

---

## SUMMARY OF PROSPECTUS SUPPLEMENT

**The following summary is a very broad overview of the offered certificates and does not contain all of the information that you should consider in making your investment decision. To understand all of the terms of the offered certificates, read carefully this entire prospectus supplement and the entire base prospectus. A glossary is included at the end of this prospectus supplement. Capitalized terms used but not defined in the glossary at the end of this prospectus supplement have the meanings assigned to them in the glossary at the end of the base prospectus.**

| | |
|---|---|
| Issuing Entity | Prime Mortgage Trust 2006-2. |
| Title of Series | Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2. |
| Cut-off Date | November 1, 2006. |
| Closing Date | On or about November 30, 2006. |
| Depositor | Structured Asset Mortgage Investments II Inc. |
| Sponsor | EMC Mortgage Corporation, an affiliate of the depositor and Bear, Stearns & Co. Inc. |
| Master Servicer | EMC Mortgage Corporation, an affiliate of the depositor and Bear, Stearns & Co. Inc. |
| Originators | AmSouth Bank and Wells Fargo Bank, N.A. and various other originators, none of which originated more than 10% of the mortgage loans in the aggregate. |
| Servicers | EMC Mortgage Corporation and Wells Fargo Bank, N.A and another servicer, which is not servicing more than 10% of the mortgage loans in the aggregate. |
| Trustee | U.S. Bank National Association. |
| Distribution Dates | Distributions on the offered certificates will be made on the 25th day of each month, or, if such day is not a business day, on the next succeeding business day, beginning in December 2006. |
| Offered Certificates | The classes of offered certificates and their pass-through rates and current principal amounts are set forth in the table below. |

2 39 0227

**Offered Certificates**

| Class | Pass-Through Rate | Initial Current Principal Amount | Initial Rating (S&P/Moody's) | Designation |
|---|---|---|---|---|
| I-A1-1 | Adjustable Rate (1) | $ 29,183,200 | AAA/Aaa | Senior/PAC/Floating Rate |
| I-A1-2 | Adjustable Rate (1) | $ 0 | AAA/Aaa | Senior/Inverse Floating Rate |
| I-A1-3 | 5.75% | $ 43,774,800 | AAA/Aaa | Senior/PAC/Fixed Rate |
| I-A1-4 | 6.25% | $ 84,045,342 | AAA/Aaa | Senior/Fixed Rate |
| I-A1-5 | 6.25% | $ 5,000,000 | AAA/Aaa | Senior/Fixed Rate |
| I-A2-1 | Adjustable Rate (1) | $ 48,365,000 | AAA/Aaa | Senior/Floating Rate |
| I-A2-2 | Adjustable Rate (1) | $ 0 | AAA/Aaa | Senior/Inverse Floating Rate |
| II-A1-1 | 5.50% | $ 12,817,249 | AAA/Aaa | Senior/Fixed Rate |
| II-A2-1 | 6.00% | $ 44,779,000 | AAA/Aaa | Senior/Fixed Rate |
| B-1 | 6.00% | $ 4,509,000 | AA/Aa2 | Subordinate/Fixed Rate |
| B-2 | 6.00% | $ 2,537,000 | A/A2 | Subordinate/Fixed Rate |
| B-3 | 6.00% | $ 1,127,000 | BBB/Baa2 | Subordinate/Fixed Rate |
| BX | Variable Rate | $ 0 | AA/Aa2 | Subordinate/Interest Only/ Variable Rate |
| X | Variable Rate | $ 0 | AAA/Aaa | Senior/Interest Only/ Variable Rate |
| PO | N/A | $ 2,610,480 | AAA/Aaa | Senior/Principal Only |
| R-1 | 5.50% | $ 50 | AAA/-- | Residual Certificate |
| R-2 | 5.50% | $ 50 | AAA/-- | Residual Certificate |
| R-3 | 5.50% | $ 50 | AAA/-- | Residual Certificate |
| **Total Offered Certificates:** | | $ 278,748,221 | | |
| **Non-Offered Certificates** | | | | |
| B-4 | Variable Rate | $ 1,410,000 | BB/-- | Subordinate/Variable Rate |
| B-5 | Variable Rate | $ 986,000 | B/-- | Subordinate/Variable Rate |
| B-6 | Variable Rate | $ 705,374 | --/-- | Subordinate/Variable Rate |
| Total Non-Offered Certificates: | | $ 3,101,374 | | |
| **Total Certificates:** | | $281,849,595 | | |

(1)

| Class | Initial Pass-Through Rate | Maximum/Minimum Pass-Through Rate | Formula for Calculation of Class Pass-Through Rate |
|---|---|---|---|
| Class I-A1-1 | 5.77% | 7.00%/0.45% | One-Month LIBOR + 0.45% |
| Class I-A1-2 | 1.23% | 6.55%/0.00% | 6.55% - One-Month LIBOR |
| Class I-A2-1 | 5.65% | 7.50%/0.33% | One-Month LIBOR + 0.33% |
| Class I-A2-2 | 1.85% | 7.17%/0.00% | 7.17% - One-Month LIBOR |

**Other Information:**

**Class I-A1-1, Class I-A1-2, Class I-A2-1, Class I-A2-2, Class X and Class BX Certificates:**

The pass-through rates on the Class I-A1-1, Class I-A1-2, Class I-A2-1, Class I-A2-2, Class X and Class BX Certificates are described in detail under the headings "Summary of Prospectus Supplement — Description of the Certificates — Pass-Through Rates" and "Description of the Certificates — Interest Distributions" in this prospectus supplement.

**Class I-A1-2 Certificates:**

The Class I-A1-2 Certificates do not have an initial current principal amount. The Class I-A1-2 Certificates have an initial notional amount of approximately $29,183,200.

**Class I-A2-2 Certificates:**

The Class I-A2-2 Certificates do not have an initial current principal amount. The Class I-A2-2 Certificates have an initial notional amount of approximately $48,365,000.

**Class X Certificates:**

The Class X Certificates do not have an initial current principal amount. The Class X Certificates have an initial notional amount of approximately $43,922,514. The Class X Certificates will not have a current principal amount and will not be entitled to distributions of principal. The Class X Certificates will accrue interest on its notional amount, which will be equal to the sum of (i) the aggregate scheduled principal balance of the mortgage loans in loan group I that have net mortgage rates greater than 7.500% per annum and (ii) the aggregate scheduled principal balance of the mortgage loans in loan group II that have net mortgage rates greater than 6.000% per annum.

**Class BX Certificates:**

The Class BX Certificates do not have an initial current principal amount. The Class BX Certificates have an initial notional amount of approximately $8,173,000. The Class BX Certificates will not have a current principal amount and will not be entitled to distributions of principal. The Class BX Certificates will bear interest at a variable pass-through rate equal to the excess, if any, of (a) the weighted average of 6.250%, 7.500%, 5.500% and 6.000% per annum, weighted in proportion to the results of subtracting from each of the respective aggregate principal balances of the mortgage loans in subgroup I-1 (other than the portion of the mortgage loans in subgroup I-1 attributable to the Class PO Certificates), subgroup I-2, subgroup II-1 (other than the portion of the mortgage loans in subgroup II-1 attributable to the Class PO Certificates) and subgroup II-2 the aggregate current principal amount of the related class or classes of senior certificates, other than the interest only certificates and the current principal amount of the Class PO Certificates attributable to subgroup I-1 or subgroup II-1, respectively, over (b) 6.000% per annum based on a notional amount equal to the aggregate scheduled principal balance of the Class B-1, Class B-2 and Class B-3 Certificates.

---

**The Issuing Entity**

EX 2 Pg 136 of 227

The Depositor will establish a trust, designated as Prime Mortgage Trust 2006-2, for the certificates, pursuant to a pooling and servicing agreement dated as of November 1, 2006, among the depositor, the master servicer, the trustee and EMC as seller. There are twenty-one classes of certificates representing the trust.

*See "Description of the Certificates" in this prospectus supplement.*

The certificates represent in the aggregate the entire beneficial ownership interest in the trust. Distributions of interest and/or principal on the offered certificates will be made only from payments received in connection with the mortgage loans described below.

**The Originators**

Approximately 58.11% of the group II mortgage loans and approximately 12.40% of the mortgage loans in the aggregate, were originated by AmSouth Bank. Approximately 82.56% and 33.18% of the group I mortgage loans and group II mortgage loans, respectively, and approximately 72.03% of the mortgage loans in the aggregate, were originated by Wells Fargo Bank, N.A. The remainder of the mortgage loans were originated by various originators, none of which originated more than 10% of the mortgage loans in the aggregate.

**The Servicers**

Approximately 16.32% and 61.38% of the group I mortgage loans and group II mortgage loans, respectively, and approximately 25.93% of the mortgage loans in the aggregate, will be serviced by EMC Mortgage Corporation. Approximately 82.56% and 33.18% of the group I mortgage loans and group II mortgage loans, respectively, and approximately 72.03% of the mortgage loans in the aggregate, will be serviced by Wells Fargo Bank, N.A. The remainder of the mortgage loans will be serviced by another servicer, which will not service more than 10% of the mortgage loans in the aggregate.

**The Mortgage Loans**

The issuing entity will contain approximately 575 first lien fixed rate mortgage loans secured by one- to four-family residential real properties and individual condominium units. The mortgage loans have an aggregate principal balance of approximately $281,849,596 as of the cut-off date.

The mortgage loans have been divided into two loan groups, designated as loan group I and loan group II as more fully described below and in Schedule A to this prospectus supplement. The group I senior certificates and group II senior certificates will be entitled to receive distributions solely with respect to the group I mortgage loans and group II mortgage loans, respectively, except under the limited circumstances described in this prospectus supplement. The Class BX, Class B-1, Class B-2 and Class B-3 Certificates will be entitled to receive distributions from both loan groups, as more fully described in this prospectus supplement.

***Total Pool***

The following table summarizes the approximate characteristics of all of the mortgage loans as of the cut-off date:

| | |
|---|---|
| Number of mortgage loans: | 575 |
| Aggregate scheduled principal balance: | $281,849,596 |
| Range of scheduled principal balances: | $21,562 to $2,589,480 |
| Average scheduled principal balance: | $490,173 |
| Range of mortgage rates: | 5.250% to 8.875% |
| Weighted average mortgage rate: | 6.666% |

EX 2 PG 37 of 227

| | |
|---|---|
| Range of remaining terms to stated maturity (months): | 116 to 358 |
| Weighted average remaining terms to stated maturity (months): | 317 |
| Weighted average loan-to-value ratio at origination: | 69.45% |
| Balloon Loans: | 1.19% |

*The Group I Mortgage Loans*

The following table summarizes the approximate characteristics of all of the mortgage loans in loan group I as of the cut-off date:

| | |
|---|---|
| Number of mortgage loans: | 466 |
| Aggregate scheduled principal balance: | $221,725,384 |
| Range of scheduled principal balances: | $21,562 to $2,589,480 |
| Average scheduled principal balance: | $475,806 |
| Range of mortgage rates: | 5.25% to 8.875% |
| Weighted average mortgage rate: | 6.769% |
| Range of remaining terms to stated maturity (months): | 204 to 358 |
| Weighted average remaining terms to stated maturity (months): | 356 |
| Weighted average loan-to-value ratio at origination: | 70.69% |
| Balloon Loans: | 1.52% |

*The Group II Mortgage Loans*

The following table summarizes the approximate characteristics of all of the mortgage loans in loan group II as of the cut-off date:

| | |
|---|---|
| Number of mortgage loans: | 109 |
| Aggregate scheduled principal balance: | $60,124,212 |
| Range of scheduled principal balances: | $82,389 to $2,000,000 |
| Average scheduled principal balance: | $551,598 |
| Range of mortgage rates: | 5.375% to 8.000% |
| Weighted average mortgage rate: | 6.290% |
| Range of remaining terms to stated maturity (months): | 116 to 178 |
| Weighted average remaining terms to stated maturity (months): | 174 |
| Weighted average loan-to-value ratio at origination: | 64.88% |
| Balloon Loans: | 0.00% |

**Removal and Substitution of a Mortgage Loan**

The trustee will acknowledge the sale, transfer and assignment to it by the depositor of the mortgage loans, and receipt of, subject to further review by the custodian, the mortgage loan files and the exceptions. If the trustee receives written notice that any mortgage loan is defective on its face or if a representation or warranty with respect to any mortgage loan is breached, the trustee, or the custodian on its behalf, will promptly notify the sponsor of such

EX 2 PG 138 of 227

defect or breach. If the sponsor cannot or does not cure such defect or breach within 90 days from the date of notice and, in each case such defect materially and adversely affects the interests of the certificateholders in the mortgage loan, the sponsor will, in accordance with the terms of the pooling and servicing agreement, provide the trustee with a substitute mortgage loan (if within two years of the closing date) or repurchase the mortgage loan within 90 days of the date of notice; provided that, if such defect would cause the mortgage loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Internal Revenue Code, any such cure or substitution must occur within 90 days from the date such breach was discovered.

**Description of the Certificates**

***General***

The issuing entity will issue the senior certificates in two senior certificate groups, each referred to in this prospectus supplement as a certificate group. The Class I-A1-1, Class I-A1-2, Class I-A1-3, Class I-A1-4, Class I-A1-5, Class I-A2-1 and Class I-A2-2 Certificates will represent interests principally in loan group I. The Class X Certificates and Class PO Certificates will each represent senior interests in loan group I and loan group II. The Class II-A1-1, Class II-A2-1, Class R-1, Class R-2 and Class R-3 Certificates will represent interests principally in loan group II. The Class I-A1-1, Class I-A1-2, Class I-A1-3, Class I-A1-4, Class I-A1-5, Class I-A2-1, Class I-A2-2, Class X and Class PO Certificates are sometimes referred to collectively in this prospectus supplement as the group I senior certificates. The Class II-A1-1, Class II-A2-1, Class X, Class PO, Class R-1, Class R-2 and Class R-3 Certificates are sometimes referred to collectively in this prospectus supplement as the group II senior certificates. The group I senior certificates and group II senior certificates are sometimes referred to collectively in this prospectus supplement as the senior certificates.

The Class B-1, Class B-2, Class B-3 and Class BX Certificates will each represent subordinated interests in both loan groups, and are sometimes referred to herein as the offered subordinate certificates.

In addition, the Class R-1, Class R-2 and Class R-3 Certificates, also referred to collectively in this prospectus supplement as the Class R Certificates or the residual certificates, will each represent the residual interest in a real estate mortgage investment conduit established by the issuing entity. The Class R-1, Class R-2 and Class R-3 Certificates, together with the Class I-A1-1, Class I-A1-2, Class I-A1-3, Class I-A1-4, Class I-A1-5, Class I-A2-1, Class I-A2-2, Class II-A1-1, Class II-A2-1, Class X, Class PO, Class B-1, Class B-2, Class B-3 and Class BX Certificates, are sometimes referred to collectively in this prospectus supplement as the offered certificates.

The issuing entity will also issue the Class B-4, Class B-5 and Class B-6 Certificates, which are not offered by this prospectus supplement, and are sometimes referred to collectively in this prospectus supplement as the non-offered subordinate certificates. The non-offered subordinate certificates have an aggregate initial current principal amount of approximately $3,101,374. The non-offered subordinate certificates, together with the offered certificates, are sometimes referred to herein as the certificates. The offered subordinate certificates and non-offered subordinate certificates are sometimes referred to herein as the subordinate certificates.

The last scheduled distribution date for the offered certificates is November 25, 2036.

***Record Date***

For each class of offered certificates, other than the Class I-A1-1, Class I-A1-2, Class I-A2-1 and Class I-A2-2 Certificates, and any distribution date, the close of business on the last business day of the month preceding the month in which such distribution date occurs. For the Class I-A1-1, Class I-A1-2, Class I-A2-1 and Class I-A2-2 Certificates, the business day preceding the applicable distribution date so long as such certificates remain in book-entry form; and otherwise, the close of business on the last business day of the month preceding the month in which such distribution date occurs.

***Denominations***



X 2 P 139 227

For each class of offered certificates (other than the Class I-A1-5 Certificates and residual certificates) $100,000 and multiples of $1.00 in excess thereof except that one certificate of each class may be issued in the remainder of the class. For the Class I-A1-5 Certificates, $1,000 and multiples of $1.00 in excess thereof. The Class R-1, Class R-2 and Class R-3 Certificates will each be issued as a single certificate of $50.

***Registration of Offered Certificates***

The issuing entity will issue the offered certificates, other than the residual certificates, initially in book-entry form. Persons acquiring interests in these offered certificates will hold their beneficial interests through The Depository Trust Company, Clearstream Banking, société anonyme or the Euroclear System. The issuing entity will issue the residual certificates in certificated fully-registered form.

*We refer you to "Description of the Certificates—Book-entry Certificates" in this prospectus supplement.*

***Pass-Through Rates***

The pass-through rates on each class of offered certificates are set forth on page S-6 hereof or calculated as follows, if applicable:

The Class I-A1-1 Certificates will bear interest at a pass-through rate equal to approximately 5.77% per annum for the first distribution date, and thereafter, at an adjustable pass-through rate equal to 0.45% per annum plus LIBOR, subject to a minimum rate equal to 0.45% per annum and a maximum rate equal to 7.00% per annum.

The Class I-A1-2 Certificates will bear interest at a pass-through rate equal to approximately 1.23% per annum for the first distribution date, and thereafter, at an adjustable pass-through rate equal to 6.55% per annum minus LIBOR, subject to a minimum rate equal to 0.00% per annum and a maximum rate equal to 6.55% per annum.

The Class I-A2-1 Certificates will bear interest at a pass-through rate equal to approximately 5.65% per annum for the first distribution date, and thereafter, at an adjustable pass-through rate equal to 0.33% per annum plus LIBOR, subject to a minimum rate equal to 0.33% per annum and a maximum rate equal to 7.50% per annum.

The Class I-A2-2 Certificates will bear interest at a pass-through rate equal to approximately 1.85% per annum for the first distribution date, and thereafter, at an adjustable pass-through rate equal to 7.17% per annum minus LIBOR, subject to a minimum rate equal to 0.00% per annum and a maximum rate equal to 7.17% per annum.

One-Month LIBOR for the Class I-A1-1, Class I-A1-2, Class I-A2-1 and Class I-A2-2 Certificates for the first accrual period and for all subsequent accrual periods will be determined as described under *"Description of the Certificates — Calculation of One-Month LIBOR"* in this prospectus supplement.

The Class X Certificates will consist of components that in the aggregate bear interest at a variable pass-through rate equal to the weighted average of (i) the excess, if any, of (a) the weighted average net mortgage rate on the mortgage loans in loan group I with net mortgage rates greater than 7.500% per annum, over (b) 7.500% per annum and (ii) the excess, if any, of (a) the weighted average net mortgage rate on the mortgage loans in loan group II with net mortgage rates greater than 6.000% per annum, over (b) 6.000% per annum in each case weighted on the basis of the portion of the notional amount of the Class X Certificates attributable to the related subgroup. The initial notional amount for the Class X Certificates is approximately $43,922,514 and the pass-through rate for the initial interest accrual period is approximately 0.367% per annum.

The group I senior certificates are issued in two certificate subgroups. The Class I-A1-1, Class I-A1-2, Class I-A1-3, Class I-A1-4, Class I-A1-5 and Class PO Certificates constitute the subgroup I-1 certificates. The Class I-A1-1, Class I-A1-2, Class I-A1-3, Class I-A1-4 and Class I-A1-5 Certificates are generally entitled to receive payments from subgroup I-1 mortgage loans. The Class PO Certificates are generally entitled to receive payments from



2 140 227

subgroup I-1 mortgage loans and subgroup II-1 mortgage loans. The Class I-A2-1, Class I-A2-2 and Class X Certificates constitute the subgroup I-2 certificates. The Class I-A2-1 Certificates and Class I-A2-2 Certificates are generally entitled to receive payments from subgroup I-2 mortgage loans. The Class X Certificates are generally entitled to receive payments from subgroup I-2 mortgage loans and subgroup II-2 mortgage loans.

The group II senior certificates are issued in two certificate subgroups. The Class II-A1-1, Class PO, Class R-1, Class R-2 and Class R-3 Certificates constitute the subgroup II-1 certificates. The Class II-A1-1, Class R-1, Class R-2 and Class R-3 Certificates and are generally entitled to receive payments from subgroup II-1 mortgage loans. The Class PO Certificates are generally entitled to receive payments from subgroup I-1 mortgage loans and subgroup II-1 mortgage loans. The Class II-A2-1 Certificates and Class X Certificates constitute the subgroup II-2 certificates. The Class II-A2-1 Certificates are generally entitled to receive payments from subgroup II-2 mortgage loans. The Class X Certificates are generally entitled to receive payments from subgroup I-2 mortgage loans and subgroup II-2 mortgage loans.

The Class BX Certificates will bear interest at a variable pass-through rate equal to the excess, if any, of (a) the weighted average of 6.250%, 7.500%, 5.500% and 6.000% per annum, weighted in proportion to the results of subtracting from each of the respective aggregate principal balances of the mortgage loans in subgroup I-1 (other than the portion of the mortgage loans in subgroup I-1 attributable to the Class PO Certificates), subgroup I-2, subgroup II-1 (other than the portion of the mortgage loans in subgroup II-1 attributable to the Class PO Certificates) and subgroup II-2 the aggregate current principal amount of the related class or classes of senior certificates, other than the interest only certificates and the current principal amount of the Class PO Certificates attributable to subgroup I-1 or subgroup II-1, respectively, over (b) 6.000% per annum based on a notional amount equal to the aggregate scheduled principal balance of the Class B-1, Class B-2 and Class B-3 Certificates. The pass-through rate for the initial interest accrual period is expected to be approximately 0.399% per annum.

The Class B-4, Class B-5 and Class B-6 Certificates will each bear interest for each distribution date at a variable pass-through rate equal to the weighted average of 6.250%, 7.500%, 5.500% and 6.000% per annum, weighted in proportion to the results of subtracting from each of the respective aggregate principal balances of the mortgage loans in subgroup I-1 (other than the portion of the mortgage loans in subgroup I-1 attributable to the Class PO Certificates), subgroup I-2, subgroup II-1 (other than the portion of the mortgage loans in subgroup II-1 attributable to the Class PO Certificates) and subgroup II-2 the aggregate current principal amount of the related class or classes of senior certificates, other than the interest only certificates and the current principal amount of the Class PO Certificates attributable to subgroup I-1 or subgroup II-1, respectively. The pass-through rate for the initial accrual period is approximately 6.399% per annum.

***Interest Payments***

On each distribution date, holders of the offered certificates, other than the Class PO Certificates, will be entitled to receive:

- the interest that has accrued on the current principal amount or notional amount of such certificates at the related pass-through rate during the related interest accrual period, and
- any interest due on a prior distribution date that was not paid, less
- interest shortfalls allocated to such certificates.

The interest accrual period for the offered certificates, except for the Class I-A1-1, Class I-A1-2, Class I-A2-1 and Class I-A2-2 Certificates, will be the calendar month immediately preceding the calendar month in which a distribution date occurs, commencing in December 2006. The interest accrual period for the Class I-A1-1, Class I-A1-2, Class I-A2-1 and Class I-A2-2 Certificates will be the period from and including the preceding distribution date (or from the closing date, in the case of the first distribution date) to and including the day prior to the current distribution date. Calculations of interest on the offered certificates will be based on a 360-day year consisting of twelve 30-day months.



2 141 227

The notional amount of the Class I-A1-2 Certificates for purposes of calculating accrued certificate interest is equal to the current principal amount of the Class I-A1-1 Certificates.

The notional amount of the Class I-A2-2 Certificates for purposes of calculating accrued certificate interest is equal to the current principal amount of the Class I-A2-1 Certificates.

The notional amount of the Class X Certificates for purposes of calculating accrued certificate interest is equal to the sum of (i) the aggregate scheduled principal balance of the mortgage loans in loan group I that have net mortgage rates greater than 7.500% per annum and (ii) the aggregate scheduled principal balance of the mortgage loans in loan group II with net mortgage rates greater than 6.000% per annum.

The notional amount of the Class BX Certificates for purposes of calculating accrued certificate interest is equal to the aggregate current principal amount of the Class B-1, Class B-2 and Class B-3 Certificates.

The Class PO Certificates are principal only certificates and will not bear interest.

***Principal Payments***

On each distribution date, holders of the offered certificates, other than the interest only certificates, will receive a distribution of principal on their certificates if there is cash available on that date for the payment of principal. Monthly principal distributions on the subgroup I-1, subgroup I-2, subgroup II-1 and subgroup II-2 certificates will generally include principal payments made solely on the subgroup I-1, subgroup I-2, subgroup II-1 and subgroup II-2 mortgage loans, respectively. You should review the priority of payments described under "*Description of the Certificates — Distributions on the Certificates" in this prospectus supplement. See also "Description of the Certificates— Principal Distributions on the Senior Certificates" and "- Principal Distributions on the Subordinate Certificates" in this prospectus supplement.*

Group I Senior Certificates

For the purposes of distributions to the group I senior certificates, the group I mortgage loans will be divided into two separate subgroups. Group I mortgage loans with a net mortgage rate less than 6.250% will be allocated to subgroup I-1, group I mortgage loans with a net mortgage rate greater than or equal to 6.250% and less than 7.500% will have a portion allocated to each of subgroup I-1 and subgroup I-2 and group I mortgage loans with a net mortgage rate greater than or equal to 7.500% will be allocated to subgroup I-2. Principal payments relating to the group I mortgage loans or portions of the group I mortgage loans in subgroup I-1 will be used to pay the Class I-A1-1, Class I-A1-3, Class I-A1-4, Class I-A1-5 and Class PO Certificates. Principal payments relating to the group I mortgage loans or portions of group I mortgage loans in subgroup I-2 will be used to pay the Class I-A2-1 Certificates. However, in certain circumstances, payments from the group I mortgage loans in one subgroup may be used to pay principal to the senior certificates related to the other subgroup of loan group I. *See Description of the Mortgage Pool—Subgroup I-1 and Subgroup I-2" and "Description of the Certificates—Distributions of Principal—General"* in this prospectus supplement for a detailed description of which group I mortgage loans, or portions of group I mortgage loans, belong to which subgroup.

*Subgroup I-1 Certificates.* On each distribution date, the principal received or advanced on the group I mortgage loans or portions thereof in subgroup I-1 will be distributed to the subgroup I-1 certificates (other than the Class I-A1-2 Certificates) in the order of priority described in "*Description of the Certificates—Distributions of Principal – Subgroup I-1 Principal Distribution Amount*" in this prospectus supplement.

*Subgroup I-2 Certificates.* On each distribution date, the principal received or advanced on the mortgage loans or portions thereof in subgroup I-2 will be distributed to the subgroup I-2 certificates (other than the Class I-A2-2 Certificates and Class X Certificates) in the order of priority described in "*Description of the Certificates—Distributions of Principal— Subgroup I-2 Principal Distribution Amount*" in this prospectus supplement.

Group II Certificates

For the purposes of distributions to the group II senior certificates, the group II mortgage loans will be divided into two separate subgroups. Group II mortgage loans with a net mortgage rate less than 5.500% will be allocated to subgroup II-1, group II mortgage loans with a net mortgage rate greater than or equal to 5.500% and less than 6.000% will have a portion allocated to each of subgroup II-1 and subgroup II-2, and group II mortgage loans with a net mortgage rate greater than or equal to 6.000% will be allocated to subgroup II-2. Principal payments relating to the group II mortgage loans or portions of the group II mortgage loans in subgroup II-1 will be used to pay the Class II-A1-1, Class PO, Class R-1, Class R-2 and Class R-3 Certificates. Principal payments relating to the group II mortgage loans or portions of group II mortgage loans in subgroup II-2 will be used to pay the Class II-A2-1 Certificates. However, in certain circumstances, payments from the group II mortgage loans in one subgroup may be used to pay principal to the senior certificates related to the other subgroup of loan group II. *See Description of the Mortgage Pool—Subgroup II-1 and Subgroup II-2" and "Description of the Certificates—Distributions of Principal—General"* in this prospectus supplement for a detailed description of which group II mortgage loans, or portions of group II mortgage loans, belong to which subgroup.

*Subgroup II-1 Certificates.* On each distribution date, the principal received or advanced on the group II mortgage loans or portions thereof in subgroup II-1 will be distributed to the subgroup II-1 certificates in the order of priority described in "*Description of the Certificates—Distributions of Principal— Subgroup II-1 Principal Distribution Amount*" in this prospectus supplement.

*Subgroup II-2 Certificates.* On each distribution date, the principal received or advanced on the group II mortgage loans or portions thereof in subgroup II-2 will be distributed to the subgroup II-2 certificates (other than the Class X Certificates) in the order of priority described in "*Description of the Certificates—Distributions of Principal— Subgroup II-2 Principal Distribution Amount*" in this prospectus supplement.

*Class PO Certificates.* On each distribution date, the Class PO Certificates will receive a portion of the principal received or advanced on each discount mortgage loan in loan group I and loan group II. A group I discount mortgage loan is a mortgage loan in loan group I with a net mortgage rate of less than 6.250% per annum. A group II discount mortgage loan is a mortgage loan in loan group II with a net mortgage rate of less than 5.500% per annum. For a description of the principal distributions to the Class PO Certificates *see "Description of the Certificates —Distributions—Distributions of Principal—Class PO Principal Distribution Amount"* in this prospectus supplement.

**Credit Enhancement**

The credit enhancement provided for the benefit of the holders of the offered certificates consists of subordination. By issuing senior certificates and subordinate certificates, the issuing entity has increased the likelihood that senior certificateholders will receive regular payments of interest and principal.

The senior certificates in each certificate group will have payment priority over the subordinate certificates. Among the classes of subordinate certificates, each class of subordinate certificates with a lower numerical class designation will have payment priority over each class of subordinate certificates with a higher numerical class designation.

Subordination provides the holders of certificates having a higher payment priority with protection against losses realized when the remaining unpaid principal balance on a related mortgage loan exceeds the amount of proceeds recovered upon the liquidation of that mortgage loan.

This loss protection is accomplished by allocating the non-PO percentage of the principal portion of any realized losses on the related mortgage loans among the certificates, beginning with the class of subordinate certificates with the lowest payment priority, until the current principal amount of that subordinate class has been reduced to zero. That percentage of the principal portion of realized losses on the mortgage loans are then allocated to the next most junior class of subordinate certificates, until the current principal amount of each class of subordinate certificates is



2 143 227

reduced to zero. If no subordinate certificates remain outstanding, that percentage of the principal portion of realized losses on the mortgage loans in a loan group will be allocated among the related senior certificates (other than the interest only certificates and Class PO Certificates) in proportion to their remaining current principal amounts, subject to the allocation for losses on discount mortgage loans described below.

A portion of losses on each group I mortgage loan having a net mortgage rate of less than 6.250% per annum will be allocated first to the Class PO Certificates in an amount based on the percentage of each such mortgage loan represented by such class. The remainder of such losses will be allocated as described in the previous paragraph. A portion of losses on each group II mortgage loan having a net mortgage rate of less than 5.500% per annum will be allocated first to the Class PO Certificates in an amount based on the percentage of each such mortgage loan represented by such class. The remainder of such losses will be allocated as described in the previous paragraph.

As of the closing date, the aggregate current principal amount of the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates will equal approximately 4.00% of the aggregate current principal amount of all classes of certificates. As of the closing date, the aggregate current principal amount of the Class B-4, Class B-5 and Class B-6 Certificates will equal approximately 1.10% of the aggregate current principal amount of all classes of certificates.

In addition, to extend the period during which the subordinate certificates remain available as credit enhancement to the senior certificates, the entire amount of any prepayments and certain other unscheduled recoveries of principal with respect to the mortgage loans in the related loan group will be allocated to the related senior certificates (other than the interest only certificates and Class PO Certificates), to the extent described in this prospectus supplement during the first five years after the cut-off date, with such allocation to be subject to further reduction over an additional four year period thereafter as described in this prospectus supplement, unless certain loss and delinquency tests are satisfied. This will accelerate the amortization of the related senior certificates (other than the interest only certificates), as a whole while, in the absence of realized losses in respect of the mortgage loans in the related loan group, increasing the percentage interest in the principal balance of the mortgage loans in such loan group the subordinate certificates evidence.

*See "Description of the Certificates—Allocation of Losses; Subordination" in this prospectus supplement.*

**Advances**

Each servicer will make cash advances with respect to delinquent payments of scheduled interest and principal on the mortgage loans for which it acts as servicer, in general, to the extent that such servicer reasonably believes that such cash advances can be repaid from future payments and recoveries on the related mortgage loans. If the related servicer fails to make any required advances, the master servicer may be obligated to do so, as described in this prospectus supplement. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses.

**Servicing Fee**

Each servicer will be entitled to receive a fee on each distribution date as compensation for its activities under the related servicing agreement equal to 1/12 of the servicing fee rate multiplied by the scheduled principal balance of each mortgage loan serviced by it as of the due date in the month preceding the month in which such distribution date occurs. The servicing fee rate will be 0.25% per annum. Interest shortfalls on the mortgage loans resulting from prepayments in any calendar month will be offset by the related servicer on the distribution date in the following calendar month to the extent of compensating interest payments as described in this prospectus supplement.

**Trustee Fee**

The trustee will be entitled to receive a fee as compensation for its activities under the pooling and servicing agreement equal to the trustee fee rate multiplied by the aggregate scheduled principal balance of the mortgage loans

as of the due date in the month preceding the month in which such distribution date occurs. The trustee fee rate will be 0.013% per annum.

**Optional Termination**

At its option, the depositor or its designee may purchase from the trust all of the mortgage loans, together with any properties in respect thereof acquired on behalf of the trust, and thereby effect termination and early retirement of the certificates after the aggregate scheduled principal balance of the mortgage loans and properties acquired in respect thereof remaining in the trust has been reduced to less than 10% of the aggregate scheduled principal balance of the mortgage loans as of the cut-off date.

*See "Pooling and Servicing Agreement— Termination" in this prospectus supplement.*

**Federal Income Tax Consequences**

An election will be made to treat the trust as three real estate mortgage investment conduits for federal income tax purposes.

*See "Federal Income Tax Consequences" in this prospectus supplement.*

**Ratings**

It is a condition to the issuance of the certificates that the offered certificates receive the following ratings from Standard & Poor's, a division of The McGraw-Hill Companies, Inc., which is referred to in this prospectus supplement as S&P and Moody's Investors Service, Inc., which is referred to in this prospectus supplement as Moody's:

| Offered Certificates | S&P/Moody's |
|---|---|
| I-A1-1 | AAA/Aaa |
| I-A1-2 | AAA/Aaa |
| I-A1-3 | AAA/Aaa |
| I-A1-4 | AAA/Aaa |
| I-A1-5 | AAA/Aaa |
| I-A2-1 | AAA/Aaa |
| I-A2-2 | AAA/Aaa |
| II-A1-1 | AAA/Aaa |
| II-A2-1 | AAA/Aaa |
| B-1 | AA/Aa2 |
| B-2 | A/A2 |
| B-3 | BBB/Baa2 |
| BX | AA/Aa2 |
| X | AAA/Aaa |
| PO | AAA/Aaa |
| R-1 | AAA/-- |
| R-2 | AAA/-- |
| R-3 | AAA/-- |

A rating is not a recommendation to buy, sell or hold securities and any rating agency can revise or withdraw such ratings at any time. Additionally, a rating does not address the frequency of prepayments on the mortgage loans or the corresponding effect on yield to investors.

*See "Yield on the Certificates" and "Ratings" in this prospectus supplement and "Yield Considerations" in the base prospectus.*

**Legal Investment**

The senior certificates and Class BX Certificates and Class B-1 Certificates will constitute "mortgage related securities" for purposes of SMMEA. The Class B-2 Certificates and Class B-3 Certificates will not constitute "mortgage related securities" for purposes of SMMEA.

*See "Legal Investment" in this prospectus supplement and in the base prospectus.*

**ERISA Considerations**

The offered certificates, other than the residual certificates, may be purchased by persons investing assets of employee benefit plans or individual retirement accounts, subject to important considerations. Plans should consult with their legal advisors before investing in the offered certificates.

*See "ERISA Considerations" in this prospectus supplement.*

## TRANSACTION STRUCTURE






2 147 227

# EXHIBIT "J"

# TRIBELSKY SECURITIZATION FLOW CHART

**U.S. Bank, National Association, as Trustee for Prime Mortgage Trust 2006-2**




McDonnell Property Analytics
Copyright 2016

189

Ex 2 pg 149 of 227

# EXHIBIT "K"

EXHIBIT C

CONTENTS OF EACH RETAINED MORTGAGE FILE,
SERVICING FILE AND CUSTODIAL MORTGAGE FILE

With respect to each Mortgage Loan, the Retained Mortgage File and Custodial Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser and any prospective Purchaser, and which shall be retained by the Company in the Retained Mortgage File or Servicing File or delivered to the Custodian pursuant to Sections 2.01 and 2.03 of the Seller's Warranties and the Servicing Agreement to which this Exhibit is attached (the "Agreement").

1. The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of without recourse" and signed in the name of the Company by an authorized officer (in the event that the Mortgage Loan was acquired by the Company in a merger, the signature must be in the following form: "[Company], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Company while doing business under another name, the signature must be in the following form: "[Company], formerly know as [previous name]").

2. The original of any guarantee executed in connection with the Mortgage Note (if any).

3. The original Mortgage, with evidence of recording thereon or a certified true and correct copy of the Mortgage sent for recordation. If in connection with any Mortgage Loan, the Company cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the related Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Company shall deliver or cause to be delivered to the Custodian, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Company stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Company; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded Mortgage.

   Further, with respect to MERS Mortgage Loans, (a) the Mortgage names MERS as the Mortgagee and (b) the requirements set forth in the Electronic Tracking Agreement have been satisfied, with a conformed recorded copy to follow as soon as the same is received by the Company.

4. the originals or certified true copies of any document sent for recordation of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon.

5. The original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording (except for the insertion of the name of the assignee and recording information). The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in the Custodial Agreement. If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser. If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank. If the Mortgage Loan was acquired by the Company in a merger, the Assignment of Mortgage must be made by "[Company], successor by merger to [name of predecessor]." If the Mortgage Loan was acquired or originated by the Company while doing business under another name, the Assignment of Mortgage must be by "[Company], formerly know as [previous name]."

6. Originals or certified true copies of documents sent for recordation of all intervening assignments of the Mortgage with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Company shall deliver or cause to be delivered to the Custodian, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Company stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Custodian upon receipt thereof by the Company; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment.

7. The electronic form of PMI Policy as identified by certificate number.

8. The original mortgagee policy of title insurance or other evidence of title such as a copy of the title commitment or copy of the preliminary title commitment.

9. Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

10. Original power of attorney, if applicable.

11. For each Cooperative Loan, the original or a seller certified true copy of the following:

    The original Pledge Agreement entered into by the Mortgagor with respect to such Cooperative Loan;

    UCC-3 assignment in blank (or equivalent instrument), sufficient under the laws of the jurisdiction where the related Cooperative Apartment is located to reflect of record the sale and assignment of the Cooperative Loan to the Purchaser.

    Original assignment of Pledge Agreement in blank showing a complete chain of assignment from the originator of the related Cooperative Loan to the Company;

    Original Form UCC-1 and any continuation statements with evidence of filing thereon with respect to such Cooperative Loan;

    Cooperative Shares with a Stock Certificate in blank attached.

    Original Proprietary Lease.

Original Assignment of Proprietary Lease, in blank, and all intervening assignments thereof;

Original recognition agreement of the interests of the mortgagee with respect to the Cooperative Loan by the Cooperative, the stock of which was pledged by the related Mortgagor to the originator of such Cooperative Loan; and

Originals of any assumption, consolidation or modification agreements relating to any of the items specified above

With respect to each Mortgage Loan, the Servicing File shall include each of the following items to the extent in the possession of the Company or in the possession of the Company's agent(s):

12. The original hazard insurance policy and, if required by law, flood insurance policy, in accordance with Section 4.10 of the Agreement.

13. Residential loan application.

14. Mortgage Loan closing statement.

15. Verification of employment and income, unless originated under the Company's Limited Documentation program, Fannie Mae Timesaver Plus

16. Verification of acceptable evidence of source and amount of down payment.

17. Credit report on the Mortgagor.

18. Residential appraisal report.

19. Photograph of the Mortgaged Property

20. Survey of the Mortgage property, if required by the title company or applicable law.

21. Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e. map or plat, restrictions, easements, sewer agreements, home association declarations, etc.

22. All required disclosure statements.

23. If available, termite report, structural engineer's report, water potability and septic certification.

24. Sales contract, if applicable.

25. Evidence of payment of taxes and insurance premiums, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

26. Amortization schedule, if available.

27. Payment history for any Mortgage Loan that has been closed for more than 90 days

In the event an Officer's Certificate of the Company is delivered to the Custodian because of a delay caused by the public recording office in returning any recorded document, the Company shall deliver to the Custodian, within 240 days of the related Closing Date, an Officer's Certificate which shall (i) identify the recorded document, (ii) state that the recorded document has not been delivered to the Custodian due solely to a delay caused by the public recording office, (iii) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation, and (iv) specify the date the applicable recorded document will be delivered to the Custodian. The Company shall be required to deliver to the Custodian the applicable recorded document by the date specified in (iv) above. An extension of the date specified in (iv) above may be requested from the Purchaser, which consent shall not be unreasonably withheld.

# EXHIBIT "L"

**Fill in this information to identify the case:**

Debtor 1 BOAZ TRIBELSKY

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number 15-bk-23688-NB

Read the instructions before filing out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

# Official Form 410
# Proof of Claim

12/15

## Part 1: Identify the Claim

**1. Who is the current creditor?**

U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-2

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Wells Fargo Bank, N.A.
Attention: Bankruptcy Department
MAC# D3347-014

Name

3476 Stateview Blvd

Number Street

Fort Mill SC 29715

City State ZIP Code

Contact phone 800-274-7025

Contact email POCNOTIFICATIONS@WELLSFARGO.COM

**Where should payments to the creditor be sent? (if different)**

Wells Fargo Bank, N.A
Attention: Payment Processing
MAC# X2302-04C

Name

1 Home Campus

Number Street

Des Moines IA 50328

City State ZIP Code

Contact phone 800-274-7025

Contact email POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

WFCMGE3523688CAC09562665



194

2 of 159 of 227

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | [X] No<br>[ ] Yes. Claim number on court claims registry (if known) ____________ Filed on ________ MM/DD/YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | [X] No<br>[ ] Yes. Who made the earlier filing? ____________ | |

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
[ ] No
[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2885

**7. How much is the claim?** $ 611,536.93

Does this amount include interest or other charges?
[ ] No
[X] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**
[ ] No
[X] Yes. The claim is secured by a lien on property.

**Nature of property:**
[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
[ ] Motor vehicle
[ ] Other. Describe: 724 N GENESEE AVE LOS ANGELES CA 90046-7312

**Basis for perfection:** Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ________
**Amount of the claim that is secured:** $ 611,536.93
**Amount of the claim that is unsecured:** $ ________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 134,320.09

**Annual Interest Rate** (when case was filed) 6.875 %
[x] Fixed
[ ] Variable

**10. Is this claim based on a lease?**
[X] No
[ ] Yes. Amount necessary to cure any default as of the date of the petition. $ ________

**11. Is this claim subject to a right of setoff?**
[X] No
[ ] Yes. Identify the property ________





2 of 5 227

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

[X] No
[ ] Yes. *Check all that apply:* — Amount entitled to priority

- [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ ______
- [ ] Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ ______
- [ ] Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor.s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ ______
- [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ ______
- [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ ______
- [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. $ ______

* Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

- [ ] I am the creditor.
- [X] I am the creditor's attorney or authorized agent.
- [ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
- [ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 1/7/16 (MM / DD / YYYY)

[signature]
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Julian T. Cotton (First name / Middle name / Last name)

Title: Authorized Agent for Wells Fargo Bank, N.A.

Company: Buckley Madole, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: P.O. Box 9013 (Number / Street)
Addison TX 75011 (City / State / ZIP Code)

Contact phone: (972) 643-6600

Email: POCInquiries@BuckleyMadole.com



146

EX 2 PG 159 of 227

# Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 15-bk-23688-NB |
| Debtor 1: | BOAZ TRIBELSKY |
| Debtor 2: | |
| Last 4 digits to identify: | 2885 |
| Creditor: | See 410 part 1.1 |
| Servicer: | Wells Fargo Bank, N.A. |
| Fixed accrual/daily simple interest/other: | Fixed Accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | 505,255.37 |
| Interest due: | 101,409.32 |
| Fees, costs due: | 3,314.30 |
| Escrow deficiency for funds advanced: | 1,557.94 |
| Other: | 0.00 |
| Less total funds on hand: – | 0.00 |
| Total debt: | 611,536.93 |

*Not to be used for payoff purposes

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | 129,447.85 |
| Prepetition fees due: | 3,314.30 |
| Escrow deficiency for funds advanced: | 1,557.94 |
| Projected escrow shortage: | 0.00 |
| Other: | 0.00 |
| Less funds on hand: – | 0.00 |
| Total prepetition arrearage: | 134,320.09 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | 3,698.51 |
| Monthly escrow: | 0.00 |
| Private mortgage insurance: | 0.00 |
| Optional Products: | 0.00 |
| Total monthly payment: | 3,698.51 |

*Additional changes to the monthly payment amount may be required because interest rate adjustments or escrow requirement changes.

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/16/2011 | | | | Beginning Balances | 11/01/2011 | 3,699.51 | | | | | | 514,551.38 | 0.00 | 0.00 | 184.93 | 0.00 |
| 11/16/2011 | | | 184.93 | Late Charge | 11/01/2011 | 3,698.51 | | | | 184.93 | | 514,551.38 | 0.00 | 0.00 | 369.86 | 0.00 |
| 11/26/2011 | | 3,696.51 | | Payment | 11/01/2011 | 0.00 | 750.56 | 2,947.95 | 0.00 | | 0.00 | 513,800.82 | 0.00 | 0.00 | 369.86 | 0.00 |
| 12/01/2011 | 3,698.51 | | | Monthly payment | 12/01/2011 | 3,699.53 | | | | | | 513,800.82 | 0.00 | 0.00 | 369.86 | 0.00 |
| 12/16/2011 | | | 184.93 | Late Charge | 12/01/2011 | 3,698.53 | | | | 184.93 | | 513,800.82 | 0.00 | 0.00 | 554.79 | 0.00 |
| 12/31/2011 | | 3,698.51 | | Payment | 12/01/2011 | 3,699.53 | 0.00 | 0.00 | 0.00 | | 3,698.51 | 513,800.82 | 0.00 | 0.00 | 554.79 | 3,698.51 |
| 01/01/2012 | 3,698.51 | | | Monthly payment | 12/01/2011 | 7,397.04 | | | | | | 513,800.82 | 0.00 | 0.00 | 554.79 | 3,698.51 |
| 01/23/2012 | | | 15.00 | Property inspection fees | 12/01/2011 | 7,397.04 | | | | 15.00 | | 513,800.82 | 0.00 | 0.00 | 569.79 | 3,698.51 |
| 02/01/2012 | 3,698.52 | | | Monthly payment | 12/01/2011 | 11,096.56 | | | | | | 513,800.82 | 0.00 | 0.00 | 569.79 | 3,698.51 |
| 02/01/2012 | | 3,698.53 | | Payment | 12/01/2011 | 7,397.03 | 754.86 | 2,943.65 | 0.02 | | 0.00 | 513,045.96 | 0.00 | 0.02 | 569.79 | 3,699.51 |
| 02/01/2012 | | 0.00 | | Payment | 01/01/2012 | 3,698.52 | 759.18 | 2,939.33 | 0.00 | | -3,698.51 | 512,286.78 | 0.00 | 0.02 | 569.79 | 0.00 |
| 03/01/2012 | 3,698.51 | | | Monthly payment | 02/01/2012 | 7,397.03 | | | | | | 512,286.78 | 0.00 | 0.02 | 569.79 | 0.00 |
| 03/24/2012 | | | 15.00 | Property inspection fees | 02/01/2012 | 7,397.03 | | | | 15.00 | | 512,286.78 | 0.00 | 0.02 | 584.79 | 0.00 |



197

EX 2 Pg 57 of 227

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 15-bk-23688-NB

Debtor 1: BOAZ TRIBELSKY

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 03/30/2012 | | 3,698.52 | | Payment | 02/01/2012 | 3,698.51 | 763.53 | 2,934.98 | 0.01 | | 0.00 | 511,523.25 | 0.00 | 0.03 | 584.79 | 0.00 |
| 04/01/2012 | 3,698.51 | | | Monthly payment | 03/01/2012 | 7,397.02 | | | | | | 511,523.25 | 0.00 | 0.03 | 584.79 | 0.00 |
| 04/16/2012 | | | 184.93 | Late Charge | 03/01/2012 | 7,397.02 | | | | 184.93 | | 511,523.25 | 0.00 | 0.03 | 769.72 | 0.00 |
| 04/25/2012 | | | 15.00 | Property inspection fees | 03/01/2012 | 7,397.02 | | | | 15.00 | | 511,523.25 | 0.00 | 0.03 | 784.72 | 0.00 |
| 04/30/2012 | | 2,400.00 | | Payment | 03/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 2,400.00 | 511,523.25 | 0.00 | 0.03 | 784.72 | 2,400.00 |
| 05/01/2012 | 3,698.51 | | | Monthly payment | 03/01/2012 | 11,095.53 | | | | | | 511,523.25 | 0.00 | 0.03 | 784.72 | 2,400.00 |
| 05/16/2012 | | | 184.93 | Late Charge | 03/01/2012 | 11,095.53 | | | | 184.93 | | 511,523.25 | 0.00 | 0.03 | 969.65 | 2,400.00 |
| 05/17/2012 | | 1,490.96 | | Payment | 03/01/2012 | 11,095.53 | 0.00 | 0.00 | 0.00 | | 1,490.96 | 511,523.25 | 0.00 | 0.03 | 969.65 | 3,890.96 |
| 05/17/2012 | | 0.00 | | Payment | 03/01/2012 | 7,397.02 | 767.91 | 2,930.60 | 0.00 | | -3,698.51 | 510,755.34 | 0.00 | 0.03 | 969.65 | 192.45 |
| 05/25/2012 | | | 15.00 | Property inspection fees | 04/01/2012 | 7,397.02 | | | | 15.00 | | 510,755.34 | 0.00 | 0.03 | 984.65 | 192.45 |
| 06/01/2012 | 3,698.51 | | | Monthly payment | 04/01/2012 | 11,095.53 | | | | | | 510,755.34 | 0.00 | 0.03 | 984.65 | 192.45 |
| 06/18/2012 | | | 184.93 | Late Charge | 04/01/2012 | 11,095.53 | | | | 184.93 | | 510,755.34 | 0.00 | 0.03 | 1,169.58 | 192.45 |
| 06/23/2012 | | | 15.00 | Property inspection fees | 04/01/2012 | 11,095.53 | | | | 15.00 | | 510,755.34 | 0.00 | 0.03 | 1,184.58 | 192.45 |
| 06/29/2012 | | 3,698.51 | | Payment | 04/01/2012 | 7,397.02 | 772.31 | 2,926.20 | 0.00 | | 0.00 | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.45 |
| 06/28/2012 | | 0.01 | | Payment | 05/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 0.01 | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.46 |
| 07/01/2012 | 3,698.51 | | | Monthly payment | 05/01/2012 | 11,095.53 | | | | | | 509,983.03 | 0.00 | 0.03 | 1,184.58 | 192.46 |
| 07/16/2012 | | | 184.93 | Late Charge | 05/01/2012 | 11,095.53 | | | | 184.93 | | 509,983.03 | 0.00 | 0.03 | 1,369.51 | 192.46 |
| 07/23/2012 | | | 15.00 | Property inspection fees | 05/01/2012 | 11,095.53 | | | | 15.00 | | 509,983.03 | 0.00 | 0.03 | 1,384.51 | 192.46 |
| 07/28/2012 | | 3,698.51 | | Payment | 05/01/2012 | 7,397.02 | 776.73 | 2,921.78 | 0.00 | | 0.00 | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 192.46 |
| 07/28/2012 | | 51.49 | | Payment | 06/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 51.49 | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 243.95 |
| 08/01/2012 | 3,698.51 | | | Monthly payment | 06/01/2012 | 11,095.53 | | | | | | 509,206.30 | 0.00 | 0.03 | 1,384.51 | 243.95 |
| 08/16/2012 | | | 184.93 | Late Charge | 06/01/2012 | 11,095.53 | | | | 184.93 | | 509,206.30 | 0.00 | 0.03 | 1,569.44 | 243.95 |



198

EX 2 Pg 158 of 227

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 15-bk-23688-NB
Debtor 1: BOAZ TRIBELSKY

**Part 5 : Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| 08/31/2012 | | 3,698.51 | | Payment | 06/01/2012 | 7,397.02 | 781.18 | 2,917.33 | 0.00 | | 0.00 | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 243.95 |
| 09/31/2012 | | 51.49 | | Payment | 07/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 51.49 | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 295.44 |
| 09/01/2012 | 3,698.51 | | | Monthly payment | 07/01/2012 | 11,095.53 | | | | | | 508,425.12 | 0.00 | 0.03 | 1,569.44 | 295.44 |
| 09/17/2012 | | | 184.93 | Late Charge | 07/01/2012 | 11,095.53 | | | | 184.93 | | 508,425.12 | 0.00 | 0.03 | 1,754.37 | 295.44 |
| 09/29/2012 | | 3,698.51 | | Payment | 07/01/2012 | 7,397.02 | 785.66 | 2,912.85 | 0.00 | | 0.00 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 295.44 |
| 09/29/2012 | | 201.49 | | Payment | 08/01/2012 | 7,397.02 | 0.00 | 0.00 | 0.00 | | 201.49 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 496.93 |
| 10/01/2012 | 3,698.51 | | | Monthly payment | 08/01/2012 | 11,095.53 | | | | | | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 496.93 |
| 10/31/2012 | | 2,200.00 | | Payment | 08/01/2012 | 11,095.53 | 0.00 | 0.00 | 0.00 | | 2,200.00 | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 11/01/2012 | 3,698.51 | | | Monthly payment | 08/01/2012 | 14,794.04 | | | | | | 507,639.46 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 11/15/2012 | | 3,698.51 | | Payment | 08/01/2012 | 11,095.53 | 790.16 | 2,908.35 | 0.00 | | 0.00 | 506,849.30 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 12/01/2012 | 3,698.51 | | | Monthly payment | 09/01/2012 | 14,794.04 | | | | | | 506,849.30 | 0.00 | 0.03 | 1,754.37 | 2,696.93 |
| 12/17/2012 | | | 184.93 | Late Charge | 09/01/2012 | 14,794.04 | | | | 184.93 | | 506,849.30 | 0.00 | 0.03 | 1,939.30 | 2,696.93 |
| 12/22/2012 | | 1,100.00 | | Payment | 09/01/2012 | 14,794.04 | 0.00 | 0.00 | 0.00 | | 1,100.00 | 506,849.30 | 0.00 | 0.03 | 1,939.30 | 3,796.93 |
| 12/22/2012 | | 0.00 | | Payment | 09/01/2012 | 11,095.53 | 794.69 | 2,903.82 | 0.00 | | -3,698.51 | 506,054.61 | 0.00 | 0.03 | 1,939.30 | 98.42 |
| 01/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 14,794.04 | | | | | | 506,054.61 | 0.00 | 0.03 | 1,939.30 | 98.42 |
| 01/16/2013 | | | 184.93 | Late Charge | 10/01/2012 | 14,794.04 | | | | 184.93 | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 02/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 18,492.55 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 03/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 22,191.06 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 04/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 25,889.57 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/01/2013 | 3,698.51 | | | Monthly payment | 10/01/2012 | 29,588.03 | | | | | | 506,054.61 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/31/2013 | | 3,698.51 | | Payment | 10/01/2012 | 25,889.57 | 799.24 | 2,899.27 | 0.00 | | 0.00 | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 98.42 |
| 05/31/2013 | | 184.93 | | Payment | 11/01/2012 | 25,889.57 | 0.00 | 0.00 | 0.00 | | 184.93 | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 283.35 |
| 06/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 29,588.08 | | | | | | 505,255.37 | 0.00 | 0.03 | 2,124.23 | 283.35 |
| 06/03/2013 | | 0.00 | | Payment | 11/01/2012 | 29,588.08 | 0.00 | 0.00 | 0.00 | -184.93 | -184.93 | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.42 |

## Mortgage Proof of Claim Attachment: Additional Page (12/15)

Case number: 15-bk-23688-NB
Debtor 1: BOAZ TRIBELSKY

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 07/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 33,286.59 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 08/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 36,985.10 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 09/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 40,683.61 | | | | | | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 98.4 |
| 09/24/2013 | | | 0.00 | Reversal | 11/01/2012 | 40,683.61 | 0.00 | 0.00 | 0.00 | | -98.42 | 505,255.37 | 0.00 | 0.03 | 1,939.30 | 0.0 |
| 09/25/2013 | | | 300.00 | Attorney's fees | 11/01/2012 | 40,683.61 | | | | 300.00 | | 505,255.37 | 0.00 | 0.03 | 2,239.30 | 0.0 |
| 10/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 44,382.12 | | | | | | 505,255.37 | 0.00 | 0.03 | 2,239.30 | 0.0 |
| 10/09/2013 | | | 300.00 | Attorney's fees | 11/01/2012 | 44,382.12 | | | | 300.00 | | 505,255.37 | 0.00 | 0.03 | 2,539.30 | 0.0 |
| 10/09/2013 | | | 805.00 | Undefined Fee Category | 11/01/2012 | 44,382.12 | | | | 805.00 | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 11/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 48,080.63 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 12/01/2013 | 3,698.51 | | | Monthly payment | 11/01/2012 | 51,779.14 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 12/27/2013 | | | 958.00 | Hazard insurance Disbursement | 11/01/2012 | 51,779.14 | 0.00 | 0.00 | -958.00 | | 0.00 | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 01/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 55,477.65 | | | | | | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 02/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 59,176.16 | | | | | | 505,255.37 | 0.00 | -957.97 | 3,344.30 | 0.0 |
| 02/27/2014 | | 958.00 | | Hazard refund deposit | 11/01/2012 | 59,176.16 | 0.00 | 0.00 | 958.00 | | 0.00 | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 03/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 62,874.67 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 0.0 |
| 03/31/2014 | | 98.42 | | Payment | 11/01/2012 | 62,874.67 | 0.00 | 0.00 | 0.00 | | 98.42 | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 04/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 66,573.18 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 05/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 70,271.69 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 06/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 73,970.20 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 07/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 77,668.71 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 08/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 81,367.22 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 09/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 85,065.73 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 10/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 88,764.24 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |



200

2 160 227

## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number: 15-bk-23688-NB

Debtor 1: BOAZ TRIBELSKY

### Part 5 : Loan Payment History from First Date of Default

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 11/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 92,462.75 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 12/01/2014 | 3,698.51 | | | Monthly payment | 11/01/2012 | 96,161.26 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 01/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 99,859.77 | | | | | | 505,255.37 | 0.00 | 0.03 | 3,344.30 | 98.4 |
| 01/06/2015 | | | 1,557.97 | County tax disbursement | 11/01/2012 | 99,859.77 | 0.00 | 0.00 | -1,557.97 | | 0.00 | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 02/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 103,558.28 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 03/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 107,256.79 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 04/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 110,955.30 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 05/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 114,653.81 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 06/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 118,352.32 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 98.4 |
| 06/25/2015 | | | 0.00 | Reversal | 11/01/2012 | 118,352.32 | 0.00 | 0.00 | 0.00 | | -98.42 | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.00 |
| 07/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 122,050.83 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.00 |
| 08/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 125,749.34 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.00 |
| 09/01/2015 | 3,698.51 | | | Monthly payment | 11/01/2012 | 129,447.85 | | | | | | 505,255.37 | 0.00 | -1,557.94 | 3,344.30 | 0.00 |
| 09/01/2015 | | | | Bankruptcy Filed | 11/01/2012 | 129,447.85 | | | | | | 505,255.37 | 0.00 | 1,557.94 | 3,344.30 | 0.00 |
| 10/15/2015 | | | -30.00 | Property inspection fees | 11/01/2012 | 129,447.85 | | | | -30.00 | | 505,255.37 | 0.00 | -1,557.94 | 3,314.30 | 0.00 |



201

EX 2 p. 161 of 227

# EXHIBIT "M"

# Tribelsky Pay History

## Downloaded From Bloomberg L.P. on 07/25/2016

| Date | Loan ID | PayHistory | Balance | Original Balance | Groups | Zip | Gross Cpn | | Payment Due | Original Payment | Outstanding Int Advances | Outstanding Prin Advances | Outstanding Servicer Advances |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/2016 | 16657250 | BBBBBBBBBBFFFFFF9999999 | $464,126.40 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $85,207.13 | $29,446.68 | $114,653.81 |
| 06/2016 | 16657250 | BBBBBBBBBFFFFFF99999999 | $465,159.93 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $91,055.08 | $30,995.75 | $122,050.83 |
| 05/2016 | 16657250 | BBBBBBBBFFFFFF999999999 | $466,187.57 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $94,083.92 | $31,665.42 | $125,749.34 |
| 04/2016 | 16657250 | BBBBBBBFFFFFF9999999999 | $467,209.36 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $91,407.20 | $30,643.63 | $122,050.83 |
| 03/2016 | 16657250 | BBBBBBFFFFFF99999999999 | $468,225.33 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $88,724.66 | $29,627.66 | $118,352.32 |
| 02/2016 | 16657250 | BBBBBFFFFFF999999999999 | $469,235.51 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $91,755.33 | $30,295.49 | $122,050.82 |
| 01/2016 | 16657250 | BBBBFFFFFF9999999999999FF | $470,239.94 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $91,927.91 | $30,122.91 | $122,050.82 |
| 12/2015 | 16657250 | BBBFFFFFF9999999999999FFF | $471,238.65 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $94,975.62 | $30,773.71 | $125,749.33 |
| 11/2015 | 16657250 | BBFFFFFF9999999999999FFFF | $472,231.67 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $95,150.93 | $30,598.40 | $125,749.33 |
| 10/2015 | 16657250 | BFFFFFF9999999999999FFFFF | $473,219.03 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $95,325.24 | $30,424.09 | $125,749.33 |
| 09/2015 | 16657250 | FFFFFF9999999999999FFFFF | $474,200.76 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $95,498.55 | $30,250.78 | $125,749.33 |
| 08/2015 | 16657250 | FFFFF9999999999999FFFFFF9 | $475,176.90 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $92,776.18 | $29,274.64 | $122,050.82 |
| 07/2015 | 16657250 | FFFF9999999999999FFFFFF99 | $476,147.48 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $90,048.25 | $28,304.06 | $118,352.31 |
| 06/2015 | 16657250 | FFF9999999999999FFFFFF999 | $477,112.53 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $87,314.79 | $27,339.01 | $114,653.80 |
| 05/2015 | 16657250 | FF9999999999999FFFFFF9999 | $478,072.09 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $84,575.84 | $26,379.45 | $110,955.29 |
| 04/2015 | 16657250 | F9999999999999FFFFFF99999 | $479,026.18 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $81,831.42 | $25,425.36 | $107,256.78 |
| 03/2015 | 16657250 | 9999999999999FFFFFF999999 | $479,974.83 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $79,081.56 | $24,476.71 | $103,558.27 |
| 02/2015 | 16657250 | 999999999999FFFFFF9999999 | $480,918.08 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $76,326.30 | $23,533.46 | $99,859.76 |
| 01/2015 | 16657250 | 99999999999FFFFFF99999999 | $481,855.96 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $73,565.67 | $22,595.58 | $96,161.25 |
| 12/2014 | 16657250 | 9999999999FFFFFF999999999 | $482,788.49 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $70,799.69 | $21,663.05 | $92,462.74 |
| 11/2014 | 16657250 | 999999999FFFFFF9999999999 | $483,715.71 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $68,028.40 | $20,735.83 | $88,764.23 |
| 10/2014 | 16657250 | 99999999FFFFFF99999999999 | $484,637.65 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $65,251.83 | $19,813.89 | $85,065.72 |
| 09/2014 | 16657250 | 9999999FFFFFF999999999999 | $485,554.34 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $62,470.01 | $18,897.20 | $81,367.21 |
| 08/2014 | 16657250 | 999999FFFFFF9999999999996 | $486,465.81 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $59,682.97 | $17,985.73 | $77,668.70 |
| 07/2014 | 16657250 | 99999FFFFFF99999999999966 | $487,372.08 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $56,890.73 | $17,079.46 | $73,970.19 |
| 06/2014 | 16657250 | 9999FFFFFF999999999999666 | $488,273.19 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $54,093.33 | $16,178.35 | $70,271.68 |
| 05/2014 | 16657250 | 999FFFFFF9999999999996666 | $489,169.17 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $51,290.80 | $15,282.37 | $66,573.17 |
| 04/2014 | 16657250 | 99FFFFFF99999999999966666 | $490,060.04 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $48,483.16 | $14,391.50 | $62,874.66 |
| 03/2014 | 16657250 | 9FFFFFF999999999999666663 | $490,945.84 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $45,670.45 | $13,505.70 | $59,176.15 |
| 02/2014 | 16657250 | FFFFFF9999999999996666636 | $491,826.59 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $42,852.69 | $12,624.95 | $55,477.64 |
| 01/2014 | 16657250 | FFFFF99999999999966666366 | $492,702.33 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $40,029.92 | $11,749.21 | $51,779.13 |
| 12/2013 | 16657250 | FFFF999999999999666663663 | $493,573.08 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $37,202.16 | $10,878.46 | $48,080.62 |
| 11/2013 | 16657250 | FFF9999999999996666636630 | $494,438.87 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $34,369.44 | $10,012.67 | $44,382.11 |
| 10/2013 | 16657250 | FF99999999999966666366C | $495,299.73 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $31,531.79 | $9,151.81 | $40,683.60 |
| 09/2013 | 16657250 | 99999999999966666366 3CC | $496,155.68 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $28,689.23 | $8,295.86 | $36,985.09 |
| 08/2013 | 16657250 | 9999999999966666366 3CCC | $497,006.76 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $25,841.80 | $7,444.78 | $33,286.58 |
| 07/2013 | 16657250 | 99999999996666636 63CCCC | $497,852.99 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $22,989.52 | $6,598.55 | $29,588.07 |
| 06/2013 | 16657250 | 9999999996666636 63CCCCC | $498,694.40 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $20,132.42 | $5,757.15 | $25,889.57 |
| 05/2013 | 16657250 | 999999999666663663CCCCCC | $499,531.01 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $20,165.21 | $5,724.36 | $25,889.57 |
| 04/2013 | 16657250 | 99999999666663663CCCCCCC | $500,362.86 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $17,298.55 | $4,892.51 | $22,191.06 |
| 03/2013 | 16657250 | 9999999666663663CCCCCCCC | $501,189.97 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $14,427.15 | $4,065.40 | $18,492.55 |
| 02/2013 | 16657250 | 999999666663663CCCCCCCCC | $502,012.37 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $11,551.04 | $3,243.00 | $14,794.04 |
| 01/2013 | 16657250 | 99999666663663CCCCCCCCCC | $502,830.08 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $8,670.24 | $2,425.29 | $11,095.53 |
| 12/2012 | 16657250 | 9999666663663CCCCCCCCCCC | $503,643.13 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $8,684.05 | $2,411.48 | $11,095.53 |
| 11/2012 | 16657250 | 999666663663CCCCCCCCCCCC | $504,451.55 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $8,697.78 | $2,397.75 | $11,095.53 |

McDonnell Analytics, Inc.
Copyright 07/25/2016 BLOOMBERG L.P



EX 2 Pg 163 of 227

# Tribelsky Pay History

## Downloaded From Bloomberg L.P. on 07/25/2016

| Date | Loan ID | PayHistory | Balance | Original Balance | Groups | Zip | Gross Cpn | | Payment Due | Original Payment | Outstanding Int Advances | Outstanding Prin Advances | Outstanding Servicer Advances |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/2012 | 16657250 | 9666663663CCCCCCCCCCCC | $505,255.37 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $8,711.44 | $2,384.09 | $11,095.53 |
| 09/2012 | 16657250 | 666663663CCCCCCCCCCCCC | $506,054.61 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,812.17 | $1,584.85 | $7,397.02 |
| 08/2012 | 16657250 | 66663663CCCCCCCCCCCCCC | $506,849.30 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,821.20 | $1,575.82 | $7,397.02 |
| 07/2012 | 16657250 | 6663663CCCCCCCCCCCCCCC | $507,639.46 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,830.18 | $1,566.84 | $7,397.02 |
| 06/2012 | 16657250 | 663663CCCCCCCCCCCCCCCC | $508,425.12 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,839.11 | $1,557.91 | $7,397.02 |
| 05/2012 | 16657250 | 63663CCCCCCCCCCCCCCCCC | $509,206.30 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,847.98 | $1,549.04 | $7,397.02 |
| 04/2012 | 16657250 | 3663CCCCCCCCCCCCCCCCCC | $509,983.03 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $2,926.20 | $772.31 | $3,698.51 |
| 03/2012 | 16657250 | 663CCCCCCCCCCCCCCCCCCC | $510,755.34 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,865.58 | $1,531.44 | $7,397.02 |
| 02/2012 | 16657250 | 63CCCCCCCCCCCCCCCCCCC | $511,523.25 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $5,874.31 | $1,522.71 | $7,397.02 |
| 01/2012 | 16657250 | 3CCCCCCCCCCCCCCCCCCCC | $512,286.78 | $563,000.00 | 1 | 90046 | 6.875 | YES | $3,698.51 | $3,698.51 | $2,939.33 | $759.18 | $3,698.51 |
| 12/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $513,045.96 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 11/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $513,800.82 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 10/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $514,551.38 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 09/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $515,297.66 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 08/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $516,039.69 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 07/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $516,777.50 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 06/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $517,511.10 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 05/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $518,240.52 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 04/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $518,965.79 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 03/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $519,686.93 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 02/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $520,403.96 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 01/2011 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $521,116.90 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 12/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $521,825.78 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 11/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $522,530.62 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 10/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $523,231.45 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 09/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $523,928.29 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 08/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $524,621.16 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 07/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $525,310.08 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 06/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $525,995.08 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 05/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $526,676.17 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 04/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $527,353.38 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 03/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $528,026.74 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 02/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $528,696.26 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 01/2010 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $529,361.97 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 12/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $530,208.81 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 11/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $530,865.90 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 10/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $531,820.74 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 09/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $532,468.65 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 08/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $533,414.36 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 07/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $534,354.68 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 06/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $535,289.64 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 05/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $536,219.28 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 04/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $537,143.62 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 03/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $538,062.70 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 02/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $538,976.53 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |

McDonnell Analytics, Inc.

Copyright 07/25/2016 BLOOMBERG L.P

204

Ex 2 pg 164 of 227

# Tribelsky Pay History

## Downloaded From Bloomberg L.P. on 07/25/2016

| Date | Loan ID | PayHistory | Balance | Original Balance | Groups | Zip | Gross Cpn | | Payment Due | Original Payment | Outstanding Int Advances | Outstanding Prin Advances | Outstanding Servicer Advances |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2009 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $539,885.17 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 12/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $540,487.14 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 11/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $541,686.94 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 10/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $542,580.14 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 09/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $543,468.25 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 08/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCCC | $544,049.81 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 07/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCCC | $545,229.32 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 06/2008 | 16657250 | CCCCCCCCCCCCCCCCCCCC | $546,102.34 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 05/2008 | 16657250 | CCCCCCCCCCCCCCCCCCC | $546,970.38 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 04/2008 | 16657250 | CCCCCCCCCCCCCCCCCC | $547,833.48 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 03/2008 | 16657250 | CCCCCCCCCCCCCCCCC | $548,691.66 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 02/2008 | 16657250 | CCCCCCCCCCCCCCCC | $549,544.95 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 01/2008 | 16657250 | CCCCCCCCCCCCCCC | $550,393.38 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 12/2007 | 16657250 | CCCCCCCCCCCCCC | $551,236.98 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 11/2007 | 16657250 | CCCCCCCCCCCCC | $552,075.76 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 10/2007 | 16657250 | CCCCCCCCCCCC | $552,608.29 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 09/2007 | 16657250 | CCCCCCCCCCC | $553,437.55 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 08/2007 | 16657250 | CCCCCCCCCC | $554,563.58 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 07/2007 | 16657250 | CCCCCCCCC | $555,383.42 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 06/2007 | 16657250 | CCCCCCCC | $555,897.10 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 05/2007 | 16657250 | CCCCCCC | $557,009.12 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 04/2007 | 16657250 | CCCCCC | $557,513.54 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 03/2007 | 16657250 | CCCCC | $558,812.01 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 02/2007 | 16657250 | CCCC | $560,103.09 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | $0.00 | $0.00 | $0.00 |
| 01/2007 | 16657250 | CCC | $560,790.23 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | | | |
| 12/2006 | 16657250 | CC | $561,572.89 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | | | |
| 11/2006 | 16657250 | C | $562,051.31 | $563,000.00 | 1 | 90046 | 6.875 | NO | $3,698.51 | $3,698.51 | | | |

McDonnell Analytics, Inc.

Copyright 07/25/2016 BLOOMBERG L.P.



EX 2 Pg 165 of 227

# EXHIBIT "N"

usbank.

Distribution Date: Jan 25, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657888 | CA | 60.0000% | 450,000.00 | 421,414.36 | 06/01/2009 | 120 + days | Foreclosure | 91,735.72 | 6.87500% |
| 16657908 | CA | 75.7700% | 832,000.00 | 838,714.36 | 03/01/2011 | 120 + days | Foreclosure | 49,973.44 | 6.75000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,611.52 | 08/01/2011 | 120 + days | Foreclosure | 2,414.67 | 8.62500% |
| 16657952 | FL | 80.0000% | 600,000.00 | 561,885.23 | 09/01/2010 | 120 + days | Foreclosure | 64,997.06 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 423,321.09 | 03/01/2010 | 120 + days | Foreclosure | 54,156.56 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 183,314.61 | 09/01/2011 | 120 + days | Foreclosure | 6,083.83 | 7.00000% |
| 16658071 | FL | 80.0000% | 272,000.00 | 264,945.24 | 05/01/2009 | 120 + days | Foreclosure | 48,191.18 | 7.75000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16658086 | CA | 71.1100% | 320,000.00 | 318,813.87 | 08/01/2010 | 120 + days | Foreclosure | 34,549.24 | 7.12500% |
| 16375705 | CA | 54.8800% | 439,000.00 | 413,117.87 | 06/01/2010 | 120 + days | REO | 26,881.10 | 6.50000% |
| 16657754 | TX | 90.0000% | 89,100.00 | 84,747.91 | 01/01/2011 | 120 + days | REO | 8,675.56 | 8.50000% |
| 16657779 | GA | 90.0000% | 144,000.00 | 136,748.20 | 04/01/2011 | 120 + days | REO | 10,658.92 | 8.37500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 587,561.84 | 12/01/2011 | 30 - 59 days | | 8,479.26 | 7.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 513,045.06 | 12/01/2011 | 30 - 59 days | | 7,183.10 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2011 | 30 - 59 days | | 7,145.64 | 6.37500% |
| 16657792 | PA | 80.0000% | 148,000.00 | 139,849.62 | 12/01/2011 | 30 - 59 days | | 2,113.65 | 8.00000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 110,751.87 | 12/01/2011 | 30 - 59 days | | 1,372.72 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 659,797.41 | 12/01/2011 | 30 - 59 days | | 9,151.83 | 6.87500% |
| 16657837 | SC | 80.0000% | 80,800.00 | 80,738.18 | 12/01/2011 | 30 - 59 days | | 1,126.98 | 8.62500% |
| 16658073 | CA | 70.0000% | 357,000.00 | 347,096.74 | 12/01/2011 | 30 - 59 days | | 4,615.70 | 6.62500% |
| **Group 2** | | | | | | | | | |
| 16319911 | FL | 79.5900% | 214,900.00 | 214,839.20 | 09/01/2009 | 120 + days | Foreclosure | 34,396.61 | 6.87500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 7,165.80 | 4.00000% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 30,608.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 21,896.00 | 6.62500% |

207

Ex 2 Pg 162 of 227

usbank.

Distribution Date: Feb 27, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657132 | CA | 75.0000% | 553,500.00 | 586,871.99 | 12/01/2011 | 60 - 89 days | Delinquent | 12,719.10 | 7.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 512,288.78 | 12/01/2011 | 60 - 89 days | Delinquent | 10,774.88 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 88,280.44 | 12/01/2011 | 60 - 89 days | Delinquent | 2,090.04 | 8.50000% |
| 16657830 | WA | 80.0000% | 600,000.00 | 558,937.14 | 12/01/2011 | 60 - 89 days | Delinquent | 11,324.97 | 6.75000% |
| 16658073 | CA | 70.0000% | 357,000.00 | 346,632.79 | 12/01/2011 | 60 - 89 days | Delinquent | 6,923.69 | 6.62500% |
| 16375678 | MA | 80.0000% | 680,000.00 | 631,384.20 | 11/01/2011 | 90 - 120 days | Delinquent | 16,665.04 | 6.50000% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | Delinquent | 19,059.60 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 498,934.28 | 10/01/2010 | 120 + days | Delinquent | 53,991.45 | 6.12500% |
| 16375685 | CA | 68.4900% | 500,000.00 | 459,454.91 | 11/01/2010 | 120 + days | Delinquent | 51,007.09 | 6.87500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 928,283.52 | 12/01/2010 | 120 + days | Delinquent | 93,118.61 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 440,882.20 | 12/01/2010 | 120 + days | Delinquent | 44,919.29 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Delinquent | 107,350.75 | 6.75000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 13,739.58 | 6.12500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 468,862.26 | 04/01/2011 | 120 + days | Bankruptcy | 34,754.48 | 6.75000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,769.45 | 07/01/2010 | 120 + days | Foreclosure | 9,123.74 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 535,432.77 | 06/01/2010 | 120 + days | Foreclosure | 83,085.56 | 7.75000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | Foreclosure | 13,857.96 | 7.87500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Foreclosure | 31,073.87 | 7.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 560,666.55 | 04/01/2010 | 120 + days | Foreclosure | 87,932.85 | 6.87500% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,852.86 | 02/01/2011 | 120 + days | Foreclosure | 12,366.92 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 700,093.42 | 05/01/2011 | 120 + days | Foreclosure | 48,430.87 | 7.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 586,678.61 | 09/01/2009 | 120 + days | Foreclosure | 117,283.94 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 179,182.59 | 12/01/2008 | 120 + days | Foreclosure | 42,663.86 | 6.87500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 163,817.96 | 09/01/2010 | 120 + days | Foreclosure | 20,813.41 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 611,030.39 | 08/01/2007 | 120 + days | Foreclosure | 239,711.88 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 145,733.60 | 02/01/2011 | 120 + days | Foreclosure | 11,459.91 | 6.75000% |
| 16657352 | IL | 95.0000% | 51,300.00 | 48,794.81 | 03/01/2009 | 120 + days | Foreclosure | 13,828.35 | 8.50000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 62,824.86 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 554,265.42 | 10/01/2009 | 120 + days | Foreclosure | 107,262.28 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 697,906.14 | 04/01/2010 | 120 + days | Foreclosure | 105,929.41 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 72,041.75 | 6.75000% |
| 16657559 | GA | 80.0000% | 520,000.00 | 520,000.00 | 05/01/2011 | 120 + days | Foreclosure | 29,791.70 | 7.12500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 403,863.74 | 06/01/2011 | 120 + days | Foreclosure | 24,549.75 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 31,179.20 | 03/01/2010 | 120 + days | Foreclosure | 5,774.40 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 407,316.49 | 02/01/2011 | 120 + days | Foreclosure | 35,347.33 | 6.62500% |
| 16657885 | FL | 100.0000% | 89,000.00 | 88,543.90 | 11/01/2009 | 120 + days | Foreclosure | 17,044.72 | 8.50000% |

208

2 168 227

usbank.

Distribution Date: Mar 26, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657250 | CA | 62.5600% | 583,000.00 | 511,523.25 | 01/01/2012 | 60 - 89 days | Delinquent | 10,775.35 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 88,190.67 | 01/01/2012 | 60 - 89 days | Delinquent | 2,090.10 | 8.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 149,792.90 | 01/01/2012 | 60 - 89 days | Delinquent | 2,925.97 | 7.12500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 586,177.83 | 12/01/2011 | 90 - 120 days | Delinquent | 16,959.09 | 7.50000% |
| 16658073 | CA | 70.0000% | 357,000.00 | 346,166.28 | 12/01/2011 | 90 - 120 days | Delinquent | 9,231.78 | 6.62500% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | Delinquent | 21,442.05 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 498,199.82 | 11/01/2010 | 120 + days | Delinquent | 53,993.95 | 6.12500% |
| 16375685 | CA | 68.4900% | 500,000.00 | 458,802.55 | 12/01/2010 | 120 + days | Delinquent | 51,009.18 | 6.87500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 927,005.31 | 01/01/2011 | 120 + days | Delinquent | 93,122.45 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 440,274.83 | 12/01/2010 | 120 + days | Delinquent | 47,914.90 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Delinquent | 111,052.50 | 6.75000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 15,266.20 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 534,821.55 | 06/01/2010 | 120 + days | Bankruptcy | 87,043.36 | 7.75000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 468,241.80 | 04/01/2011 | 120 + days | Bankruptcy | 37,914.74 | 6.75000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,691.75 | 07/01/2010 | 120 + days | Foreclosure | 9,580.09 | 7.37500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | Foreclosure | 13,857.96 | 7.87500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Foreclosure | 31,073.87 | 7.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 559,937.13 | 04/01/2010 | 120 + days | Foreclosure | 91,757.77 | 6.87500% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,726.45 | 02/01/2011 | 120 + days | Foreclosure | 13,318.40 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 699,187.53 | 05/01/2011 | 120 + days | Foreclosure | 53,274.98 | 7.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 585,883.60 | 09/01/2009 | 120 + days | Foreclosure | 121,195.84 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 179,077.50 | 12/01/2008 | 120 + days | Foreclosure | 43,758.21 | 6.87500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 163,616.92 | 09/01/2010 | 120 + days | Foreclosure | 21,970.09 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 610,296.29 | 08/01/2007 | 120 + days | Foreclosure | 244,074.12 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 145,539.88 | 02/01/2011 | 120 + days | Foreclosure | 12,443.06 | 6.75000% |
| 16657352 | IL | 95.0000% | 51,300.00 | 48,745.99 | 03/01/2009 | 120 + days | Foreclosure | 14,212.64 | 8.50000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 65,816.52 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 553,509.17 | 10/01/2009 | 120 + days | Foreclosure | 110,963.23 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 696,933.30 | 04/01/2010 | 120 + days | Foreclosure | 110,537.38 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 74,923.42 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 403,323.14 | 06/01/2011 | 120 + days | Foreclosure | 27,278.05 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 31,146.39 | 03/01/2010 | 120 + days | Foreclosure | 6,015.08 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 406,760.66 | 02/01/2011 | 120 + days | Foreclosure | 38,067.15 | 6.62500% |
| 16657885 | FL | 100.0000% | 89,000.00 | 88,543.90 | 11/01/2009 | 120 + days | Foreclosure | 17,653.46 | 8.50000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,512.69 | 08/01/2011 | 120 + days | Foreclosure | 3,219.64 | 8.62500% |
| 16657952 | FL | 80.0000% | 600,000.00 | 560,436.20 | 09/01/2010 | 120 + days | Foreclosure | 72,646.55 | 6.87500% |

209

EX 2 Pg 169 of 227

usbank.

Distribution Date: Apr 25, 2012

# Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

**Group 1**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 16375705 | CA | 54.8800% | 439,000.00 | 413,117.87 | 06/01/2010 | 120 + days | REO | 26,881.10 | 6.50000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,613.57 | 07/01/2010 | 120 + days | REO | 10,036.46 | 7.37500% |
| 16657559 | GA | 80.0000% | 520,000.00 | 520,000.00 | 05/01/2011 | 120 + days | REO | 35,750.04 | 7.12500% |
| 16657888 | CA | 60.0000% | 450,000.00 | 419,779.55 | 06/01/2009 | 120 + days | REO | 100,341.56 | 6.87500% |
| 16658086 | CA | 71.1100% | 320,000.00 | 317,624.23 | 08/01/2010 | 120 + days | REO | 41,211.96 | 7.12500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 510,755.34 | 03/01/2012 | 30 - 59 days | | 7,184.04 | 6.87500% |
| 16657797 | OR | 75.0000% | 107,250.00 | 110,247.72 | 03/01/2012 | 30 - 59 days | | 1,372.93 | 5.87500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 846,841.47 | 03/01/2012 | 30 - 59 days | | 11,589.87 | 6.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 557,437.80 | 03/01/2012 | 30 - 59 days | | 7,550.76 | 6.75000% |
| 16657837 | SC | 80.0000% | 80,800.00 | 80,738.18 | 03/01/2012 | 30 - 59 days | | 1,126.98 | 8.62500% |

**Group 2**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 8,360.10 | 4.00000% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 34,280.96 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 26,588.00 | 6.62500% |
| 16319911 | FL | 79.5900% | 214,900.00 | 214,839.20 | 09/01/2009 | 120 + days | REO | 37,954.88 | 6.87500% |

210



2 170 227

usbank.

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

Distribution Date: May 25, 2012

## DELINQUENCY LOAN DETAIL REPORT

### Group 1

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| 16657250 | CA | 62.5600% | 563,000.00 | 509,983.03 | 03/01/2012 | 60 - 89 days | Delinquent | 10,776.30 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 88,009.21 | 03/01/2012 | 60 - 89 days | Delinquent | 2,090.21 | 8.50000% |
| 16657784 | CA | 76.0900% | 909,000.00 | 845,721.69 | 03/01/2012 | 60 - 89 days | Delinquent | 17,385.16 | 6.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 556,681.80 | 03/01/2012 | 60 - 89 days | Delinquent | 11,326.37 | 6.75000% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | Delinquent | 26,206.95 | 6.75000% |
| 16375680 | CA | 60.0000% | 540,000.00 | 496,719.64 | 01/01/2011 | 120 + days | Delinquent | 53,998.99 | 6.12500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 924,427.68 | 01/01/2011 | 120 + days | Delinquent | 105,543.22 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 439,049.83 | 12/01/2010 | 120 + days | Delinquent | 53,906.49 | 6.75000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 18,319.44 | 6.12500% |
| 16658073 | CA | 70.0000% | 357,000.00 | 345,225.53 | 12/01/2011 | 120 + days | Delinquent | 13,848.26 | 6.62500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 533,587.25 | 06/01/2010 | 120 + days | Bankruptcy | 94,959.35 | 7.75000% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,865.50 | 12/01/2008 | 120 + days | Bankruptcy | 45,946.98 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 466,990.39 | 04/01/2011 | 120 + days | Bankruptcy | 44,235.65 | 6.75000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Foreclosure | 25,890.73 | 7.62500% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | Foreclosure | 13,857.96 | 7.87500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Foreclosure | 31,073.87 | 7.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 558,465.73 | 04/01/2010 | 120 + days | Foreclosure | 99,408.06 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 584,776.47 | 01/01/2012 | 120 + days | Foreclosure | 21,199.94 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,470.98 | 02/01/2011 | 120 + days | Foreclosure | 15,221.44 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 697,359.86 | 05/01/2011 | 120 + days | Foreclosure | 62,963.77 | 7.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 584,280.40 | 09/01/2009 | 120 + days | Foreclosure | 129,020.15 | 6.62500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 163,211.20 | 09/01/2010 | 120 + days | Foreclosure | 24,283.59 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 608,814.53 | 08/01/2007 | 120 + days | Foreclosure | 252,799.07 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 145,149.17 | 02/01/2011 | 120 + days | Foreclosure | 14,409.48 | 6.75000% |
| 16657352 | IL | 95.0000% | 51,300.00 | 48,647.31 | 03/01/2009 | 120 + days | Foreclosure | 14,981.25 | 8.50000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 71,799.84 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 551,984.11 | 10/01/2009 | 120 + days | Foreclosure | 118,365.59 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 694,971.80 | 04/01/2010 | 120 + days | Foreclosure | 119,753.92 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 80,686.76 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 402,232.80 | 06/01/2011 | 120 + days | Foreclosure | 32,735.00 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 118,456.00 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 31,080.08 | 03/01/2010 | 120 + days | Foreclosure | 6,496.46 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 405,639.77 | 02/01/2011 | 120 + days | Foreclosure | 43,507.13 | 6.62500% |
| 16657885 | FL | 100.0000% | 89,000.00 | 88,543.90 | 11/01/2009 | 120 + days | Foreclosure | 18,870.94 | 8.50000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,412.43 | 08/01/2011 | 120 + days | Foreclosure | 4,024.65 | 8.62500% |
| 16657952 | FL | 80.0000% | 600,000.00 | 558,970.52 | 09/01/2010 | 120 + days | Foreclosure | 80,296.65 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 421,038.98 | 03/01/2010 | 120 + days | Foreclosure | 65,416.61 | 6.62500% |

211.

2 Pg 171 of 227

usbank.

Distribution Date: Jun 25, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657250 | CA | 62.5600% | 563,000.00 | 509,208.30 | 04/01/2012 | 60 - 89 days | Delinquent | 10,776.79 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,917.52 | 04/01/2012 | 60 - 89 days | Delinquent | 2,090.26 | 8.50000% |
| 16657837 | SC | 80.0000% | 80,800.00 | 80,738.18 | 04/01/2012 | 60 - 89 days | Delinquent | 1,690.47 | 8.62500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 844,595.49 | 03/01/2012 | 90 - 120 days | Delinquent | 23,180.68 | 6.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 555,921.55 | 03/01/2012 | 90 - 120 days | Delinquent | 15,102.14 | 6.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 923,128.18 | 01/01/2011 | 120 + days | Delinquent | 111,754.01 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 557,723.70 | 04/01/2010 | 120 + days | Delinquent | 103,233.44 | 6.87500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 438,432.16 | 12/01/2010 | 120 + days | Delinquent | 56,902.48 | 6.75000% |
| 16658073 | CA | 70.0000% | 357,000.00 | 344,751.25 | 12/01/2011 | 120 + days | Delinquent | 16,156.65 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,758.59 | 12/01/2008 | 120 + days | Bankruptcy | 47,041.40 | 6.87500% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Bankruptcy | 19,846.06 | 6.12500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 466,359.40 | 04/01/2011 | 120 + days | Bankruptcy | 47,396.30 | 6.75000% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | Foreclosure | 28,589.40 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 495,973.88 | 01/01/2011 | 120 + days | Foreclosure | 57,176.76 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 532,964.11 | 06/01/2010 | 120 + days | Foreclosure | 98,917.54 | 7.75000% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | Foreclosure | 13,857.96 | 7.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 584,069.21 | 01/01/2012 | 120 + days | Foreclosure | 25,440.37 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,341.91 | 02/01/2011 | 120 + days | Foreclosure | 16,173.00 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 696,438.02 | 05/01/2011 | 120 + days | Foreclosure | 67,808.45 | 7.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 583,472.15 | 09/01/2009 | 120 + days | Foreclosure | 132,932.55 | 6.62500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 163,006.50 | 09/01/2010 | 120 + days | Foreclosure | 25,440.40 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 608,066.81 | 08/01/2007 | 120 + days | Foreclosure | 257,161.78 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 144,952.16 | 02/01/2011 | 120 + days | Foreclosure | 15,392.75 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 74,791.50 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 551,215.26 | 10/01/2009 | 120 + days | Foreclosure | 122,067.01 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 693,983.07 | 04/01/2010 | 120 + days | Foreclosure | 124,362.50 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 83,568.43 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 401,683.03 | 06/01/2011 | 120 + days | Foreclosure | 35,463.65 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 122,157.75 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 31,046.59 | 03/01/2010 | 120 + days | Foreclosure | 6,737.16 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 405,074.68 | 02/01/2011 | 120 + days | Foreclosure | 46,227.30 | 6.62500% |
| 16657885 | FL | 100.0000% | 89,000.00 | 88,543.90 | 11/01/2009 | 120 + days | Foreclosure | 19,479.68 | 8.50000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,361.76 | 08/01/2011 | 120 + days | Foreclosure | 4,427.17 | 8.62500% |
| 16657952 | FL | 80.0000% | 600,000.00 | 558,231.38 | 09/01/2010 | 120 + days | Foreclosure | 84,121.93 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 420,460.56 | 03/01/2010 | 120 + days | Foreclosure | 68,231.92 | 6.62500% |

212

Ex 2 pg 172 of 227

usbank.

Distribution Date: Jul 25, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| *Group 1* | | | | | | | | | |
| 16657120 | IN | 90.0000% | 65,160.00 | 57,370.70 | 05/01/2012 | 60 - 89 days | Delinquent | 1,449.87 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 508,425.12 | 05/01/2012 | 60 - 89 days | Delinquent | 10,777.28 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,825.18 | 05/01/2012 | 60 - 89 days | Delinquent | 2,090.31 | 8.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 410,485.91 | 05/01/2012 | 60 - 89 days | Delinquent | 8,090.45 | 6.37500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 921,821.51 | 01/01/2011 | 120 + days | Delinquent | 117,965.07 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 437,811.01 | 12/01/2010 | 120 + days | Delinquent | 59,898.60 | 6.75000% |
| 16657784 | CA | 76.0900% | 909,000.00 | 843,462.84 | 03/01/2012 | 120 + days | Delinquent | 28,976.44 | 6.87500% |
| 16658073 | CA | 70.0000% | 357,000.00 | 344,274.35 | 12/01/2011 | 120 + days | Delinquent | 18,465.14 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,651.07 | 12/01/2008 | 120 + days | Bankruptcy | 48,135.84 | 6.87500% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Bankruptcy | 21,372.68 | 6.12500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 465,724.86 | 04/01/2011 | 120 + days | Bankruptcy | 50,557.08 | 6.75000% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | Foreclosure | 30,971.85 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 495,224.31 | 01/01/2011 | 120 + days | Foreclosure | 60,354.69 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 532,336.95 | 06/01/2010 | 120 + days | Foreclosure | 102,875.86 | 7.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 556,977.42 | 04/01/2010 | 120 + days | Foreclosure | 107,058.97 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 583,357.53 | 01/01/2012 | 120 + days | Foreclosure | 29,680.95 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,211.94 | 02/01/2011 | 120 + days | Foreclosure | 17,124.59 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 582,659.44 | 09/01/2009 | 120 + days | Foreclosure | 136,845.12 | 6.62500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 162,800.56 | 09/01/2010 | 120 + days | Foreclosure | 26,597.25 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 607,314.50 | 08/01/2007 | 120 + days | Foreclosure | 261,524.65 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 144,754.05 | 02/01/2011 | 120 + days | Foreclosure | 16,376.06 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 77,783.16 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 550,442.17 | 10/01/2009 | 120 + days | Foreclosure | 125,768.59 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 692,988.98 | 04/01/2010 | 120 + days | Foreclosure | 128,971.29 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 86,450.10 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 401,130.17 | 06/01/2011 | 120 + days | Foreclosure | 38,192.41 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 125,859.50 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 31,012.87 | 03/01/2010 | 120 + days | Foreclosure | 6,977.87 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 404,506.47 | 02/01/2011 | 120 + days | Foreclosure | 48,947.59 | 6.62500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 555,157.02 | 03/01/2012 | 120 + days | Foreclosure | 18,878.07 | 6.75000% |
| 16657885 | FL | 100.0000% | 89,000.00 | 88,543.90 | 11/01/2009 | 120 + days | Foreclosure | 20,088.42 | 8.50000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,310.73 | 08/01/2011 | 120 + days | Foreclosure | 4,829.70 | 8.62500% |
| 16657952 | FL | 80.0000% | 600,000.00 | 557,488.00 | 09/01/2010 | 120 + days | Foreclosure | 87,947.37 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 419,878.94 | 03/01/2010 | 120 + days | Foreclosure | 71,047.36 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 181,907.42 | 09/01/2011 | 120 + days | Foreclosure | 13,658.52 | 7.00000% |

213

EX 2 PG 173 of 227

usbank.

Prime Mortgage Trust 2006-2

Distribution Date: Aug 27, 2012

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

## Group 1

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| 16657250 | CA | 62.5600% | 583,000.00 | 507,839.48 | 08/01/2012 | 60 - 89 days | Delinquent | 10,777.77 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,732.19 | 06/01/2012 | 60 - 89 days | Delinquent | 2,090.37 | 8.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 409,884.16 | 06/01/2012 | 60 - 89 days | Delinquent | 8,090.83 | 6.37500% |
| 16657837 | SC | 80.0000% | 80,800.00 | 80,738.18 | 06/01/2012 | 60 - 89 days | Delinquent | 1,690.47 | 8.62500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 920,507.62 | 01/01/2011 | 120 + days | Delinquent | 124,176.41 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 437,186.37 | 12/01/2010 | 120 + days | Delinquent | 62,894.85 | 6.75000% |
| 16657784 | CA | 76.0900% | 909,000.00 | 842,323.70 | 03/01/2012 | 120 + days | Delinquent | 34,772.44 | 6.87500% |
| 16658073 | CA | 70.0000% | 357,000.00 | 343,794.82 | 12/01/2011 | 120 + days | Delinquent | 20,773.73 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,542.93 | 12/01/2008 | 120 + days | Bankruptcy | 49,230.30 | 6.87500% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Bankruptcy | 22,899.30 | 6.12500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 465,086.75 | 04/01/2011 | 120 + days | Bankruptcy | 53,718.00 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 494,470.92 | 01/01/2011 | 120 + days | Foreclosure | 63,532.78 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 531,705.74 | 06/01/2010 | 120 + days | Foreclosure | 106,834.31 | 7.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 556,226.87 | 04/01/2010 | 120 + days | Foreclosure | 110,884.66 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 582,641.40 | 01/01/2012 | 120 + days | Foreclosure | 33,921.68 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 121,081.06 | 02/01/2011 | 120 + days | Foreclosure | 18,076.20 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 581,842.25 | 09/01/2009 | 120 + days | Foreclosure | 140,757.86 | 6.62500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 162,593.38 | 09/01/2010 | 120 + days | Foreclosure | 26,597.25 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 606,557.56 | 08/01/2007 | 120 + days | Foreclosure | 265,887.67 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 144,554.82 | 02/01/2011 | 120 + days | Foreclosure | 17,359.41 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 80,774.82 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 549,664.81 | 10/01/2009 | 120 + days | Foreclosure | 129,470.34 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 691,989.51 | 04/01/2010 | 120 + days | Foreclosure | 133,580.29 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 02/01/2010 | 120 + days | Foreclosure | 89,331.77 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 400,574.20 | 06/01/2011 | 120 + days | Foreclosure | 40,921.29 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 129,561.25 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,978.91 | 03/01/2010 | 120 + days | Foreclosure | 7,218.59 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657788 | CA | 68.9800% | 438,000.00 | 403,935.12 | 02/01/2011 | 120 + days | Foreclosure | 51,668.00 | 6.62500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 554,388.19 | 03/01/2012 | 120 + days | Foreclosure | 22,654.16 | 6.75000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,259.33 | 08/01/2011 | 120 + days | Foreclosure | 5,232.24 | 8.62500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 419,294.11 | 03/01/2010 | 120 + days | Foreclosure | 73,862.92 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 181,668.08 | 09/01/2011 | 120 + days | Foreclosure | 14,921.14 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16341421 | WA | 77.7700% | 453,000.00 | 439,837.01 | 07/01/2011 | 120 + days | REO | 33,354.30 | 6.75000% |
| 16375705 | CA | 54.8800% | 439,000.00 | 413,117.87 | 06/01/2010 | 120 + days | REO | 26,881.10 | 6.50000% |

214

EX 2 pg 174 of 227

usbank.

Distribution Date: Sep 25, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

### Group 1

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| 16657250 | CA | 62.5600% | 563,000.00 | 509,649.30 | 07/01/2012 | 60 - 89 days | Delinquent | 10,778.26 | 6.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,638.54 | 07/01/2012 | 60 - 89 days | Delinquent | 2,090.43 | 8.50000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 109,390.89 | 07/01/2012 | 60 - 89 days | Delinquent | 2,059.87 | 5.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 409,279.21 | 06/01/2012 | 90 - 120 days | Delinquent | 10,788.02 | 6.37500% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 919,186.48 | 01/01/2011 | 120 + days | Delinquent | 130,388.02 | 6.62500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 436,558.21 | 12/01/2010 | 120 + days | Delinquent | 65,891.23 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,944.72 | 07/01/2010 | 120 + days | Delinquent | 6,497.15 | 8.25000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 24,425.92 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 841,178.03 | 03/01/2012 | 120 + days | Delinquent | 40,568.67 | 6.87500% |
| 16658073 | CA | 70.0000% | 357,000.00 | 343,312.64 | 12/01/2011 | 120 + days | Delinquent | 23,082.42 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.65 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 144,354.47 | 02/01/2011 | 120 + days | Bankruptcy | 18,342.81 | 6.75000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 464,445.05 | 04/01/2011 | 120 + days | Bankruptcy | 56,879.05 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 493,713.68 | 01/01/2011 | 120 + days | Foreclosure | 66,711.02 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 531,070.45 | 06/01/2010 | 120 + days | Foreclosure | 110,792.89 | 7.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 555,472.02 | 04/01/2010 | 120 + days | Foreclosure | 114,710.51 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 581,920.80 | 01/01/2012 | 120 + days | Foreclosure | 38,162.56 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,949.26 | 02/01/2011 | 120 + days | Foreclosure | 19,027.84 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 581,020.54 | 09/01/2009 | 120 + days | Foreclosure | 144,670.77 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,434.17 | 12/01/2008 | 120 + days | Foreclosure | 50,324.79 | 6.87500% |
| 16657336 | NJ | 80.0000% | 165,600.00 | 162,593.38 | 09/01/2010 | 120 + days | Foreclosure | 26,597.25 | 7.25000% |
| 16657338 | DE | 86.6700% | 650,000.00 | 605,795.97 | 08/01/2007 | 120 + days | Foreclosure | 270,250.85 | 7.37500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 83,765.48 | 6.50000% |
| 16657439 | FL | 80.0000% | 596,000.00 | 548,883.16 | 10/01/2009 | 120 + days | Foreclosure | 133,172.25 | 6.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 690,984.63 | 04/01/2010 | 120 + days | Foreclosure | 138,189.49 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 03/01/2010 | 120 + days | Foreclosure | 89,331.77 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 400,015.10 | 06/01/2011 | 120 + days | Foreclosure | 43,650.28 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 133,263.00 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657830 | WA | 80.0000% | 600,000.00 | 553,615.03 | 03/01/2012 | 120 + days | Foreclosure | 26,430.41 | 6.75000% |
| 16657939 | OH | 90.0000% | 53,100.00 | 50,207.56 | 08/01/2011 | 120 + days | Foreclosure | 5,634.79 | 8.62500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 418,706.05 | 03/01/2010 | 120 + days | Foreclosure | 76,678.60 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 181,427.34 | 09/01/2011 | 120 + days | Foreclosure | 16,183.81 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16375705 | CA | 54.8800% | 439,000.00 | 413,117.87 | 06/01/2010 | 120 + days | REO | 26,881.10 | 6.50000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,215.40 | 07/01/2010 | 120 + days | REO | 12,318.54 | 7.37500% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | REO | 13,857.96 | 7.87500% |

215

Ex 2 pg 175 of 227

usbank.

Distribution Date: Oct 25, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375678 | MA | 80.0000% | 680,000.00 | 624,036.18 | 08/01/2012 | 60 - 89 days | Delinquent | 12,503.61 | 6.50000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,633.35 | 08/01/2012 | 60 - 89 days | Delinquent | 1,035.30 | 7.37500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,544.22 | 08/01/2012 | 60 - 89 days | Delinquent | 2,090.49 | 8.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 508,054.61 | 07/01/2012 | 90 - 120 days | Delinquent | 14,371.34 | 6.87500% |
| 16657797 | OR | 75.0000% | 107,250.00 | 109,217.00 | 07/01/2012 | 90 - 120 days | Delinquent | 2,746.57 | 5.87500% |
| 16657491 | CA | 74.9600% | 476,000.00 | 435,926.52 | 12/01/2010 | 120 + days | Delinquent | 68,887.74 | 6.75000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 408,671.05 | 06/01/2012 | 120 + days | Delinquent | 13,485.34 | 6.37500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,910.29 | 07/01/2010 | 120 + days | Delinquent | 6,737.88 | 8.25000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 25,952.54 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 840,025.80 | 03/01/2012 | 120 + days | Delinquent | 46,365.14 | 6.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 144,152.99 | 02/01/2011 | 120 + days | Bankruptcy | 19,326.25 | 6.75000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 463,799.74 | 04/01/2011 | 120 + days | Bankruptcy | 60,040.24 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 492,952.58 | 01/01/2011 | 120 + days | Foreclosure | 69,889.42 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 530,431.06 | 06/01/2010 | 120 + days | Foreclosure | 114,751.60 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 917,858.05 | 01/01/2011 | 120 + days | Foreclosure | 136,599.91 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 554,712.84 | 04/01/2010 | 120 + days | Foreclosure | 118,536.51 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 581,195.70 | 01/01/2012 | 120 + days | Foreclosure | 42,403.59 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,816.55 | 02/01/2011 | 120 + days | Foreclosure | 19,979.51 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 580,194.30 | 09/01/2009 | 120 + days | Foreclosure | 148,583.86 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,324.79 | 12/01/2008 | 120 + days | Foreclosure | 51,419.30 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 605,029.70 | 08/01/2007 | 120 + days | Foreclosure | 274,614.19 | 7.37500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 86,758.14 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 689,974.30 | 04/01/2010 | 120 + days | Foreclosure | 142,798.91 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 04/01/2010 | 120 + days | Foreclosure | 89,331.77 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 399,452.85 | 06/01/2011 | 120 + days | Foreclosure | 46,379.39 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 136,964.75 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657830 | WA | 80.0000% | 600,000.00 | 552,837.52 | 03/01/2012 | 120 + days | Foreclosure | 30,206.83 | 6.75000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 418,114.75 | 03/01/2010 | 120 + days | Foreclosure | 79,494.40 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 181,185.20 | 09/01/2011 | 120 + days | Foreclosure | 17,446.53 | 7.00000% |
| 16658073 | CA | 70.0000% | 357,000.00 | 342,827.80 | 12/01/2011 | 120 + days | Foreclosure | 25,391.21 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,134.29 | 07/01/2010 | 120 + days | REO | 12,775.01 | 7.37500% |
| 16657089 | FL | 86.8800% | 63,422.00 | 60,604.62 | 07/01/2008 | 120 + days | REO | 13,857.96 | 7.87500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 692,696.59 | 05/01/2011 | 120 + days | REO | 87,189.11 | 7.00000% |
| 16657352 | IL | 95.0000% | 51,300.00 | 48,394.44 | 03/01/2009 | 120 + days | REO | 16,903.00 | 8.50000% |

usbank.

Distribution Date: Nov 26, 2012

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16375678 | MA | 80.0000% | 680,000.00 | 623,118.31 | 09/01/2012 | 60 - 89 days | Delinquent | 12,504.18 | 6.50000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,449.22 | 09/01/2012 | 60 - 89 days | Delinquent | 2,090.55 | 8.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 148,197.70 | 09/01/2012 | 60 - 89 days | Delinquent | 2,929.44 | 7.12500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 650,219.23 | 09/01/2012 | 60 - 89 days | Delinquent | 13,733.41 | 6.87500% |
| 16657812 | NY | 80.0000% | 684,000.00 | 633,157.84 | 09/01/2012 | 60 - 89 days | Delinquent | 13,255.75 | 7.00000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,565.12 | 08/01/2012 | 90 - 120 days | Delinquent | 1,380.43 | 7.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 505,265.37 | 08/01/2012 | 90 - 120 days | Delinquent | 14,372.00 | 6.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 408,059.65 | 06/01/2012 | 120 + days | Delinquent | 16,182.79 | 6.37500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,875.63 | 07/01/2010 | 120 + days | Delinquent | 6,978.62 | 8.25000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 27,479.16 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 838,866.97 | 04/01/2012 | 120 + days | Delinquent | 46,367.04 | 6.87500% |
| 16657797 | OR | 75.0000% | 107,250.00 | 109,042.26 | 07/01/2012 | 120 + days | Delinquent | 3,433.30 | 5.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 463,150.80 | 04/01/2011 | 120 + days | Bankruptcy | 63,201.56 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 492,187.59 | 01/01/2011 | 120 + days | Foreclosure | 73,067.98 | 6.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 529,787.54 | 06/01/2010 | 120 + days | Foreclosure | 118,710.45 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 916,522.28 | 01/01/2011 | 120 + days | Foreclosure | 142,812.08 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 553,949.31 | 04/01/2010 | 120 + days | Foreclosure | 122,362.67 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 580,466.06 | 01/01/2012 | 120 + days | Foreclosure | 46,644.77 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,682.91 | 02/01/2011 | 120 + days | Foreclosure | 20,931.21 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 579,363.50 | 09/01/2009 | 120 + days | Foreclosure | 152,497.12 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,214.78 | 12/01/2008 | 120 + days | Foreclosure | 52,513.83 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 604,258.72 | 08/01/2007 | 120 + days | Foreclosure | 278,977.69 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 143,950.38 | 02/01/2011 | 120 + days | Foreclosure | 20,309.73 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 89,749.80 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 688,958.50 | 04/01/2010 | 120 + days | Foreclosure | 147,408.54 | 6.50000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 04/01/2010 | 120 + days | Foreclosure | 92,213.44 | 6.75000% |
| 16657491 | CA | 74.9600% | 476,000.00 | 435,291.28 | 12/01/2010 | 120 + days | Foreclosure | 71,884.38 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 398,887.44 | 06/01/2011 | 120 + days | Foreclosure | 49,108.62 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 140,666.50 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657830 | WA | 80.0000% | 600,000.00 | 552,055.64 | 03/01/2012 | 120 + days | Foreclosure | 33,983.41 | 6.75000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 417,520.18 | 03/01/2010 | 120 + days | Foreclosure | 82,310.33 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 180,941.64 | 09/01/2011 | 120 + days | Foreclosure | 18,709.30 | 7.00000% |
| 16658073 | CA | 70.0000% | 357,000.00 | 342,340.29 | 12/01/2011 | 120 + days | Foreclosure | 27,700.10 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 63,052.68 | 07/01/2010 | 120 + days | REO | 13,231.49 | 7.37500% |



217

EX 2 Pg 177 of 227

usbank.

Distribution Date: Dec 26, 2012

**Prime Mortgage Trust 2006-2**

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375678 | MA | 80.0000% | 680,000.00 | 622,195.46 | 10/01/2012 | 60 - 89 days | Delinquent | 12,504.76 | 6.50000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,353.56 | 10/01/2012 | 60 - 89 days | Delinquent | 2,090.61 | 8.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 147,992.93 | 10/01/2012 | 60 - 89 days | Delinquent | 2,929.89 | 7.12500% |
| 16657746 | CA | 72.5400% | 428,000.00 | 426,528.99 | 10/01/2012 | 60 - 89 days | Delinquent | 6,797.82 | 6.62500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 179,155.15 | 10/01/2012 | 60 - 89 days | Delinquent | 3,990.63 | 7.62500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 504,451.65 | 09/01/2012 | 90 - 120 days | Delinquent | 14,372.67 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 632,300.59 | 09/01/2012 | 90 - 120 days | Delinquent | 17,674.69 | 7.00000% |
| 16657490 | MD | 80.0000% | 532,000.00 | 532,000.00 | 04/01/2010 | 120 + days | Delinquent | 95,085.11 | 6.75000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 407,445.01 | 06/01/2012 | 120 + days | Delinquent | 18,880.37 | 6.37500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,840.73 | 07/01/2010 | 120 + days | Delinquent | 7,219.36 | 8.25000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 29,005.78 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 837,701.51 | 05/01/2012 | 120 + days | Delinquent | 46,368.95 | 6.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 462,498.21 | 04/01/2011 | 120 + days | Bankruptcy | 66,363.02 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 491,418.70 | 01/01/2011 | 120 + days | Foreclosure | 76,246.70 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,496.47 | 08/01/2012 | 120 + days | Foreclosure | 1,725.57 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 529,139.86 | 06/01/2010 | 120 + days | Foreclosure | 122,669.43 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 915,179.14 | 01/01/2011 | 120 + days | Foreclosure | 149,024.53 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 553,181.41 | 04/01/2010 | 120 + days | Foreclosure | 126,188.99 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 579,731.86 | 01/01/2012 | 120 + days | Foreclosure | 50,886.10 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,548.34 | 02/01/2011 | 120 + days | Foreclosure | 21,882.94 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 578,528.11 | 09/01/2009 | 120 + days | Foreclosure | 156,410.55 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 178,104.14 | 12/01/2008 | 120 + days | Foreclosure | 53,608.38 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 603,483.00 | 08/01/2007 | 120 + days | Foreclosure | 283,341.35 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 143,746.63 | 02/01/2011 | 120 + days | Foreclosure | 21,293.25 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 92,741.46 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 687,937.20 | 04/01/2010 | 120 + days | Foreclosure | 152,018.38 | 6.50000% |
| 16657491 | CA | 74.9600% | 476,000.00 | 434,652.46 | 12/01/2010 | 120 + days | Foreclosure | 74,881.16 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 398,318.85 | 06/01/2011 | 120 + days | Foreclosure | 51,837.97 | 6.75000% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | Foreclosure | 144,368.25 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 108,866.86 | 07/01/2012 | 120 + days | Foreclosure | 4,120.07 | 5.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 551,269.36 | 03/01/2012 | 120 + days | Foreclosure | 37,760.15 | 6.75000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 416,922.33 | 03/01/2010 | 120 + days | Foreclosure | 85,126.38 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 180,696.66 | 09/01/2011 | 120 + days | Foreclosure | 19,972.12 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,970.57 | 07/01/2010 | 120 + days | REO | 13,687.99 | 7.37500% |

218

EX 2 Pg 178 of 227

usbank.

Distribution Date: Jan 25, 2013

Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,257.22 | 11/01/2012 | 60 - 89 days | Delinquent | 2,090.67 | 8.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 648,237.05 | 11/01/2012 | 60 - 89 days | Delinquent | 13,734.64 | 6.87500% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 750,001.29 | 11/01/2012 | 60 - 89 days | Delinquent | 15,592.50 | 6.87500% |
| 16658018 | MO | 90.0000% | 62,370.00 | 58,233.96 | 11/01/2012 | 60 - 89 days | Delinquent | 1,352.86 | 8.12500% |
| 16375678 | MA | 80.0000% | 680,000.00 | 621,267.62 | 10/01/2012 | 90 - 120 days | Delinquent | 16,673.40 | 6.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 503,643.13 | 10/01/2012 | 90 - 120 days | Delinquent | 14,373.33 | 6.87500% |
| 16657642 | NC | 100.0000% | 161,000.00 | 147,786.95 | 10/01/2012 | 90 - 120 days | Delinquent | 3,906.82 | 7.12500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 178,925.95 | 10/01/2012 | 90 - 120 days | Delinquent | 5,320.93 | 7.62500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 406,827.10 | 06/01/2012 | 120 + days | Delinquent | 21,578.07 | 6.37500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,805.59 | 07/01/2010 | 120 + days | Delinquent | 7,460.11 | 8.25000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 30,532.40 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 836,529.36 | 06/01/2012 | 120 + days | Delinquent | 46,370.86 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 631,438.34 | 09/01/2012 | 120 + days | Delinquent | 22,093.81 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 416,321.18 | 03/01/2010 | 120 + days | Delinquent | 87,942.56 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 686,910.37 | 04/01/2010 | 120 + days | Bankruptcy | 156,628.43 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 461,841.95 | 04/01/2011 | 120 + days | Bankruptcy | 69,524.61 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 490,645.88 | 01/01/2011 | 120 + days | Foreclosure | 79,425.58 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,427.40 | 08/01/2012 | 120 + days | Foreclosure | 2,070.73 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 528,488.00 | 06/01/2010 | 120 + days | Foreclosure | 126,628.55 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 913,828.58 | 01/01/2011 | 120 + days | Foreclosure | 155,237.26 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 552,409.11 | 04/01/2010 | 120 + days | Foreclosure | 130,015.47 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 578,993.07 | 01/01/2012 | 120 + days | Foreclosure | 55,127.59 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,412.83 | 02/01/2011 | 120 + days | Foreclosure | 22,834.69 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 577,688.11 | 09/01/2009 | 120 + days | Foreclosure | 160,324.16 | 6.62500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,992.87 | 12/01/2008 | 120 + days | Foreclosure | 54,702.96 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 602,702.52 | 08/01/2007 | 120 + days | Foreclosure | 287,705.18 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 143,541.73 | 02/01/2011 | 120 + days | Foreclosure | 22,276.82 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 95,733.12 | 6.50000% |
| 16657491 | CA | 74.9600% | 476,000.00 | 434,010.05 | 12/01/2010 | 120 + days | Foreclosure | 77,878.07 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 397,747.06 | 06/01/2011 | 120 + days | Foreclosure | 54,567.44 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 108,690.20 | 07/01/2012 | 120 + days | Foreclosure | 4,806.88 | 5.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 550,478.66 | 03/01/2012 | 120 + days | Foreclosure | 41,537.06 | 6.75000% |
| 16657961 | IL | 64.5600% | 184,000.00 | 180,450.25 | 09/01/2011 | 120 + days | Foreclosure | 21,235.00 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,905.00 | 62,887.96 | 07/01/2010 | 120 + days | REO | 14,144.51 | 7.37500% |

219

EX 2 PG 179 of 227

usbank.

Distribution Date: Feb 25, 2013

# Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

**Group 1**

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| 16657518 | NC | 75.0000% | 93,000.00 | 87,160.20 | 12/01/2012 | 60 - 89 days | Delinquent | 2,090.73 | 8.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 647,237.44 | 12/01/2012 | 60 - 89 days | Delinquent | 13,735.26 | 6.87500% |
| 16375678 | MA | 80.0000% | 680,000.00 | 620,334.75 | 11/01/2012 | 90 - 120 days | Delinquent | 16,674.17 | 6.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 147,579.75 | 11/01/2012 | 90 - 120 days | Delinquent | 3,907.42 | 7.12500% |
| 16658018 | MO | 90.0000% | 62,370.00 | 58,165.15 | 11/01/2012 | 90 - 120 days | Delinquent | 1,803.84 | 8.12500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 502,830.08 | 10/01/2012 | 120 + days | Delinquent | 17,687.08 | 6.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 406,205.91 | 06/01/2012 | 120 + days | Delinquent | 24,275.90 | 6.37500% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 32,059.02 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 835,350.50 | 06/01/2012 | 120 + days | Delinquent | 52,168.31 | 6.87500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 178,695.30 | 10/01/2012 | 120 + days | Delinquent | 6,651.28 | 7.62500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 630,571.06 | 09/01/2012 | 120 + days | Delinquent | 26,513.11 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 415,716.71 | 03/01/2010 | 120 + days | Delinquent | 90,758.86 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 685,877.97 | 04/01/2010 | 120 + days | Bankruptcy | 161,238.70 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 461,182.00 | 04/01/2011 | 120 + days | Bankruptcy | 72,686.34 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 489,869.12 | 01/01/2011 | 120 + days | Foreclosure | 82,604.62 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,357.91 | 08/01/2012 | 120 + days | Foreclosure | 2,415.90 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 527,831.93 | 06/01/2010 | 120 + days | Foreclosure | 130,587.81 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 912,470.57 | 01/01/2011 | 120 + days | Foreclosure | 161,450.27 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 551,632.38 | 04/01/2010 | 120 + days | Foreclosure | 133,842.12 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 578,249.67 | 01/01/2012 | 120 + days | Foreclosure | 59,369.23 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,276.37 | 02/01/2011 | 120 + days | Foreclosure | 23,786.47 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,600.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 576,843.47 | 09/01/2009 | 120 + days | Foreclosure | 164,237.94 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 601,917.24 | 08/01/2007 | 120 + days | Foreclosure | 292,069.17 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 143,335.68 | 02/01/2011 | 120 + days | Foreclosure | 23,260.43 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 98,724.78 | 6.50000% |
| 16657491 | CA | 74.9600% | 476,000.00 | 433,364.03 | 12/01/2010 | 120 + days | Foreclosure | 80,875.12 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 397,172.06 | 06/01/2011 | 120 + days | Foreclosure | 57,297.03 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,770.21 | 07/01/2010 | 120 + days | Foreclosure | 7,700.87 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 108,512.88 | 07/01/2012 | 120 + days | Foreclosure | 5,493.72 | 5.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 549,683.51 | 03/01/2012 | 120 + days | Foreclosure | 45,314.13 | 6.75000% |
| 16657961 | IL | 64.5600% | 184,000.00 | 180,202.41 | 09/01/2011 | 120 + days | Foreclosure | 22,497.93 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,804.84 | 07/01/2010 | 120 + days | REO | 14,601.05 | 7.37500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 688,867.08 | 05/01/2011 | 120 + days | REO | 106,572.93 | 7.00000% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,880.96 | 12/01/2008 | 120 + days | REO | 55,797.56 | 6.87500% |



220

Ex 2 pg 180 of 227

usbank.

Distribution Date: Mar 25, 2013

**Prime Mortgage Trust 2006-2**

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 87,062.49 | 01/01/2013 | 60 - 89 days | Delinquent | 2,090.79 | 8.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 137,560.80 | 01/01/2013 | 60 - 89 days | Delinquent | 3,171.86 | 8.00000% |
| 16375678 | MA | 80.0000% | 680,000.00 | 619,396.83 | 12/01/2012 | 90 - 120 days | Delinquent | 16,674.95 | 6.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 147,371.31 | 12/01/2012 | 90 - 120 days | Delinquent | 3,908.02 | 7.12500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 646,232.10 | 12/01/2012 | 90 - 120 days | Delinquent | 18,314.10 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 502,012.37 | 10/01/2012 | 120 + days | Delinquent | 21,861.00 | 6.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 405,581.42 | 06/01/2012 | 120 + days | Delinquent | 26,973.86 | 6.37500% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | Delinquent | 33,585.64 | 6.12500% |
| 16657784 | CA | 76.0900% | 909,000.00 | 834,164.88 | 07/01/2012 | 120 + days | Delinquent | 52,170.49 | 6.87500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 178,463.18 | 10/01/2012 | 120 + days | Delinquent | 7,981.68 | 7.62500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 629,698.72 | 09/01/2012 | 120 + days | Delinquent | 30,932.59 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 415,108.90 | 03/01/2010 | 120 + days | Delinquent | 93,575.29 | 6.62500% |
| 16658018 | MO | 90.0000% | 62,370.00 | 58,095.88 | 11/01/2012 | 120 + days | Delinquent | 2,254.84 | 8.12500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 684,839.98 | 04/01/2010 | 120 + days | Bankruptcy | 165,849.18 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 460,518.34 | 04/01/2011 | 120 + days | Bankruptcy | 75,848.21 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 489,088.39 | 01/01/2011 | 120 + days | Foreclosure | 85,783.83 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,287.99 | 08/01/2012 | 120 + days | Foreclosure | 2,761.09 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 527,171.62 | 06/01/2010 | 120 + days | Foreclosure | 134,547.20 | 7.75000% |
| 16657096 | HI | 40.0000% | 1,000,000.00 | 911,105.06 | 01/01/2011 | 120 + days | Foreclosure | 167,663.57 | 6.62500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 550,851.20 | 04/01/2010 | 120 + days | Foreclosure | 137,668.93 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 577,501.62 | 01/01/2012 | 120 + days | Foreclosure | 63,611.03 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,138.96 | 02/01/2011 | 120 + days | Foreclosure | 24,738.28 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 575,994.17 | 09/01/2009 | 120 + days | Foreclosure | 168,151.90 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 601,127.13 | 08/01/2007 | 120 + days | Foreclosure | 296,433.33 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 143,128.47 | 02/01/2011 | 120 + days | Foreclosure | 24,244.08 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 101,716.44 | 6.50000% |
| 16657491 | CA | 74.9600% | 476,000.00 | 432,714.37 | 12/01/2010 | 120 + days | Foreclosure | 83,872.30 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 396,593.82 | 06/01/2011 | 120 + days | Foreclosure | 60,026.74 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,734.59 | 07/01/2010 | 120 + days | Foreclosure | 7,941.64 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 108,334.69 | 07/01/2012 | 120 + days | Foreclosure | 6,180.60 | 5.87500% |
| 16657830 | WA | 80.0000% | 600,000.00 | 548,883.89 | 03/01/2012 | 120 + days | Foreclosure | 49,091.37 | 6.75000% |
| 16657961 | IL | 64.5600% | 184,000.00 | 179,953.12 | 09/01/2011 | 120 + days | Foreclosure | 23,760.91 | 7.00000% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,721.21 | 07/01/2010 | 120 + days | REO | 15,057.60 | 7.37500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 687,895.70 | 05/01/2011 | 120 + days | REO | 111,419.39 | 7.00000% |

221

Ex 2 Pg 181 of 227

usbank.

Distribution Date: Apr 25, 2013

**Prime Mortgage Trust 2006-2**

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375678 | MA | 80.0000% | 680,000.00 | 618,453.83 | 02/01/2013 | 60 - 89 days | Delinquent | 12,507.09 | 6.50000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,964.09 | 02/01/2013 | 60 - 89 days | Delinquent | 2,090.85 | 8.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 147,161.64 | 02/01/2013 | 60 - 89 days | Delinquent | 2,931.69 | 7.12500% |
| 16657792 | PA | 80.0000% | 148,000.00 | 137,391.89 | 02/01/2013 | 60 - 89 days | Delinquent | 3,171.97 | 8.00000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 645,221.00 | 01/01/2013 | 90 - 120 days | Delinquent | 18,314.94 | 6.87500% |
| 16657250 | CA | 62.5000% | 563,000.00 | 501,189.97 | 10/01/2012 | 120 + days | Delinquent | 25,155.10 | 6.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 404,953.61 | 06/01/2012 | 120 + days | Delinquent | 29,671.95 | 6.37500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 178,229.58 | 10/01/2012 | 120 + days | Delinquent | 9,312.13 | 7.62500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 628,821.29 | 09/01/2012 | 120 + days | Delinquent | 35,352.26 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 414,497.74 | 03/01/2010 | 120 + days | Delinquent | 96,391.85 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 683,796.37 | 04/01/2010 | 120 + days | Bankruptcy | 170,459.88 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 459,850.95 | 04/01/2011 | 120 + days | Bankruptcy | 79,010.22 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 488,303.68 | 01/01/2011 | 120 + days | Foreclosure | 88,963.20 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,217.64 | 08/01/2012 | 120 + days | Foreclosure | 3,106.29 | 7.37500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 526,507.05 | 06/01/2010 | 120 + days | Foreclosure | 134,547.20 | 7.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 550,065.55 | 04/01/2010 | 120 + days | Foreclosure | 141,495.90 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 576,748.90 | 01/01/2012 | 120 + days | Foreclosure | 67,852.98 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 120,000.59 | 02/01/2011 | 120 + days | Foreclosure | 25,690.12 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 575,140.18 | 09/01/2009 | 120 + days | Foreclosure | 172,066.04 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 600,332.17 | 08/01/2007 | 120 + days | Foreclosure | 300,797.65 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 142,920.10 | 02/01/2011 | 120 + days | Foreclosure | 25,227.77 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 104,708.10 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 396,012.33 | 06/01/2011 | 120 + days | Foreclosure | 62,756.57 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,698.72 | 07/01/2010 | 120 + days | Foreclosure | 8,182.41 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 108,155.63 | 07/01/2012 | 120 + days | Foreclosure | 6,867.52 | 5.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 179,702.38 | 09/01/2011 | 120 + days | Foreclosure | 25,023.94 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 58,026.14 | 11/01/2012 | 120 + days | Foreclosure | 2,705.85 | 8.12500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,637.06 | 07/01/2010 | 120 + days | REO | 15,514.17 | 7.37500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 686,918.65 | 05/01/2011 | 120 + days | REO | 116,266.05 | 7.00000% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,655.21 | 12/01/2008 | 120 + days | REO | 57,986.84 | 6.87500% |
| 16657666 | CA | 80.0000% | 688,000.00 | 683,400.00 | 10/01/2009 | 120 + days | REO | 159,175.25 | 6.75000% |
| 16657768 | CA | 80.0000% | 312,000.00 | 311,820.00 | 06/01/2011 | 120 + days | REO | 35,112.26 | 6.12500% |
| 16657939 | OH | 90.0000% | 53,100.00 | 49,996.72 | 08/01/2011 | 120 + days | REO | 6,842.50 | 8.62500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 265,852.12 | 03/01/2013 | 30 - 59 days | | 4,212.46 | 8.37500% |

222

Ex 2 pg 182 of 227

usbank.

Distribution Date: May 28, 2013

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657240 | CT | 90.0000% | 284,400.00 | 265,545.90 | 03/01/2013 | 60 - 89 days | Delinquent | 6,318.79 | 8.37500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,865.00 | 03/01/2013 | 60 - 89 days | Delinquent | 2,090.91 | 8.50000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 146,950.72 | 03/01/2013 | 60 - 89 days | Delinquent | 2,932.15 | 7.12500% |
| 16657792 | PA | 80.0000% | 148,000.00 | 137,221.86 | 02/01/2013 | 90 - 120 days | Delinquent | 4,229.36 | 8.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 526,507.05 | 06/01/2010 | 120 + days | Delinquent | 134,547.20 | 7.75000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 575,991.47 | 01/01/2012 | 120 + days | Delinquent | 72,095.09 | 7.50000% |
| 16657250 | CA | 82.6600% | 563,000.00 | 500,362.86 | 10/01/2012 | 120 + days | Delinquent | 28,749.37 | 6.87500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 177,994.50 | 10/01/2012 | 120 + days | Delinquent | 10,642.63 | 7.62500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 627,938.74 | 09/01/2012 | 120 + days | Delinquent | 39,772.11 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.73 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.87 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 682,747.11 | 04/01/2010 | 120 + days | Bankruptcy | 175,070.80 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 459,179.80 | 04/01/2011 | 120 + days | Bankruptcy | 82,172.37 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 487,514.96 | 02/01/2011 | 120 + days | Foreclosure | 88,967.49 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,146.86 | 08/01/2012 | 120 + days | Foreclosure | 3,451.51 | 7.37500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 549,275.40 | 04/01/2010 | 120 + days | Foreclosure | 145,323.04 | 6.87500% |
| 16657149 | DE | 90.0000% | 128,520.00 | 119,861.25 | 02/01/2011 | 120 + days | Foreclosure | 26,641.99 | 8.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.31 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.27 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 574,281.47 | 09/01/2009 | 120 + days | Foreclosure | 175,980.36 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 599,532.32 | 08/01/2007 | 120 + days | Foreclosure | 305,162.14 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 142,710.56 | 02/01/2011 | 120 + days | Foreclosure | 26,211.51 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 107,699.76 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 404,322.47 | 06/01/2012 | 120 + days | Foreclosure | 32,370.18 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 395,427.57 | 06/01/2011 | 120 + days | Foreclosure | 65,486.52 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,662.60 | 07/01/2010 | 120 + days | Foreclosure | 8,423.19 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.72 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,975.69 | 07/01/2012 | 120 + days | Foreclosure | 7,554.48 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 644,204.11 | 01/01/2013 | 120 + days | Foreclosure | 22,894.20 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 413,883.20 | 03/01/2010 | 120 + days | Foreclosure | 99,208.53 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 179,450.17 | 09/01/2011 | 120 + days | Foreclosure | 26,287.02 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,955.93 | 11/01/2012 | 120 + days | Foreclosure | 3,156.88 | 8.12500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.92 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,552.40 | 07/01/2010 | 120 + days | REO | 15,970.76 | 7.37500% |
| 16657187 | CO | 58.1400% | 750,000.00 | 685,935.91 | 05/01/2011 | 120 + days | REO | 121,112.92 | 7.00000% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,541.37 | 12/01/2008 | 120 + days | REO | 59,081.51 | 6.87500% |
| 16657466 | IL | 72.3200% | 101,250.00 | 94,427.06 | 04/01/2013 | 30 - 59 days | | 1,499.79 | 8.37500% |
| 16657870 | WI | 80.0000% | 102,400.00 | 94,342.55 | 04/01/2013 | 30 - 59 days | | 1,357.77 | 7.25000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 04/01/2013 | 30 - 59 days | | 2,078.96 | 6.87500% |

223.

2 183 227

usbank.

Distribution Date: Jun 25, 2013

**Prime Mortgage Trust 2006-2**

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657466 | IL | 72.3200% | 101,250.00 | 94,316.50 | 04/01/2013 | 60 - 89 days | Delinquent | 2,249.72 | 8.37500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,765.20 | 04/01/2013 | 60 - 89 days | Delinquent | 2,090.95 | 8.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 137,050.69 | 04/01/2013 | 60 - 89 days | Delinquent | 3,172.17 | 8.00000% |
| 16657870 | WI | 80.0000% | 102,400.00 | 94,213.99 | 04/01/2013 | 60 - 89 days | Delinquent | 2,036.69 | 7.25000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 265,237.54 | 03/01/2013 | 90 - 120 days | Delinquent | 8,425.17 | 8.37500% |
| 16657642 | NC | 100.0000% | 161,000.00 | 146,738.55 | 03/01/2013 | 90 - 120 days | Delinquent | 3,909.84 | 7.12500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 627,051.05 | 03/01/2013 | 90 - 120 days | Delinquent | 17,679.03 | 7.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 526,507.05 | 07/01/2010 | 120 + days | Delinquent | 130,591.91 | 7.75000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 499,631.01 | 11/01/2012 | 120 + days | Delinquent | 28,750.72 | 6.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Bankruptcy | 107,455.29 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 681,692.16 | 04/01/2010 | 120 + days | Bankruptcy | 179,681.92 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 458,504.88 | 04/01/2011 | 120 + days | Bankruptcy | 85,334.65 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 486,722.22 | 02/01/2011 | 120 + days | Foreclosure | 92,147.17 | 6.12500% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,075.64 | 08/01/2012 | 120 + days | Foreclosure | 3,796.73 | 7.37500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 548,480.72 | 04/01/2010 | 120 + days | Foreclosure | 149,150.34 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 575,229.31 | 01/01/2012 | 120 + days | Foreclosure | 76,337.35 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 119,720.94 | 02/01/2011 | 120 + days | Foreclosure | 27,593.88 | 8.37500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 573,418.02 | 09/01/2009 | 120 + days | Foreclosure | 179,894.86 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 598,727.56 | 08/01/2007 | 120 + days | Foreclosure | 309,526.80 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 142,499.84 | 02/01/2011 | 120 + days | Foreclosure | 27,195.29 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 110,691.42 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 403,687.97 | 06/01/2012 | 120 + days | Foreclosure | 35,068.54 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 394,839.52 | 06/01/2011 | 120 + days | Foreclosure | 68,216.59 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,626.24 | 07/01/2010 | 120 + days | Foreclosure | 8,663.98 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,794.87 | 07/01/2012 | 120 + days | Foreclosure | 8,241.47 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 643,181.39 | 01/01/2013 | 120 + days | Foreclosure | 27,473.66 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 413,265.27 | 03/01/2010 | 120 + days | Foreclosure | 102,025.34 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 179,196.49 | 09/01/2011 | 120 + days | Foreclosure | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,885.24 | 11/01/2012 | 120 + days | Foreclosure | 3,607.92 | 8.12500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,467.22 | 07/01/2010 | 120 + days | REO | 16,427.37 | 7.37500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,426.87 | 12/01/2008 | 120 + days | REO | 60,176.19 | 6.87500% |
| 16657855 | CO | 95.0000% | 185,250.00 | 177,757.93 | 10/01/2012 | 120 + days | REO | 11,973.17 | 7.62500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 04/01/2013 | 60 - 89 days | Delinquent | 7,484.25 | 6.62500% |



224

Ex 2 pg 184 of 227

usbank.

Distribution Date: Jul 25, 2013

**Prime Mortgage Trust 2006-2**

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657466 | IL | 72.3200% | 101,250.00 | 94,205.17 | 05/01/2013 | 60 - 89 days | Delinquent | 2,249.79 | 8.37500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,664.70 | 05/01/2013 | 60 - 89 days | Delinquent | 2,091.02 | 8.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 136,878.38 | 05/01/2013 | 60 - 89 days | Delinquent | 3,172.28 | 8.00000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 146,525.12 | 04/01/2013 | 90 - 120 days | Delinquent | 3,910.45 | 7.12500% |
| 16657065 | GA | 80.0000% | 568,000.00 | 526,507.05 | 07/01/2010 | 120 + days | Delinquent | 130,591.91 | 7.75000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 264,927.03 | 03/01/2013 | 120 + days | Delinquent | 10,531.63 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 498,694.40 | 11/01/2012 | 120 + days | Delinquent | 32,345.35 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 626,158.17 | 03/01/2013 | 120 + days | Delinquent | 22,099.24 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Bankruptcy | 107,455.29 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 680,631.50 | 04/01/2010 | 120 + days | Bankruptcy | 184,293.30 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 457,826.16 | 04/01/2011 | 120 + days | Bankruptcy | 88,497.09 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 485,925.43 | 03/01/2011 | 120 + days | Foreclosure | 92,151.67 | 6.12500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 547,681.49 | 04/01/2010 | 120 + days | Foreclosure | 152,977.81 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 574,462.38 | 01/01/2012 | 120 + days | Foreclosure | 80,579.79 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 119,579.65 | 02/01/2011 | 120 + days | Foreclosure | 28,545.82 | 8.37500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 572,549.81 | 09/01/2009 | 120 + days | Foreclosure | 183,809.52 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 597,917.85 | 08/01/2007 | 120 + days | Foreclosure | 313,891.61 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 142,287.93 | 02/01/2011 | 120 + days | Foreclosure | 28,179.10 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 113,683.08 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 403,050.10 | 06/01/2012 | 120 + days | Foreclosure | 37,767.01 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 394,248.16 | 06/01/2011 | 120 + days | Foreclosure | 70,946.78 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,589.63 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,613.17 | 07/01/2012 | 120 + days | Foreclosure | 8,928.49 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 642,152.81 | 01/01/2013 | 120 + days | Foreclosure | 32,053.36 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 412,643.93 | 03/01/2010 | 120 + days | Foreclosure | 104,842.28 | 6.62500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | Foreclosure | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,814.07 | 11/01/2012 | 120 + days | Foreclosure | 4,058.97 | 8.12500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 46,003.98 | 08/01/2012 | 120 + days | REO | 4,141.97 | 7.37500% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,381.51 | 07/01/2010 | 120 + days | REO | 16,883.99 | 7.37500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,311.72 | 12/01/2008 | 120 + days | REO | 61,270.93 | 6.87500% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 72,027.78 | 06/01/2013 | 30 - 59 days | | 1,132.93 | 8.25000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 479,411.11 | 06/01/2013 | 30 - 59 days | | 6,400.57 | 6.25000% |
| 16657870 | WI | 80.0000% | 102,400.00 | 94,084.65 | 06/01/2013 | 30 - 59 days | | 1,357.86 | 7.25000% |
| ***Group 2*** | | | | | | | | | |

225

Ex 2 Pg 185 of 227

usbank.

Distribution Date: Aug 26, 2013

Prime Mortgage Trust 2006-2

Contact:
Maryellen Hunter
Account Administrator
617-603-6401
maryellen.hunter@usbank.com

# DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,563.48 | 06/01/2013 | 60 - 89 days | Delinquent | 2,091.09 | 8.50000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 478,607.79 | 06/01/2013 | 60 - 89 days | Delinquent | 9,601.10 | 6.25000% |
| 16657466 | IL | 72.3200% | 101,250.00 | 94,093.06 | 05/01/2013 | 90 - 120 days | Delinquent | 2,999.76 | 8.37500% |
| 16657792 | PA | 80.0000% | 148,000.00 | 136,704.92 | 05/01/2013 | 90 - 120 days | Delinquent | 4,229.77 | 8.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Delinquent | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 264,614.35 | 03/01/2013 | 120 + days | Delinquent | 12,638.16 | 8.37500% |
| 16657250 | CA | 62.6600% | 563,000.00 | 497,852.99 | 11/01/2012 | 120 + days | Delinquent | 35,940.13 | 6.87500% |
| 16657642 | NC | 100.0000% | 161,000.00 | 146,310.42 | 04/01/2013 | 120 + days | Delinquent | 4,888.47 | 7.12500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 625,260.09 | 03/01/2013 | 120 + days | Delinquent | 26,519.65 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 07/01/2009 | 120 + days | Bankruptcy | 30,038.50 | 7.62500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Bankruptcy | 107,455.29 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 679,565.09 | 04/01/2010 | 120 + days | Bankruptcy | 188,904.88 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 457,143.62 | 04/01/2011 | 120 + days | Bankruptcy | 91,659.65 | 6.75000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 485,124.57 | 03/01/2011 | 120 + days | Foreclosure | 95,331.71 | 6.12500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 546,877.68 | 04/01/2010 | 120 + days | Foreclosure | 156,805.45 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 573,690.66 | 01/01/2012 | 120 + days | Foreclosure | 84,822.37 | 7.50000% |
| 16657149 | DE | 90.0000% | 128,520.00 | 119,437.38 | 02/01/2011 | 120 + days | Foreclosure | 29,497.78 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 571,676.80 | 09/01/2009 | 120 + days | Foreclosure | 187,724.39 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 597,103.16 | 08/01/2007 | 120 + days | Foreclosure | 318,256.61 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 142,074.83 | 02/01/2011 | 120 + days | Foreclosure | 29,162.97 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 116,674.74 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 402,408.84 | 06/01/2012 | 120 + days | Foreclosure | 40,465.63 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 393,653.48 | 06/01/2011 | 120 + days | Foreclosure | 73,677.10 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,430.58 | 07/01/2012 | 120 + days | Foreclosure | 9,615.56 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 641,118.34 | 01/01/2013 | 120 + days | Foreclosure | 36,633.25 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 412,019.16 | 03/01/2010 | 120 + days | Foreclosure | 107,659.33 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 45,931.88 | 08/01/2012 | 120 + days | REO | 4,487.25 | 7.37500% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,295.28 | 07/01/2010 | 120 + days | REO | 17,340.62 | 7.37500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,195.91 | 12/01/2008 | 120 + days | REO | 62,365.66 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,742.42 | 11/01/2012 | 120 + days | REO | 4,510.03 | 8.12500% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,941.49 | 07/01/2013 | 30 - 59 days | | 1,132.94 | 8.25000% |
| **Group 2** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 53,870.08 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 14,729.70 | 4.00000% |

usbank.

Distribution Date: Sep 25, 2013

# Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657584 | NV | 74.9700% | 536,000.00 | 477,800.29 | 07/01/2013 | 60 - 89 days | Delinquent | 9,601.62 | 6.25000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,461.55 | 06/01/2013 | 90 - 120 days | Delinquent | 2,788.18 | 8.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Delinquent | 40,537.26 | 6.87500% |
| 16657250 | CA | 82.5600% | 583,000.00 | 497,006.76 | 11/01/2012 | 120 + days | Delinquent | 39,535.10 | 6.87500% |
| 16657642 | NC | 100.0000% | 161,000.00 | 146,094.45 | 05/01/2013 | 120 + days | Delinquent | 4,889.25 | 7.12500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 624,356.77 | 03/01/2013 | 120 + days | Delinquent | 30,940.25 | 7.00000% |
| 16657066 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 07/01/2009 | 120 + days | Bankruptcy | 30,038.50 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 678,492.91 | 04/01/2010 | 120 + days | Bankruptcy | 193,516.69 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 456,457.24 | 04/01/2011 | 120 + days | Bankruptcy | 94,822.35 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 546,069.26 | 04/01/2010 | 120 + days | Foreclosure | 160,633.25 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 572,914.12 | 01/01/2012 | 120 + days | Foreclosure | 89,065.12 | 7.50000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 264,299.49 | 03/01/2013 | 120 + days | Foreclosure | 14,744.74 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 570,798.97 | 09/01/2009 | 120 + days | Foreclosure | 191,639.43 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 596,283.47 | 08/01/2007 | 120 + days | Foreclosure | 322,621.76 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,860.53 | 02/01/2011 | 120 + days | Foreclosure | 30,146.90 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 119,666.39 | 6.50000% |
| 16657466 | IL | 72.3200% | 101,250.00 | 93,980.17 | 05/01/2013 | 120 + days | Foreclosure | 3,749.76 | 8.37500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 401,764.18 | 06/01/2012 | 120 + days | Foreclosure | 43,164.39 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 393,055.45 | 06/01/2011 | 120 + days | Foreclosure | 76,407.53 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,247.09 | 07/01/2012 | 120 + days | Foreclosure | 10,302.67 | 5.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 640,077.94 | 01/01/2013 | 120 + days | Foreclosure | 41,213.37 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 411,390.94 | 03/01/2010 | 120 + days | Foreclosure | 110,476.55 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 45,859.34 | 08/01/2012 | 120 + days | REO | 4,832.53 | 7.37500% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,208.52 | 07/01/2010 | 120 + days | REO | 17,797.28 | 7.37500% |
| 16657284 | MN | 80.0000% | 184,800.00 | 177,079.43 | 12/01/2008 | 120 + days | REO | 63,460.43 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,670.28 | 11/01/2012 | 120 + days | REO | 4,961.12 | 8.12500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 484,319.63 | 08/01/2013 | 30 - 59 days | | 4,484.20 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,854.61 | 08/01/2013 | 30 - 59 days | | 1,132.99 | 8.25000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 127,754.81 | 08/01/2013 | 30 - 59 days | | 1,953.71 | 7.87500% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 08/01/2013 | 30 - 59 days | | 2,078.96 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 07/01/2013 | 60 - 89 days | Delinquent | 7,484.25 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 55,094.40 | 6.62500% |



227

2 187 227

usbank.

Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

Distribution Date: Oct 25, 2013

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657361 | MD | 80.0000% | 138,400.00 | 127,589.70 | 08/01/2013 | 60 - 89 days | Delinquent | 2,930.64 | 7.87500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 476,988.57 | 08/01/2013 | 60 - 89 days | Delinquent | 9,602.11 | 6.25000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,358.90 | 07/01/2013 | 90 - 120 days | Delinquent | 2,788.27 | 8.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Delinquent | 40,537.26 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 623,448.18 | 03/01/2013 | 120 + days | Delinquent | 35,361.03 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 07/01/2009 | 120 + days | Bankruptcy | 30,038.50 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 677,414.92 | 04/01/2010 | 120 + days | Bankruptcy | 198,128.72 | 6.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 639,031.58 | 01/01/2013 | 120 + days | Bankruptcy | 45,793.72 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 455,767.00 | 04/01/2011 | 120 + days | Bankruptcy | 97,985.22 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 545,256.21 | 04/01/2010 | 120 + days | Foreclosure | 164,461.24 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 572,132.72 | 01/01/2012 | 120 + days | Foreclosure | 93,308.04 | 7.50000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 263,982.43 | 03/01/2013 | 120 + days | Foreclosure | 16,851.39 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 496,155.68 | 11/01/2012 | 120 + days | Foreclosure | 43,130.24 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 569,916.30 | 09/01/2009 | 120 + days | Foreclosure | 195,554.67 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 595,458.74 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,645.03 | 02/01/2011 | 120 + days | Foreclosure | 31,130.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 122,658.08 | 6.50000% |
| 16657466 | IL | 72.3200% | 101,250.00 | 93,866.49 | 05/01/2013 | 120 + days | Foreclosure | 4,499.78 | 8.37500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 401,116.09 | 06/01/2012 | 120 + days | Foreclosure | 45,863.29 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 392,454.06 | 06/01/2011 | 120 + days | Foreclosure | 79,138.11 | 6.75000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 145,877.20 | 05/01/2013 | 120 + days | Foreclosure | 5,867.56 | 7.12500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 107,062.70 | 07/01/2012 | 120 + days | Foreclosure | 10,989.81 | 5.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 410,759.25 | 03/01/2010 | 120 + days | Foreclosure | 113,293.89 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657049 | WA | 82.2000% | 51,375.00 | 45,786.35 | 08/01/2012 | 120 + days | REO | 5,177.82 | 7.37500% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,121.22 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,597.66 | 11/01/2012 | 120 + days | REO | 5,412.23 | 8.12500% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,767.13 | 09/01/2013 | 30 - 59 days | | 1,133.04 | 8.25000% |
| 16657711 | LA | 79.1700% | 95,000.00 | 84,050.36 | 09/01/2013 | 30 - 59 days | | 1,293.46 | 7.50000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 09/01/2013 | 30 - 59 days | | 2,078.96 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 07/01/2013 | 90 - 120 days | Delinquent | 9,979.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 56,318.72 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 15,525.00 | 4.00000% |

228

Ex 2 Pg 188 of 227

usbank.

Distribution Date: Nov 25, 2013

Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657584 | NV | 74.9700% | 536,000.00 | 476,172.64 | 09/01/2013 | 60 - 89 days | Delinquent | 9,602.63 | 6.25000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 127,423.51 | 08/01/2013 | 90 - 120 days | Delinquent | 3,907.59 | 7.87500% |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,255.52 | 08/01/2013 | 90 - 120 days | Delinquent | 2,788.35 | 8.50000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 622,534.29 | 03/01/2013 | 120 + days | Delinquent | 39,782.02 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 04/01/2009 | 120 + days | Bankruptcy | 24,855.43 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 07/01/2009 | 120 + days | Bankruptcy | 30,038.50 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 676,331.09 | 04/01/2010 | 120 + days | Bankruptcy | 202,740.97 | 6.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 637,979.23 | 01/01/2013 | 120 + days | Bankruptcy | 50,374.28 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 455,072.88 | 04/01/2011 | 120 + days | Bankruptcy | 101,148.23 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 544,438.50 | 04/01/2010 | 120 + days | Foreclosure | 168,289.39 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 571,346.44 | 01/01/2012 | 120 + days | Foreclosure | 97,551.12 | 7.50000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | Foreclosure | 107,455.29 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 263,663.16 | 03/01/2013 | 120 + days | Foreclosure | 18,958.10 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 495,299.73 | 11/01/2012 | 120 + days | Foreclosure | 46,725.57 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 569,028.75 | 09/01/2009 | 120 + days | Foreclosure | 199,470.07 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,428.31 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 125,649.72 | 6.50000% |
| 16657466 | IL | 72.3200% | 101,250.00 | 93,752.02 | 05/01/2013 | 120 + days | Foreclosure | 5,249.82 | 8.37500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 400,464.56 | 06/01/2012 | 120 + days | Foreclosure | 48,562.32 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 391,849.28 | 06/01/2011 | 120 + days | Foreclosure | 81,868.80 | 6.75000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 145,658.66 | 05/01/2013 | 120 + days | Foreclosure | 6,846.04 | 7.12500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 106,877.41 | 07/01/2012 | 120 + days | Foreclosure | 11,677.01 | 5.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 410,124.07 | 03/01/2010 | 120 + days | Foreclosure | 116,111.36 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,524.54 | 11/01/2012 | 120 + days | REO | 5,863.35 | 8.12500% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,679.05 | 10/01/2013 | 30 - 59 days | | 1,133.07 | 8.25000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 10/01/2013 | 30 - 59 days | | 2,078.96 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 57,543.04 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 15,924.00 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 56,304.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 07/01/2013 | 120 + days | Foreclosure | 12,473.75 | 6.62500% |



229

EX 2 Pg 189 of 227

usbank.

Distribution Date: Dec 26, 2013

**Prime Mortgage Trust 2006-2**

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,151.41 | 10/01/2013 | 60 - 89 days | Delinquent | 2,091.35 | 8.50000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 475,352.46 | 10/01/2013 | 60 - 89 days | Delinquent | 9,603.14 | 6.25000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 10/01/2013 | 60 - 89 days | Delinquent | 3,118.44 | 6.87500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 127,256.23 | 08/01/2013 | 120 + days | Delinquent | 4,884.58 | 7.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 621,615.07 | 03/01/2013 | 120 + days | Delinquent | 44,203.18 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 23,086.92 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 23,099.23 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 28,248.56 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 675,241.39 | 04/01/2010 | 120 + days | Bankruptcy | 207,353.44 | 6.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 636,920.85 | 01/01/2013 | 120 + days | Bankruptcy | 54,955.04 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 454,374.85 | 04/01/2011 | 120 + days | Bankruptcy | 104,311.37 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 543,616.11 | 04/01/2010 | 120 + days | Foreclosure | 172,117.71 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 570,555.25 | 01/01/2012 | 120 + days | Foreclosure | 101,794.36 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 263,341.66 | 03/01/2013 | 120 + days | Foreclosure | 21,064.91 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 494,438.87 | 11/01/2012 | 120 + days | Foreclosure | 50,321.06 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 568,136.30 | 09/01/2009 | 120 + days | Foreclosure | 203,385.68 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 128,641.38 | 6.50000% |
| 16657466 | IL | 72.3200% | 101,250.00 | 93,636.75 | 05/01/2013 | 120 + days | Foreclosure | 5,999.90 | 8.37500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 399,809.57 | 06/01/2012 | 120 + days | Foreclosure | 51,261.49 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 391,241.10 | 06/01/2011 | 120 + days | Foreclosure | 84,599.62 | 6.75000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 145,438.82 | 05/01/2013 | 120 + days | Foreclosure | 7,824.69 | 7.12500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657797 | OR | 75.0000% | 107,250.00 | 106,691.21 | 07/01/2012 | 120 + days | Foreclosure | 12,364.23 | 5.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 409,485.39 | 03/01/2010 | 120 + days | Foreclosure | 118,928.96 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,450.93 | 11/01/2012 | 120 + days | REO | 6,314.48 | 8.12500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 583,312.01 | 11/01/2013 | 30 - 59 days | | 4,485.94 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,590.36 | 11/01/2013 | 30 - 59 days | | 1,133.12 | 8.25000% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 07/01/2013 | 120 + days | Delinquent | 14,968.50 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 58,767.36 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 16,322.10 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 57,868.00 | 6.62500% |

230

Ex 2 p. 190 of 227

usbank.

Distribution Date: Jan 27, 2014

**Prime Mortgage Trust 2006-2**

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 86,046.56 | 11/01/2013 | 60 - 89 days | Delinquent | 2,091.41 | 8.50000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 474,528.00 | 11/01/2013 | 60 - 89 days | Delinquent | 9,603.65 | 6.25000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 11/01/2013 | 60 - 89 days | Delinquent | 3,118.44 | 6.87500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 127,087.85 | 08/01/2013 | 120 + days | Delinquent | 5,861.61 | 7.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 674,145.79 | 04/01/2010 | 120 + days | Bankruptcy | 211,966.16 | 6.50000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 635,856.41 | 01/01/2013 | 120 + days | Bankruptcy | 59,536.05 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 453,672.90 | 04/01/2011 | 120 + days | Bankruptcy | 107,474.65 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 542,789.01 | 04/01/2010 | 120 + days | Foreclosure | 175,946.20 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 569,759.11 | 01/01/2012 | 120 + days | Foreclosure | 106,037.76 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 263,017.92 | 03/01/2013 | 120 + days | Foreclosure | 23,171.75 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 493,673.08 | 11/01/2012 | 120 + days | Foreclosure | 53,916.74 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 567,238.93 | 09/01/2009 | 120 + days | Foreclosure | 207,301.47 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 131,633.04 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 399,151.10 | 06/01/2012 | 120 + days | Foreclosure | 53,960.79 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 390,629.50 | 06/01/2011 | 120 + days | Foreclosure | 87,330.57 | 6.75000% |
| 16657642 | NC | 100.0000% | 161,000.00 | 145,217.67 | 05/01/2013 | 120 + days | Foreclosure | 8,803.48 | 7.12500% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 620,690.49 | 03/01/2013 | 120 + days | Foreclosure | 48,624.54 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 408,843.18 | 03/01/2010 | 120 + days | Foreclosure | 121,746.69 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657466 | IL | 72.3200% | 101,250.00 | 93,520.68 | 05/01/2013 | 120 + days | REO | 6,750.01 | 8.37500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,376.82 | 11/01/2012 | 120 + days | REO | 6,765.63 | 8.12500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 581,919.56 | 12/01/2013 | 30 - 59 days | | 4,486.51 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,501.06 | 12/01/2013 | 30 - 59 days | | 1,133.15 | 8.25000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 736,908.79 | 12/01/2013 | 30 - 59 days | | 10,400.65 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 59,991.68 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 16,720.20 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 59,432.00 | 6.62500% |



231

EX 2 - 191 - 227

usbank.

Distribution Date: Feb 25, 2014

**Prime Mortgage Trust 2006-2**

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657518 | NC | 75.0000% | 93,000.00 | 85,940.97 | 12/01/2013 | 60 - 89 days | Delinquent | 2,091.48 | 8.50000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 473,699.25 | 12/01/2013 | 60 - 89 days | Delinquent | 9,604.17 | 6.25000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 12/01/2013 | 60 - 89 days | Delinquent | 3,118.44 | 6.87500% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 735,776.69 | 12/01/2013 | 60 - 89 days | Delinquent | 15,601.33 | 6.87500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,918.36 | 08/01/2013 | 120 + days | Delinquent | 6,838.66 | 7.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 673,044.25 | 04/01/2010 | 120 + days | Bankruptcy | 216,579.10 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 452,967.00 | 04/01/2011 | 120 + days | Bankruptcy | 110,638.10 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 541,957.17 | 04/01/2010 | 120 + days | Foreclosure | 179,774.85 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 568,957.99 | 01/01/2012 | 120 + days | Foreclosure | 110,281.35 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 262,691.92 | 03/01/2013 | 120 + days | Foreclosure | 25,278.66 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 492,702.33 | 11/01/2012 | 120 + days | Foreclosure | 57,512.61 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 566,336.60 | 09/01/2009 | 120 + days | Foreclosure | 211,217.44 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 134,624.70 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 398,489.13 | 06/01/2012 | 120 + days | Foreclosure | 56,660.24 | 6.37500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 390,014.46 | 06/01/2011 | 120 + days | Foreclosure | 90,061.64 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 634,785.87 | 01/01/2013 | 120 + days | Foreclosure | 64,117.27 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 619,760.51 | 03/01/2013 | 120 + days | Foreclosure | 53,046.10 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 408,197.43 | 03/01/2010 | 120 + days | Foreclosure | 124,564.55 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657642 | NC | 100.0000% | 161,000.00 | 144,995.21 | 05/01/2013 | 120 + days | REO | 9,782.44 | 7.12500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,302.21 | 11/01/2012 | 120 + days | REO | 7,216.78 | 8.12500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 580,524.79 | 01/01/2014 | 30 - 59 days | | 4,487.10 | 2.00000% |
| 16375711 | CA | 78.5600% | 546,000.00 | 486,697.48 | 01/01/2014 | 30 - 59 days | | 6,520.65 | 6.25000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,411.15 | 01/01/2014 | 30 - 59 days | | 1,133.18 | 8.25000% |
| **Group 2** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 61,216.00 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 17,118.29 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 60,996.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 01/01/2014 | 30 - 59 days | | 4,989.50 | 6.62500% |



232

EX 2 Pg 192 of 227

usbank.

Distribution Date: Mar 25, 2014

# Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657584 | NV | 74.9700% | 536,000.00 | 472,866.18 | 01/01/2014 | 60 - 89 days | Delinquent | 9,604.69 | 6.25000% |
| 16657533 | CA | 55.4000% | 448,000.00 | 397,823.64 | 06/01/2012 | 120 + days | Delinquent | 59,359.81 | 6.37500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 671,936.75 | 04/01/2010 | 120 + days | Bankruptcy | 221,192.26 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 452,257.13 | 04/01/2011 | 120 + days | Bankruptcy | 113,801.69 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 541,120.56 | 04/01/2010 | 120 + days | Foreclosure | 183,603.70 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 568,151.87 | 01/01/2012 | 120 + days | Foreclosure | 114,525.10 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 262,363.64 | 03/01/2013 | 120 + days | Foreclosure | 27,385.66 | 8.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 491,826.59 | 11/01/2012 | 120 + days | Foreclosure | 61,108.65 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 565,429.29 | 09/01/2009 | 120 + days | Foreclosure | 215,133.60 | 6.62500% |
| 16657336 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,747.76 | 08/01/2013 | 120 + days | Foreclosure | 7,815.76 | 7.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 137,616.35 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 389,395.96 | 06/01/2011 | 120 + days | Foreclosure | 92,792.86 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 633,709.19 | 01/01/2013 | 120 + days | Foreclosure | 68,698.72 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 618,825.11 | 03/01/2013 | 120 + days | Foreclosure | 57,467.83 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 407,548.11 | 03/01/2010 | 120 + days | Foreclosure | 127,382.56 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,227.09 | 11/01/2012 | 120 + days | REO | 7,667.98 | 8.12500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 579,127.69 | 02/01/2014 | 30 - 59 days | | 4,487.69 | 2.00000% |
| 16375711 | CA | 78.5600% | 546,000.00 | 485,870.54 | 02/01/2014 | 30 - 59 days | | 6,521.02 | 6.25000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,320.62 | 02/01/2014 | 30 - 59 days | | 1,133.21 | 8.25000% |
| 16657518 | NC | 75.0000% | 93,000.00 | 85,834.63 | 02/01/2014 | 30 - 59 days | | 1,394.40 | 8.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 135,457.90 | 02/01/2014 | 30 - 59 days | | 2,115.46 | 8.00000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 02/01/2014 | 30 - 59 days | | 2,078.96 | 6.87500% |
| 16658039 | WA | 80.0000% | 455,200.00 | 410,945.11 | 02/01/2014 | 30 - 59 days | | 5,809.33 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 01/01/2014 | 60 - 89 days | Delinquent | 7,484.25 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 62,440.32 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 17,516.40 | 4.00000% |
| 16396213 | FL | 79.9800% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 62,560.00 | 6.62500% |

233.

Ex 2 pg 193 of 227

usbank.

Distribution Date: Apr 25, 2014

**Prime Mortgage Trust 2006-2**

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375711 | CA | 78.5600% | 546,000.00 | 485,039.30 | 02/01/2014 | 60 - 89 days | Delinquent | 9,781.79 | 6.25000% |
| 16657584 | NV | 74.9700% | 536,000.00 | 472,028.77 | 02/01/2014 | 60 - 89 days | Delinquent | 9,605.21 | 6.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 490,945.84 | 11/01/2012 | 120 + days | Delinquent | 64,704.88 | 6.87500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 397,154.62 | 06/01/2012 | 120 + days | Delinquent | 62,059.53 | 6.37500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 670,823.25 | 04/01/2010 | 120 + days | Bankruptcy | 225,805.67 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 451,543.27 | 04/01/2011 | 120 + days | Bankruptcy | 116,965.44 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 540,279.16 | 04/01/2010 | 120 + days | Foreclosure | 187,432.71 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 567,340.71 | 01/01/2012 | 120 + days | Foreclosure | 118,769.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 262,033.07 | 03/01/2013 | 120 + days | Foreclosure | 29,492.72 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 564,516.97 | 09/01/2009 | 120 + days | Foreclosure | 219,049.94 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,576.04 | 08/01/2013 | 120 + days | Foreclosure | 8,792.89 | 7.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 140,608.01 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 388,773.98 | 06/01/2011 | 120 + days | Foreclosure | 95,524.20 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 632,626.35 | 01/01/2013 | 120 + days | Foreclosure | 73,280.40 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 617,884.25 | 03/01/2013 | 120 + days | Foreclosure | 61,889.78 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 406,895.21 | 03/01/2010 | 120 + days | Foreclosure | 130,200.68 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657051 | PA | 90.0000% | 67,995.00 | 62,033.39 | 07/01/2010 | 120 + days | REO | 18,253.97 | 7.37500% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16658018 | MO | 90.0000% | 62,370.00 | 57,151.47 | 11/01/2012 | 120 + days | REO | 8,119.16 | 8.12500% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,229.47 | 03/01/2014 | 30 - 59 days | | 1,133.26 | 8.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 135,274.97 | 03/01/2014 | 30 - 59 days | | 2,115.55 | 8.00000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 03/01/2014 | 30 - 59 days | | 2,078.96 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 63,664.63 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 17,914.50 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 64,124.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 03/01/2014 | 30 - 59 days | | 4,989.50 | 6.62500% |

234

EX 2 ... 194 ... 227

usbank.

Distribution Date: May 27, 2014

Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

## DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16657250 | CA | 82.5600% | 583,000.00 | 490,060.04 | 11/01/2012 | 120 + days | Delinquent | 68,301.29 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Delinquent | 143,599.67 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 396,482.04 | 06/01/2012 | 120 + days | Delinquent | 64,759.39 | 6.37500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 669,703.72 | 04/01/2010 | 120 + days | Bankruptcy | 230,419.31 | 6.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 450,825.39 | 04/01/2011 | 120 + days | Bankruptcy | 120,129.32 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 539,432.94 | 04/01/2010 | 120 + days | Foreclosure | 191,261.90 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 566,524.48 | 01/01/2012 | 120 + days | Foreclosure | 123,013.07 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Foreclosure | 40,537.26 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 261,700.19 | 03/01/2013 | 120 + days | Foreclosure | 31,599.85 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 563,599.61 | 09/01/2009 | 120 + days | Foreclosure | 222,966.48 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,403.20 | 08/01/2013 | 120 + days | Foreclosure | 9,770.04 | 7.87500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 388,148.50 | 06/01/2011 | 120 + days | Foreclosure | 98,255.67 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 631,537.30 | 01/01/2013 | 120 + days | Foreclosure | 77,862.30 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 616,937.90 | 03/01/2013 | 120 + days | Foreclosure | 66,311.93 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 406,238.70 | 03/01/2010 | 120 + days | Foreclosure | 133,018.98 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Foreclosure | 38,485.91 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| 16375711 | CA | 78.5600% | 546,000.00 | 484,203.73 | 04/01/2014 | 30 - 59 days | | 6,521.71 | 6.25000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,137.69 | 04/01/2014 | 30 - 59 days | | 1,133.30 | 8.25000% |
| 16657678 | FL | 60.0000% | 780,000.00 | 686,747.65 | 04/01/2014 | 30 - 59 days | | 10,488.15 | 7.37500% |
| 16657792 | PA | 80.0000% | 148,000.00 | 135,090.82 | 04/01/2014 | 30 - 59 days | | 2,115.62 | 8.00000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 04/01/2014 | 30 - 59 days | | 2,078.96 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 03/01/2014 | 60 - 89 days | Delinquent | 7,484.25 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Bankruptcy | 64,888.95 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 18,312.59 | 4.00000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 65,688.00 | 6.62500% |

235

EX 2 pg 195 of 227

usbank.

Distribution Date: Jun 25, 2014

## Prime Mortgage Trust 2006-2

Contact:
Paul Gobin
Account Administrator
617-603-6630
paul.gobin@usbank.com

### DELINQUENCY LOAN DETAIL REPORT

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16375711 | CA | 78.5600% | 546,000.00 | 483,363.80 | 02/01/2014 | 120 + days | Delinquent | 0.00 | 6.25000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 08/01/2008 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 489,169.17 | 11/01/2012 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 668,578.12 | 04/01/2010 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 395,805.89 | 06/01/2012 | 120 + days | Delinquent | 0.00 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 405,578.57 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16658080 | FL | 80.0000% | 288,000.00 | 285,080.39 | 01/01/2009 | 120 + days | Delinquent | 0.00 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Bankruptcy | 0.00 | 8.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 450,103.47 | 04/01/2011 | 120 + days | Bankruptcy | 0.00 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 538,581.87 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 565,703.15 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 261,364.99 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 562,677.19 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 0.00 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,229.22 | 08/01/2013 | 120 + days | Foreclosure | 0.00 | 7.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 387,519.51 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 630,442.01 | 01/01/2013 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 615,986.03 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 0.00 | 6.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 0.00 | 7.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 71,045.28 | 05/01/2014 | 30 - 59 days | | 0.00 | 8.25000% |
| 16657678 | FL | 60.0000% | 780,000.00 | 685,581.02 | 05/01/2014 | 30 - 59 days | | 0.00 | 7.37500% |
| 16657793 | IL | 72.2600% | 112,000.00 | 100,492.92 | 05/01/2014 | 30 - 59 days | | 0.00 | 8.37500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 04/01/2014 | 60 - 89 days | Delinquent | 0.00 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | Foreclosure | 0.00 | 4.00000% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |

236

EX 2 Pg 196 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jul 25, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 09/01/2008 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 488,273.19 | 11/01/2012 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 667,446.42 | 04/01/2010 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16657533 | CA | 55.4000% | 446,000.00 | 395,126.15 | 07/01/2012 | 120 + days | Delinquent | 0.00 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 404,914.79 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Bankruptcy | 0.00 | 8.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 449,377.49 | 04/01/2011 | 120 + days | Bankruptcy | 0.00 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 537,725.93 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 564,876.68 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 261,027.45 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 8.37500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 561,749.68 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | Foreclosure | 0.00 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 386,886.98 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 629,340.45 | 01/01/2013 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 615,028.61 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 0.00 | 6.87500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 126,054.10 | 08/01/2013 | 120 + days | REO | 0.00 | 7.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 0.00 | 7.00000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 572,930.69 | 06/01/2014 | 30 - 59 days | | 0.00 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 70,952.24 | 06/01/2014 | 30 - 59 days | | 0.00 | 8.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 134,718.84 | 06/01/2014 | 30 - 59 days | | 0.00 | 8.00000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 04/01/2014 | 90 - 120 days | Delinquent | 0.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | REO | 0.00 | 4.00000% |

237

EX 2 pg 197 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Aug 25, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 571,520.93 | 07/01/2014 | 30 - 59 days | Delinquent | 4,490.84 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 70,858.56 | 07/01/2014 | 30 - 59 days | Delinquent | 1,133.40 | 8.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 134,530.99 | 06/01/2014 | 60 - 89 days | Delinquent | 3,173.72 | 8.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 487,372.08 | 11/01/2012 | 120 + days | Delinquent | 79,091.65 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 560,817.05 | 09/01/2009 | 120 + days | Delinquent | 234,717.27 | 6.62500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 394,442.80 | 07/01/2012 | 120 + days | Delinquent | 70,163.00 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 404,247.35 | 03/01/2010 | 120 + days | Delinquent | 141,474.62 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Bankruptcy | 28,332.70 | 8.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 448,647.43 | 04/01/2011 | 120 + days | Bankruptcy | 129,621.90 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 536,865.08 | 04/01/2010 | 120 + days | Foreclosure | 202,750.53 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 564,045.05 | 01/01/2012 | 120 + days | Foreclosure | 135,746.36 | 7.50000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 260,687.55 | 03/01/2013 | 120 + days | Foreclosure | 37,921.66 | 8.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 152,574.66 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 666,308.59 | 04/01/2010 | 120 + days | Foreclosure | 244,261.64 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 386,250.89 | 06/01/2011 | 120 + days | Foreclosure | 106,450.84 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 628,232.58 | 01/01/2013 | 120 + days | Foreclosure | 91,609.37 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 614,065.61 | 03/01/2013 | 120 + days | Foreclosure | 79,579.55 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 125,877.83 | 08/01/2013 | 120 + days | REO | 12,701.78 | 7.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 469,600.00 | 07/01/2014 | 30 - 59 days | Delinquent | 4,989.50 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 68,561.91 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 70,380.00 | 6.62500% |
| 16396190 | FL | 80.0000% | 164,000.00 | 127,392.60 | 08/01/2010 | 120 + days | REO | 18,312.59 | 4.00000% |

238

EX 2 198 287

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Sep 25, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 570,108.82 | 08/01/2014 | 30 - 59 days | Delinquent | 4,491.43 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 70,764.23 | 08/01/2014 | 30 - 59 days | Delinquent | 1,133.45 | 8.25000% |
| 16657373 | MS | 55.4900% | 73,800.00 | 69,731.30 | 08/01/2014 | 30 - 59 days | Delinquent | 915.09 | 7.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 134,341.88 | 06/01/2014 | 90 - 120 days | Delinquent | 4,231.72 | 8.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 38,286.48 | 6.87500% |
| 16667250 | CA | 62.5600% | 563,000.00 | 488,465.81 | 11/01/2012 | 120 + days | Delinquent | 82,688.81 | 8.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 559,879.27 | 09/01/2009 | 120 + days | Delinquent | 238,634.60 | 6.62500% |
| 16657533 | CA | 55.4000% | 446,000.00 | 393,755.82 | 08/01/2012 | 120 + days | Delinquent | 70,166.48 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 403,576.22 | 03/01/2010 | 120 + days | Delinquent | 144,293.46 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Bankruptcy | 28,332.70 | 8.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 447,913.26 | 04/01/2011 | 120 + days | Bankruptcy | 132,786.39 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 535,999.30 | 04/01/2010 | 120 + days | Foreclosure | 206,580.43 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 563,208.22 | 01/01/2012 | 120 + days | Foreclosure | 139,991.15 | 7.50000% |
| 16657240 | CT | 90.0000% | 284,400.00 | 260,345.28 | 03/01/2013 | 120 + days | Foreclosure | 40,029.08 | 8.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 155,566.32 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 665,164.60 | 04/01/2010 | 120 + days | Foreclosure | 248,876.23 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 385,611.22 | 06/01/2011 | 120 + days | Foreclosure | 109,182.83 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 627,118.36 | 01/01/2013 | 120 + days | Foreclosure | 96,192.20 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 613,096.99 | 03/01/2013 | 120 + days | Foreclosure | 84,002.49 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 125,700.40 | 08/01/2013 | 120 + days | REO | 13,679.08 | 7.87500% |
| 16657961 | IL | 64.5600% | 184,000.00 | 178,941.33 | 09/01/2011 | 120 + days | REO | 27,550.16 | 7.00000% |
| ***Group 2*** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 69,786.24 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 71,944.00 | 6.62500% |

239

EX 2 Pg 199-229

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Oct 27, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 568,694.36 | 09/01/2014 | 30 - 59 days | Delinquent | 4,492.03 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 70,669.25 | 09/01/2014 | 30 - 59 days | Delinquent | 1,133.49 | 8.25000% |
| 16657373 | MS | 55.4900% | 73,800.00 | 69,680.51 | 09/01/2014 | 30 - 59 days | Delinquent | 915.11 | 7.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 134,151.51 | 09/01/2014 | 30 - 59 days | Delinquent | 2,116.01 | 8.00000% |
| 16658039 | WA | 80.0000% | 455,200.00 | 406,406.70 | 09/01/2014 | 30 - 59 days | Delinquent | 5,811.21 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 485,554.34 | 11/01/2012 | 120 + days | Delinquent | 86,286.18 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 402,901.39 | 03/01/2010 | 120 + days | Delinquent | 147,112.41 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 466,911.94 | 09/01/2014 | 30 - 59 days | Bankruptcy | 6,405.76 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 143,604.14 | 06/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 562,366.16 | 01/01/2012 | 120 + days | Bankruptcy | 144,236.10 | 7.50000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Bankruptcy | 28,332.70 | 8.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 447,174.96 | 04/01/2011 | 120 + days | Bankruptcy | 135,951.04 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 535,128.56 | 04/01/2010 | 120 + days | Foreclosure | 210,410.51 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 558,936.31 | 09/01/2009 | 120 + days | Foreclosure | 242,552.12 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 158,557.98 | 8.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 664,014.41 | 04/01/2010 | 120 + days | Foreclosure | 253,491.05 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 384,967.95 | 06/01/2011 | 120 + days | Foreclosure | 111,914.97 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 625,997.76 | 01/01/2013 | 120 + days | Foreclosure | 100,775.25 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 612,122.72 | 03/01/2013 | 120 + days | Foreclosure | 88,425.62 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 260,000.62 | 03/01/2013 | 120 + days | REO | 42,136.55 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 125,521.81 | 08/01/2013 | 120 + days | REO | 14,656.44 | 7.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 468,601.00 | 09/01/2014 | 30 - 59 days | Delinquent | 4,978.88 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 71,010.55 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

240

EX 2 pg 200 - 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Nov 25, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 567,277.55 | 10/01/2014 | 30 - 59 days | Delinquent | 4,492.61 | 2.00000% |
| 16657316 | NJ | 90.0000% | 77,400.00 | 70,573.62 | 10/01/2014 | 30 - 59 days | Delinquent | 1,133.53 | 8.25000% |
| 16657373 | MS | 55.4900% | 73,800.00 | 69,629.42 | 09/01/2014 | 60 - 89 days | Delinquent | 1,372.68 | 7.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 133,959.87 | 09/01/2014 | 60 - 89 days | Delinquent | 3,174.08 | 8.00000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 484,637.85 | 11/01/2012 | 120 + days | Delinquent | 89,883.71 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 662,857.99 | 04/01/2010 | 120 + days | Delinquent | 258,106.11 | 6.50000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 402,222.83 | 03/01/2010 | 120 + days | Delinquent | 149,931.54 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 466,043.52 | 09/01/2014 | 60 - 89 days | Bankruptcy | 9,608.93 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 75,000.00 | 06/01/2014 | 120 + days | Bankruptcy | 2,939.07 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 561,518.84 | 01/01/2012 | 120 + days | Bankruptcy | 148,481.22 | 7.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 446,432.51 | 04/01/2011 | 120 + days | Bankruptcy | 139,115.83 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 534,252.83 | 04/01/2010 | 120 + days | Foreclosure | 214,240.78 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 557,988.14 | 09/01/2009 | 120 + days | Foreclosure | 246,469.83 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 161,549.64 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 384,321.06 | 06/01/2011 | 120 + days | Foreclosure | 114,647.23 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 624,870.74 | 01/01/2013 | 120 + days | Foreclosure | 105,358.54 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 611,142.77 | 03/01/2013 | 120 + days | Foreclosure | 92,848.97 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 259,653.56 | 03/01/2013 | 120 + days | REO | 44,244.12 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 125,342.05 | 08/01/2013 | 120 + days | REO | 15,633.83 | 7.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 468,601.00 | 09/01/2014 | 60 - 89 days | Delinquent | 7,468.31 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 71,010.55 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

241 -

EX 2 201 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Dec 26, 2014

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 565,858.37 | 11/01/2014 | 30 - 59 days | Delinquent | 4,493.20 | 2.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 311,747.86 | 11/01/2014 | 30 - 59 days | Delinquent | 4,172.24 | 7.75000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 11/01/2014 | 30 - 59 days | Delinquent | 7,145.64 | 6.37500% |
| 16658039 | WA | 80.0000% | 455,200.00 | 405,078.95 | 11/01/2014 | 30 - 59 days | Delinquent | 5,811.77 | 6.87500% |
| 16657373 | MS | 55.4900% | 73,800.00 | 69,578.02 | 09/01/2014 | 90 - 120 days | Delinquent | 1,830.26 | 7.25000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 133,766.96 | 09/01/2014 | 90 - 120 days | Delinquent | 4,232.19 | 8.00000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 483,715.71 | 11/01/2012 | 120 + days | Delinquent | 93,481.45 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 661,695.31 | 04/01/2010 | 120 + days | Delinquent | 262,721.40 | 6.50000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 401,540.53 | 03/01/2010 | 120 + days | Delinquent | 152,750.79 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 465,170.58 | 10/01/2014 | 60 - 89 days | Bankruptcy | 9,609.47 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 560,666.22 | 01/01/2012 | 120 + days | Bankruptcy | 152,726.53 | 7.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 445,685.88 | 04/01/2011 | 120 + days | Bankruptcy | 142,280.80 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 533,372.08 | 04/01/2010 | 120 + days | Foreclosure | 218,071.22 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 557,034.74 | 09/01/2009 | 120 + days | Foreclosure | 250,387.73 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 164,541.29 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 383,670.54 | 06/01/2011 | 120 + days | Foreclosure | 117,379.62 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 623,737.26 | 01/01/2013 | 120 + days | Foreclosure | 109,942.05 | 6.87500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 610,157.10 | 03/01/2013 | 120 + days | Foreclosure | 97,272.52 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 259,304.08 | 03/01/2013 | 120 + days | REO | 46,351.75 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 125,161.11 | 08/01/2013 | 120 + days | REO | 16,611.24 | 7.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 71,010.55 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

242

EX 2 Pg 202 / 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jan 26, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 564,436.83 | 12/01/2014 | 30 - 59 days | Delinquent | 4,493.78 | 2.00000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 722,887.27 | 12/01/2014 | 30 - 59 days | Delinquent | 10,406.48 | 6.87500% |
| 16658039 | WA | 80.0000% | 455,200.00 | 404,409.36 | 12/01/2014 | 30 - 59 days | Delinquent | 5,812.06 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 11/01/2014 | 60 - 89 days | Delinquent | 10,718.45 | 6.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 482,788.49 | 11/01/2012 | 120 + days | Delinquent | 97,079.38 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Delinquent | 167,532.95 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 660,526.33 | 06/01/2010 | 120 + days | Delinquent | 258,129.65 | 6.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 133,572.76 | 09/01/2014 | 120 + days | Delinquent | 5,290.34 | 8.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 400,854.46 | 03/01/2010 | 120 + days | Delinquent | 155,570.20 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 464,293.09 | 10/01/2014 | 90 - 120 days | Bankruptcy | 12,812.99 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 559,808.27 | 01/01/2012 | 120 + days | Bankruptcy | 156,972.01 | 7.50000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 444,935.05 | 04/01/2011 | 120 + days | Bankruptcy | 145,445.91 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 532,486.29 | 04/01/2010 | 120 + days | Foreclosure | 221,901.86 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 556,076.08 | 09/01/2009 | 120 + days | Foreclosure | 254,305.83 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 383,016.36 | 06/01/2011 | 120 + days | Foreclosure | 120,112.17 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 609,165.68 | 03/01/2013 | 120 + days | Foreclosure | 101,696.28 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 258,952.16 | 03/01/2013 | 120 + days | REO | 48,459.44 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 124,978.98 | 08/01/2013 | 120 + days | REO | 17,588.71 | 7.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 622,597.28 | 01/01/2013 | 120 + days | REO | 114,525.80 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 12/01/2014 | 30 - 59 days | Delinquent | 4,971.47 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | Foreclosure | 71,010.55 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

243

EX 2 203 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Feb 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | Past Due | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16658001 | NJ | 46.0500% | 815,000.00 | 721,674.84 | 01/01/2015 | 30 - 59 days | Delinquent | 10,406.98 | 6.87500% |
| 16658039 | WA | 80.0000% | 455,200.00 | 403,735.94 | 01/01/2015 | 30 - 59 days | Delinquent | 5,812.34 | 6.87500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 563,012.92 | 12/01/2014 | 60 - 89 days | Delinquent | 6,741.13 | 2.00000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 11/01/2014 | 90 - 120 days | Delinquent | 14,291.28 | 6.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 481,855.98 | 11/01/2012 | 120 + days | Delinquent | 100,677.50 | 8.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 08/01/2010 | 120 + days | Delinquent | 170,524.62 | 6.50000% |
| 16657443 | CA | 80.0000% | 752,000.00 | 659,351.02 | 06/01/2010 | 120 + days | Delinquent | 262,745.45 | 6.50000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 400,164.60 | 03/01/2010 | 120 + days | Delinquent | 158,389.74 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 463,411.03 | 11/01/2014 | 90 - 120 days | Bankruptcy | 12,813.72 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 558,944.96 | 01/01/2012 | 120 + days | Bankruptcy | 161,217.67 | 7.50000% |
| 16557860 | AZ | 80.0000% | 680,000.00 | 444,180.00 | 04/01/2011 | 120 + days | Bankruptcy | 148,611.18 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 531,595.42 | 04/01/2010 | 120 + days | Foreclosure | 225,732.68 | 6.87500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 555,112.12 | 09/01/2009 | 120 + days | Foreclosure | 258,224.14 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 382,358.50 | 06/01/2011 | 120 + days | Foreclosure | 122,844.84 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 608,168.48 | 03/01/2013 | 120 + days | Foreclosure | 106,120.25 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 258,597.78 | 03/01/2013 | 120 + days | REO | 50,567.23 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 124,795.65 | 08/01/2013 | 120 + days | REO | 18,566.20 | 7.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 621,450.77 | 01/01/2013 | 120 + days | REO | 119,109.81 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 12/01/2014 | 60 - 89 days | Delinquent | 7,457.22 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | REO | 71,010.55 | 6.62500% |

244

Ex 2 Pg 204 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Mar 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16658001 | NJ | 46.0500% | 815,000.00 | 720,455.47 | 01/01/2015 | 60 - 89 days | Delinquent | 15,610.85 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 90 - 119 days | Delinquent | 14,291.28 | 6.37500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 480,918.08 | 11/01/2012 | 120 + days | Delinquent | 104,275.81 | 6.87500% |
| 16657443 | CA | 80.0000% | 752,000.00 | 658,169.34 | 06/01/2010 | 120 + days | Delinquent | 267,361.47 | 6.50000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 399,470.93 | 03/01/2010 | 120 + days | Delinquent | 161,209.42 | 6.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 462,524.38 | 12/01/2014 | 90 - 119 days | Bankruptcy | 12,814.44 | 6.25000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 443,420.70 | 04/01/2011 | 120 + days | Bankruptcy | 151,776.61 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 530,699.45 | 04/01/2010 | 120 + days | Foreclosure | 229,563.69 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 558,076.26 | 01/01/2012 | 120 + days | Foreclosure | 165,463.49 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 554,142.84 | 09/01/2009 | 120 + days | Foreclosure | 262,142.67 | 6.62500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | Foreclosure | 32,114.86 | 6.75000% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 173,516.28 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 381,696.94 | 06/01/2011 | 120 + days | Foreclosure | 125,577.65 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 607,165.46 | 03/01/2013 | 120 + days | Foreclosure | 110,544.43 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 258,240.93 | 03/01/2013 | 120 + days | REO | 52,675.06 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657361 | MD | 80.0000% | 138,400.00 | 124,611.12 | 08/01/2013 | 120 + days | REO | 18,566.20 | 7.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 620,297.70 | 01/01/2013 | 120 + days | REO | 123,694.04 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 12/01/2014 | 90 - 119 days | Delinquent | 9,942.95 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | REO | 71,010.55 | 6.62500% |



245

EX 2 205 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Apr 27, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 559,996.06 | 03/01/2015 | 30 - 59 days | Delinquent | 4,495.64 | 2.00000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 08/01/2014 | 120 + days | Delinquent | 9,926.07 | 5.25000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 17,864.09 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 398,773.43 | 03/01/2010 | 120 + days | Delinquent | 164,029.25 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 461,633.11 | 12/01/2014 | 120 + days | Bankruptcy | 16,018.54 | 6.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 442,657.13 | 04/01/2011 | 120 + days | Bankruptcy | 154,942.21 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 529,798.35 | 04/01/2010 | 120 + days | Foreclosure | 233,394.89 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 557,202.13 | 01/01/2012 | 120 + days | Foreclosure | 169,709.54 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 479,974.83 | 11/01/2012 | 120 + days | Foreclosure | 107,874.32 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 553,168.21 | 09/01/2009 | 120 + days | Foreclosure | 266,061.37 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 176,507.94 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 381,031.66 | 06/01/2011 | 120 + days | Foreclosure | 128,310.59 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | Foreclosure | 8,904.77 | 8.25000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 606,156.59 | 03/01/2013 | 120 + days | Foreclosure | 114,968.82 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657240 | CT | 90.0000% | 284,400.00 | 257,881.59 | 03/01/2013 | 120 + days | REO | 54,782.98 | 8.37500% |
| 16657338 | DE | 86.6700% | 650,000.00 | 594,628.94 | 08/01/2007 | 120 + days | REO | 326,987.10 | 7.37500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657361 | MD | 80.0000% | 138,400.00 | 124,611.12 | 08/01/2013 | 120 + days | REO | 18,566.20 | 7.87500% |
| 16657810 | SC | 70.0000% | 717,500.00 | 619,138.02 | 01/01/2013 | 120 + days | REO | 128,278.53 | 6.87500% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 12/01/2014 | 120 + days | Delinquent | 12,428.70 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | REO | 71,010.55 | 6.62500% |

246

EX. 2 ... 206 ... 229

usbank

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: May 26, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 558,564.75 | 04/01/2015 | 30 - 59 days | Delinquent | 4,496.24 | 2.00000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 717,995.72 | 04/01/2015 | 30 - 59 days | Delinquent | 10,408.51 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 398,072.08 | 03/01/2010 | 120 + days | Delinquent | 166,849.23 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 03/01/2009 | 120 + days | Bankruptcy | 25,890.72 | 7.62500% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 08/01/2014 | 120 + days | Bankruptcy | 9,926.07 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 460,737.20 | 01/01/2015 | 120 + days | Bankruptcy | 16,019.48 | 6.25000% |
| 16657860 | AZ | 80.0000% | 880,000.00 | 441,889.27 | 05/01/2011 | 120 + days | Bankruptcy | 154,951.26 | 6.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 528,892.08 | 04/01/2010 | 120 + days | Foreclosure | 237,226.31 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 556,322.53 | 01/01/2012 | 120 + days | Foreclosure | 173,955.74 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 479,026.18 | 11/01/2012 | 120 + days | Foreclosure | 111,473.02 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 552,188.20 | 09/01/2009 | 120 + days | Foreclosure | 269,980.30 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 179,500.20 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 380,362.63 | 06/01/2011 | 120 + days | Foreclosure | 131,043.70 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Foreclosure | 21,436.91 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 605,141.83 | 03/01/2013 | 120 + days | Foreclosure | 119,393.45 | 7.00000% |
| 16657173 | NY | 80.0000% | 496,080.00 | 462,554.97 | 04/01/2009 | 120 + days | REO | 107,455.29 | 6.87500% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | REO | 8,904.77 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 617,971.69 | 01/01/2013 | 120 + days | REO | 132,863.28 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 02/01/2015 | 90 - 119 days | Delinquent | 9,942.95 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |
| 16396191 | FL | 80.0000% | 230,460.00 | 230,460.00 | 01/01/2010 | 120 + days | REO | 71,010.55 | 6.62500% |

247

Ex 2 Pg 207 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jun 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 557,131.05 | 05/01/2015 | 30 - 59 days | Delinquent | 4,496.84 | 2.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 397,366.86 | 03/01/2010 | 120 + days | Delinquent | 169,669.37 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 143,604.14 | 05/01/2014 | 120 + days | Bankruptcy | 6,267.91 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 08/01/2014 | 120 + days | Bankruptcy | 9,926.07 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 459,836.62 | 01/01/2015 | 120 + days | Bankruptcy | 19,223.92 | 6.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 440,872.82 | 06/01/2015 | Current | Bankruptcy | 2,686.03 | 5.50000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 237,226.31 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 555,437.44 | 01/01/2012 | 120 + days | Foreclosure | 178,202.12 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 38,286.48 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 478,072.09 | 11/01/2012 | 120 + days | Foreclosure | 115,071.95 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 551,202.78 | 09/01/2009 | 120 + days | Foreclosure | 273,899.43 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 182,491.87 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 131,043.70 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 196,989.56 | 01/01/2009 | 120 + days | Foreclosure | 28,332.70 | 8.25000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Foreclosure | 25,009.74 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 604,121.15 | 03/01/2013 | 120 + days | Foreclosure | 123,818.26 | 7.00000% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657684 | NC | 70.0000% | 32,900.00 | 30,552.76 | 07/01/2010 | 120 + days | REO | 8,904.77 | 8.25000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 616,798.68 | 01/01/2013 | 120 + days | REO | 137,448.26 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 03/01/2015 | 90 - 119 days | Delinquent | 9,942.95 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

248

EX 2 pg 208 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jul 27, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 555,694.96 | 06/01/2015 | 30 - 59 days | Delinquent | 4,497.57 | 2.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 309,836.41 | 06/01/2015 | 30 - 59 days | Delinquent | 4,173.04 | 7.75000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 132,324.76 | 06/01/2015 | 30 - 59 days | Delinquent | 2,116.78 | 8.00000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 554,546.81 | 01/01/2012 | 120 + days | Delinquent | 182,448.72 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 38,286.48 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 550,211.92 | 09/01/2009 | 120 + days | Delinquent | 277,818.75 | 6.62500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 28,582.56 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 396,657.75 | 03/01/2010 | 120 + days | Delinquent | 172,489.62 | 6.62500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 478,849.51 | 06/01/2015 | 30 - 59 days | Bankruptcy | 5,372.18 | 5.50000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,970.41 | 07/01/2014 | 120 + days | Bankruptcy | 5,820.94 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 08/01/2014 | 120 + days | Bankruptcy | 143,095.18 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 458,931.35 | 10/01/2014 | 120 + days | Bankruptcy | 32,038.04 | 6.25000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 237,226.31 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 477,112.53 | 11/01/2012 | 120 + days | Foreclosure | 116,671.05 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 185,483.54 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 131,043.70 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 198,304.00 | 01/01/2009 | 120 + days | Foreclosure | 26,841.22 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 603,094.52 | 03/01/2013 | 120 + days | Foreclosure | 128,243.30 | 7.00000% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 615,618.95 | 01/01/2013 | 120 + days | REO | 142,033.47 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 03/01/2015 | 120 + days | Delinquent | 12,428.70 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

249

EX 2 209 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Aug 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 553,922.04 | 07/01/2015 | 30 - 59 days | Delinquent | 4,498.18 | 2.00000% |
| 16657120 | IN | 90.0000% | 65,160.00 | 51,071.02 | 07/01/2015 | 30 - 59 days | Delinquent | 969.20 | 8.37500% |
| 16657677 | CT | 70.1900% | 565,000.00 | 492,007.12 | 07/01/2015 | 30 - 59 days | Delinquent | 7,030.33 | 6.62500% |
| 16657793 | IL | 72.2600% | 112,000.00 | 98,295.95 | 07/01/2015 | 30 - 59 days | Delinquent | 1,661.59 | 8.37500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 553,650.62 | 01/01/2012 | 120 + days | Delinquent | 186,695.48 | 7.50000% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Delinquent | 277,818.75 | 6.62500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 32,155.38 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 395,944.72 | 03/01/2010 | 120 + days | Delinquent | 175,310.07 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,780.62 | 07/01/2014 | 120 + days | Bankruptcy | 6,268.97 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 09/01/2014 | 120 + days | Bankruptcy | 9,416.52 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Bankruptcy | 38,286.48 | 6.87500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 458,021.37 | 09/01/2015 | Current | Bankruptcy | 0.00 | 6.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 478,258.33 | 08/01/2015 | Current | Bankruptcy | 2,686.26 | 5.50000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 237,226.31 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 476,147.48 | 11/01/2012 | 120 + days | Foreclosure | 122,270.38 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 188,475.20 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 131,043.70 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 26,841.22 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 602,061.90 | 03/01/2013 | 120 + days | Foreclosure | 132,668.54 | 7.00000% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 614,432.46 | 01/01/2013 | 120 + days | REO | 146,618.95 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 03/01/2015 | 120 + days | Delinquent | 14,914.44 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

250

EX 2 PG 210 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Sep 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375699 | CA | 56.3400% | 524,000.00 | 484,527.96 | 08/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.62500% |
| 16657677 | CT | 70.1900% | 565,000.00 | 491,105.65 | 08/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.62500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 477,664.44 | 08/01/2015 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16375680 | CA | 80.0000% | 540,000.00 | 552,480.60 | 07/01/2015 | 60 - 89 days | Delinquent | 0.00 | 2.00000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 552,748.83 | 01/01/2012 | 120 + days | Delinquent | 0.00 | 7.50000% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Delinquent | 0.00 | 8.25000% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 0.00 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 395,227.75 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,590.00 | 07/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 10/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 09/01/2009 | 120 + days | Bankruptcy | 0.00 | 7.62500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 475,176.90 | 11/01/2012 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 601,023.26 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 0.00 | 6.75000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 613,239.18 | 01/01/2013 | 120 + days | REO | 0.00 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 60 - 89 days | Delinquent | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |

251

Ex 2 pg 211 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Oct 26, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000 00 | 551,036 76 | 08/01/2015 | 60 - 89 days | Delinquent | 0 00 | 2.00000% |
| 16657677 | CT | 70 1900% | 565,000 00 | 490,199.20 | 08/01/2015 | 60 - 89 days | Delinquent | 0.00 | 6.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 551,841.40 | 01/01/2012 | 120 + days | Delinquent | 0 00 | 7.50000% |
| 16657268 | SC | 39 3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657692 | HI | 80 0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 0.00 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000 00 | 394,506 83 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80 0000% | 150,600.00 | 61,398.55 | 08/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692 87 | 10/01/2014 | 120 + days | Bankruptcy | 0 00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 01/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 474,200.76 | 12/01/2012 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657112 | NY | 80 0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657423 | FL | 80 0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000 00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657912 | NY | 80 0000% | 684,000.00 | 599,978.56 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 90 - 119 days | Delinquent | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |

252

Ex 2 pg 212 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Nov 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657633 | MD | 70.7700% | 506,025.00 | 429,037.23 | 10/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.50000% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 675,982.22 | 10/01/2015 | 30 - 59 days | Delinquent | 0.00 | 7.00000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 710,445.58 | 10/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 549,590.51 | 09/01/2015 | 60 - 89 days | Delinquent | 0.00 | 2.00000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 489,287.75 | 08/01/2015 | 90 - 119 days | Delinquent | 0.00 | 6.62500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 550,928.30 | 01/01/2012 | 120 + days | Delinquent | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 393,781.93 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,206.26 | 08/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 10/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 64,896.49 | 01/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 473,219.03 | 01/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 598,927.76 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |

253

EX 2 PG 213 of 229

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Dec 28, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 548,141.85 | 10/01/2015 | 60 - 89 days | Delinquent | 0.00 | 2.00000% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 674,789.31 | 10/01/2015 | 60 - 89 days | Delinquent | 0.00 | 7.00000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 709,161.87 | 10/01/2015 | 60 - 89 days | Delinquent | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 550,009.49 | 01/01/2012 | 120 + days | Delinquent | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657677 | CT | 70.1900% | 565,000.00 | 488,371.27 | 08/01/2015 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 393,053.02 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,013.13 | 08/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 11/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 64,708.72 | 02/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 472,231.67 | 02/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 01/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 597,870.84 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 11/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.50000% |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |

254

EX 2 pg 214 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jan 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657065 | GA | 80.0000% | 568,000.00 | 308,921.37 | 12/01/2015 | 30 - 59 days | Delinquent | 0.00 | 7.75000% |
| 16657298 | TX | 90.0000% | 103,270.00 | 92,353.49 | 12/01/2015 | 30 - 59 days | Delinquent | 0.00 | 8.50000% |
| 16657430 | OR | 75.7100% | 882,000.00 | 763,728.30 | 12/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 546,690.78 | 11/01/2015 | 60 - 89 days | Delinquent | 0.00 | 2.00000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 707,870.81 | 11/01/2015 | 60 - 89 days | Delinquent | 0.00 | 6.87500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 673,589.44 | 10/01/2015 | 90 - 119 days | Delinquent | 0.00 | 7.00000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 549,084.94 | 01/01/2012 | 120 + days | Delinquent | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 392,320.09 | 03/01/2010 | 120 + days | Delinquent | 0.00 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 60,819.15 | 09/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 64,520.13 | 02/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 471,238.65 | 04/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 02/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 596,807.75 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 487,449.73 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 12/01/2015 | 30 - 59 days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |

255

EX 2 p215 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Feb 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657298 | TX | 90.0000% | 103,270.00 | 92,213.60 | 01/01/2016 | 30 - 59 days | Delinquent | 0.00 | 8.50000% |
| 16657399 | WI | 80.0000% | 192,000.00 | 184,641.10 | 01/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.00000% |
| 16657430 | OR | 75.7100% | 882,000.00 | 762,309.72 | 01/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 01/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16375680 | CA | 80.0000% | 540,000.00 | 545,237.29 | 12/01/2015 | 60 - 89 days | Delinquent | 0.00 | 2.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 308,765.40 | 12/01/2015 | 60 - 89 days | Delinquent | 0.00 | 7.75000% |
| 16658001 | NJ | 48.0500% | 815,000.00 | 706,572.35 | 11/01/2015 | 90 - 119 days | Delinquent | 0.00 | 6.87500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 672,382.57 | 10/01/2015 | 120 + days | Delinquent | 0.00 | 7.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 60,624.32 | 09/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 64,330.72 | 03/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 470,239.94 | 05/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 03/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 595,738.46 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 486,523.10 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 391,583.11 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |

256

EX 2 pg 216 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Mar 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 543,781.38 | 02/01/2016 | 30 - 59 days | Delinquent | 0.00 | 2.00000% |
| 16657120 | IN | 90.0000% | 65,160.00 | 50,038.59 | 02/01/2016 | 30 - 59 days | Delinquent | 0.00 | 8.37500% |
| 16657430 | OR | 75.7100% | 882,000.00 | 760,883.01 | 02/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 474,043.48 | 02/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 308,608.42 | 01/01/2016 | 60 - 89 days | Delinquent | 0.00 | 7.75000% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 705,266.45 | 11/01/2015 | 120 + days | Delinquent | 0.00 | 6.87500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 60,428.64 | 09/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 64,140.48 | 03/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 469,235.51 | 07/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 04/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 594,662.93 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 165,405.44 | 10/01/2008 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 485,591.35 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 671,168.66 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 390,842.07 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 60 - 89 days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |

257

EX 2 pg 217 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Apr 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657120 | IN | 90.0000% | 65,160.00 | 49,892.56 | 03/01/2016 | 30 - 59 days | Delinquent | 0.00 | 8.37500% |
| 16657430 | OR | 75 7100% | 882,000.00 | 759,448.13 | 03/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6 87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 473,430.27 | 03/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 308,450.43 | 12/01/2015 | 120 + days | Delinquent | 0.00 | 7 75000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 60,232.11 | 10/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 01/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 63,949.40 | 03/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 468,225.33 | 07/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 05/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 593,581.13 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 0.00 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 484,654.46 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 0.00 | 8.25000% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 669,947.67 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 390,096.93 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16658001 | NJ | 46.0500% | 815,000.00 | 703,953.07 | 11/01/2015 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 90 - 119 days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | REO | 0.00 | 6.62500% |

258

EX 2 PG 218 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: May 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 540,862.27 | 04/01/2016 | 30 - 59 days | Delinquent | 0.00 | 2.00000% |
| 16657120 | IN | 90.0000% | 65,160.00 | 49,745.51 | 04/01/2016 | 30 - 59 days | Delinquent | 0.00 | 8.37500% |
| 16657430 | OR | 75.7100% | 882,000.00 | 758,005.02 | 04/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 472,814.25 | 04/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 04/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 60,034.72 | 11/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,676.46 | 02/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 63,757.49 | 05/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 487,209.36 | 07/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 06/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 592,493.02 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657065 | GA | 80.0000% | 568,000.00 | 308,291.42 | 12/01/2015 | 120 + days | Foreclosure | 0.00 | 7.75000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Foreclosure | 0.00 | 7.50000% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 483,712.40 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 668,719.56 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 389,347.68 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | REO | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | REO | 0.00 | 6.62500% |

254

Ex 2 pg 219 of 221

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jun 27, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Group 1** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 539,231.84 | 05/01/2016 | 30 - 59 days | Delinquent | 0.00 | 2.00000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 472,195.41 | 05/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657924 | OR | 65.0000% | 188,500.00 | 188,284.06 | 05/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 59,836.46 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,475.91 | 03/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 63,564.74 | 05/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Bankruptcy | 0.00 | 7.50000% |
| 16657250 | CA | 82.5600% | 563,000.00 | 466,187.57 | 09/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 07/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 591,398.56 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 482,765.14 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 667,484.28 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 388,594.29 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | REO | 0.00 | 8.25000% |
| **Group 2** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 05/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.62500% |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | REO | 0.00 | 6.62500% |

260

EX 2 PG 220 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Jul 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 537,765.92 | 06/01/2016 | 30 - 59 days | Delinquent | 0.00 | 2.00000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 129,758.91 | 06/01/2016 | 30 - 59 days | Delinquent | 0.00 | 8.00000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 471,573.73 | 06/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 59,637.33 | 12/01/2014 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,274.49 | 04/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 63,371.15 | 06/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Bankruptcy | 0.00 | 7.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 465,159.93 | 12/01/2013 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 09/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 590,297.71 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 481,812.65 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 666,241.80 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 387,836.74 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | REO | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 120 + days | Delinquent | 0.00 | 6.50000% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | REO | 0.00 | 6.62500% |

265

Ex 2 Pg 221 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Aug 25, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 536,297.56 | 07/01/2016 | 30 - 59 days | Delinquent | 0.00 | 2.00000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 470,949.20 | 07/01/2016 | 30 - 59 days | Delinquent | 0.00 | 5.50000% |
| 16657792 | PA | 80.0000% | 148,000.00 | 129,537.99 | 08/01/2016 | 60 - 89 days | Delinquent | 0.00 | 8.00000% |
| 16657086 | FL | 80.0000% | 150,600.00 | 59,437.33 | 01/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,072.19 | 05/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 63,176.71 | 07/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Bankruptcy | 0.00 | 7.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 464,126.40 | 02/01/2014 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 10/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657912 | NY | 80.0000% | 684,000.00 | 589,190.44 | 03/01/2013 | 120 + days | Bankruptcy | 0.00 | 7.00000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 480,854.90 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 664,992.07 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 387,075.01 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | REO | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 07/01/2016 | 30 - 59 days | Delinquent | 0.00 | 6.62500% |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 120 + days | Delinquent | 0.00 | 6.50000% |

262

EX 2 P 222 of 227

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Sep 26, 2016

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16657860 | AZ | 80.0000% | 680,000.00 | 470,321.81 | 08/01/2016 | 30 - 59 days | Bankruptcy | 0.00 | 5.50000% |
| 16657086 | FL | 80.0000% | 150,800.00 | 59,236.46 | 02/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 68,869.00 | 07/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 62,981.42 | 08/01/2015 | 120 + days | Bankruptcy | 0.00 | 5.25000% |
| 16657132 | CA | 75.0000% | 553,500.00 | 548,154.61 | 01/01/2012 | 120 + days | Bankruptcy | 0.00 | 7.50000% |
| 16657250 | CA | 62.5600% | 563,000.00 | 463,089.95 | 03/01/2014 | 120 + days | Bankruptcy | 0.00 | 6.87500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 698,533.04 | 11/01/2015 | 120 + days | Bankruptcy | 0.00 | 6.37500% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 0.00 | 6.87500% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 0.00 | 6.75000% |
| 16657677 | CT | 70.1900% | 565,000.00 | 479,891.86 | 08/01/2015 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657896 | NJ | 80.0000% | 772,000.00 | 663,735.05 | 10/01/2015 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 588,076.71 | 03/01/2013 | 120 + days | Foreclosure | 0.00 | 7.00000% |
| 16657957 | NY | 55.5600% | 425,000.00 | 386,309.08 | 03/01/2010 | 120 + days | Foreclosure | 0.00 | 6.62500% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | REO | 0.00 | 8.25000% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 461,304.30 | 07/01/2016 | 60 - 89 days | Delinquent | 0.00 | 6.62500% |
| 16396235 | FL | 80.0000% | 164,000.00 | 163,333.62 | 01/01/2016 | 120 + days | Delinquent | 0.00 | 6.50000% |

263

EX 2 PG 223 of 227

# EXHIBIT "O"

usbank.

# Prime Mortgage Trust 2006-2

## DELINQUENCY LOAN DETAIL REPORT

Distribution Date: Aug 25, 2015

| Loan Number | State | Orig LTV | Original Balance | Beginning Balance | Next Due | PastDue | Status | Advances | Rate |
|---|---|---|---|---|---|---|---|---|---|
| ***Group 1*** | | | | | | | | | |
| 16375680 | CA | 80.0000% | 540,000.00 | 553,922.04 | 07/01/2015 | 30 - 59 days | Delinquent | 4,498.18 | 2.00000% |
| 16657120 | IN | 90.0000% | 65,160.00 | 51,071.02 | 07/01/2015 | 30 - 59 days | Delinquent | 969.20 | 8.37500% |
| 16657677 | CT | 70.1900% | 565,000.00 | 492,007.12 | 07/01/2015 | 30 - 59 days | Delinquent | 7,030.33 | 6.62500% |
| 16657793 | IL | 72.2600% | 112,000.00 | 98,295.95 | 07/01/2015 | 30 - 59 days | Delinquent | 1,661.59 | 8.37500% |
| 16657132 | CA | 75.0000% | 553,500.00 | 553,650.62 | 01/01/2012 | 120 + days | Delinquent | 186,695.48 | 7.50000% |
| 16657268 | SC | 39.3800% | 630,000.00 | 549,215.59 | 09/01/2009 | 120 + days | Delinquent | 277,818.75 | 6.62500% |
| 16657692 | HI | 80.0000% | 704,000.00 | 699,981.88 | 12/01/2014 | 120 + days | Delinquent | 32,155.38 | 6.37500% |
| 16657957 | NY | 55.5600% | 425,000.00 | 395,944.72 | 03/01/2010 | 120 + days | Delinquent | 175,310.07 | 6.62500% |
| 16657086 | FL | 80.0000% | 150,600.00 | 61,780.62 | 07/01/2014 | 120 + days | Bankruptcy | 6,268.97 | 5.25000% |
| 16657087 | FL | 80.0000% | 150,600.00 | 69,692.87 | 09/01/2014 | 120 + days | Bankruptcy | 9,416.52 | 5.25000% |
| 16657090 | FL | 80.0000% | 150,600.00 | 142,348.85 | 06/01/2009 | 120 + days | Bankruptcy | 31,073.86 | 7.62500% |
| 16657189 | FL | 80.0000% | 176,800.00 | 166,405.44 | 10/01/2008 | 120 + days | Bankruptcy | 38,286.48 | 6.87500% |
| 16657584 | NV | 74.9700% | 536,000.00 | 458,021.37 | 09/01/2015 | Current | Bankruptcy | 0.00 | 6.25000% |
| 16657860 | AZ | 80.0000% | 680,000.00 | 478,258.33 | 08/01/2015 | Current | Bankruptcy | 2,686.26 | 5.50000% |
| 16657112 | NY | 80.0000% | 600,000.00 | 527,980.62 | 04/01/2010 | 120 + days | Foreclosure | 237,226.31 | 6.87500% |
| 16657250 | CA | 62.5600% | 563,000.00 | 476,147.48 | 11/01/2012 | 120 + days | Foreclosure | 122,270.38 | 6.87500% |
| 16657423 | FL | 80.0000% | 574,400.00 | 574,400.00 | 06/01/2010 | 120 + days | Foreclosure | 188,475.20 | 6.50000% |
| 16657581 | NY | 80.0000% | 433,600.00 | 379,689.84 | 06/01/2011 | 120 + days | Foreclosure | 131,043.70 | 6.75000% |
| 16657687 | CT | 80.0000% | 204,000.00 | 197,166.62 | 01/01/2009 | 120 + days | Foreclosure | 26,841.22 | 8.25000% |
| 16657912 | NY | 80.0000% | 684,000.00 | 602,061.90 | 03/01/2013 | 120 + days | Foreclosure | 132,668.54 | 7.00000% |
| 16657349 | PA | 80.0000% | 151,200.00 | 141,210.37 | 02/01/2011 | 120 + days | REO | 32,114.86 | 6.75000% |
| 16657810 | SC | 70.0000% | 717,500.00 | 614,432.46 | 01/01/2013 | 120 + days | REO | 146,618.95 | 6.87500% |
| ***Group 2*** | | | | | | | | | |
| 16396238 | MS | 80.0000% | 479,600.00 | 467,903.57 | 03/01/2015 | 120 + days | Delinquent | 14,914.44 | 6.62500% |
| 16396213 | FL | 79.9900% | 294,400.00 | 294,400.00 | 12/01/2010 | 120 + days | Foreclosure | 73,508.00 | 6.62500% |

265

EX 2 PG 225 of 227

# EXHIBIT "P"

# Rescission Accounting

**Lender: Wells Fargo Bank, N.A.**
**Borrower: Boaz Tribelsky**

| DESCRIPTION | "AS OF" DATE | AMOUNT | # OF PMTS. | TOTAL AMOUNT PAID | TOTAL PAYMENTS |
|---|---|---|---|---|---|
| **PRE-PETITION PAYMENTS** | | | | | |
| Regular Monthly Payments | 9/1/2015 | $3,698.51 | 73 | $269,991.17 | $269,991.17 |
| Additional Principal Curtailment | 9/1/2015 | $15,024.36 | 1 | $15,024.36 | $285,015.53 |
| | | | | | $285,015.53 |
| **POST-PETITION PAYMENTS** | | | | | $285,015.53 |
| Regular Monthly Payments | 12/1/2016 | $3,698.51 | 16 | $59,176.15 | $344,191.68 |
| Trustee Payments Tendered | 11/19/2015 | $2,094.96 | 1 | $2,094.96 | $346,286.64 |
| Trustee Payments Tendered | 12/16/2015 | $3,047.48 | 1 | $3,047.48 | $349,334.12 |
| Trustee Payments Tendered | 1/14/2016 | $3,047.48 | 1 | $3,047.48 | $352,381.60 |
| Trustee Payments Tendered | 2/19/2016 | $3,659.42 | 1 | $3,659.42 | $356,041.02 |
| Trustee Payments Tendered | 4/21/2016 | $2,556.80 | 1 | $2,556.80 | $358,597.82 |
| Trustee Payments Tendered | 5/25/2016 | $2,678.06 | 1 | $2,678.06 | $361,275.88 |
| Trustee Payments Tendered | 6/17/2016 | $2,679.20 | 1 | $2,679.20 | $363,955.08 |
| Trustee Payments Tendered | 7/15/2016 | $2,679.20 | 1 | $2,679.20 | $366,634.28 |
| Trustee Payments Expected | 8/15/2016 | $2,679.20 | 1 | $2,679.20 | $369,313.48 |
| Trustee Payments Expected | 9/15/2016 | $2,679.20 | 1 | $2,679.20 | $371,992.68 |
| Trustee Payments Expected | 10/15/2016 | $2,679.20 | 1 | $2,679.20 | $374,671.88 |
| Trustee Payments Expected | 11/15/2016 | $2,679.20 | 1 | $2,679.20 | $377,351.08 |
| Trustee Payments Expected | 12/15/2016 | $2,679.20 | 1 | $2,679.20 | $380,030.28 |
| | | | | | $380,030.28 |
| **RECOVER CLOSING COSTS** | | | | | $380,030.28 |
| Unknown at this time | 8/3/2006 | | | | $380,030.28 |
| **PAYMENTS MADE TO DATE:** | **12/15/2016** | | | **$380,030.28** | **$380,030.28** |
| **PRINCIPAL AMOUNT BORROWED:** | | | | | **$563,000.00** |
| **NET TENDER:** | | | | | **$182,969.72** |

McDonnell Analytics, Inc.
Copyright 11/25/2016

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**100 North Barranca Avenue, Suite 250, West Covina, CA 91791**

A true and correct copy of the foregoing document entitled (*specify*): **Motion to Suspend Payments to U.S. Bank, N.A.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ______________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) December 13, 2016 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Neil Bason
United States Bankruptcy Judge
255 East Temple St., Suite 1552
Los Angeles, CA 90012

Kathy Dockery
Chapter 13 Trustee
700 South Flower St., Suite 1950
Los Angeles, CA 90017

Boaz Tribelsky
724 North Genesee
Los Angeles, CA 90046

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 13, 2016 | Alma Polanco | Alma Polanco |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY UNITED STATES MAIL**

Wells Fargo Bank, N.A.
c/o U.S. Bank, N.A,
Attn: Bankruptcy Dept.
MAC D3347-014
3476 Stateview Blvd
Fort Mill, SC 29715

**Authorized Agent for Wells Fargo Bank**
Buckley Madole, P.C.
P. O. Box 9013
Addison, TX 75001

Wells Fargo Bank, N.A.
101 N. Phllips Avene
Sioux Falls, SD 57104

Wells Fargo Financial California
One Home Campus
Attn: Payment Processing
MAC X2302-04C
Des Moines, IA 50328

Wells Fargo
P.O. Box 14517
Des Moines, IA 50306